UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CRIMINAL ACTION NO. 2:17-CR-390-1 |
| | § | |
| DAVID KEITH WILLS | § | |

## ORDER DENYING MOTION TO SUPPRESS

Defendant David Keith Wills (Wills) is charged by superseding indictment with (1) one count of aiding and abetting sex trafficking of a child, in violation of 18 U.S.C. § 1591(a), and (2) one count of conspiracy to commit sex trafficking of a child, in violation of 18 U.S.C § 1594(c). D.E. 153. Before the Court is his motion to suppress evidence (D.E. 229) of Verizon cell phone records seized pursuant to a search warrant issued by a Texas district judge (the "Verizon Warrant"). He argues that the search violated his Fourth Amendment rights.[1] The Government filed a response (D.E. 262), asserting that the warrant was valid and regardless, the good faith exception to the exclusionary rule permits admission of the evidence. Defendant submitted additional briefing. D.E. 233; D.E. 285. A hearing on the motion was held on January 31, 2019. For the reasons set out below, the Court DENIES Defendant's motion to suppress (D.E. 229).

---

[1] During the hearing on the motion, Wills withdrew his request to suppress the Google email records based on the Government's representation that it did not plan to use such information. Accordingly, the Court only reviews the Verizon Warrant.

1 / 14

# FACTS

The events leading to this motion began on April 8, 2015, when Detective Samuel Lucio (Detective Lucio) of the Brownsville, Texas Police Department went to Oliviera Middle School to investigate an outcry of sexual abuse by a student. A school counselor gave a sworn statement to Detective Lucio stating that 13-year-old Jane Doe (Doe) reported that she was sexually abused by Wills from the ages of 9 to 12 during visits arranged by Doe's mother. Doe was subsequently interviewed at Monica's House, a children's advocacy center. Detective Lucio was present for the forensic interview during which Doe gave a detailed account of the sexual abuse. Doe stated that the abuse occurred on almost a weekly basis at various locations. He asked Doe follow-up questions and later spoke to a nurse who examined Doe at Valley Baptist Medical Center.

Shortly after, Brownsville police arrested Wills and Doe's mother for continuous sexual abuse of a young child under Texas law.[2] Search warrants were subsequently executed on each of their cell phones. The forensic analysis of Wills's phone conducted by an agent from United States Immigration and Customs Enforcement (ICE) revealed large gaps in the call history, indicating that it was not his primary phone. The search of Doe's mother's phone revealed a text message received on April 9, 2015, from a phone number associated with Wills.

Based on this information, Detective Lucio prepared an affidavit in support of a search warrant for Wills's cell phone records. In his affidavit, he detailed his conversations with the school counselor and the nurse; and Doe's allegations of the

---

[2] Wills's state charges were later dismissed in deference to this federal case.

sexual abuse, including the locations of where the abuse occurred, and that Wills contacted her mother by phone to arrange the visits, to speak to Doe, and to request nude photos of Doe, and that Wills paid her mother when Doe had sex with him. As he routinely did, Detective Lucio had the warrant reviewed by the Cameron County District Attorney's office before it was presented to a judge.

Accompanied by an assistant district attorney, Detective Lucio presented his affidavit asserting probable cause to District Judge Janet Leal of the 103rd District Court of Cameron County on April 17, 2015. After reading the affidavit, Judge Leal signed the search warrant. Soon after, Detective Lucio faxed the warrant with his affidavit to Cellco Partnership dba Verizon Wireless in New Jersey to a number designated for use by law enforcement submitting search warrants. Listing Wills's cell phone number, the Verizon Warrant included a request for records of incoming and outgoing device call logs; incoming and outgoing logs for SMS (Short Message Service) and MMS (Multimedia Messaging Service) communications; Global Positioning System coordinates and cellular telephone tower usage information; and cell tower site locations used from July 1, 2011 to April 9, 2015.[3]

---

[3] The Verizon Warrant also requested records of information revealing the identity of customers of the applicable service; information about a customer's use of the applicable service; information that identifies the recipient or destination of a wire communication or electronic communication sent to or by the customer; billing and subscriber information: all basic subscriber/account information about the customers or subscribers of the account, including names, addresses, or records of session times and durations, length of service (including start date) and types of service utilized, instrument numbers or other subscriber numbers or identities (including temporarily assigned network addresses), and means and source of payment for such service (including any credit card or bank account number); a legend identifying the codes and providing instructions on how to read the data requested; and a business records affidavit to authenticate the records. D.E. 229-1.

# DISCUSSION

## A. Burden of Proof

Wills moves to suppress the evidence obtained through the Verizon Warrant as fruit of the poisonous tree on the basis that (1) the search warrant was unlawful under state and federal law; (2) Detective Lucio's affidavit did not support a finding of probable cause; and (3) the warrant lacked particularity.

**Search Warrant.** The party seeking suppression "has the burden of proving, by a preponderance of the evidence, that the evidence in question was obtained in violation of his Fourth Amendment rights." *United States v. Smith,* 978 F.2d 171, 176 (5th Cir. 1992) (citing *Rakas v. Illinois*, 439 U.S. 128, 131 n.1 (1978)). The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. Specifically, the items to be seized must be described with sufficient particularity so "as to leave 'nothing . . . to the discretion of the officer executing the warrant.'" *United States v. Allen,* 625 F.3d 830, 835 (5th Cir. 2010) (quoting *Marron v. United States*, 275 U.S. 192, 196 (1927)). Ordinarily, a search warrant that fails to establish probable cause or meet the particularity requirement is unconstitutional. *See Allen*, 825 F.3d at 835.

**Exclusionary Rule.** If the evidence supports a finding of an unconstitutional search, the burden is on the government to demonstrate why the evidence should not be excluded as fruits of the illegal search or seizure. *United States v. Runyan*, 275 F.3d 449, 456 (5th Cir. 2001) (citing *United States v. Houltin*, 566 F.2d 1027, 1031 (5th Cir.

1978)). One exception to the exclusionary rule applies "when the police act with an objectively reasonable good-faith belief that their conduct is lawful." *Davis v. United States*, 564 U.S. 229, 238 (2011) (citing *United States v. Leon,* 468 U.S. 897, 918 (1984)); *see United States v. Pope,* 467 F.3d 912, 916 (5th Cir. 2006) (applying the good faith exception to a warrant issued by a state judge).

### B. Good Faith Exception

Suppression is not in every instance the appropriate remedy for a violation of constitutional rights. *Leon,* 468 U.S. at 921. Rather, exclusion of evidence is a "last resort, not [the court's] first impulse." *Herring v. United States*, 555 U.S. 135, 140 (2009) (citing *Hudson v. Michigan*, 547 U.S. 586, 591 (2006)). The sole purpose of the exclusionary rule is to deter future Fourth Amendment violations. *Davis*, 564 U.S. at 236–37. For that reason, the "good faith exception bars the application of the exclusionary rule to exclude evidence obtained pursuant to a warrant if law enforcement officers act under an objectively reasonable, good faith belief that the search warrant in question is valid—even if it, in fact, is not." *United States v. Jarman*, 847 F.3d 259, 264 (5th Cir. 2017). The good faith inquiry asks "whether a reasonably well trained officer would have known that the search was illegal despite the [judge's] authorization." *Allen*, 625 F.3d at 835 (quoting *Leon*, 468 U.S. at 923 n.23) (internal quotation marks omitted). "Whether the exception applies will ordinarily depend on an examination of the affidavit by the reviewing court . . . but all of the circumstances surrounding issuance of the warrant may be considered." *United States v. Payne*, 341 F.3d 393, 400 (5th Cir. 2003) (citation omitted).

Typically, the Fifth Circuit conducts a two-step review of a motion to suppress evidence seized pursuant to a warrant. *United States v. Massi*, 761 F.3d 512, 525 (5th Cir. 2014). First, the Court considers whether the good faith exception applies; if it does, "'the court need not reach the question of probable cause.'" *Id.* (quoting *United States v. Pena-Rodriguez*, 110 F.3d 1120, 1130 (5th Cir. 1997)); *see also United States v. Moore*, 805 F.3d 590, 593 (5th Cir. 2015) ("Our analysis usually ends if the good faith exception applies."). If the good faith exception does not apply, the second step "requires the court 'to ensure that the magistrate had a substantial basis for . . . concluding that probable cause existed.'" *Massi*, 761 F.3d at 525 (quoting *Pena-Rodriguez*, 110 F.3d at 1129).

The good faith exception does not apply in the following circumstances:

> (1) when the issuing magistrate was misled by information in an affidavit that the affiant knew or reasonably should have known was false; (2) when the issuing magistrate wholly abandoned his judicial role; (3) when the warrant affidavit is so lacking in indicia of probable cause as to render official belief in its existence unreasonable; and (4) when the warrant is so facially deficient in failing to particularize the place to be searched or the things to be seized that executing officers cannot reasonably presume it to be valid."

*United States v. Woerner*, 709 F.3d 527, 533–34 (5th Cir. 2013) (citing *Payne*, 341 F.3d at 399-400). Wills argues that Detective Lucio's affidavit omitted a material fact, failed to establish probable cause, and did not satisfy the particularity requirement. Wills also challenges the validity of the Verizon Warrant under federal and state law. Each argument is addressed below.

### 1. There is no evidence that Detective Lucio misled the judge in his affidavit.

"The good-faith exception to the exclusionary rule does not apply if the warrant affidavit contains a false statement that was made intentionally or with reckless disregard for its truth." *United States v. Cavazos*, 288 F.3d 706, 709-10 (5th Cir. 2002). "[T]he defendant must establish: (1) a knowing or reckless falsehood by omission or commission; (2) that without the falsehood there would not be sufficient matter in the affidavit to support the issuance of the warrant; and that (3) [t]he omitted material [is] . . . dispositive, so that if the omitted fact were included, there would not be probable cause." *Jarman*, 847 F.3d at 264-65 (internal quotation marks and citations omitted); *see Franks v. Delaware*, 438 U.S. 154, 156 (1978). "[S]imple, isolated negligence" is not sufficient to prevent a good faith finding. *Davis*, 564 U.S. at 257 (2011).

Wills claims that Detective Lucio omitted Doe's statement that Wills never took photos of her. There is no evidence indicating that the omission was made in reckless disregard for the truth. Wills suggests that the omission was made because the statement would have undermined a probable cause finding to search for MMS communications, i.e. photos. During the hearing, Detective Lucio clarified that he requested records of MMS communications because Doe had alleged that Wills sent nude photographs to her through her mother's phone. While he did not include this allegation in his affidavit, the record shows that Doe made this allegation during the forensic interview attended by Detective Lucio. D.E. 286, p. 73-74.

Detective Lucio testified that he omitted several matters because the affidavit would have turned into a book. The forensic interview and his discussions with the

school counselor and the nurse provided abundant information to summarize. Wills has not established by a preponderance of the evidence that Detective Lucio acted with reckless disregard for the truth or misled the judge in his affidavit in support of the Verizon Warrant.

**2. Detective Lucio's affidavit established probable cause.**

An affidavit for a search warrant is to be interpreted in a "commonsense and realistic fashion," and the judge's finding of probable cause should be sustained in "doubtful or marginal cases." *United States v. Freeman*, 685 F.2d 942, 948 (5th Cir. 1982) (quoting *United States v. Maestas*, 546 F.2d 1177, 1180 (5th Cir. 1977)) (internal quotation marks omitted). Probable cause requires supporting facts "sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed" and the person to be searched committed it. *United States v. Gordon*, 580 F.2d 827, 832-33 (5th Cir. 1978) (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949)) (internal quotation marks omitted). A "bare bones" affidavit does not establish probable cause because it generally contains "wholly conclusory statements, which lack the facts and circumstances from which a [judge] can independently determine probable cause." *United States v. Satterwhite*, 980 F.2d 317, 321 (5th Cir. 1992); *see United States v. Brown*, 941 F.2d 1300, 1303 n.1 (5th Cir. 1985) (affidavit simply stated that affiant "has cause to suspect and does believe" that contraband is located on certain premises).

Detective Lucio's affidavit provided Doe's allegations regarding the sexual abuse by Wills which occurred over a number of years in many, specified locations; that her

mother arranged the visits with Wills by phone; that Wills's phone had large gaps in call history indicating that it was not his main phone; and that a text message associated with Wills was discovered in the phone of Doe's mother in April of 2015. The affidavit further noted that the cellular data was necessary to determine arrival and departure times and locations of the suspects, and a timeline for the offenses.

The Court finds that probable cause was sufficiently established by the affidavit. The Court concludes that Detective Lucio's affidavit provided a substantial basis for the state judge to believe that evidence of criminal activity would be found in the cell phone records. Thus, a reasonable officer would have reason to believe that the Verizon Warrant established probable cause.

### 3. The Verizon Warrant satisfied the particularity requirement.

Wills claims that no reasonable officer would think that a "grossly overbroad" warrant that gives him "unbridled discretion" to search "whatever he desired" is valid. To satisfy the Fourth Amendment's particularity requirement, "[t]he description in the warrant must be such that a reasonable officer would know what items he is permitted to seize." *United States v. Aguirre*, 664 F.3d 606, 614 (5th Cir. 2011) (citing *Steele v. United States*, 267 U.S. 498, 503–04 (1925)). "Reasonable specificity is required, not 'elaborate detail.'" *United States v. Triplett*, 684 F.3d 500, 504 (5th Cir. 2012) (quoting *United States v. Hill*, 19 F.3d 984, 987 (5th Cir. 1994)).

Detective Lucio testified that the date range of the requested records began when the abuse first allegedly occurred (July 1, 2011) until the date law enforcement discovered an alleged text message from Wills to Doe's mother (April 9, 2015), which

was around the time of the outcry. Detective Lucio made a reasonable request for all of the records within this four-year-period on the basis that the sexual abuse allegedly occurred on "almost a weekly basis" until April 2014 based on the affidavit or November 2014 based on the testimony at the hearing. Because the Verizon Warrant specified the phone number of the cell phone, the records to be searched, and the alleged criminal activity that supported the magnitude of the search, a reasonable officer could objectively rely on the Verizon Warrant.

### 4. A reasonable officer would have no reason to believe that the Verizon Warrant had to comply with federal law.

Wills argues that the Verizon Warrant did not comply with the territorial limits of Federal Rule of Criminal Procedure 41(b), asserting that the good faith exception does not apply to evidence seized pursuant to an unlawful warrant. Wills relies on *United States v. McKeever*, 894 F.2d 712, 717 (5th Cir. 1990), in which the Fifth Circuit held that the good faith exception did not apply because the state warrant violated Federal Rule of Criminal Procedure 41. "The critical question [was] whether the officers had a good faith belief that a governing provision of Rule 41 had been obeyed." *Id.* at 714. Because both the state officers and federal officers in *McKeever* conducted the search knowing that the warrant was not issued by a judge of a court of record, as required by Rule 41, they did not act on good faith reliance on the warrant. *Id* at 717. However, the Fifth Circuit, on rehearing, held that "Rule 41 only applies to warrants issued upon the request of a federal officer." 905 F.2d 829, 833 (5th Cir. 1990) (en banc). Although the federal officers participated in the search and the fruits of the search were offered in a

federal prosecution, the Fifth Circuit stated that the state warrant did not have to comply with the Federal Rules of Criminal Procedure. *Id.* at 833.

Similar to the *McKeever* warrant, the Verizon Warrant at issue here "was requested by state officers, alleged violations of Texas law, was issued by a state judge, and is, therefore, a state rather than a federal warrant." *Id.* at 831. Detective Lucio testified that an ICE agent assisted him in conducting the forensic analysis of the phones because the agent had the expertise and equipment to do so. The ICE agent's participation does not require the Verizon Warrant to comply with Rule 41(b). Holding otherwise, "sweeps much too broadly because it discourages cooperation between state and federal officers; such cooperation is, of course, highly desirable." *Id.* at 832. Thus, the Court rejects Wills's argument that the Verizon Warrant is invalid because it violated the Federal Rules of Criminal Procedure.

5. **A reasonable officer would have believed that the Verizon Warrant complied with state law.**

Wills argues that a reasonably well-trained officer would have known that the search was illegal under the laws of Texas and New Jersey (where the warrant was faxed). However, Wills fails to show how the Verizon Warrant violated state laws, much less that a reasonable officer would have known that the warrant was unlawful.[4]

---

[4] Texas Code of Criminal Procedure, Article 18.21, § 5A(c) [Warrant Issued for Stored Customer Data or Communications] provides, "A search warrant may not be issued under this section unless the sworn affidavit required by Article 18.01(b) sets forth sufficient and substantial facts to establish probable cause that: (1) a specific offense has been committed; and (2) the electronic customer data sought: (A) constitutes evidence of that offense or evidence that a particular person committed that offense; and (B) is held in electronic storage by the service provider on which the warrant is served under Subsection (i)." Section (d) provides that only the electronic customer data described in the sworn affidavit required by Article 18.01(b) may be seized under the warrant.

**Search Outside the Jurisdiction.** A district judge in Texas may issue a search warrant for electronic customer data held in electronic storage regardless of whether the customer data is held at a location in Texas or at a location in another state.[5] Tex. Code Crim. Proc. Art. 18.21, § 5A(b). And the service provider shall produce all electronic customer data regardless of where the information is held. Tex. Code Crim. Proc. Art. 18.21, § 5A(h). Thus, it was reasonable for Detective Lucio to rely on the Texas Code of Criminal Procedure to request Verizon cell phone records located in New Jersey.

**Improper Service.** Wills next challenges the validity of the Verizon Warrant by asserting that Detective Lucio improperly served it on Verizon. As stated above, Detective Lucio faxed the warrant to Verizon in New Jersey to a number designated for use by law enforcement submitting search warrants.

A Texas search warrant for stored customer data or communications may be served by facsimile transmission to "(1) a person specified by Section 5.255, Business Organizations Code; (2) the secretary of state in the case of a company or entity to which Section 5.251, Business Organizations Code, applies; or (3) any other person or entity designated to receive the service of process." Tex. Code Crim. Proc. Art. 18.21 § 5A(i)(3). Wills argues that "any other person or entity" could not possibly mean any person designated by Verizon. Rather, he asserts that under the Business Organizations

---

[5] "[E]lectronic customer data" means data or records that (A) are in the possession, care, custody, or control of a provider of an electronic communications service or a remote computing service; and (B) contain: (i) information revealing the identity of customers of the applicable service; (ii) information about a customer's use of the applicable service; (iii) information that identifies the recipient or destination of a wire communication or electronic communication sent to or by the customer; (iv) the content of a wire communication or electronic communication sent to or by the customer; and (v) any data stored by or on behalf of the customer with the applicable service provider. Tex. Code Crim. Proc. Art. 18.21, § 1(3-c).

Code, the president and vice president of a corporation are the agents for service of process. *See* Tex. Bus. Orgs. § 5.255(1).

Detective Lucio testified that he did not encounter an issue with Verizon regarding the service and he was sure that in the past, he had faxed other warrants to its law enforcement number. He also testified that each cell phone company provides the police department with a fax number for law enforcement compliance. Thus, Detective Lucio had a reasonable basis to fax the warrant to Verizon's designated number for law enforcement.

Even if there had been a defect in the service of the warrant, the Fifth Circuit has noted that Article 18.21 has exclusive remedies for statutory violations that do not include suppression, such as injunctive relief, reasonable attorney's fee, other litigation costs, and actual damages. *United States v. Wallace*, 885 F. 3d 806, 810 (5th Cir. 2018) ("Suppression is not an available recourse" where law enforcement violated the requirements of Article 18.21 in requesting a court order). Article 18.21 provides an exception to the exclusive remedies for constitutional violations. *See* Tex. Code Crim. Proc. Art. 18.21, § 13. However, Wills has not shown how the method of service violated his constitutional rights.

Because of the absence of evidence that the warrant is so facially deficient or lacking an indicia of probable cause, or that Detective Lucio acted unreasonably, the good faith exception applies.  As such, suppression of the evidence is not warranted.

## CONCLUSION

The Court finds that the search of Wills's Verizon cell phone records was accomplished in good faith reliance on a valid warrant.  Suppressing the evidence would not further the purposes of the exclusionary rule.  Accordingly, Defendant's motion to suppress (D.E. 229) is DENIED.

ORDERED this 24th day of May, 2019.

*/s/ Nelva Gonzales Ramos*
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE