United States District Court
Southern District of Texas
**ENTERED**
September 08, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CRIMINAL ACTION NO. 2:17-CR-390-1 |
| | § | |
| DAVID KEITH WILLS | § | |

## ORDER DENYING MOTION FOR NEW TRIAL

Defendant David Keith Wills was convicted by a jury on seventeen counts: one count of conspiracy to commit sex trafficking of a child; seven counts of sex trafficking of a child; eight counts of coercion and enticement of a minor; and one count of conspiracy to commit obstruction of justice. D.E. 582. Before the Court is his second corrected motion for new trial. D.E. 617, 618. The Government filed two responses, one addressing issues related to Defendant's attorney-client privilege and one addressing the remainder of Defendant's arguments. D.E. 635, 637. Defendant replied, the Government filed a sur-reply, and Defendant filed a traverse. D.E. 673, 685, 743. Relatedly, Defendant requested an evidentiary hearing on his motion. D.E. 700. The Government responded and Defendant replied. D.E. 721, 749.

For the following reasons, Defendant's request for an evidentiary hearing is DENIED. D.E. 700. His motion for a new trial is also DENIED. D.E. 618.

## LEGAL STANDARD

Motions for new trial are "entrusted to the sound discretion of the judge," but should be granted "only with great caution." *United States v. O'Keefe*, 128 F.3d 885, 898 (5th Cir. 1997) (citations omitted). They are "warranted only where there would be a

miscarriage of justice or where the evidence preponderates heavily against the verdict." *Id.* at 898 (citations and quotations omitted). In considering whether to grant a new trial, courts may rely on their own evaluation of witnesses and the evidence. *Id.* But they must not "usurp the jury's function." *United States v. Tarango*, 396 F.3d 666, 672 (5th Cir. 2005).

## DISCUSSION

### I.    Previously Raised Arguments

In his motion for new trial, Defendant makes ten arguments that he made in prior motions[1] and that the Court already rejected.[2] The Court is unpersuaded by Defendant's

---

[1] These are the issues that Defendant numbered III, VIII, and IX through XVI in his motion for new trial:

| | |
|---|---|
| III. | The government's invasion of Wills relationship with his attorney by obtaining his communications with counsel and using them in the investigation and prosecution of the case was error. |
| . . . | |
| VIII. | The Court erred when it failed to give a spoliation instruction. |
| IX. | Destruction of evidence violated the defendant's right to Due Process. |
| X. | The circumstances surrounding the deletion of the Losoya Phone Dump nevertheless merit giving the requested instruction. |
| XI. | The Court erred in denying certain Jury Instructions. |
| XII. | The District Court Should Have Excluded the Government's Expert on Historical Cell Site Analysis Under Daubert. |
| XIII. | The Charges of which Mr. Wills was convicted for violating 18 U.S.C. §§1594(c), 1591(a)(1), (b)(1) & (c) & (2), 2422 (b) & (2) are infirm. |
| XIV. | Motion to reverse convictions on charges for vagueness. |
| XV. | The Court admitted electronic evidence obtained through two statutorily and constitutionally defective Texas warrants, faxed to non-governmental actors, and executed on California and New Jersey data centers. |
| XVI. | Not separate but joint investigation in violation of the Double Jeopardy Clause. |

attempts to bolster his old arguments.  The arguments do not justify or weigh in favor of a new trial and they will not be further addressed.

## II.   Compulsory Process

Defendant argues that the Government violated his rights under the Fifth and Sixth Amendments because former Assistant United States Attorney Hugo Martinez threatened John Aquilino, a potential defense witness, with perjury charges and thereby prevented Aquilino from testifying on Defendant's behalf.  *See* D.E. 604, p. 58:722 (Testimony of Tony Canales); D.E. 673-1 (Affidavit of Terry Shamsie).    The Court rejects this argument.    Assuming Martinez acted as Defendant claims, he did not substantially interfere with the defense in violation of Defendant's constitutional rights. [3]

To the contrary, prosecutors are "always entitled to attempt to avert perjury and to punish criminal conduct."  *United States v. Bieganowski*, 313 F.3d 264, 292 (5th Cir. 2002) (citations omitted).  And Martinez's alleged actions fall far short of the government misconduct detailed in Defendant's cited authorities.  *See, e.g.*, *Webb v. Texas*, 409 U.S. 95, 96 (1972) (reversing conviction where the trial court told a defense witness who had been called to testify, among other things, "[i]f you take the witness stand and lie under oath, the Court will personally see that your case goes to the grand jury and you will be

---

D.E. 618.

[2] *See* D.E. 504 (III);  D.E. 573, p. 16:22-17:1, 19:12-14 (VIII);  D.E. 573, p. 16:22-17:1, 19:12-14 (IX);  D.E. 573, p. 16:22-17:1, 19:12-14 (X);   D.E. 573, p. 19:23-23:20; 25:12-28:10; 28:11-29-6 (XI);   D.E. 416, p. 133:24-134:3 (XII);  D.E. 502, p. 6-15 (XIII);  D.E. 502, p. 6-15 (XIV);  D.E. 340 (XV);  D.E. 197 (XVI).

[3] "The Sixth Amendment guarantees a criminal defendant the right to present witnesses to 'establish his defense without fear of retaliation against the witness by the government.'  In addition, the Fifth Amendment protects the defendant from improper governmental interference with his defense.  Thus, 'substantial governmental interference with a defense witness' choice to testify may violate the due process rights of the defendant.'"  *United States v. Bieganowski*, 313 F.3d 264, 291 (5th Cir. 2002) (citations and quotations omitted).

indicted for perjury and the liklihood [sic] is that you would get convicted of perjury and that it would be stacked onto what you have already got.").[4]

## III.   Alleged Jury Misconduct

Citing the implied bias doctrine,[5] Defendant next argues that one juror bullied another such that the bullied juror was coerced into agreeing to a guilty verdict.   He requests an evidentiary hearing to determine whether any juror had actual bias and to determine whether he was prejudiced when a juror communicated with the bailiff to complain about the bullying.

The implied bias doctrine is reserved for extreme circumstances, for example when "the juror is a close relative of one of the participants in the trial or the criminal transaction."   *Uranga v. Davis*, 893 F.3d 282, 288 (5th Cir. 2018).   This is not such a case.   And as the Government argues, Federal Rule of Evidence 606(b) prohibits the court from delving into internal jury deliberations, including whether one juror "bullied" another.[6]   Here, the bailiff reported what was said to him, and Defendant had an

---

[4] *See also United States v. Morrison*, 535 F.2d 223, 226 (3d Cir. 1976) (reversing denial of new trial where prosecutor issued an invalid subpoena to a defense witness, brought the witness to his office, and, while three law enforcement officers stood around the witness, warned her that she could be prosecuted for perjury, among other things).

[5] *See Uranga v. Davis*, 893 F.3d 282, 288 (5th Cir. 2018).

[6] This rule provides that:

(b) During an Inquiry into the Validity of a Verdict or Indictment.

(1) Prohibited Testimony or Other Evidence. During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.

(2) Exceptions. A juror may testify about whether:

(A) extraneous prejudicial information was improperly brought to the jury's attention;

(B) an outside influence was improperly brought to bear on any juror; or

opportunity to ask questions.  D.E. 584, p. 6-9.  This new suggestion that the bailiff somehow influenced the jury is both late and speculative.  *See United States v. Ramsey*, 726 F.2d 601, 604 (10th Cir. 1984).  Finally, each juror agreed to the verdict when polled by the Court, which generally precludes any claim of juror misconduct.  *United States v. Brito*, 136 F.3d 397, 414 (5th Cir. 1998).  The Court rejects Defendant's argument regarding jury misconduct.

## IV.   Evidence of Sex Offenses

Defendant makes two arguments relating to the evidence supporting his convictions on the "sex offenses," meaning the charges of sex trafficking of a child and coercion and enticement of a minor.[7]  He first argues that the Court violated his Sixth Amendment rights by excluding evidence that Defendant has Herpes Simplex I and II as a discovery sanction under Federal Rule of Criminal Procedure 16(d).  *See* D.E. 560, p. 133:17-135:3. This evidence, Defendant argues, would have proved his innocence on the sex offenses because the victim did not have a herpes diagnosis.  That evidentiary ruling aside, he additionally argues the Government submitted insufficient evidence to convict him of the sex offenses.[8]

---

(C) a mistake was made in entering the verdict on the verdict form.

Fed. R. Evid. 606(b).  *See also United States v. Straach*, 987 F.2d 232, 241–42 (5th Cir. 1993) ("Although testimony by jurors about 'objective jury misconduct' is admissible in some jurisdictions, it generally is not admissible in the federal courts. *See* Notes following Fed.R.Evid. 606(b) . . .  Although two jurors came forward after the verdicts had been returned and recorded, stating that they had maintained throughout the jury's deliberations that defendant was not guilty on all counts, but had been pressured into compromising their verdicts on counts two and five, this 'pressure' cannot count as an outside influence.").

[7] These are Counts 1 through 16 of the Indictment.  D.E. 582.  Defendant was found not guilty on Count 17, which charged coercion and enticement of a minor.  *Id.*

[8] To assess the sufficiency of the evidence, the court must ask "could a rational jury find that all elements of the crime were proved beyond a reasonable doubt?"  *United States v. Chapman*, 851 F.3d 363, 376 (5th Cir. 2017).

The Court rejects Defendant's arguments.   The Court excluded the herpes evidence after Defendant refused to produce it in response to the Government's specific request for such evidence well prior to trial and during trial.   Even if the Court erred in excluding such evidence, that evidence is not the magic bullet that Defendant believes it to be.[9]   The jury considered other evidence—Defendant's own testimony—that he has herpes.   D.E. 560, p. 133:17-20.   And he fails to identify any evidence that the victim was ever tested for herpes.[10]

Beyond that, the Government presented compelling evidence of Defendant's guilt, including testimony from his victim, her mother, and the sexual assault nurse examiner, among others.   This testimony was supported by evidence of the victim's school records, hotel receipts, documentation showing that Defendant purchased gifts for his victim or her mother, and Defendant's cell phone records.

For these reasons, the Court finds the evidence was sufficient and that the excluded evidence does not warrant a new trial.

## V.   Evidence of Conspiracy to Commit Obstruction of Justice

Defendant next makes two similar arguments regarding his conviction for conspiracy to commit obstruction of justice, which was based on an agreement between Defendant and his friend John Aquilino to destroy a computer.   Defendant argues the Court violated his Sixth Amendment rights by excluding evidence of a laptop computer

---

[9] *See United States v. Alexander*, 869 F.2d 808, 812 (5th Cir. 1989) ("[T]he error, if any, in precluding the evidence in this case was harmless.").

[10] *See, e.g.*, D.E. 528, p. 154 (examination of a sexual assault nurse examiner who testified that the victim was tested for a variety of sexually transmitted diseases but did not mention herpes).

that belonged to John Aquilino under Rule 16(d). *See* D.E. 555, p. 144-150; 158-162. Second, he argues that the evidence was insufficient to support his conviction.

The Government submitted compelling evidence that Defendant conspired with Aquilino to destroy a laptop computer. Defendant's former assistant, Sara Baker Benz, testified that she was working for him on April 8, 2015—the same day that Defendant's victim reported his sexual abuse—when he asked her to "hand over" a laptop computer to John Aquilino. D.E. 546, p. 24. Aquilino then went to Defendant's house and picked up the computer from Benz. *Id*. at 25. Benz later asked Defendant about the computer, and Defendant replied that he and Aquilino "took it out to the GBT Farm and shot it up." D.E. 546, p. 37. Contrary to Defendant's arguments, this evidence was sufficient to support the Government's theory that Defendant conspired to obstruct justice.

Regarding the excluded evidence of the laptop computer, the Defendant conceded at trial that he knew the laptop was relevant to the case and failed to disclose it to the Government. The Court finds the excluded evidence does not justify a new trial.

## VI.   Challenged Search Warrant

Defendant attacks a search warrant that he says lacked probable cause. But he did not make a pretrial motion to suppress evidence obtained through the search warrant. Fed. R. Crim. P. 12(b)(3)(C).[11]  He offers no excuse for this delay, and only dedicates three sentences of his brief to the issue. The Court finds that this late and undeveloped argument does not justify a new trial.

---

[11] Defendant moved to suppress statements that he made during the relevant search, but he never challenged the search warrant. *See* D.E. 469. The Court denied the motion as moot at a hearing on September 13, 2019, because the Government agreed not to use the challenged statements.

## VII.   Alleged *Napue* and *Brady* Violations

In his reply, Defendant makes several new arguments that arise from the testimony and actions of Maria Losoya—his co-conspirator, co-defendant, and the mother of the victim in this case (Jane Doe).   Specifically, Defendant argues that the Government violated his rights under *Napue*[12] and *Brady*[13] by (1) failing to disclose that Losoya had a plea agreement with state authorities regarding related state charges, (2) failing to correct Losoya's testimony at trial that she was not promised anything in exchange for her testimony, and (3) failing to disclose alleged communications between Losoya and her attorney in this case, who now represents Doe in a civil lawsuit against Defendant.[14] Defendant also suggests that, even absent *Napue* or *Brady* violations, he has new evidence related to these three issues that independently justify a new trial.

### A.     The Co-Conspirator's Plea Agreement with State Prosecutors

#### 1.     Alleged *Napue* Violation

The Court first rejects Defendant's argument that the Government violated *Napue* by eliciting false testimony from Losoya regarding promises that federal prosecutors supposedly made in exchange for her testimony.   This argument relies on the speculative assertion that federal prosecutors promised her they would recommend a six-year prison

---

[12] *See Napue v. Illinois*, 360 U.S. 264, 269 (1959) ("[A] conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment.   The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears.") (citations omitted).

[13] *See Brady v. Maryland*, 373 U.S. 83, 87 (1963) ("[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.").

[14] The Government argues these arguments are time barred.   The Court assumes, without deciding, that the Government is incorrect and will address the arguments.

sentence in exchange for her cooperation against Defendant in his federal case.[15]   To support this argument, Defendant points to several statements made by Losoya's attorney during her sentencing hearing that she previously had an "informal plea agreement" with state prosecutors by which they would recommend a six-year sentence for related charges in state court.  *See* D.E. 643, p. 15–16, 19, 24 (Losoya, 2:17-CR-390-2).

But Defendant offers no reason for the Court to find that such an agreement, made by state prosecutors, was also made by federal prosecutors.  Defendant asks the Court to ignore circumstances suggesting that federal prosecutors did not promise to recommend a six-year sentence.  Specifically, Losoya's federal plea agreement does not contain any promise concerning a six-year sentence recommendation.   And, in fact, federal prosecutors recommended a twenty-five year sentence at Losoya's sentencing hearing.

For these reasons, the Court rejects Defendant's assertion that the Government elicited false testimony from Losoya in violation of *Napue*.[16]

---

[15] This argument is based on the Government's examination of Losoya at trial regarding her plea agreement with the Government.  In relevant part, the examination proceeded as follows:

| Q | Now you mentioned that the Government would or may recommend leniency at your sentencing.  Is that your understanding? |
| A | Yes. |
| Q | And do you understand that nothing's been promised to you? |
| A | Yes. |
| Q | Who's the final person who can determine what your sentence is? |
| A | The judge. |

D.E. 533, p. 24:14–25.  Defendant claims Losoya falsely testified by agreeing that "nothing's been promised" because federal prosecutors had "led [her attorney] to believe that his client could expect a six-year sentence recommendation in the federal case."   D.E. 673, p. 2.  To the extent Defendant additionally argues that this testimony omitted information about the agreement with state officials, the Court rejects it.  This testimony was clearly limited to the subject of Losoya's plea agreement with federal prosecutors.

[16] The Court also agrees with the Government that Defendant has failed to identify any new evidence regarding Losoya's sentencing inducements that might justify a new trial absent a *Napue* violation.  *See United States v. Wall*, 389 F.3d 457 (5th Cir. 2004).

### 2. Alleged *Brady* Violation

The Court also reject's Defendant's claim that the Government violated *Brady* by failing to disclose that Losoya entered the above mentioned plea agreement with state authorities.  To prove a *Brady* violation, Defendant must show, among other things, that the Government suppressed evidence.  *United States v. Runyan*, 290 F.3d 223, 245 (5th Cir. 2002).  But evidence is "not suppressed if the defendant knows or should know of the essential facts that would enable him to take advantage of it."  *Id*. at 246 (citations and quotations omitted).  As the Government points out, Defendant was apprised of this agreement prior to trial.  He even referenced it in a court filing in April of 2019.  *See* D.E. 337, p. 3 ("She was slated to enter a guilty plea to a state offense for a six-year sentence deal according to the Assistant District Attorney, Doug Pettit.").[17]

### B. "Dual Representation" by the Co-Conspirator's Attorney

### 1. Alleged *Brady* violation

Defendant next argues that the Government violated *Brady* by failing to disclose that the attorney who represented Losoya during her federal criminal proceedings was also representing or planning to represent Doe in a civil suit against Defendant. Defendant argues that evidence of such an arrangement, which he describes as a conflict

---

[17] For the same reason, the Court rejects any argument that, even absent a *Brady* violation, the plea agreement constituted new evidence that would justify a new trial.  *See Wall*, 389 F.3d at 467 ("As a general rule, there are five prerequisites . . . that must be met to justify a new trial on the ground of newly discovered evidence.  The defendant must prove that (1) the evidence is newly discovered and was unknown to the defendant at the time of trial; (2) the failure to detect the evidence was not due to a lack of diligence by the defendant . . . .") (citations omitted).

of interest, would have supported his theory at trial that Losoya, her attorney, and Doe sought to extort him by falsely accusing him of sexually assaulting Doe.[18]

But, as noted above, Defendant must show that the Government withheld some evidence in order to prove a *Brady* violation.  He has failed to so.  To the contrary, the Government has submitted evidence that it had no relevant information to disclose.  Specifically, it submitted a declaration by Losoya's attorney.  D.E. 721-2.  He states that Losoya's adult son hired him to represent Doe in a civil suit after the jury convicted Defendant in this case.[19]  Because this arrangement commenced after Defendant's conviction, the Government had nothing to disclose before trial.  The Court therefore finds there was no *Brady* violation.

## 2.    New Evidence

Finally, Defendant argues that, even without a *Brady* violation, he is entitled to a new trial because of the new evidence that Losoya's criminal attorney is now representing Doe in a civil suit.  *See* 673-1, p. 6 (petition in civil suit against Defendant); D.E. 749-6 (attorney-client agreement).[20]  "As a general rule, there are five prerequisites (typically referred to as the *Berry* rule) that must be met to justify a new trial on the ground of newly discovered evidence.  The defendant must prove that (1) the evidence is

---

[18] Defendant also suggests that federal prosecutors and others actively concealed and participated in this scheme, and that they disbelieved Losoya's trial testimony.  The Court rejects these arguments as entirely speculative.

[19] Defendant disputes the exact date that Losoya's attorney commenced his representation of Doe.  D.E. 749.  But the documents submitted to the Court suggest that it was after the jury returned its verdict in this case.  *See* D.E. 749-1 to 749-7.  Even if the representation commenced during or before Defendant's trial, nothing suggests that the Government knew of such representation and the Government denies any such knowledge.  It therefore had no evidence to suppress.

[20] These two items are the only pieces of newly discovered evidence that Defendant identifies in his briefing.  To the extent Defendant grounds his argument on other evidence, the Court rejects it.

newly discovered and was unknown to the defendant at the time of trial; (2) the failure to detect the evidence was not due to a lack of diligence by the defendant; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence if introduced at a new trial would probably produce an acquittal." *Wall*, 389 F.3d at 467 (citations omitted).

The new evidence cited by Defendant fails to meet the third and fifth requirements for a new trial. Defendant concedes in his reply that "this duel representation is relevant impeachment of Losoya." D.E. 673, p. 9. Furthermore, Defendant's attorneys submitted circumstantial evidence that Losoya's attorney was interested in representing Doe in a civil suit and then expressly argued the point to the jury, saying:

> Candy Losoya worked for Richard Nunez down in Brownsville. Her sister worked for him. And when you look on the website, this is in evidence. This is Defense Exhibit 156. Look at what they have advertised. Lawsuits against sexual offenders. Civil lawsuits. What do you think about that? Extortion. That's what my client was afraid of.

D.E. 573, p. 125:5-13. Yet the jury rejected these arguments. For these reasons, the Court finds Defendant failed to meet the third and fifth requirements under the *Berry* rule. A new trial is unnecessary. *See Wall*, 389 F.3d at 467 ("If the defendant fails to demonstrate any one of these factors, the motion for new trial should be denied.") (citations omitted).

## VIII. Cumulative Error & Request for Evidentiary Hearing

Having considered the Defendant's arguments, the Court finds that cumulative error, if any, does not warrant a new trial. It further finds that no evidentiary hearing is

necessary. *See United States v. Chagra*, 735 F.2d 870, 873 (5th Cir. 1984) ("[T]he decision whether to hold an evidentiary hearing rests within the sound discretion of the trial court . . . .").

### CONCLUSION

For the stated reasons, the Court DENIES Defendant's motion for new trial (D.E. 618) and it DENIES his request for an evidentiary hearing on the same (D.E. 700).

ORDERED this 8th day of September, 2020.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE