# EXHIBIT 20

## BUSINESS RECORDS AFFIDAVIT BY CUSTODIAN OF RECORDS

I, _____Connie Mitchell_____, state the following under penalty
<div style="text-align:center">(please print or type name)</div>

of perjury in relation to the subpoena/release/request issued by investigators with the United

States Department of Homeland Security and issued to the Custodian of Records, _____

, (hereafter referred to as the "Company"):

(1)     I acknowledge that I am personally responsible for complying with the

subpoena/release/request.

(2)     I have read the subpoena/release/request and understand what it requires.

(3)     I have made, or persons under my direct supervision have made, a full and

complete search for all documents responsive to the subpoena/release/request. I

understand that the Company is required to make a full and complete search for

all responsive documents that are in its possession, custody, or control,

irrespective of where those documents are now located or who currently possesses

them. I understand, for example, that if responsive documents have been

provided to an outside accountant or attorney, or employee, or for some other

reason are not on the Company's premises (but are within its legal ability to

obtain), the Company would nonetheless be obligated to obtain those documents

and produce them. In addition, I understand that the Company is required to

produce responsive documents and records that are in its possession, custody, or

control, irrespective of who generated the document or record, or whether they are

printed on Company letterhead.

```
GOVERNMENT
  EXHIBIT
    20
  17cr390
```

Page 1 of 5

8-15-19

(4)     On the date set forth below, I sent all documents responsive to the

subpoena/release/request that were in the Company's possession, custody, or

control to the investigative agent whose name appears on the

subpoena/release/request.

(5)     All of the documents I furnished were authentic records maintained by the

Company or maintained under the Company's ultimate control, direction, or

supervision.

(6)     With the exceptions noted below, the documents I furnished were business

records created by the Company or Company employees or business associates or

were business records received and kept by the Company or Company employees

or associates in the ordinary course of the Company's business affairs.  That is,

the records I furnished were made at or near the time of the events recorded

therein; were made on the basis of personal knowledge of the events recorded;

were made or received, and kept, in the course of a regularly conducted business;

and were made or received, and kept, as part of a regular business practice.

Exceptions, if any, are the documents identified as follows:

Pursuant to Title 28, United States Code, Section 1746, I declare under penalty of perjury that

the foregoing is true and correct.

Executed on: _____8-15-19_____

By: _Annie Leitehell_ Title/Position: _Broker/Owner South Padre Realty_

Signature: _____

Page 2 of 57                                          2:17cr390-009713



TEXAS ASSOCIATION OF REALTORS®
## RESIDENTIAL LEASE

USE OF THIS FORM BY PERSONS WHO ARE NOT MEMBERS OF THE TEXAS ASSOCIATION OF REALTORS® IS NOT AUTHORIZED.
©Texas Association of REALTORS®, Inc. 2012

1. **PARTIES:** The parties to this lease are:

    the owner of the Property, Landlord,: _____ Katherine Hause _____ ; and

    Tenant(s): **David Keith Wills** _____

2. **PROPERTY:** Landlord leases to Tenant the following real property:

    Address: **188 King's Court, South Padre Island, TX 78597**
    legally described as: **King's Resubdivision Lot 13 (CAB 1 Slot 1599-A CCMR)**

    in _____ Cameron _____ County, Texas, together with the following non-real-property
    items: **stove, refrigerator, dishwasher, microwave, washer/dryer**

    The real property and the non-real-property are collectively called the "Property".

3. **TERM:**

    A. <u>Primary Term</u>: The primary term of this lease begins and ends as follows:

    Commencement Date: _____ **March 28, 2012** _____   Expiration Date: _____ **September 30, 2012** _____ .

    B. <u>Delay of Occupancy</u>: Tenant must occupy the Property within 5 days after the Commencement Date. If Tenant is unable to occupy the Property by the 5th day after the Commencement Date because of construction on the Property or a prior tenant's holding over of the Property, Tenant may terminate this lease by giving written notice to Landlord before the Property becomes available to be occupied by Tenant, and Landlord will refund to Tenant the security deposit and any rent paid. Landlord will abate rent on a daily basis for a delay caused by construction or a prior tenant's holding over. This paragraph does not apply to any delay in occupancy caused by cleaning, repairs, or make-ready items.

4. **AUTOMATIC RENEWAL AND NOTICE OF TERMINATION:**

    A. This lease automatically renews on a month-to-month basis unless Landlord or Tenant provides the other party <u>written</u> notice of termination not less than: *(Check only one box.)*
    ☒ (1) 30 days before the Expiration Date.
    ☐ (2) _____ days before the Expiration Date.

    B. If this lease automatically renews on a month-to-month basis, it will continue to renew on a month-to-month basis until either party provides <u>written</u> notice of termination to the other party and the notice of termination will be effective: *(Check only one box.)*
    ☐ (1) on the last day of the month following the month in which the notice is given. Landlord is not obligated to prorate rent even if Tenant surrenders the Property before the termination date.
    ☒ (2) on the date designated in the notice but not sooner than 30 days after the notice is given and, if necessary, rent will be prorated on a daily basis.

(TAR-2001) 1-1-12      Tenants: _____, _____, _____, _____ & Landlord or Landlord's Representative: _____      Page 1 of 15

Lynne Tate Real Estate, Inc. 2200 Padre Blvd. South Padre Island, TX 78597
Phone: 956.761.1400      Fax: 956.761.1805      Deanna Bowman            Hause Wills Le
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

Residential Lease concerning: _____  
188 King's Court  
South Padre Island, TX  78597

C. Oral notice of termination is not sufficient under any circumstances. Time is of the essence for providing notice of termination (strict compliance with dates by which notice must be provided is required). The date on which rent is due does not apply to the requirement for providing written notice of termination. If a box is not checked under Paragraph 4A, Paragraph 4A(1) will apply. If a box is not checked under Paragraph 4B, Paragraph 4B(1) will apply.

5. **RENT:**

A. Monthly Rent: Tenant will pay Landlord monthly rent in the amount of $ 3,500.00 for each full month during this lease. The first full month's rent is due and payable not later than  March 28, 2012 by *(select one or more)*: ☒ cashier's check ☐ electronic payment ☐ money order ☒ personal check or ☒ other means acceptable to Landlord.
Thereafter, Tenant will pay the monthly rent so that Landlord receives the monthly rent on or before:
☒ (1) the first day of each month during this lease.
☐ (2) _____
Weekends, holidays, and mail delays do not excuse Tenant's obligation to timely pay rent. $452.00

B. Prorated Rent: On or before  March 28, 2012  Tenant will pay Landlord $467.00  as prorated rent from the Commencement Date through the last day of the month in which this lease begins.

C. Place of Payment: Unless this lease provides otherwise, Tenant will remit all amounts due to Landlord under this lease to the following person or entity at the place stated and make all payments payable to the named person or entity. Landlord may later designate, in writing, another person or place to which Tenant must remit amounts due under this lease.
Name:  Katherine Hause
Address:  195 Isabella Point Drive
 Port Isabel, TX 78597
**Notice: Place the Property address and Tenant's name on all payments.**

D. Method of Payment:
(1) Tenant must pay all rent timely and without demand, deduction, or offset, except as permitted by law or this lease.
(2) Time is of the essence for the payment of rent (strict compliance with rental due dates is required).
(3) Unless the parties agree otherwise, Tenant may not pay rent in cash and will pay all rent by *(select one or more)*: ☒ cashier's check ☒ electronic payment ☒ money order ☒ personal check or ☒ other means acceptable to Landlord.
(4) Landlord ☒ requires ☐ does not require Tenant(s) to pay monthly rents by one payment.
(5) If Tenant fails to timely pay any amounts due under this lease or if any check of Tenant is not honored by the institution on which it was drawn, Landlord may require Tenant to pay such amount and any subsequent amounts under this lease in certified funds. This paragraph does not limit Landlord from seeking other remedies under this lease for Tenant's failure to make timely payments with good funds.

E. Rent Increases: There will be no rent increases through the primary term. Landlord may increase the rent that will be paid during any month-to-month renewal period by providing at least 30 days written notice to Tenant.

6. **LATE CHARGES:**

A. If Landlord does not actually receive a rent payment in the full amount at the designated place of payment by the  3rd  day of each month at 11:59pm, Tenant will pay Landlord for each late payment:

(TAR-2001) 1-1-12    Tenants: _____ , _____ , _____ , & Landlord or Landlord's Representative: _____ , _____    Page 2 of 15

Hause Wills Le

Residential Lease concerning: _____ **188 King's Court**
**South Padre Island, TX   78597**

(1) an initial late charge equal to *(check one box only)*: ☒ (a) $ _35.00_____ ; or ☐ (b) _____ % of one month's rent; **and**
(2) additional late charges of $ _10.00_____ per day thereafter until rent and late charges are paid in full. Additional late charges for any one payment may not exceed more than 30 days.
**Notice: §92.019, Property Code prohibits assessing a late fee until rent has remained unpaid for at least one full day after the date on which the rent is due.**

B. For the purposes of paying rent and any late charges, the mailbox is not the agent for receipt for Landlord (the postmark date is not the date Landlord receives the payment). The parties agree that the late charge is based on a reasonable estimate of uncertain damages to the Landlord that are incapable of precise calculation and result from late payment of rent. Landlord's acceptance of a late charge does not waive Landlord's right to exercise remedies under Paragraph 27.

7. **RETURNED PAYMENT:** Tenant will pay Landlord $ _50.00_____ for each payment Tenant tenders to Landlord which is returned or not honored by the institution on which it is drawn for any reason, plus any late charges until Landlord receives payment. Tenant must make any returned payment good by paying such amount(s) plus any associated charges in certified funds.

8. **APPLICATION OF FUNDS:** Regardless of any notation on a payment, Landlord may apply funds received from Tenant first to any non-rent obligations of Tenant, including but not limited to, late charges, returned payment charges, repairs, brokerage fees, periodic utilities, pet charges, and then to rent.

9. **PETS:**

A. Unless the parties agree otherwise in writing, Tenant may not permit, even temporarily, any pet on the Property (including but not limited to any mammal, reptile, bird, fish, rodent, or insect).

B. If Tenant violates this Paragraph 9 or any agreement to keep a pet on the Property, Landlord may take all or any of the following action:
(1) declare Tenant to be in default of this lease and exercise Landlord's remedies under Paragraph 27;
(2) charge Tenant, as additional rent, an initial amount of $ _500.00_____ and $ _10.00_____ per day thereafter per pet for each day Tenant violates the pet restrictions;
(3) remove or cause to be removed any unauthorized pet and deliver it to appropriate local authorities by providing at least 24-hour written notice to Tenant of Landlord's intention to remove the unauthorized pet; and
(4) charge to Tenant the Landlord's cost to:
(a) remove any unauthorized pet;
(b) exterminate the Property for fleas and other insects;
(c) clean and deodorize the Property's carpets and drapes; and
(d) repair any damage to the Property caused by the unauthorized pet.

C. When taking any action under Paragraph 9B Landlord will not be liable for any harm, injury, death, or sickness to any pet.

10. **SECURITY DEPOSIT:**

A. Security Deposit: On or before execution of this lease, Tenant will pay a security deposit to Landlord in the amount of $ _4,500.00_____ by *(select one or more)*: ☒ cashier's check  ☐ electronic payment ☒ money order  ☒ personal check or  ☒ other means acceptable to Landlord. "Security deposit" has the meaning assigned to that term in §92.102, Property Code.

Residential Lease concerning: _____ 188 King's Court
South Padre Island, TX 78597

B. Interest: No interest or income will be paid to Tenant on the security deposit. Landlord may place the security deposit in an interest-bearing or income-producing account and any interest or income earned will be paid to Landlord or Landlord's representative.

C. Refund: Tenant must give Landlord at least thirty (30) days written notice of surrender before Landlord is obligated to account for or refund the security deposit. Any refund of the security deposit will be made payable to all Tenants named in this lease.

Notices about Security Deposits:
(1) §92.108, Property Code provides that a tenant may not withhold payment of any portion of the last month's rent on grounds that the security deposit is security for unpaid rent.
(2) Bad faith violations of §92.108 may subject a tenant to liability up to 3 times the rent wrongfully withheld and the landlord's reasonable attorney's fees.
(3) The Property Code does not obligate a landlord to return or account for the security deposit until the tenant surrenders the Property and gives the landlord a written statement of the tenant's forwarding address, after which the landlord has 30 days in which to account.
(4) "Surrender" is defined in Paragraph 16 of this lease.
(5) One may view the Texas Property Code at the Texas Legislature's website which, as of the date shown in the lower left-hand corner of this form, is http://www.statutes.legis.state.tx.us/ .

D. Deductions:

(1) Landlord may deduct reasonable charges from the security deposit for:
   (a) damages to the Property, excluding normal wear and tear, and all reasonable costs associated to repair the Property;
   (b) costs for which Tenant is responsible to clean, deodorize, exterminate, and maintain the Property;
   (c) unpaid or accelerated rent;
   (d) unpaid late charges;
   (e) unpaid utilities and utility expenses Landlord incurs to maintain utilities to the Property as required by this Lease;
   (f) unpaid pet charges;
   (g) replacing unreturned keys, garage door openers, security devices, or other components;
   (h) the removal of unauthorized locks or fixtures installed by Tenant;
   (i) Landlord's cost to access the Property if made inaccessible by Tenant;
   (j) missing or burned-out light bulbs and fluorescent tubes (at the same location and of the same type and quality that are in the Property on the Commencement Date);
   (k) packing, removing, and storing abandoned property;
   (l) removing abandoned or illegally parked vehicles;
   (m) costs of reletting (as defined in Paragraph 27), if Tenant is in default;
   (n) attorney's fees, costs of court, costs of service, and other reasonable costs incurred in any legal proceeding against Tenant;
   (o) mailing costs associated with sending notices to Tenant for any violations of this lease;
   (p) any other unpaid charges or fees or other items for which Tenant is responsible under this lease;
   (q) cost to restore walls, flooring, landscaping or any alteration to the Property not approved in writing by Landlord; and
   (r) damages to the Property caused by smoking, including but not limited to stains, burns, odors, and removal of debris.

(2) If deductions exceed the security deposit, Tenant will pay to Landlord the excess within 10 days after Landlord makes written demand.

(TAR-2001) 1-1-12    Tenants: _____ , _____ , _____ , _____ & Landlord or Landlord's Representative: _____    Page 4 of 15

Residential Lease concerning: _____ 188 King's Court
South Padre Island, TX  78597

**11. UTILITIES:**

A. Tenant will pay all connection fees, service fees, usage fees, and all other costs and fees for all utilities to the Property (for example, electricity, gas, water, wastewater, garbage, telephone, alarm monitoring systems, cable, and Internet connections) except the following which Landlord will pay: _electricity, cable, water,_ _trash, wi-fi, yard maintenance, pool maintenance, hoa fees._ *Tenants will* *pay electric in excess of $450 per month.*  *Dlw*
Unless otherwise agreed, amounts under this paragraph are payable directly to the service providers.

B. Unless provided by Landlord, Tenant must, at a minimum, keep the following utilities on, if available, at all times this lease is in effect: gas; electricity; water; wastewater; and garbage services.

**Notice: Before signing this lease, Tenant should determine if all necessary utilities are available to the Property and are adequate for Tenant's use.**

**12. USE AND OCCUPANCY:**

A. <u>Occupants</u>: Tenant may use the Property as a private residence only. The only persons Tenant may permit to reside on the Property during the term of this lease are (*include names and ages of all occupants*): _Self – David Wills, 59_
_Wife – Lori White Wills, 53_

B. <u>Phone Numbers and E-mail</u>: Tenant must promptly inform Landlord of any changes in Tenant's phone numbers (home, work, and mobile) and e-mail not later than 5 days after a change.

C. <u>HOA Rules</u>: Tenant must comply with any owners' association rules or restrictive covenants affecting the Property. Tenant will reimburse Landlord for any fines or other charges assessed against Landlord for violations by Tenant of any owners' association rule or restrictive covenant.

D. <u>Prohibitions</u>: Unless otherwise authorized by this lease, Tenant may not install or permit any of the following on the Property, even temporarily: a spa, hot tub, above-ground pool, trampoline, or any item which causes a suspension or cancellation of insurance coverage or an increase in insurance premiums. Tenant may not permit any part of the Property to be used for: (1) any activity which is a nuisance, offensive, noisy, or dangerous; (2) the repair of any vehicle; (3) any business of any type, including but not limited to child care; (4) any activity which violates any zoning ordinance, owners' association rule, or restrictive covenant; (5) any illegal or unlawful activity; or (6) activity that obstructs, interferes with, or infringes on the rights of other persons near the Property.

E. <u>Guests</u>: Tenant may not permit any guest to stay on the Property longer than the amount of time permitted by any owners' association rule or restrictive covenant or _____30_____ days without Landlord's written permission, whichever is less.

F. <u>Common Areas</u>: Landlord is not obligated to pay any non-mandatory or user fees for Tenant's use of any common areas or facilities (for example, pool or tennis courts).

**13. PARKING RULES:** Tenant may not permit more than _____4_____ vehicles, including but not limited to automobiles, trucks, recreational vehicles, trailers, motorcycles, all-terrain vehicles, jet skis, and boats, on the Property unless authorized by Landlord in writing. Tenant may not park or permit any person to park any vehicles in the yard. Tenant may permit vehicles to be parked only in drives, garages, designated common parking areas, or in the street if not prohibited by law or an owners' association. Tenant may not store or permit any person to store any vehicles on or

Residential Lease concerning: _____   **188 King's Court**
                                                    **South Padre Island, TX   78597**

adjacent to the Property or on the street in front of the Property. In accordance with applicable state and local laws, Landlord may have towed, at Tenant's expense: (a) any inoperative vehicle on or adjacent to the Property; (b) any vehicle parked in violation of this paragraph or any additional parking rules made part of this lease; or (c) any vehicle parked in violation of any law, local ordinance, or owners' association rule.

## 14. ACCESS BY LANDLORD:

A. <u>Advertising</u>: Landlord may prominently display a "For Sale" or "For Lease" or similarly worded sign on the Property during the term of this lease or any renewal period. Landlord or Landlord's contractor may take interior or exterior photographs or images of the Property and use the photographs or images in any advertisements to lease or sell the Property.

B. <u>Access</u>: Before accessing the Property, Landlord or anyone authorized by Landlord will attempt to first contact Tenant, but may enter the Property at reasonable times without notice to make repairs or to show the Property to prospective tenants or buyers, inspectors, fire marshals, lenders, appraisers, or insurance agents. Additionally, Landlord or anyone authorized by Landlord may peacefully enter the Property at reasonable times without first attempting to contact Tenant and without notice to: (1) survey or review the Property's condition and take photographs to document the condition; (2) make emergency repairs; (3) exercise a contractual or statutory lien; (4) leave written notices; or (5) seize nonexempt property if Tenant is in default.

C. <u>Trip Charges</u>: If Landlord or Landlord's agents have made prior arrangements with Tenant to access the Property and are denied or are not able to access the Property because of Tenant's failure to make the Property accessible, Landlord may charge Tenant a trip charge of $ <u>25.00</u>                .

D. <u>Keybox</u>: **A keybox is a locked container placed on the Property holding a key to the Property. The keybox is opened by a special combination, key, or programmed access device so that persons with the access device may enter the Property, even in Tenant's absence. The keybox is a convenience but involves risk (such as unauthorized entry, theft, property damage, or personal injury). Neither the Association of REALTORS® nor MLS requires the use of a keybox.**

 (1) Tenant authorizes Landlord, Landlord's property manager, and Landlord's broker to place on the Property a keybox containing a key to the Property:
  (a) during the last _____<u>30</u>_____ days of this lease or any renewal or extension; and
  (b) at any time Landlord lists the Property for sale with a Texas licensed broker.

 (2) Tenant may withdraw Tenant's authorization to place a keybox on the Property by providing written notice to Landlord and paying Landlord a fee of $ <u>n/a</u>             as consideration for the withdrawal. Landlord will remove the keybox within a reasonable time after receipt of the notice of withdrawal and payment of the required fee. Removal of the keybox does not alleviate Tenant's obligation to make the Property available for showings as indicated in Paragraph 14B.

 (3) If Landlord or Landlord's agents are denied or are not able to access the Property after first attempting to contact Tenant, Landlord may charge Tenant a trip charge of $ <u>100.00</u>             .

 (4) <u>Landlord, the property manager, and Landlord's broker are not responsible to Tenant, Tenant's guests, family, or occupants for any damages, injuries, or losses arising from use of the keybox unless caused by Landlord, the property manager, or Landlord's broker.</u>

(TAR-2001) 1-1-12       Tenants: ___,___,___,___ & Landlord or Landlord's Representative: _____   Page 6 of 15

Hause Wills Le

Residential Lease concerning: _____ 188 King's Court
South Padre Island, TX  78597

## 15. MOVE-IN CONDITION:

A. Landlord makes no express or implied warranties as to the Property's condition. Tenant has inspected the Property and accepts it **AS-IS** provided that Landlord: ~~may~~ *Repair downstairs*
*Shower door* _____

B. Tenant will complete an Inventory and Condition Form, noting any damages to the Property, and deliver it to Landlord within _____ 10 _____ days after the Commencement Date. If Tenant fails to timely deliver the Inventory and Condition Form, the Property will be deemed to be free of damages, unless otherwise expressed in this lease. The Inventory and Condition Form is not a request for repairs. Tenant must direct all requests for repairs in compliance with Paragraph 18.

## 16. MOVE-OUT:

A. Move-Out Condition: When this lease ends, Tenant will surrender the Property in the same condition as when received, normal wear and tear excepted. Tenant will leave the Property in a clean condition free of all trash, debris, and any personal property. Tenant may not abandon the Property.

B. Definitions:

(1) "Normal wear and tear" means deterioration that occurs without negligence, carelessness, accident, or abuse.

(2) "Surrender" occurs when all occupants have vacated the Property, in Landlord's reasonable judgment, and one of the following events occurs:
(a) the date Tenant specifies as the move-out or termination date in a written notice to Landlord has passed; or
(b) Tenant returns keys and access devices that Landlord provided to Tenant under this lease.

(3) "Abandonment" occurs when all of the following occur:
(a) all occupants have vacated the Property, in Landlord's reasonable judgment;
(b) Tenant is in breach of this lease by not timely paying rent; and
(c) Landlord has delivered written notice to Tenant, by affixing it to the inside of the main entry door or if the Landlord is prevented from entering the Property by affixing it to the outside of the main entry door, stating that Landlord considers the Property abandoned, and Tenant fails to respond to the affixed notice by the time required in the notice, which will not be less than 2 days from the date the notice is affixed to the main entry door.

C. Personal Property Left After Move-Out:

(1) If Tenant leaves any personal property in the Property after surrendering or abandoning the Property Landlord may:
(a) dispose of such personal property in the trash or a landfill;
(b) give such personal property to a charitable organization; or
(c) store and sell such personal property by following procedures in §54.045(b)-(e), Property Code.

(2) Tenant must reimburse Landlord all Landlord's reasonable costs under Paragraph 16C(1) for packing, removing, storing, and selling the personal property left in the Property after surrender or abandonment.

(TAR-2001) 1-1-12     Tenants: _____, _____, _____, _____ & Landlord or Landlord's Representative: _____     Page 7 of 15

Hause Wills Le

2:17cr390-009720

Residential Lease concerning: _____ **188 King's Court**
**South Padre Island, TX  78597**

## 17. PROPERTY MAINTENANCE:

A.  <u>Tenant's General Responsibilities</u>: Tenant, at Tenant's expense, must:
 (1)  keep the Property clean and sanitary;
 (2)  promptly dispose of all garbage in appropriate receptacles;
 (3)  supply and change heating and air conditioning filters at least once a month;
 (4)  supply and replace all light bulbs, fluorescent tubes, and batteries for smoke alarms, carbon monoxide detectors, garage door openers, ceiling fan remotes, and other devices (of the same type and quality that are in the Property on the Commencement Date);
 (5)  maintain appropriate levels of necessary chemicals or matter in any water softener;
 (6)  take action to promptly eliminate any dangerous condition on the Property;
 (7)  take all necessary precautions to prevent broken water pipes due to freezing or other causes;
 (8)  replace any lost or misplaced keys;
 (9)  pay any periodic, preventive, or additional extermination costs desired by Tenant;
 (10) remove any standing water;
 (11) know the location and operation of the main water cut-off valve and all electric breakers and how to switch the valve or breakers off at appropriate times to mitigate any potential damage;
 (12) water the foundation of the Property at reasonable and appropriate times; and
 (13) promptly notify Landlord, in writing, of all needed repairs.

B.  <u>Yard Maintenance</u>:

 (1)  "Yard" means all lawns, shrubbery, bushes, flowers, gardens, trees, rock or other landscaping, and other foliage on or encroaching on the Property or on any easement appurtenant to the Property, and does not include common areas maintained by an owners' association.

 (2)  "Maintain the yard" means to perform activities such as, but not limited to: (a) mowing, fertilizing, and trimming the yard; (b) controlling pests in the yard; and (c) removing debris from the yard.

 (3)  Unless prohibited by ordinance or other law, Tenant will water the yard at reasonable and appropriate times including but not limited to the following times: <u>automated sprinkler system will operate at</u> <u>times designated by Landlord.</u>
 _____ . Other than watering, the yard will be maintained as follows:

 ☒  (a) Landlord, at Landlord's expense, will maintain the yard. Tenant will permit Landlord and Landlord's contractors reasonable access to the yard and will remove any pet from the yard at appropriate times.

 ☐  (b) Tenant, at Tenant's expense, will maintain the yard.

 ☐  (c) Tenant will maintain in effect a scheduled yard maintenance contract with:  ☐ a contractor who regularly provides such service; ☐ _____ .

C.  <u>Pool/Spa Maintenance</u>: Any pool or spa on the Property will be maintained according to a Pool/Spa Maintenance Addendum.

D.  <u>Prohibitions</u>: If Tenant installs any fixtures on the Property, authorized or unauthorized, such as additional smoke alarms, locks, alarm systems, cables, satellite dishes, or other fixtures, such fixtures will become the property of the Landlord. Except as otherwise permitted by law, this lease, or in writing by Landlord, Tenant may <u>not</u>:
 (1)  remove any part of the Property or any of Landlord's personal property from the Property;
 (2)  remove, change, add, or rekey any lock;

(TAR-2001) 1-1-12      Tenants: _____, _____, _____, _____  & Landlord or Landlord's Representative: _____      Page 8 of 15

Hause Wills Le

2:17cr390-009721

Residential Lease concerning: _____ 188 King's Court
South Padre Island, TX  78597

   (3)  make holes in the woodwork, floors, or walls, except that a reasonable number of small nails may be used to hang pictures in sheetrock and grooves in paneling;

   (4)  permit any water furniture on the Property;

   (5)  install additional phone or video cables, outlets, antennas, satellite receivers, or alarm systems;

   (6)  alter, replace or remove flooring material, paint, or wallpaper;

   (7)  install, change, or remove any: fixture, appliance, or non-real-property item listed in Paragraph 2;

   (8)  keep or permit any hazardous material on the Property such as flammable or explosive materials;

   (9)  keep or permit any material or item which causes any liability or fire and extended insurance coverage to be suspended or canceled or any premiums to be increased;

  (10) dispose of any environmentally detrimental substance (for example, motor oil or radiator fluid) on the Property; or

  (11) cause or allow any lien to be filed against any portion of the Property.

E.  **Failure to Maintain:** If Tenant fails to comply with this Paragraph 17 or any Pool/Spa Maintenance Addendum, Landlord may, in addition to exercising Landlord's remedies under Paragraph 27, perform whatever action Tenant is obligated to perform and Tenant must immediately reimburse Landlord the reasonable expenses that Landlord incurs.

F.  **Smoking:** Smoking by Tenant, Tenant's guests, family, or occupants is ☐ permitted ☒ not permitted on the Property. If smoking is not permitted and does occur on the Property, Tenant will be in default and:

   (1)  Landlord may exercise Landlord's remedies under Paragraph 27; and

   (2)  Landlord may deduct from the security deposit damages to the Property caused by smoking, including but not limited to stains, burns, odors, and removal of debris.

**18. REPAIRS:** (Notice: Subchapter B, Chapter 92, Property Code governs repair obligations).

A.  **Repair Requests:** All requests for repairs must be in writing and delivered to Landlord. If Tenant is delinquent in rent at the time a repair notice is given, Landlord is not obligated to make the repair. In the event of an emergency related to the condition of the Property that materially affects the physical health or safety of an ordinary tenant, call: (956) 346-6244              .
Ordinarily, a repair to the heating and air conditioning system is not an emergency.

B.  **NOTICE:** If Landlord fails to repair a condition that materially affects the physical health or safety of an ordinary tenant as required by this lease or the Property Code, Tenant may be entitled to exercise remedies under §92.056 and §92.0561 of the Property Code. If Tenant follows the procedures under those sections, the following remedies may be available to Tenant: (1) terminate the lease and obtain an appropriate refund under §92.056(f); (2) have the condition repaired or remedied according to §92.0561; (3) deduct from the rent the cost of the repair or remedy according to §92.0561; and (4) obtain judicial remedies according to §92.0563. Do not exercise these remedies without consulting an attorney or carefully reviewing the procedures under the applicable sections. The Property Code presumes that 7 days is a reasonable period of time for the Landlord to make a diligent effort to repair a condition unless there are circumstances which establish that a different period of time is appropriate (such as the severity and nature of the condition and the availability of materials, labor, and utilities). Failure to strictly follow the procedures in the applicable sections may cause Tenant to be in default of the lease.

C.  **Completion of Repairs:**

   (1) Tenant may not repair or cause to be repaired any condition, regardless of the cause, without Landlord's permission. All decisions regarding repairs, including the completion of any repair, whether to repair or replace the item, and the selection of contractors, will be at Landlord's sole discretion.

(TAR-2001) 1-1-12   Tenants: _____ , _____ , _____ , _____ & Landlord or Landlord's Representative: _____   Page 9 of 15

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

Hause Wills Lu

                                              2:17cr390-009722

Residential Lease concerning: _____ 188 King's Court
South Padre Island, TX  78597

(2) Landlord is not obligated to complete a repair on a day other than a business day unless required to do so by the Property Code.

D.  **Payment of Repair Costs:** Except as otherwise specified in this lease, Landlord will pay to repair or remedy conditions in the Property in need of repair if Tenant complies with the procedures for requesting repairs as described in this Paragraph 18.

(1) Landlord will pay the entire cost to repair the following items not caused by Tenant or Tenant's negligence:
(a)  heating and air conditioning systems;
(b)  water heaters; or
(c)  water penetration from structural defects.

(2) Landlord will NOT pay to repair the following items unless caused by Landlord's negligence:
(a)  conditions caused by Tenant, an Occupant, or any guest or invitee of Tenant;
(b)  damage to doors, windows, and screens;
(c)  damage from windows or doors left open;
(d)  damage from wastewater stoppages caused by foreign or improper objects in lines that exclusively serve the Property;
(e)  items that are cosmetic in nature with no impact on the functionality or use of the item; and
(f)  the following specific items or appliances: N/A _____

_____
_____

E.  **Trip Charges:** If a repair person is unable to access the Property after making arrangements with Tenant to complete the repair, Tenant will pay any trip charge the repair person may charge, which amount may be different from the amount stated in Paragraph 14C.

F.  **Advance Payments and Reimbursements:** Landlord may require advance payment of repairs or payments under this Paragraph 18 for which Tenant is responsible. Tenant must promptly reimburse Landlord the amounts under this Paragraph 18 for which Tenant is responsible.

**19. SECURITY DEVICES AND EXTERIOR DOOR LOCKS:**

A.  Subchapter D, Chapter 92, Property Code requires the Property to be equipped with certain types of locks and security devices. Landlord has rekeyed the security devices since the last occupant vacated the Property or will rekey the security devices within 7 days after Tenant moves in. "Security device" has the meaning assigned to that term in §92.151, Property Code.

B.  All notices or requests by Tenant for rekeying, changing, installing, repairing, or replacing security devices must be in writing. Installation of additional security devices or additional rekeying or replacement of security devices desired by Tenant will be paid by Tenant in advance and may be installed only by contractors authorized by Landlord.

**20. SMOKE ALARMS:** Subchapter F, Chapter 92, Property Code requires the Property to be equipped with smoke alarms in certain locations. Requests for additional installation, inspection, or repair of smoke alarms must be in writing. Disconnecting or intentionally damaging a smoke alarm or removing a battery without immediately replacing it with a working battery may subject Tenant to civil penalties and liability for damages and attorney fees under §92.2611, Property Code.

(TAR-2001) 1-1-12    Tensnts: _____, _____, _____, _____ & Landlord or Landlord's Representative: _____    Page 10 of 15

Residential Lease concerning: _____ **188 King's Court**
_____ **South Padre Island, TX   78597**

**21. LIABILITY:** Unless caused by Landlord, Landlord is not responsible to Tenant, Tenant's guests, family, or occupants for any damages, injuries, or losses to person or property caused by fire, flood, water leaks, ice, snow, hail, winds, explosion, smoke, interruption of utilities, theft, burglary, robbery, assault, vandalism, other persons, condition of the Property, environmental contaminants (for example, carbon monoxide, asbestos, radon, lead-based paint, mold, fungus, etc.), or other occurrences or casualty losses. Tenant will promptly reimburse Landlord for any loss, property damage, or cost of repairs or service to the Property caused by Tenant, Tenant's guests, any occupants, or any pets.

**22. HOLDOVER:** If Tenant fails to vacate the Property at the time this lease ends Tenant will pay Landlord rent for the holdover period and indemnify Landlord and prospective tenants for damages, including but not limited to lost rent, lodging expenses, costs of eviction, and attorneys' fees. Rent for any holdover period will be three (3) times the monthly rent, calculated on a daily basis, and will be immediately due and payable daily without notice or demand.

**23. RESIDENTIAL LANDLORD'S LIEN:** Landlord will have a lien for unpaid rent against all of Tenant's nonexempt personal property that is in the Property and may seize such nonexempt property if Tenant fails to pay rent. Subchapter C, Chapter 54, Property Code governs the rights and obligations of the parties regarding Landlord's lien. Landlord may collect a charge for packing, removing, or storing property seized in addition to any other amounts Landlord is entitled to receive. Landlord may sell or dispose of any seized property in accordance with the provisions of §54.045, Property Code.

**24. SUBORDINATION:** This lease and Tenant's leasehold interest are and will be subject, subordinate, and inferior to: (i) any lien or encumbrance now or later placed on the Property by Landlord; (ii) all advances made under any such lien or encumbrance; (iii) the interest payable on any such lien or encumbrance; (iv) any and all renewals and extensions of any such lien or encumbrance; (v) any restrictive covenant; and (vi) the rights of any owners' association affecting the Property.

**25. CASUALTY LOSS OR CONDEMNATION:** Section 92.054, Property Code governs the rights and obligations of the parties regarding a casualty loss to the Property. Any proceeds, payment for damages, settlements, awards, or other sums paid because of a casualty loss to the Property will be Landlord's sole property. For the purpose of this lease, any condemnation of all or a part of the Property is a casualty loss.

**26. SPECIAL PROVISIONS:** *(Do not insert a lease-option or lease-purchase clause without the assistance of legal counsel. Special obligations and liabilities under statute apply to such transactions.)*
Tenants will allow home to be shown to prospective buyers with a 30 minute notice from Landlord's Realtor.  Tenants will keep home clean, in good order and ready for showing at all times.  Landlord reserves the right to terminate this lease agreement at any time upon accepted purchase contract with a 60 day written, move-out notice to tenants.  Tenants acknowledge property has a swimming pool and is bordered by the Laguna Madre.  Tenants hereby AGREE to hold harmless and indemnify Landlord from any and all accidents to any persons on the property including but not limited to the house, swimming pool and Laguna Madre.

**27. DEFAULT:**

A. If Landlord fails to comply with this lease, Tenant may seek any relief provided by law.

B. If Tenant fails to timely pay all amounts due under this lease or otherwise fails to comply with this lease, Tenant will be in default and:
   (1) Landlord may terminate Tenant's right to occupy the Property by providing Tenant with at least one day written notice to vacate;

(TAR-2001) 1-1-12   Tenants: _____, _____, _____, _____ & Landlord or Landlord's Representative: _____   Page 11 of 15

Residential Lease concerning: _____ **188 King's Court**
_____ **South Padre Island, TX  78597**

    (2) all unpaid rents which are payable during the remainder of this lease or any renewal period will be accelerated without notice or demand;

    (3) Landlord may exercise Landlord's lien under Paragraph 23 and any other rights under this lease or the Property Code; and

    (4) Tenant will be liable for:

        (a) any lost rent;

        (b) Landlord's cost of reletting the Property including but not limited to leasing fees, advertising fees, utility charges, and other fees reasonably necessary to relet the Property;

        (c) repairs to the Property for use beyond normal wear and tear;

        (d) all Landlord's costs associated with eviction of Tenant, including but not limited to attorney's fees, court costs, costs of service, witness fees, and prejudgment interest;

        (e) all Landlord's costs associated with collection of amounts due under this lease, including but not limited to collection fees, late charges, and returned check charges; and

        (f) any other recovery to which Landlord may be entitled by law.

C.  Notice to vacate under Paragraph 27B(1) may be by any means permitted by §24.005, Property Code.

D.  Landlord will attempt to mitigate any damage or loss caused by Tenant's breach by attempting to relet the Property to acceptable tenants and reducing Tenant's liability accordingly.

**28. EARLY TERMINATION:** This lease begins on the Commencement Date and ends on the Expiration date unless: (i) renewed under Paragraph 4; (ii) extended by written agreement of the parties; or (iii) terminated earlier under Paragraph 27, by agreement of the parties, applicable law, or this Paragraph 28.

A.  Special Statutory Rights Tenants may have special statutory rights to terminate the lease early in certain situations involving family violence, military deployment or transfer, or certain sex offenses.

    (1) Military: If Tenant is or becomes a servicemember or a dependent of a servicemember, Tenant may terminate this lease by delivering to Landlord a written notice of termination and a copy of an appropriate government document providing evidence of: (a) entrance into military service; (b) military orders for a permanent change of station (PCS); or (c) military orders to deploy with a military unit for not less than 90 days. Termination is effective on the 30th day after the first date on which the next rental payment is due after the date on which the notice is delivered. §92.017, Property Code governs the rights and obligations of the parties under this paragraph.

    (2) Family Violence: Tenant may terminate this lease if Tenant provides Landlord with a copy of a court order described under §92.016, Property Code protecting Tenant or an occupant from family violence committed by a cotenant or occupant of the Property. §92.016, Property Code governs the rights and obligations of the parties under this paragraph. If the family violence is committed by someone other than a cotenant or co-occupant of the Property, Tenant must give written notice of termination 30 days prior to the effective date of the notice.

    (3) Sex Offenses: Tenant may have special statutory rights to terminate this lease in certain situations involving sexual assault or sexual abuse. For more information about the types of abuse and assault covered by this provision, Tenant is advised to review §92.0161, Property Code.

B.  Assignment, Subletting and Replacement Tenants:

    (1) Tenant may not assign this lease or sublet the Property without Landlord's written consent.

    (2) If Tenant requests an early termination of this lease under this Paragraph 28B, Tenant may attempt to find a replacement tenant and may request Landlord to do the same. Landlord may, but is not obligated to, attempt to find a replacement tenant under this paragraph.

(TAR-2001) 1-1-12    Tenants: _____, _____, _____, _____ & Landlord or Landlord's Representative: _____  Page 12 of 15

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

Hause Wills Le

Residential Lease concerning: _____ **188 King's Court**
**South Padre Island, TX  78597** _____

(3) Any assignee, subtenant, or replacement tenant must, in Landlord's discretion, be acceptable as a tenant and must sign: (a) a new lease with terms not less favorable to Landlord than this lease or otherwise acceptable to Landlord; (b) a sublease with terms approved by Landlord; or (c) an assignment of this lease in a form approved by Landlord.

(4) At the time Landlord agrees to permit an assignee, subtenant, or replacement tenant to occupy the Property, Tenant will pay Landlord:

(a) if Tenant procures the assignee, subtenant, or replacement tenant:
☐ (i) $ _N/A_____ .
☐ (ii) _____N/A_____ % of one's month rent that the assignee, subtenant, or replacement tenant is to pay.

(b) if Landlord procures the assignee, subtenant, or replacement tenant:
☐ (i) $ _N/A_____ .
☐ (ii) _____N/A_____ % of one's month rent that the assignee, subtenant, or replacement tenant is to pay.

(5) Unless expressly stated otherwise in an assignment or sublease, Tenant will not be released from Tenant's obligations under this lease because of an assignment or sublease. An assignment of this lease or a sublease of this lease without Landlord's written consent is voidable by Landlord.

**29. ATTORNEY'S FEES:** Any person who is a prevailing party in any legal proceeding brought under or related to the transaction described in this lease is entitled to recover prejudgment interest, attorney's fees, costs of service, and all other costs of the legal proceeding from the non-prevailing party,

**30. REPRESENTATIONS:** Tenant's statements in this lease and any application for rental are material representations. Each party to this lease represents that he or she is of legal age to enter into a contract. If Tenant makes a misrepresentation in this lease or in an application for rental, Tenant is in default.

**31. ADDENDA:** Incorporated into this lease are the following addenda, exhibits and other information. If Landlord's Rules and Regulations are made part of this lease, Tenant agrees to comply with the Rules and Regulations as Landlord may, at Landlord's discretion, amend from time to time.

☐ Addendum Regarding Lead-Based Paint
☒ Inventory & Condition Form
☐ Landlord's Additional Parking Rules
☐ Pet Agreement
☐ Protecting Your Home from Mold
☐ Agreement for Application Deposit & Hold
☐ _____
☐ _____

☐ Agreement Between Brokers
☐ Landlord's Rules & Regulations
☒ Owners' Association Rules
☒ Pool/Spa Maintenance Addendum
☒ Residential Lease Application
☐ Residential Lease Guaranty
☐ _____
☐ _____

**32. NOTICES:** All notices under this lease must be in writing and are effective when hand-delivered, sent by mail, or sent by electronic transmission to *(Do not insert an e-mail address or a fax number unless the party consents to receive notices under this lease at the e-mail address or fax number specified.):*

Tenant at the Property and a copy to:
Connie Clifton _____
_____
_____
E-mail: MITConnie@gmail.com _____
Fax: _____

Landlord c/o:
Lynne Tate Real Estate, Deanna Bowman
2200 Padre Blvd
South Padre Island, TX 78597
E-mail: Deanna@LynneTateRealEstate.com
Fax: (956) 761-1805

(TAR-2001) 1-1-12    Tenants: X_____, _____, _____ & Landlord or Landlord's Representative: _____ Page 13 of 15

Hause Wills Le

2:17cr390-009726

Residential Lease concerning: _____  **188 King's Court**
**South Padre Island, TX  78597**
_____

## 33. AGREEMENT OF PARTIES:

A. <u>Entire Agreement</u>: There are no oral agreements between Landlord and Tenant. This lease contains the entire agreement between Landlord and Tenant and may not be changed except by written agreement.

B. <u>Binding Effect</u>: This lease is binding upon and inures to the benefit of the parties to this lease and their respective heirs, executors, administrators, successors, and permitted assigns.

C. <u>Joint and Several</u>: All Tenants are jointly and severally liable for all provisions of this lease. Any act or notice to, refund to, or signature of, any one or more of the Tenants regarding any term of this lease, its extension, its renewal, or its termination is binding on all Tenants executing this lease.

D. <u>Waiver</u>: Landlord's past delay, waiver, or non-enforcement of a rental due date or any other right will not be deemed to be a waiver of any other breach by Tenant or any other right in this lease.

E. <u>Severable Clauses</u>: Should a court find any clause in this lease unenforceable, the remainder of this lease will not be affected and all other provisions in this lease will remain enforceable.

F. <u>Controlling Law</u>: The laws of the State of Texas govern the interpretation, validity, performance, and enforcement of this lease.

G. <u>Copyright</u>: If an active REALTOR® member of the Texas Association of REALTORS® or an active member of the State Bar of Texas does not negotiate this lease as a party or for one of the parties, either as a party's broker or attorney, this lease is voidable at will by Tenant.

## 34. INFORMATION:

A. Future inquiries about this lease, rental payments, and security deposits should be directed to the person listed for receipt of notices for Landlord under Paragraph 32.

B. It is Tenant's responsibility to determine, before signing this lease, if: (i) all services (e.g., utilities, connections, schools, and transportation) are accessible to or from the Property; (ii) such services are sufficient for Tenant's needs and wishes; and (iii) Tenant is satisfied with the Property's condition.

C. The brokers to this lease have no knowledge of whether Landlord is delinquent in the payment of any lien against the Property.

D. Unpaid rent and any unpaid amount under this lease are reportable to credit reporting agencies.

E. Landlord is not obligated to respond to any requests for Tenant's rental and payment history from a mortgage company or other prospective landlord until Tenant has given notice of termination of this lease and Tenant is not in breach of this lease. (*Notice: Landlord or Landlord's agent may charge a reasonable fee for processing such information.*)

F. If all occupants over 18 years of age die during this lease, Landlord may: (i) permit the person named below to access the Property at reasonable times in Landlord's or Landlord's agent's presence; (ii) permit the named person to remove Tenant's personal property; and (iii) refund the security deposit, less deductions, to the named person. Section 92.014, Property Code governs procedures to follow in the event of a tenant's death.
Name: <u>Steven White</u> _____  Phone: <u>(301)366-6075</u> _____
Address: <u>13329 Query Mill Rd. North Potomac, MD 20878</u> _____
E-mail: _____

(TAR-2001) 1-1-12    Tenants: _____, _____, _____, _____ & Landlord or Landlord's Representative: _____    Page 14 of 15

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

Hause Wills Le

Residential Lease concerning: _____ **188 King's Court**
**South Padre Island, TX  78597**

G. The Texas Department of Public Safety maintains a database that the public may search, at no cost, to determine if registered sex offenders are located in certain areas (see www.txdps.state.tx.us under on-line services). For information concerning past criminal activity in certain areas, contact the local police department.

H. Landlord's insurance does not cover Tenant from loss of personal property. Landlord recommends that Tenant obtain insurance for casualties such as fire, flood, water damage, and theft. Tenant represents that Tenant ☐ intends  ☒ does not intend to purchase such insurance.

I. Landlord's broker, **Lynne Tate Real Estate** _____ ,
☐ will ☒ will not  act as the property manager for landlord.

J. This lease is negotiable between the parties. This lease is binding upon final acceptance. READ IT CAREFULLY. If you do not understand the effect of this lease, consult your attorney BEFORE signing.

K. This lease should not be used in conjunction with executory contracts of any type, such as contracts for deed, leases with options to purchase, or lease options, without the advice of an attorney.

| | | | | |
|---|---|---|---|---|
| _Katherine S. Hause_ | 3/25/12 | | _D.K. Wills_ | |
| Landlord | Date | | Tenant | Date |
| **Katherine Hause** | | | **David Keith Wills** | |

| | | | | |
|---|---|---|---|---|
| _____ | _____ | | _____ | _____ |
| Landlord | Date | | Tenant | Date |

Or signed for Landlord under written property management
agreement or power of attorney:

| | | | | |
|---|---|---|---|---|
| | | | _____ | _____ |
| | | | Tenant | Date |

By: _____
                                                              Date

| | |
|---|---|
| _____ | _____ |
| Tenant | Date |

**Deanna Bowman**
Broker's Associate's Printed Name

| | |
|---|---|
| **Deanna Bowman** | 0459625 |
| Broker's Printed Name | License No. |

**Lynne Tate Real Estate** _____
Firm Name

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com



## TEXAS ASSOCIATION OF REALTORS®
## POOL/SPA MAINTENANCE ADDENDUM
### For use in the lease of single family residences only.
USE OF THIS FORM BY PERSONS WHO ARE NOT MEMBERS OF THE TEXAS ASSOCIATION OF REALTORS® IS NOT AUTHORIZED.
©Texas Association of REALTORS®, Inc., 2003

ADDENDUM TO RESIDENTIAL LEASE CONCERNING THE PROPERTY AT <u>188 King's Court, South</u>
<u>Padre Island, TX  78597</u>

**A. MAINTENANCE:** Tenant will: (i) maintain proper water heights in the pool spa at all times; (ii) empty and clean skimmers and pool sweeps at least once a week and more often if necessary; (iii) properly operate the pool equipment; and (iv) take necessary precautions to prevent the freezing of pipes, pool equipment, and pool water. Other maintenance, including periodic vacuuming, the application of appropriate chemicals, and equipment maintenance, will be performed as follows.

☒ (1) Landlord, at Landlord's expenses, is responsible for the other maintenance. Tenant will permit Landlord and Landlord's contractors reasonable access to the pool and spa and will remove, at appropriate times, any pet in the yard in which the pool or spa is located.

☐ (2) Tenant, at Tenant's expense, is responsible for the other maintenance.

☐ (3) Tenant will maintain in effect a regularly scheduled pool/spa maintenance contract with: ☐ a contractor who regularly provides such service; ☐ _____

☐ (4) _____

**B. ENCLOSURE:** Tenant will keep all pool enclosure and yard gates in good operable condition and closed at all times.

**C. USE:** Tenant must take reasonable action to; (i) prohibit children from using the pool or spa accessing the pool or spa area without an adult present; (ii) prohibit persons under the influence of drugs or alcohol from using the pool or spa; (iii) prohibit any glass containers or objects in or near the pool or spa; and (iv) prohibit any diving in the pool or spa.

**D. RISK OF LOSS AND INSURANCE:**
(1) **Tenant assumes all risk when Tenant or Tenant's guests use the pool or spa. Landlord and Landlord's agent are not liable for use of the pool or spa by Tenant or Tenant's guests.**
(2) At all times the lease is in effect, Tenant must, at Tenant's expense, maintain in full force and effect a public liability insurance policy in amount not less than $300,000.00 on an occurrence basis for losses related to the Property and pool and spa. Upon request, Tenant must provide Landlord a copy of an insurance certificate evidencing the required coverage. If Tenant fails to maintain the required insurance at all times the lease is in effect, Landlord may, in addition to Landlord's remedies under the lease, purchase insurance that will provide Landlord with the required level of coverage and Tenant must immediately reimburse Landlord for such expense.

| | | |
|---|---|---|
| _Katherine Hause_  3/25/12 | _DPKWills_ | |
| Landlord                    Date | Tenant                    Date | |
| Katherine Hause | David Keith Wills | |
| | | |
| Landlord                    Date | Tenant                    Date | |

Or signed for Landlord under written property management
agreement or power of attorney:
_____
Tenant                    Date

By: _____
Printed Name: <u>Deanna Bowman</u>
_____
Firm Name: <u>Lynne Tate Real Estate</u>
Tenant                    Date

(TAR-2010) 10-14-03

Page 1 of 1

Lynne Tate Real Estate, Inc. 2200 Padre Blvd. South Padre Island, TX 78597                    Phone: 956.761.1400                    Fax: 956.761.1805                    Hause Wills Le
Deanna Bowman                    Produced with ZipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.ziplogix.com



TEXAS ASSOCIATION OF REALTORS®
## RESIDENTIAL LEASE
USE OF THIS FORM BY PERSONS WHO ARE NOT MEMBERS OF THE TEXAS ASSOCIATION OF REALTORS® IS NOT AUTHORIZED.
©Texas Association of REALTORS®, Inc. 2012

1. **PARTIES:** The parties to this lease are:

   the owner of the Property, Landlord,: _____ ; and

   Tenant(s): <u>DAVID KEITH WILLS</u> _____

2. **PROPERTY:** Landlord leases to Tenant the following real property:

   Address: <u>118 KINGS COURT, SOUTH PADRE ISLAND, TX  78597</u>
   legally described as: <u>KING RESUBDIVISION LOT 13 (CAB 1 SLOT 1599-A CCMR)</u>

   in _____<u>CAMERON</u>_____ County, Texas, together with the following non-real-property
   items: <u>N/A</u>

   The real property and the non-real-property are collectively called the "Property".

3. **TERM:**

   A. <u>Primary Term</u>: The primary term of this lease begins and ends as follows:

   Commencement Date: _____<u>October 1, 2012</u>_____  Expiration Date: _____<u>January 9, 2012</u>_____ .

   B. <u>Delay of Occupancy</u>: Tenant must occupy the Property within 5 days after the Commencement Date. If Tenant is
   unable to occupy the Property by the 5th day after the Commencement Date because of construction on the
   Property or a prior tenant's holding over of the Property, Tenant may terminate this lease by giving written notice to
   Landlord before the Property becomes available to be occupied by Tenant, and Landlord will refund to Tenant the
   security deposit and any rent paid. Landlord will abate rent on a daily basis for a delay caused by construction or a
   prior tenant's holding over. This paragraph does not apply to any delay in occupancy caused by cleaning, repairs,
   or make-ready items.

4. **AUTOMATIC RENEWAL AND NOTICE OF TERMINATION:**

   A. This lease automatically renews on a month-to-month basis unless Landlord or Tenant provides the other party
   <u>written</u> notice of termination not less than: *(Check only one box.)*
   ☒ (1) 30 days before the Expiration Date.
   ☐ (2)_____ days before the Expiration Date.

   B. If this lease automatically renews on a month-to-month basis, it will continue to renew on a month-to-month basis
   until either party provides <u>written</u> notice of termination to the other party and the notice of termination will be
   effective: *(Check only one box.)*
   ☐ (1) on the last day of the month following the month in which the notice is given. Landlord is not obligated to prorate
   rent even if Tenant surrenders the Property before the termination date.
   ☒ (2) on the date designated in the notice but not sooner than 30 days after the notice is given and, if necessary, rent
   will be prorated on a daily basis.

(TAR-2001) 1-1-12     Tenants: _____, _____ & Landlord or Landlord's Representative: _____     Page 1 of 15

South Padre Real Estate, Inc. 2600 Padre Blvd, Ste E South Padre Island, TX 78597
Phone: 956-592-4429     Fax: 956.761.4868     Connie Clifton
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

118 King's Cou

2:17cr390-009730

118 KINGS COURT
Residential Lease concerning: _____ SOUTH PADRE ISLAND, TX  78597 _____

C. Oral notice of termination is not sufficient under any circumstances. Time is of the essence for providing notice of termination (strict compliance with dates by which notice must be provided is required). The date on which rent is due does not apply to the requirement for providing written notice of termination. If a box is not checked under Paragraph 4A, Paragraph 4A(1) will apply. If a box is not checked under Paragraph 4B, Paragraph 4B(1) will apply.

**5. RENT:**

A. Monthly Rent: Tenant will pay Landlord monthly rent in the amount of $ 3,550.00 _____ for each full month during this lease. The first full month's rent is due and payable not later than _____ October 1, 2012 _____ by (select one or more): ☒ cashier's check  ☒ electronic payment  ☐ money order  ☐ personal check or ☒ other means acceptable to Landlord.
   Thereafter, Tenant will pay the monthly rent so that Landlord receives the monthly rent on or before:
   ☐ (1) the first day of each month during this lease.
   ☒ (2) See special provisions _____
   Weekends, holidays, and mail delays do not excuse Tenant's obligation to timely pay rent.

B. Prorated Rent: On or before _____ N/A _____ Tenant will pay Landlord $ _____ as prorated rent from the Commencement Date through the last day of the month in which this lease begins.

C. Place of Payment: Unless this lease provides otherwise, Tenant will remit all amounts due to Landlord under this lease to the following person or entity at the place stated and make all payments payable to the named person or entity. Landlord may later designate, in writing, another person or place to which Tenant must remit amounts due under this lease
   Name: KATHERINE HOUSE _____
   Address: 195 ISABELLA POINT DR _____
   PORT ISABEL, TX 78597 _____
   **Notice: Place the Property address and Tenant's name on all payments.**

D. Method of Payment:
   (1) Tenant must pay all rent timely and without demand, deduction, or offset, except as permitted by law or this lease.
   (2) Time is of the essence for the payment of rent (strict compliance with rental due dates is required).
   (3) Unless the parties agree otherwise, Tenant may not pay rent in cash and will pay all rent by (select one or more): ☒ cashier's check  ☒ electronic payment  ☐ money order  ☐ personal check or ☒ other means acceptable to Landlord.
   (4) Landlord ☒ requires ☐ does not require Tenant(s) to pay monthly rents by one payment.
   (5) If Tenant fails to timely pay any amounts due under this lease or if any check of Tenant is not honored by the institution on which it was drawn, Landlord may require Tenant to pay such amount and any subsequent amounts under this lease in certified funds. This paragraph does not limit Landlord from seeking other remedies under this lease for Tenant's failure to make timely payments with good funds.

E. Rent Increases: There will be no rent increases through the primary term. Landlord may increase the rent that will be paid during any month-to-month renewal period by providing at least 30 days written notice to Tenant.

**6. LATE CHARGES:**

A. If Landlord does not actually receive a rent payment in the full amount at the designated place of payment by the _____ 3RD _____ day of each month at 11:59pm, Tenant will pay Landlord for each late payment:

(TAR-2001) 1-1-12    Tenants: _____ & Landlord or Landlord's Representative: _____    Page 2 of 15

Residential Lease concerning: _____ 118 KINGS COURT
SOUTH PADRE ISLAND, TX 78597 _____

(1) an initial late charge equal to *(check one box only)* : ☒ (a) $ 35.00 _____ ; or ☐ (b) _____ % of one month's rent; **and**
(2) additional late charges of $ 10.00 _____ per day thereafter until rent and late charges are paid in full. Additional late charges for any one payment may not exceed more than 30 days.
**Notice: §92.019, Property Code prohibits assessing a late fee until rent has remained unpaid for at least one full day after the date on which the rent is due.**

B. For the purposes of paying rent and any late charges, the mailbox is not the agent for receipt for Landlord (the postmark date is not the date Landlord receives the payment). The parties agree that the late charge is based on a reasonable estimate of uncertain damages to the Landlord that are incapable of precise calculation and result from late payment of rent. Landlord's acceptance of a late charge does not waive Landlord's right to exercise remedies under Paragraph 27.

7. **RETURNED PAYMENT:** Tenant will pay Landlord $ 50.00 _____ for each payment Tenant tenders to Landlord which is returned or not honored by the institution on which it is drawn for any reason, plus any late charges until Landlord receives payment. Tenant must make any returned payment good by paying such amount(s) plus any associated charges in certified funds.

8. **APPLICATION OF FUNDS:** Regardless of any notation on a payment, Landlord may apply funds received from Tenant first to any non-rent obligations of Tenant, including but not limited to, late charges, returned payment charges, repairs, brokerage fees, periodic utilities, pet charges, and then to rent.

9. **PETS:**

A. Unless the parties agree otherwise in writing, Tenant may not permit, even temporarily, any pet on the Property (including but not limited to any mammal, reptile, bird, fish, rodent, or insect).

B. If Tenant violates this Paragraph 9 or any agreement to keep a pet on the Property, Landlord may take all or any of the following action:
(1) declare Tenant to be in default of this lease and exercise Landlord's remedies under Paragraph 27;
(2) charge Tenant, as additional rent, an initial amount of $ 0 _____ and $ 0 _____
per day thereafter per pet for each day Tenant violates the pet restrictions;
(3) remove or cause to be removed any unauthorized pet and deliver it to appropriate local authorities by providing at least 24-hour written notice to Tenant of Landlord's intention to remove the unauthorized pet; and
(4) charge to Tenant the Landlord's cost to:
(a) remove any unauthorized pet;
(b) exterminate the Property for fleas and other insects;
(c) clean and deodorize the Property's carpets and drapes; and
(d) repair any damage to the Property caused by the unauthorized pet.

C. When taking any action under Paragraph 9B Landlord will not be liable for any harm, injury, death, or sickness to any pet.

10. **SECURITY DEPOSIT:**

A. Security Deposit: On or before execution of this lease, Tenant will pay a security deposit to Landlord in the amount of $ 4,500.00 _____ by *(select one or more)* : ☒ cashier's check ☐ electronic payment ☐ money order ☐ personal check or ☐ other means acceptable to Landlord. "Security deposit" has the meaning assigned to that term in §92.102, Property Code.

(TAR-2001) 1-1-12   Tenants: D̶ C̶C̶ ____ , ____ & Landlord or Landlord's Representative: _____ Page 3 of 15

Residential Lease concerning: _____ 118 KINGS COURT
SOUTH PADRE ISLAND, TX  78597 _____

B. Interest: No interest or income will be paid to Tenant on the security deposit. Landlord may place the security deposit in an interest-bearing or income-producing account and any interest or income earned will be paid to Landlord or Landlord's representative.

C. Refund: Tenant must give Landlord at least thirty (30) days written notice of surrender before Landlord is obligated to account for or refund the security deposit. Any refund of the security deposit will be made payable to all Tenants named in this lease.

**Notices about Security Deposits:**
**(1) §92.108, Property Code provides that a tenant may not withhold payment of any portion of the last month's rent on grounds that the security deposit is security for unpaid rent.**
**(2) Bad faith violations of §92.108 may subject a tenant to liability up to 3 times the rent wrongfully withheld and the landlord's reasonable attorney's fees.**
**(3) The Property Code does not obligate a landlord to return or account for the security deposit until the tenant surrenders the Property and gives the landlord a written statement of the tenant's forwarding address, after which the landlord has 30 days in which to account.**
**(4) "Surrender" is defined in Paragraph 16 of this lease.**
**(5) One may view the Texas Property Code at the Texas Legislature's website which, as of the date shown in the lower left-hand corner of this form, is http://www.statutes.legis.state.tx.us/ .**

D. Deductions:

(1) Landlord may deduct reasonable charges from the security deposit for:
   (a) damages to the Property, excluding normal wear and tear, and all reasonable costs associated to repair the Property;
   (b) costs for which Tenant is responsible to clean, deodorize, exterminate, and maintain the Property;
   (c) unpaid or accelerated rent;
   (d) unpaid late charges;
   (e) unpaid utilities and utility expenses Landlord incurs to maintain utilities to the Property as required by this Lease;
   (f) unpaid pet charges;
   (g) replacing unreturned keys, garage door openers, security devices, or other components;
   (h) the removal of unauthorized locks or fixtures installed by Tenant;
   (i) Landlord's cost to access the Property if made inaccessible by Tenant;
   (j) missing or burned-out light bulbs and fluorescent tubes (at the same location and of the same type and quality that are in the Property on the Commencement Date);
   (k) packing, removing, and storing abandoned property;
   (l) removing abandoned or illegally parked vehicles;
   (m) costs of reletting (as defined in Paragraph 26), if Tenant is in default;
   (n) attorney's fees, costs of court, costs of service, and other reasonable costs incurred in any legal proceeding against Tenant;
   (o) mailing costs associated with sending notices to Tenant for any violations of this lease;
   (p) any other unpaid charges or fees or other items for which Tenant is responsible under this lease;
   (q) cost to restore walls, flooring, landscaping or any alteration to the Property not approved in writing by Landlord; and
   (r) damages to the Property caused by smoking, including but not limited to stains, burns, odors, and removal of debris.

(2) If deductions exceed the security deposit, Tenant will pay to Landlord the excess within 10 days after Landlord makes written demand.

(TAR-2001) 1-1-12   Tenants: _D_ _eu_ _____,_____,_____ & Landlord or Landlord's Representative: _____ Page 4 of 15

Residential Lease concerning: _____
118 KINGS COURT
SOUTH PADRE ISLAND, TX  78597

## 11. UTILITIES:

A. Tenant will pay all connection fees, service fees, usage fees, and all other costs and fees for all utilities to the Property (for example, electricity, gas, water, wastewater, garbage, telephone, alarm monitoring systems, cable, and Internet connections) except the following which Landlord will pay: ELECTRICITY, CABLE, WATER, TRASH, WI-FI, YARD MAINTENANCE, POOL MAINTENANCE, HOA FEES, TENANTS WILL PAY ELECTRIC IN EXCESS OF $450 PER MONTH
Unless otherwise agreed, amounts under this paragraph are payable directly to the service providers.

B. Unless provided by Landlord, Tenant must, at a minimum, keep the following utilities on, if available, at all times this lease is in effect: gas; electricity; water; wastewater; and garbage services.

**Notice: Before signing this lease, Tenant should determine if all necessary utilities are available to the Property and are adequate for Tenant's use.**

## 12. USE AND OCCUPANCY:

A. Occupants: Tenant may use the Property as a private residence only. The only persons Tenant may permit to reside on the Property during the term of this lease are (include names and ages of all occupants):SELF: DAVID WILLS 59 YOA
SPOUSE: LORI WHITE WILLS 53 YOA

B. Phone Numbers and E-mail: Tenant must promptly inform Landlord of any changes in Tenant's phone numbers (home, work, and mobile) and e-mail not later than 5 days after a change.

C. HOA Rules: Tenant must comply with any owners' association rules or restrictive covenants affecting the Property. Tenant will reimburse Landlord for any fines or other charges assessed against Landlord for violations by Tenant of any owners' association rule or restrictive covenant.

D. Prohibitions: Unless otherwise authorized by this lease, Tenant may not install or permit any of the following on the Property, even temporarily: a spa, hot tub, above-ground pool, trampoline, or any item which causes a suspension or cancellation of insurance coverage or an increase in insurance premiums. Tenant may not permit any part of the Property to be used for: (1) any activity which is a nuisance, offensive, noisy, or dangerous; (2) the repair of any vehicle; (3) any business of any type, including but not limited to child care; (4) any activity which violates any zoning ordinance, owners' association rule, or restrictive covenant; (5) any illegal or unlawful activity; or (6) activity that obstructs, interferes with, or infringes on the rights of other persons near the Property.

E. Guests: Tenant may not permit any guest to stay on the Property longer than the amount of time permitted by any owners' association rule or restrictive covenant or _____ 30 _____ days without Landlord's written permission, whichever is less.

F. Common Areas: Landlord is not obligated to pay any non-mandatory or user fees for Tenant's use of any common areas or facilities (for example, pool or tennis courts).

**13. PARKING RULES:** Tenant may not permit more than _____ 4 _____ vehicles, including but not limited to automobiles, trucks, recreational vehicles, trailers, motorcycles, all-terrain vehicles, jet skis, and boats, on the Property unless authorized by Landlord in writing. Tenant may not park or permit any person to park any vehicles in the yard. Tenant may permit vehicles to be parked only in drives, garages, designated common parking areas, or in the street if not prohibited by law or an owners' association. Tenant may not store or permit any person to store any vehicles on or

(TAR-2001) 1-1-12   Tenants: _____, _____, _____, _____  & Landlord or Landlord's Representative: _____   Page 5 of 15

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com   118 King's Cou

Page 23 of 57                                                                 2:17cr390-009734

Residential Lease concerning: _____ **118 KINGS COURT**
**SOUTH PADRE ISLAND, TX   78597**_____

adjacent to the Property or on the street in front of the Property. In accordance with applicable state and local laws, Landlord may have towed, at Tenant's expense: (a) any inoperative vehicle on or adjacent to the Property; (b) any vehicle parked in violation of this paragraph or any additional parking rules made part of this lease; or (c) any vehicle parked in violation of any law, local ordinance, or owners' association rule.

**14. ACCESS BY LANDLORD:**

A. <u>Advertising</u>: Landlord may prominently display a "For Sale" or "For Lease" or similarly worded sign on the Property during the term of this lease or any renewal period. Landlord or Landlord's contractor may take interior or exterior photographs or images of the Property and use the photographs or images in any advertisements to lease or sell the Property.

B. <u>Access</u>: Before accessing the Property, Landlord or anyone authorized by Landlord will attempt to first contact Tenant, but may enter the Property at reasonable times without notice to make repairs or to show the Property to prospective tenants or buyers, inspectors, fire marshals, lenders, appraisers, or insurance agents. Additionally, Landlord or anyone authorized by Landlord may peacefully enter the Property at reasonable times without first attempting to contact Tenant and without notice to: (1) survey or review the Property's condition and take photographs to document the condition; (2) make emergency repairs; (3) exercise a contractual or statutory lien; (4) leave written notices; or (5) seize nonexempt property if Tenant is in default.

C. <u>Trip Charges</u>: If Landlord or Landlord's agents have made prior arrangements with Tenant to access the Property and are denied or are not able to access the Property because of Tenant's failure to make the Property accessible, Landlord may charge Tenant a trip charge of $ _25.00_____ .

D. <u>Keybox</u>: **A keybox is a locked container placed on the Property holding a key to the Property. The keybox is opened by a special combination, key, or programmed access device so that persons with the access device may enter the Property, even in Tenant's absence. The keybox is a convenience but involves risk (such as unauthorized entry, theft, property damage, or personal injury). Neither the Association of REALTORS® nor MLS requires the use of a keybox.**

(1) Tenant authorizes Landlord, Landlord's property manager, and Landlord's broker to place on the Property a keybox containing a key to the Property:
(a) during the last _____0_____ ' days of this lease or any renewal or extension; and
(b) at any time Landlord lists the Property for sale with a Texas licensed broker.

(2) Tenant may withdraw Tenant's authorization to place a keybox on the Property by providing written notice to Landlord and paying Landlord a fee of $ _N/A_____ as consideration for the withdrawal. Landlord will remove the keybox within a reasonable time after receipt of the notice of withdrawal and payment of the required fee. Removal of the keybox does not alleviate Tenant's obligation to make the Property available for showings as indicated in Paragraph 14B.

(3) If Landlord or Landlord's agents are denied or are not able to access the Property after first attempting to contact Tenant, Landlord may charge Tenant a trip charge of $ _100.00_____ .

(4) <u>Landlord, the property manager, and Landlord's broker are not responsible to Tenant, Tenant's guests, family, or occupants for any damages, injuries, or losses arising from use of the keybox unless caused by Landlord, the property manager, or Landlord's broker.</u>

(TAR-2001) 1-1-12   Tenants: _D.W.____, _____, _____   & Landlord or Landlord's Representative: _____   Page 6 of 15

Residential Lease concerning: _____ 118 KINGS COURT
SOUTH PADRE ISLAND, TX 78597 _____

## 15. MOVE-IN CONDITION:

A. Landlord makes no express or implied warranties as to the Property's condition. Tenant has inspected the Property and accepts it **AS-IS** provided that Landlord: **N/A**_____

_____

B. Tenant will complete an Inventory and Condition Form, noting any damages to the Property, and deliver it to Landlord within _____**10**_____ days after the Commencement Date. If Tenant fails to timely deliver the Inventory and Condition Form, the Property will be deemed to be free of damages, unless otherwise expressed in this lease. The Inventory and Condition Form is not a request for repairs. Tenant must direct all requests for repairs in compliance with Paragraph 18.

## 16. MOVE-OUT:

A. Move-Out Condition: When this lease ends, Tenant will surrender the Property in the same condition as when received, normal wear and tear excepted. Tenant will leave the Property in a clean condition free of all trash, debris, and any personal property. Tenant may not abandon the Property.

B. Definitions:

(1) "Normal wear and tear" means deterioration that occurs without negligence, carelessness, accident, or abuse.

(2) "Surrender" occurs when all occupants have vacated the Property, in Landlord's reasonable judgment, and one of the following events occurs:
(a) the date Tenant specifies as the move-out or termination date in a written notice to Landlord has passed; or
(b) Tenant returns keys and access devices that Landlord provided to Tenant under this lease.

(3) "Abandonment" occurs when all of the following occur:
(a) all occupants have vacated the Property, in Landlord's reasonable judgment;
(b) Tenant is in breach of this lease by not timely paying rent; and
(c) Landlord has delivered written notice to Tenant, by affixing it to the inside of the main entry door or if the Landlord is prevented from entering the Property by affixing it to the outside of the main entry door, stating that Landlord considers the Property abandoned, and Tenant fails to respond to the affixed notice by the time required in the notice, which will not be less than 2 days from the date the notice is affixed to the main entry door.

C. Personal Property Left After Move-Out:

(1) If Tenant leaves any personal property in the Property after surrendering or abandoning the Property Landlord may:
(a) dispose of such personal property in the trash or a landfill;
(b) give such personal property to a charitable organization; or
(c) store and sell such personal property by following procedures in §54.045(b)-(e), Property Code.

(2) Tenant must reimburse Landlord all Landlord's reasonable costs under Paragraph 16C(1) for packing, removing, storing, and selling the personal property left in the Property after surrender or abandonment.

(TAR-2001) 1-1-12     Tenants: _____, _____, _____, _____ & Landlord or Landlord's Representative: _____     Page 7 of 15

Residential Lease concerning: _____

**118 KINGS COURT**
**SOUTH PADRE ISLAND, TX  78597**

## 17. PROPERTY MAINTENANCE:

A. <u>Tenant's General Responsibilities</u>: Tenant, at Tenant's expense, must:
   (1) keep the Property clean and sanitary;
   (2) promptly dispose of all garbage in appropriate receptacles;
   (3) supply and change heating and air conditioning filters at least once a month;
   (4) supply and replace all light bulbs, fluorescent tubes, and batteries for smoke alarms, carbon monoxide detectors, garage door openers, ceiling fan remotes, and other devices (of the same type and quality that are in the Property on the Commencement Date);
   (5) maintain appropriate levels of necessary chemicals or matter in any water softener;
   (6) take action to promptly eliminate any dangerous condition on the Property;
   (7) take all necessary precautions to prevent broken water pipes due to freezing or other causes;
   (8) replace any lost or misplaced keys;
   (9) pay any periodic, preventive, or additional extermination costs desired by Tenant;
   (10) remove any standing water;
   (11) know the location and operation of the main water cut-off valve and all electric breakers and how to switch the valve or breakers off at appropriate times to mitigate any potential damage;
   (12) water the foundation of the Property at reasonable and appropriate times; and
   (13) promptly notify Landlord, in writing, of all needed repairs.

B. <u>Yard Maintenance</u>:

   (1) *"Yard"* means all lawns, shrubbery, bushes, flowers, gardens, trees, rock or other landscaping, and other foliage on or encroaching on the Property or on any easement appurtenant to the Property, and does not include common areas maintained by an owners' association.

   (2) *"Maintain the yard"* means to perform activities such as, but not limited to: (a) mowing, fertilizing, and trimming the yard; (b) controlling pests in the yard; and (c) removing debris from the yard.

   (3) Unless prohibited by ordinance or other law, Tenant will water the yard at reasonable and appropriate times including but not limited to the following times: <u>AUTOMATED SPRINKLER SYSTEM WILL OPERATE AT</u> <u>TIMES DESIGNATED BY LANDLORD.</u>
   _____ . Other than watering, the yard will be maintained as follows:

   ☒ (a) Landlord, at Landlord's expense, will maintain the yard. Tenant will permit Landlord and Landlord's contractors reasonable access to the yard and will remove any pet from the yard at appropriate times.

   ☐ (b) Tenant, at Tenant's expense, will maintain the yard.

   ☐ (c) Tenant will maintain in effect a scheduled yard maintenance contract with: ☐ a contractor who regularly provides such service; ☐ _____ .

C. <u>Pool/Spa Maintenance</u>: Any pool or spa on the Property will be maintained according to a Pool/Spa Maintenance Addendum.

D. <u>Prohibitions</u>: If Tenant installs any fixtures on the Property, authorized or unauthorized, such as additional smoke alarms, locks, alarm systems, cables, satellite dishes, or other fixtures, such fixtures will become the property of the Landlord. Except as otherwise permitted by law, this lease, or in writing by Landlord, Tenant may <u>not</u>:
   (1) remove any part of the Property or any of Landlord's personal property from the Property;
   (2) remove, change, add, or rekey any lock;

(TAR-2001) 1-1-12   Tenants: _____ , _____ , _____ , _____ & Landlord or Landlord's Representative: _____   Page 8 of 15

Residential Lease concerning: _____ **118 KINGS COURT**
**SOUTH PADRE ISLAND, TX   78597** _____

(3) make holes in the woodwork, floors, or walls, except that a reasonable number of small nails may be used to hang pictures in sheetrock and grooves in paneling;

(4) permit any water furniture on the Property;

(5) install additional phone or video cables, outlets, antennas, satellite receivers, or alarm systems;

(6) alter, replace or remove flooring material, paint, or wallpaper;

(7) install, change, or remove any: fixture, appliance, or non-real-property item listed in Paragraph 2;

(8) keep or permit any hazardous material on the Property such as flammable or explosive materials;

(9) keep or permit any material or item which causes any liability or fire and extended insurance coverage to be suspended or canceled or any premiums to be increased;

(10) dispose of any environmentally detrimental substance (for example, motor oil or radiator fluid) on the Property; or

(11) cause or allow any lien to be filed against any portion of the Property.

E. <u>Failure to Maintain</u>: If Tenant fails to comply with this Paragraph 17 or any Pool/Spa Maintenance Addendum, Landlord may, in addition to exercising Landlord's remedies under Paragraph 27, perform whatever action Tenant is obligated to perform and Tenant must immediately reimburse Landlord the reasonable expenses that Landlord incurs.

F. <u>Smoking</u>: Smoking by Tenant, Tenant's guests, family, or occupants is ☐ permitted  ☒ not permitted on the Property. If smoking is not permitted and does occur on the Property, Tenant will be in default and:

(1) Landlord may exercise Landlord's remedies under Paragraph 27; and

(2) Landlord may deduct from the security deposit damages to the Property caused by smoking, including but not limited to stains, burns, odors, and removal of debris.

**18. REPAIRS:** (Notice: Subchapter B, Chapter 92, Property Code governs repair obligations).

A. **<u>Repair Requests</u>: All requests for repairs must be in writing and delivered to Landlord. If Tenant is delinquent in rent at the time a repair notice is given, Landlord is not obligated to make the repair. In the event of an emergency related to the condition of the Property that materially affects the physical health or safety of an ordinary tenant, call:** <u>(956) 346-6244</u>          .
**Ordinarily, a repair to the heating and air conditioning system is not an emergency.**

B. **<u>NOTICE</u>: If Landlord fails to repair a condition that materially affects the physical health or safety of an ordinary tenant as required by this lease or the Property Code, Tenant may be entitled to exercise remedies under §92.056 and §92.0561 of the Property Code. If Tenant follows the procedures under those sections, the following remedies may be available to Tenant: (1) terminate the lease and obtain an appropriate refund under §92.056(f); (2) have the condition repaired or remedied according to §92.0561; (3) deduct from the rent the cost of the repair or remedy according to §92.0561; and (4) obtain judicial remedies according to §92.0563. Do not exercise these remedies without consulting an attorney or carefully reviewing the procedures under the applicable sections. The Property Code presumes that 7 days is a reasonable period of time for the Landlord to make a diligent effort to repair a condition unless there are circumstances which establish that a different period of time is appropriate (such as the severity and nature of the condition and the availability of materials, labor, and utilities). Failure to strictly follow the procedures in the applicable sections may cause Tenant to be in default of the lease.**

C. **<u>Completion of Repairs</u>:**

**(1) Tenant may not repair or cause to be repaired any condition, regardless of the cause, without Landlord's permission. All decisions regarding repairs, including the completion of any repair, whether to repair or replace the item, and the selection of contractors, will be at Landlord's sole discretion.**

(TAR-2001) 1-1-12     Tenants: _____ , _____ , _____ , _____ & Landlord or Landlord's Representative: _____     Page 9 of 15

Residential Lease concerning: _____
118 KINGS COURT
SOUTH PADRE ISLAND, TX   78597

**(2)** Landlord is not obligated to complete a repair on a day other than a business day unless required to do so by the Property Code.

**D.** <u>Payment of Repair Costs</u>: Except as otherwise specified in this lease, Landlord will pay to repair or remedy conditions in the Property in need of repair if Tenant complies with the procedures for requesting repairs as described in this Paragraph 18.

**(1)** Landlord will pay the entire cost to repair the following items not caused by Tenant or Tenant's negligence:
    **(a)** heating and air conditioning systems;
    **(b)** water heaters; or
    **(c)** water penetration from structural defects.

**(2)** Landlord will NOT pay to repair the following items unless caused by Landlord's negligence:
    **(a)** conditions caused by Tenant, an Occupant, or any guest or invitee of Tenant;
    **(b)** damage to doors, windows, and screens;
    **(c)** damage from windows or doors left open;
    **(d)** damage from wastewater stoppages caused by foreign or improper objects in lines that exclusively serve the Property;
    **(e)** items that are cosmetic in nature with no impact on the functionality or use of the item; and
    **(f)** the following specific items or appliances: <u>N/A</u>

**E.** <u>Trip Charges</u>: If a repair person is unable to access the Property after making arrangements with Tenant to complete the repair, Tenant will pay any trip charge the repair person may charge, which amount may be different from the amount stated in Paragraph 14C.

**F.** <u>Advance Payments and Reimbursements</u>: Landlord may require advance payment of repairs or payments under this Paragraph 18 for which Tenant is responsible. Tenant must promptly reimburse Landlord the amounts under this Paragraph 18 for which Tenant is responsible.

**19. SECURITY DEVICES AND EXTERIOR DOOR LOCKS:**

**A.** Subchapter D, Chapter 92, Property Code requires the Property to be equipped with certain types of locks and security devices. Landlord has rekeyed the security devices since the last occupant vacated the Property or will rekey the security devices within 7 days after Tenant moves in. "Security device" has the meaning assigned to that term in §92.151, Property Code.

**B.** <u>All notices or requests by Tenant for rekeying, changing, installing, repairing, or replacing security devices must be in writing. Installation of additional security devices or additional rekeying or replacement of security devices desired by Tenant will be paid by Tenant in advance and may be installed only by contractors authorized by Landlord.</u>

**20. SMOKE ALARMS:** Subchapter F, Chapter 92, Property Code requires the Property to be equipped with smoke alarms in certain locations. <u>Requests for additional installation, inspection, or repair of smoke alarms must be in writing.</u> Disconnecting or intentionally damaging a smoke alarm or removing a battery without immediately replacing it with a working battery may subject Tenant to civil penalties and liability for damages and attorney fees under §92.2611, Property Code.

(TAR-2001) 1-1-12    Tenants: _____, _____, _____, _____ & Landlord or Landlord's Representative: _____ Page 10 of 15

118 KINGS COURT

SOUTH PADRE ISLAND, TX  78597

Residential Lease concerning: _____

21. **LIABILITY:** Unless caused by Landlord, Landlord is not responsible to Tenant, Tenant's guests, family, or occupants for any damages, injuries, or losses to person or property caused by fire, flood, water leaks, ice, snow, hail, winds, explosion, smoke, interruption of utilities, theft, burglary, robbery, assault, vandalism, other persons, condition of the Property, environmental contaminants (for example, carbon monoxide, asbestos, radon, lead-based paint, mold, fungus, etc.), or other occurrences or casualty losses. Tenant will promptly reimburse Landlord for any loss, property damage, or cost of repairs or service to the Property caused by Tenant, Tenant's guests, any occupants, or any pets.

22. **HOLDOVER:** If Tenant fails to vacate the Property at the time this lease ends Tenant will pay Landlord rent for the holdover period and indemnify Landlord and prospective tenants for damages, including but not limited to lost rent, lodging expenses, costs of eviction, and attorneys' fees. Rent for any holdover period will be three (3) times the monthly rent, calculated on a daily basis, and will be immediately due and payable daily without notice or demand.

23. **RESIDENTIAL LANDLORD'S LIEN:** Landlord will have a lien for unpaid rent against all of Tenant's nonexempt personal property that is in the Property and may seize such nonexempt property if Tenant fails to pay rent. Subchapter C, Chapter 54, Property Code governs the rights and obligations of the parties regarding Landlord's lien. Landlord may collect a charge for packing, removing, or storing property seized in addition to any other amounts Landlord is entitled to receive. Landlord may sell or dispose of any seized property in accordance with the provisions of §54.045, Property Code.

24. **SUBORDINATION:** This lease and Tenant's leasehold interest are and will be subject, subordinate, and inferior to: (i) any lien or encumbrance now or later placed on the Property by Landlord; (ii) all advances made under any such lien or encumbrance; (iii) the interest payable on any such lien or encumbrance; (iv) any and all renewals and extensions of any such lien or encumbrance; (v) any restrictive covenant; and (vi) the rights of any owners' association affecting the Property.

25. **CASUALTY LOSS OR CONDEMNATION:** Section 92.054, Property Code governs the rights and obligations of the parties regarding a casualty loss to the Property. Any proceeds, payment for damages, settlements, awards, or other sums paid because of a casualty loss to the Property will be Landlord's sole property. For the purpose of this lease, any condemnation of all or a part of the Property is a casualty loss.

26. **SPECIAL PROVISIONS:** *(Do not insert a lease-option or lease-purchase clause without the assistance of legal counsel. Special obligations and liabilities under statute apply to such transactions.)*
Tenants acknowledge property has a swimming pool and is bordered by the Laguna Madre.   Tenants hereby agree to hold harmless and indemnity Landlord from any and all accidents to any persons on the property including but not limited to the house, swimming pool and Laguna Madre. Tenant shall pay to landlord the full amount of rental of $10,650.00 for the term of the lease as stated in 3.A. Tenants may keep personal pet canines on the property with an additional $1000 pet deposit.

27. **DEFAULT:**

A. If Landlord fails to comply with this lease, Tenant may seek any relief provided by law.

B. If Tenant fails to timely pay all amounts due under this lease or otherwise fails to comply with this lease, Tenant will be in default and:
(1) Landlord may terminate Tenant's right to occupy the Property by providing Tenant with at least one day written notice to vacate;

(TAR-2001) 1-1-12        Tenants _____  _____  & Landlord or Landlord's Representative: _____   Page 11 of 15

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com        118 King's Cou

Residential Lease concerning: _____ 118 KINGS COURT
SOUTH PADRE ISLAND, TX   78597 _____

    (2) all unpaid rents which are payable during the remainder of this lease or any renewal period will be accelerated without notice or demand;

    (3) Landlord may exercise Landlord's lien under Paragraph 23 and any other rights under this lease or the Property Code; and

    (4) Tenant will be liable for:

        (a) any lost rent;

        (b) Landlord's cost of reletting the Property including but not limited to leasing fees, advertising fees, utility charges, and other fees reasonably necessary to relet the Property;

        (c) repairs to the Property for use beyond normal wear and tear;

        (d) all Landlord's costs associated with eviction of Tenant, including but not limited to attorney's fees, court costs, costs of service, witness fees, and prejudgment interest;

        (e) all Landlord's costs associated with collection of amounts due under this lease, including but not limited to collection fees, late charges, and returned check charges; and

        (f) any other recovery to which Landlord may be entitled by law.

C. Notice to vacate under Paragraph 27B(1) may be by any means permitted by §24.005, Property Code.

D. Landlord will attempt to mitigate any damage or loss caused by Tenant's breach by attempting to relet the Property to acceptable tenants and reducing Tenant's liability accordingly.

**28. EARLY TERMINATION:** This lease begins on the Commencement Date and ends on the Expiration date unless: (i) renewed under Paragraph 4; (ii) extended by written agreement of the parties; or (iii) terminated earlier under Paragraph 27, by agreement of the parties, applicable law, or this Paragraph 28.

A. <u>Special Statutory Rights</u> Tenants may have special statutory rights to terminate the lease early in certain situations involving family violence, military deployment or transfer, or certain sex offenses.

    (1) <u>Military</u>: If Tenant is or becomes a servicemember or a dependent of a servicemember, Tenant may terminate this lease by delivering to Landlord a written notice of termination and a copy of an appropriate government document providing evidence of: (a) entrance into military service; (b) military orders for a permanent change of station (PCS); or (c) military orders to deploy with a military unit for not less than 90 days. Termination is effective on the 30th day after the first date on which the next rental payment is due after the date on which the notice is delivered. §92.017, Property Code governs the rights and obligations of the parties under this paragraph.

    (2) <u>Family Violence</u>: Tenant may terminate this lease if Tenant provides Landlord with a copy of a court order described under §92.016, Property Code protecting Tenant or an occupant from family violence committed by a cotenant or occupant of the Property. §92.016, Property Code governs the rights and obligations of the parties under this paragraph. If the family violence is committed by someone other than a cotenant or co-occupant of the Property, Tenant must give written notice of termination 30 days prior to the effective date of the notice.

    (3) <u>Sex Offenses</u>: Tenant may have special statutory rights to terminate this lease in certain situations involving sexual assault or sexual abuse. For more information about the types of abuse and assault covered by this provision, Tenant is advised to review §92.0161, Property Code.

B. <u>Assignment, Subletting and Replacement Tenants</u>:

    (1) Tenant may not assign this lease or sublet the Property without Landlord's written consent.

    (2) If Tenant requests an early termination of this lease under this Paragraph 28B, Tenant may attempt to find a replacement tenant and may request Landlord to do the same. Landlord may, but is not obligated to, attempt to find a replacement tenant under this paragraph.

(TAR-2001) 1-1-12    Tenants: _____, _____, _____, _____ & Landlord or Landlord's Representative: _____ Page 12 of 15

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com
        118 King's Cou

    2:17cr390-009741

<div align="center">

**118 KINGS COURT**
**SOUTH PADRE ISLAND, TX   78597**

</div>

Residential Lease concerning: _____

(3) Any assignee, subtenant, or replacement tenant must, in Landlord's discretion, be acceptable as a tenant and must sign: (a) a new lease with terms not less favorable to Landlord than this lease or otherwise acceptable to Landlord; (b) a sublease with terms approved by Landlord; or (c) an assignment of this lease in a form approved by Landlord.

(4) At the time Landlord agrees to permit an assignee, subtenant, or replacement tenant to occupy the Property, Tenant will pay Landlord:

   (a) if Tenant procures the assignee, subtenant, or replacement tenant:
   ☐ (i) $ <u>n/a</u> .
   ☐ (ii) _____<u>n/a</u>_____ % of one's month rent that the assignee, subtenant, or replacement tenant is to pay.

   (b) if Landlord procures the assignee, subtenant, or replacement tenant:
   ☐ (i) $ <u>n/a</u> .
   ☒ (ii) _____<u>n/a</u>_____ % of one's month rent that the assignee, subtenant, or replacement tenant is to pay.

(5) Unless expressly stated otherwise in an assignment or sublease, Tenant will not be released from Tenant's obligations under this lease because of an assignment or sublease. An assignment of this lease or a sublease of this lease without Landlord's written consent is voidable by Landlord.

**29. ATTORNEY'S FEES:** Any person who is a prevailing party in any legal proceeding brought under or related to the transaction described in this lease is entitled to recover prejudgment interest, attorney's fees, costs of service, and all other costs of the legal proceeding from the non-prevailing party.

**30. REPRESENTATIONS:** Tenant's statements in this lease and any application for rental are material representations. Each party to this lease represents that he or she is of legal age to enter into a contract. If Tenant makes a misrepresentation in this lease or in an application for rental, Tenant is in default.

**31. ADDENDA:** Incorporated into this lease are the following addenda, exhibits and other information. If Landlord's Rules and Regulations are made part of this lease, Tenant agrees to comply with the Rules and Regulations as Landlord may, at Landlord's discretion, amend from time to time.

☐ Addendum Regarding Lead-Based Paint          ☐ Agreement Between Brokers
☒ Inventory & Condition Form                    ☐ Landlord's Rules & Regulations
☐ Landlord's Additional Parking Rules           ☒ Owners' Association Rules
☒ Pet Agreement                                 ☒ Pool/Spa Maintenance Addendum
☐ Protecting Your Home from Mold                ☒ Residential Lease Application
☐ Agreement for Application Deposit & Hold      ☐ Residential Lease Guaranty
☐ _____              ☐ _____
☐ _____              ☐ _____

**32. NOTICES:** All notices under this lease must be in writing and are effective when hand-delivered, sent by mail, or sent by electronic transmission to (*Do not insert an e-mail address or a fax number unless the party consents to receive notices under this lease at the e-mail address or fax number specified.*):

Tenant at the Property and a copy to:            Landlord c/o: *Troy Giles Realty*
<u>Connie Clifton</u>                              ~~Lynne Tate Real Estate~~, Deanna Bowman
_____                  ~~2200 Padre Blvd~~  *5813 Padre Blvd*
_____                  South Padre Island, Tx 78597
E-mail:<u>MITConnie@gmail.com</u>                 E-mail:~~Deanna@LynneTateRealEstate.com~~
Fax:_____                   Fax: ~~(956) 761-1805~~  *761-6680*
                                                  *Deanna @ Troy Giles Realy.con*

(TAR-2001) 1-1-12   Tenants: _____, _____, _____, _____ & Landlord or Landlord's Representative: _____   Page 13 of 15

Residential Lease concerning: _____
**118 KINGS COURT**
**SOUTH PADRE ISLAND, TX   78597** _____

## 33. AGREEMENT OF PARTIES:

A. Entire Agreement: There are no oral agreements between Landlord and Tenant. This lease contains the entire agreement between Landlord and Tenant and may not be changed except by written agreement.

B. Binding Effect: This lease is binding upon and inures to the benefit of the parties to this lease and their respective heirs, executors, administrators, successors, and permitted assigns.

C. Joint and Several: All Tenants are jointly and severally liable for all provisions of this lease. Any act or notice to, refund to, or signature of, any one or more of the Tenants regarding any term of this lease, its extension, its renewal, or its termination is binding on all Tenants executing this lease.

D. Waiver: Landlord's past delay, waiver, or non-enforcement of a rental due date or any other right will not be deemed to be a waiver of any other breach by Tenant or any other right in this lease.

E. Severable Clauses: Should a court find any clause in this lease unenforceable, the remainder of this lease will not be affected and all other provisions in this lease will remain enforceable.

F. Controlling Law: The laws of the State of Texas govern the interpretation, validity, performance, and enforcement of this lease.

G. Copyright: If an active REALTOR® member of the Texas Association of REALTORS® or an active member of the State Bar of Texas does not negotiate this lease as a party or for one of the parties, either as a party's broker or attorney, this lease is voidable at will by Tenant.

## 34. INFORMATION:

A. Future inquiries about this lease, rental payments, and security deposits should be directed to the person listed for receipt of notices for Landlord under Paragraph 32.

B. It is Tenant's responsibility to determine, before signing this lease, if: (i) all services (e.g., utilities, connections, schools, and transportation) are accessible to or from the Property; (ii) such services are sufficient for Tenant's needs and wishes; and (iii) Tenant is satisfied with the Property's condition.

C. The brokers to this lease have no knowledge of whether Landlord is delinquent in the payment of any lien against the Property.

D. Unpaid rent and any unpaid amount under this lease are reportable to credit reporting agencies.

E. Landlord is not obligated to respond to any requests for Tenant's rental and payment history from a mortgage company or other prospective landlord until Tenant has given notice of termination of this lease and Tenant is not in breach of this lease. (Notice: Landlord or Landlord's agent may charge a reasonable fee for processing such information. )

F. If all occupants over 18 years of age die during this lease, Landlord may: (i) permit the person named below to access the Property at reasonable times in Landlord's or Landlord's agent's presence; (ii) permit the named person to remove Tenant's personal property; and (iii) refund the security deposit, less deductions, to the named person. Section 92.014, Property Code governs procedures to follow in the event of a tenant's death.
Name: STEVEN WHITE_____ Phone: (301) 366-6075_____
Address: 13329 QUERY MILL RD, NORTH POTOMAC, MD 20878_____
E-mail: _____

(TAR-2001) 1-1-12   Tenants: _____, _____, _____, _____  & Landlord or Landlord's Representative: _____   Page 14 of 15
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com   118 King's Cou
Page 32 of 57                                                        2:17cr390-009743

118 KINGS COURT
SOUTH PADRE ISLAND, TX  78597

Residential Lease concerning: _____

G. The Texas Department of Public Safety maintains a database that the public may search, at no cost, to determine if registered sex offenders are located in certain areas (see www.txdps.state.tx.us under on-line services). For information concerning past criminal activity in certain areas, contact the local police department.

H. Landlord's insurance does not cover Tenant from loss of personal property. Landlord recommends that Tenant obtain insurance for casualties such as fire, flood, water damage, and theft. Tenant represents that Tenant ☐ intends  ☒ does not intend to purchase such insurance.

I. Landlord's broker, ~~LYNNE TATE REAL ESTATE~~  _Troy Giles Realty_ ,
☒ will ☐ will not  act as the property manager for landlord.

J. This lease is negotiable between the parties. This lease is binding upon final acceptance. READ IT CAREFULLY. If you do not understand the effect of this lease, consult your attorney BEFORE signing.

K. This lease should not be used in conjunction with executory contracts of any type, such as contracts for deed, leases with options to purchase, or lease options, without the advice of an attorney.

_____  9/10/12      X _____  03/24/2012
Landlord                        Date     Tenant                         Date
                                         DAVID KEITH WILLS

                                                                        03/24/2012
_____  _____     _____  _____
Landlord                        Date     Tenant                         Date

Or signed for Landlord under written property management
agreement or power of attorney:          _____  _____
                                         Tenant                         Date

By: _____  _____     _____  _____
                                Date     Tenant                         Date

Deanna  Bowman
Broker's Associate's Printed Name

Deanna  Bowman            0459625
Broker's Printed Name     License No.

Lynne Tate Real Estate
Firm Name

(TAR-2001) 1-1-12                                              Page 15 of 15



### TEXAS ASSOCIATION OF REALTORS®
## PET AGREEMENT
USE OF THIS FORM BY PERSONS WHO ARE NOT MEMBERS OF THE TEXAS ASSOCIATION OF REALTORS® IS NOT AUTHORIZED.
©Texas Association of REALTORS®, Inc., 2003

**ADDENDUM TO RESIDENTIAL LEASE CONCERNING THE PROPERTY AT** 188 KING'S COURT, SOUTH PADRE ISLAND, 78597

**A. PET AUTHORIZATION AND PET DESCRIPTION:**

(1) Tenant may not keep any pet on the Property unless specifically authorized by this agreement. "Pet" includes any animal, whether mammal, reptile, bird, fish, rodent, or insect.

(2) Tenant may keep the following pet(s) on the Property until the above-referenced lease ends.

Type: _____ Breed: _____ Name: _____
Color: _____ Weight: _____ Age: _____ Gender: _____
Neutered? ☐ yes ☐ no   Declawed? ☐ yes ☐ no   Rabies Shots Current? ☐ yes ☐ no

Type: _____ Breed: _____ Name: _____
Color: _____ Weight: _____ Age: _____ Gender: _____
Neutered? ☐ yes ☐ no   Declawed? ☐ yes ☐ no   Rabies Shots Current? ☐ yes ☐ no

Personal pets dogs

**B. CONSIDERATION:** In consideration for Landlord's authorization for Tenant to keep the pet(s) described in Paragraph A on the Property, the parties agree to the following. *(Check any one or any combination of the following.)*

☒ (1) On or before the date Tenant moves into the Property, Tenant will pay Landlord a pet deposit of
$ 1,000.00 _____. The pet deposit is an increase in the security deposit in the lease and is made part of the security deposit for all purposes. This increase in the security deposit is not refundable before the lease ends, even if the pet is removed. Any refund of the security deposit, including this increase, is governed by the terms of the lease.

☐ (2) The monthly rent in the lease is increased to $ _____.

☐ (3) Tenant will, upon execution of this agreement, pay Landlord $ _____ as a one-time, non-refundable payment.

**C. PET RULES:** Tenant must:
(1) take all reasonable action to insure that any pet does not violate the rights of other persons;
(2) comply with all applicable statutes, ordinances, restrictions, owners' association rules, and other enforceable regulations regarding any pet;
(3) keep the rabies shots of any pet current;
(4) confine any pet that is a dog or cat, when outside, by fences or on leashes under Tenant's control;
(5) confine any pet other than a dog or cat in appropriate cages at all times;
(6) promptly remove any pet waste from the Property, including all living areas, garages, storage areas, yards, porches, patios, courtyards, and decks; and
(7) promptly remove from the Property any offspring of any pet.

**D. ACCESS:** Tenant must remove or confine any pet at any time that the pet is likely to limit or prohibit Landlord or other persons access to Property as permitted by the lease.

(TAR-2004) 10-14-03   Initialed for Identification by Tenants _____ , and Landlord: _____   Page 1 of 2

South Padre Real Estate. Inc. 2600 Padre Blvd, Ste B South Padre Island, TX 78597
Phone 956-592-4429   Fax 956 761 4868   Connie Clifton   188 KINGS COUR
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

Pet Agreement concerning _____ 188 KING'S COURT _____
SOUTH PADRE ISLAND,   78597

**E. DISCLOSURE CONCERNING PETS:**

(1) Is Tenant aware of whether any of the pets described under this addendum has ever bitten or injured another person?  ☐ Yes ☒ No
If yes, explain: _____
_____

(2) Is Tenant aware of whether any of the pets described under this addendum has any propensity or predisposition to bite or injure someone?  ☐ Yes ☒ No
If yes, explain: _____
_____

**F. TENANT'S LIABILITY:**

(1) Tenant is responsible and liable for:
   (a) any damage to the Property or any item in the Property caused by any pet;
   (b) any personal injuries to any person caused by any pet; and
   (c) any damage to any person's property caused by any pet.
(2) Tenant will pay all reasonable costs that are necessary to clean, deodorize, deflea, or repair any part of the Property, including but not limited to the carpets, doors, walls, drapes, wallpaper, windows, screens, furniture, appliances, sod, yard, fences, or landscaping.

**G. INDEMNIFICATION:** Tenant will protect, defend, indemnify, and hold Landlord, Landlord's property manager, and Landlord's agents harmless from any damages, costs, attorney's fees, and expenses that are caused by the act of any pet or Tenant.

**H. DEFAULT:** If Tenant breaches any provision in this pet agreement, Landlord may exercise all or any of the remedies described under Paragraph 9B of the lease.

**I. SPECIAL PROVISIONS:**

Landlord KATHERINE S HAUSE        9/10/12 / Date        Tenant DAVID KEITH WILLS        Date

Landlord        Date        Tenant        Date

Or signed for Landlord under written property management agreement or power of attorney:        Tenant        Date

By: _____
Printed Name: _____        Tenant        Date
Firm Name: _____

(TAR-2004) 10-14-03        Page 2 of 2



TEXAS ASSOCIATION OF REALTORS®
## EXTENSION OF RESIDENTIAL LEASE

USE OF THIS FORM BY PERSONS WHO ARE NOT MEMBERS OF THE TEXAS ASSOCIATION OF REALTORS® IS NOT AUTHORIZED.
©Texas Association of REALTORS®, Inc. 2010

*NOTICE: Use this form only if date in the bottom, left-hand corner of the lease to be extended is dated on or after June 1, 2010.*

CONCERNING THE RESIDENTIAL LEASE OF THE PROPERTY AT <u>188 KING'S COURT, SOUTH PADRE</u>
<u>ISLAND, 78597</u> _____ between
_____ <u>KATHERINE S HAUSE</u> _____ (Landlord) and
_____ <u>DAVID KEITH WILLS</u> _____ (Tenant)

A. <u>Amendments to Lease:</u> Effective _____ <u>January 1, 2013</u> _____ , Landlord and Tenant extend and amend the above-referenced lease as follows.

   (1) The Expiration Date in Paragraph 3 is changed to: ____ <u>February 28, 2013</u> ____ .

   (2) The monthly rent in Paragraph 5A is: ☒ changed to $ <u>4,050.00</u> _____ ☐ remains the same.

   (3) <u>Other:</u> Paragraph(s) _____ of the lease are amended as follows:
   <u>Landlord will market property for sale and for lease. Tenant will allow all</u>
   <u>showings with a 30 minute notice from landlord's Broker. Tenant will pay full</u>
   <u>amount of rent due in one payment as stipulated in original lease agreement.</u>
   <u>Total rent due is $8100 payable on or before January 9, 2013</u>

B. <u>Obligation to Return this Extension:</u> If Tenant does not sign and return this extension to Landlord on or before
   <u>January 9, 2013</u> _____ , Landlord notifies Tenant that:
   ☒ (1) the lease, in accordance with its terms, will renew on a month-to-month basis, and Landlord notifies Tenant that
      the monthly rent will: ☒ (a) be $ <u>4,050.00</u> _____ , effective ____ <u>January 1, 2013</u> ____ .
      ☐ (b) remain the same.
   ☐ (2) the lease will terminate on _____ and Tenant must vacate the Property by the
      date of termination.

_____ _____     *[signature]* 1/5/2013
Landlord               Date     Tenant               Date
KATHERINE S HAUSE             DAVID KEITH WILLS

_____ _____     _____ _____
Landlord               Date     Tenant               Date
                                  and/or Assigns

Or signed for Landlord under written property management
Agreement or power of attorney:     _____ _____
                                   Tenant               Date

By: _____
                                   Tenant               Date

Printed Name: _____     Tenant's Phone & E-Mail

Firm Name: _____     Home          Work          Mobile
Broker's License No.: _____     E-Mail: _____
(TAR-2005) 6-1-10                                                   Page 1 of 1
South Padre Real Estate, Inc. 2600 Padre Blvd, Ste E South Padre Island, TX 78597
Phone: 956-592-4429     Fax: 956.761.4868     Connie Clifton         188 KINGS COUR

Produced with ZipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com     2:17cr390-009747

12-05-2011



PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)
## ONE TO FOUR FAMILY RESIDENTIAL CONTRACT (RESALE)
NOTICE: Not For Use For Condominium Transactions

1. **PARTIES:** The parties to this contract are _____ **KATHERINE S HAUSE** _____ (Seller) and _____ **DAVID KEITH WILLS** *OR Assigned* _____ (Buyer). Seller agrees to sell and convey to Buyer and Buyer agrees to buy from Seller the Property defined below.

2. **PROPERTY:**
   A. LAND: Lot ___13___ Block _____, _____ **KING RESUBDIVISION** Addition, City of _____ **SOUTH PADRE ISLAND** _____, County of _____ **CAMERON** _____, Texas, known as _____ **188 KING'S COURT** _____ **78597** (address/zip code), or as described on attached exhibit.
   B. IMPROVEMENTS: The house, garage and all other fixtures and improvements attached to the above-described real property, including without limitation, the following **permanently installed and built-in items,** if any: all equipment and appliances, valances, screens, shutters, awnings, wall-to-wall carpeting, mirrors, ceiling fans, attic fans, mail boxes, television antennas and satellite dish system and equipment, mounts and brackets for televisions and speakers, heating and air-conditioning units, security and fire detection equipment, wiring, plumbing and lighting fixtures, chandeliers, water softener system, kitchen equipment, garage door openers, cleaning equipment, shrubbery, landscaping, outdoor cooking equipment, and all other property owned by Seller and attached to the above described real property.
   C. ACCESSORIES: The following described related accessories, if any: window air conditioning units, stove, fireplace screens, curtains and rods, blinds, window shades, draperies and rods, door keys, mailbox keys, above ground pool, swimming pool equipment and maintenance accessories, artificial fireplace logs, and controls for: (i) satellite dish systems, (ii) garage doors, (iii) entry gates, and (iv) other improvements and accessories.
   D. EXCLUSIONS: The following improvements and accessories will be retained by Seller and must be removed prior to delivery of possession: **N/A** _____

The land, improvements and accessories are collectively referred to as the "Property".

3. **SALES PRICE:**
   A. Cash portion of Sales Price payable by Buyer at closing ............... $ _____ 140,000.00
   B. Sum of all financing described below (excluding any loan funding fee or mortgage insurance premium) ............................ $ _____ 560,000.00
   C. Sales Price (Sum of A and B) ...................................... $ _____ 700,000.00

4. **FINANCING:** The portion of Sales Price not payable in cash will be paid as follows: (Check applicable boxes below)
   ☒ A. THIRD PARTY FINANCING: One or more third party mortgage loans in the total amount of $ _____ 560,000.00 _____ (excluding any loan funding fee or mortgage insurance premium).
      (1) Property Approval: If the Property does not satisfy the lenders' underwriting requirements for the loan(s), (including, but not limited to appraisal, insurability and lender required repairs), Buyer may terminate this contract by giving notice to Seller prior to closing and the earnest money will be refunded to Buyer.
      (2) Credit Approval: (Check one box only)
         ☒ (a) This contract is subject to Buyer being approved for the financing described in the attached Third Party Financing Addendum for Credit Approval.
         ☐ (b) This contract is not subject to Buyer being approved for financing and does not involve FHA or VA financing.
   ☐ B. ASSUMPTION: The assumption of the unpaid principal balance of one or more promissory notes described in the attached TREC Loan Assumption Addendum.
   ☐ C. SELLER FINANCING: A promissory note from Buyer to Seller of $ _____ , secured by vendor's and deed of trust liens, and containing the terms and conditions described in the attached TREC Seller Financing Addendum. If an owner policy of title insurance is furnished, Buyer shall furnish Seller with a mortgagee policy of title insurance.

TAR 1601    Initialed for identification by Buyer *DKW* _____ and Seller _____    TREC NO. 20-11



12-05-2011

PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)
## ONE TO FOUR FAMILY RESIDENTIAL CONTRACT (RESALE)
NOTICE: Not For Use For Condominium Transactions

1. **PARTIES:** The parties to this contract are _____ KATHERINE S HAUSE _____ (Seller) and _____ DAVID KEITH WILLS , and/or Assigns _____ (Buyer). Seller agrees to sell and convey to Buyer and Buyer agrees to buy from Seller the Property defined below.

2. **PROPERTY:**
   A. LAND: Lot _____ 13 _____ Block _____, _____ KING RESUBDIVISION _____ Addition, City of _____ SOUTH PADRE ISLAND _____, County of _____ CAMERON _____, Texas, known as _____ 188 KING'S COURT _____ 78597 (address/zip code), or as described on attached exhibit.
   B. IMPROVEMENTS: The house, garage and all other fixtures and improvements attached to the above described real property, including without limitation, the following **permanently installed and built-in items**, if any: all equipment and appliances, valances, screens, shutters, awnings, wall-to-wall carpeting, mirrors, ceiling fans, attic fans, mail boxes, television antennas and satellite dish system and equipment, mounts and brackets for televisions and speakers, heating and air-conditioning units, security and fire detection equipment, wiring, plumbing and lighting fixtures, chandeliers, water softener system, kitchen equipment, garage door openers, cleaning equipment, shrubbery, landscaping, outdoor cooking equipment, and all other property owned by Seller and attached to the above described real property.
   C. ACCESSORIES: The following described related accessories, if any: window air conditioning units, stove, fireplace screens, curtains and rods, blinds, window shades, draperies and rods, door keys, mailbox keys, above ground pool, swimming pool equipment and maintenance accessories, artificial fireplace logs, and controls for: (i) satellite dish systems, (ii) garage doors, (iii) entry gates, and (iv) other improvements and accessories.
   D. EXCLUSIONS: The following improvements and accessories will be retained by Seller and must be removed prior to delivery of possession: Fireplace Mantel

   The land, improvements and accessories are collectively referred to as the "Property".

3. **SALES PRICE:**
   A. Cash portion of Sales Price payable by Buyer at closing .............. $ _____ 140,000.00
   B. Sum of all financing described below (excluding any loan funding fee or mortgage insurance premium) ........................ $ _____ 560,000.00
   C. Sales Price (Sum of A and B) ........................................ $ _____ 700,000.00

4. **FINANCING:** The portion of Sales Price not payable in cash will be paid as follows: (Check applicable boxes below)
   ☒ A. THIRD PARTY FINANCING: One or more third party mortgage loans in the total amount of $ 560,000.00 (excluding any loan funding fee or mortgage insurance premium).
      (1) Property Approval: If the Property does not satisfy the lenders' underwriting requirements for the loan(s) (including, but not limited to appraisal, insurability and lender required repairs), Buyer may terminate this contract by giving notice to Seller prior to closing and the earnest money will be refunded to Buyer.
      (2) Credit Approval: (Check one box only)
         ☒ (a) This contract is subject to Buyer being approved for the financing described in the attached Third Party Financing Addendum for Credit Approval.
         ☒ (b) This contract is not subject to Buyer being approved for financing and does not involve FHA or VA financing.
   ☐ B. ASSUMPTION: The assumption of the unpaid principal balance of one or more promissory notes described in the attached TREC Loan Assumption Addendum.
   ☐ C. SELLER FINANCING: A promissory note from Buyer to Seller of $ _____ secured by vendor's and deed of trust liens, and containing the terms and conditions described in the attached TREC Seller Financing Addendum. If an owner policy of title insurance is furnished, Buyer shall furnish Seller with a mortgagee policy of title insurance.

TAR 1601    Initialed for identification by Buyer _____ and Seller _____    TREC NO. 20-11

188 KING'S COURT

Contract Concerning _____SOUTH PADRE ISLAND,    78597_____    Page 2 of 9   12-05 2011
(Address of Property)

**5. EARNEST MONEY:** Upon execution of this contract by all parties, Buyer shall deposit
$10,000.00_____ as earnest money with ____CYNTHIA JNZEK BAY COMPERE___, as escrow agent,
at _____104 W BAHAMA SOUTH PADRE ISLAND, TX 78597_____ (address).
Buyer shall deposit additional earnest money of $_____ with escrow agent within
_____ days after the effective date of this contract. If Buyer fails to deposit the earnest money as required
by this contract, Buyer will be in default.

**6. TITLE POLICY AND SURVEY:**
A. TITLE POLICY: Seller shall furnish to Buyer at ☒ Seller's ☐Buyer's expense an owner policy of
   title insurance (Title Policy) issued by ___1ST AMERICAN TITLE VIA RIO GRAND VALLEY Abstract
   (Title Company) in the amount of the Sales Price, dated at or after closing, insuring Buyer
   against loss under the provisions of the Title Policy, subject to the promulgated exclusions
   (including existing building and zoning ordinances) and the following exceptions:
   (1) Restrictive covenants common to the platted subdivision in which the Property is located.
   (2) The standard printed exception for standby fees, taxes and assessments.
   (3) Liens created as part of the financing described in Paragraph 4.
   (4) Utility easements created by the dedication deed or plat of the subdivision in which the
       Property is located.
   (5) Reservations or exceptions otherwise permitted by this contract or as may be approved by
       Buyer in writing.
   (6) The standard printed exception as to marital rights.
   (7) The standard printed exception as to waters, tidelands, beaches, streams, and related
       matters.
   (8) The standard printed exception as to discrepancies, conflicts, shortages in area or boundary
       lines, encroachments or protrusions, or overlapping improvements, Buyer, at Buyer's
       expense, may have the exception amended to read, "shortages in area".
B. COMMITMENT: Within 20 days after the Title Company receives a copy of this contract,
   Seller shall furnish to Buyer a commitment for title insurance (Commitment) and, at Buyer's
   expense, legible copies of restrictive covenants and documents evidencing exceptions in the
   Commitment (Exception Documents) other than the standard printed exceptions. Seller
   authorizes the Title Company to deliver the Commitment and Exception Documents to Buyer
   at Buyer's address shown in Paragraph 21. If the Commitment and Exception Documents are
   not delivered to Buyer within the specified time, the time for delivery will be automatically
   extended up to 15 days or the Closing Date, whichever is earlier. If, due to factors beyond
   Seller's control, the Commitment and Exception Documents are not delivered within the time
   required, Buyer may terminate this contract and the earnest money will be refunded to
   Buyer.
C. SURVEY: The survey must be made by a registered professional land surveyor acceptable to
   the Title Company and Buyer's lender(s). (Check one box only)
   ☒ (1) Within _____10_____ days after the effective date of this contract, Seller shall furnish to Buyer
          and Title Company Seller's existing survey of the Property and a Residential Real
          Property Affidavit promulgated by the Texas Department of Insurance (T-47 Affidavit).
          If Seller fails to furnish the existing survey or affidavit within the time
          prescribed, Buyer shall obtain a new survey at Seller's expense no later than 3
          days prior to Closing Date. If the existing survey or affidavit is not acceptable to Title
          Company or Buyer's lender(s), Buyer shall obtain a new survey at ☒ Seller's
       ☒ Buyer's expense no later than 3 days prior to Closing Date.
   ☐ (2) Within _____45_____ days after the effective date of this contract, Buyer shall obtain a new
          survey at Buyer's expense. Buyer is deemed to receive the survey on the date of actual
          receipt or the date specified in this paragraph, whichever is earlier.
   ☐ (3) Within _____ days after the effective date of this contract, Seller, at Seller's expense
          shall furnish a new survey to Buyer.
D. OBJECTIONS: Buyer may object in writing to defects, exceptions, or encumbrances to title:
   disclosed on the survey other than items 6A(1) through (7) above; disclosed in the
   Commitment other than items 6A(1) through (8) above; or which prohibit the following use or
   activity: RESIDENTIAL

   Buyer must object the earlier of (i) the Closing Date or (ii) _____7_____ days after Buyer receives
   the Commitment, Exception Documents, and the survey. Buyer's failure to object within the
   time allowed will constitute a waiver of Buyer's right to object; except that the requirements
   in Schedule C of the Commitment are not waived by Buyer. Provided Seller is not obligated
   to incur any expense, Seller shall cure the timely objections of Buyer or any third party

TAR 1601    Initialed for identification by Buyer _____ and Seller _____    TREC NO. 20-11
                                                                            188 KINGS COUR

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

**188 KING'S COURT**

Contract Concerning _____ SOUTH PADRE ISLAND, 78597 _____ Page 3 of 9 12-05-2011
(Address of Property)

lender within 15 days after Seller receives the objections and the Closing Date will be extended as necessary. If objections are not cured within such 15 day period, this contract will terminate and the earnest money will be refunded to Buyer unless Buyer waives the objections.

E. TITLE NOTICES:

(1) ABSTRACT OR TITLE POLICY: Broker advises Buyer to have an abstract of title covering the Property examined by an attorney of Buyer's selection, or Buyer should be furnished with or obtain a Title Policy. If a Title Policy is furnished, the Commitment should be promptly reviewed by an attorney of Buyer's choice due to the time limitations on Buyer's right to object.

(2) MEMBERSHIP IN PROPERTY OWNERS ASSOCIATION(S): The Property ☒ is ☐ is not subject to mandatory membership in a property owners association(s). If the Property is subject to mandatory membership in a property owners association(s), Seller notifies Buyer under §5.012, Texas Property Code, that, as a purchaser of property in the residential community identified in Paragraph 2A in which the Property is located, you are obligated to be a member of the property owners association(s). Restrictive covenants governing the use and occupancy of the Property and all dedicatory instruments governing the establishment, maintenance, and operation of this residential community have been or will be recorded in the Real Property Records of the county in which the Property is located. Copies of the restrictive covenants and dedicatory instrument may be obtained from the county clerk. You are obligated to pay assessments to the property owners association(s). The amount of the assessments is subject to change. Your failure to pay the assessments could result in enforcement of the association's lien on and the foreclosure of the Property.
Section 207.003, Property Code, entitles an owner to receive copies of any document that governs the establishment, maintenance, or operation of a subdivision, including, but not limited to, restrictions, bylaws, rules and regulations, and a resale certificate from a property owners' association. A resale certificate contains information including, but not limited to, statements specifying the amount and frequency of regular assessments and the style and cause number of lawsuits to which the property owners' association is a party, other than lawsuits relating to unpaid ad valorem taxes of an individual member of the association. These documents must be made available to you by the property owners' association or the association's agent on your request.
If Buyer is concerned about these matters, the TREC promulgated Addendum for Property Subject to Mandatory Membership in a Property Owners Association(s) should be used.

(3) STATUTORY TAX DISTRICTS: If the Property is situated in a utility or other statutorily created district providing water, sewer, drainage, or flood control facilities and services, Chapter 49, Texas Water Code, requires Seller to deliver and Buyer to sign the statutory notice relating to the tax rate, bonded indebtedness, or standby fee of the district prior to final execution of this contract.

(4) TIDE WATERS: If the Property abuts the tidally influenced waters of the state, §33.135, Texas Natural Resources Code, requires a notice regarding coastal area property to be included in the contract. An addendum containing the notice promulgated by TREC or required by the parties must be used.

(5) ANNEXATION: If the Property is located outside the limits of a municipality, Seller notifies Buyer under §5.011, Texas Property Code, that the Property may now or later be included in the extraterritorial jurisdiction of a municipality and may now or later be subject to annexation by the municipality. Each municipality maintains a map that depicts its boundaries and extraterritorial jurisdiction. To determine if the Property is located within a municipality's extraterritorial jurisdiction or is likely to be located within a municipality's extraterritorial jurisdiction, contact all municipalities located in the general proximity of the Property for further information.

(6) PROPERTY LOCATED IN A CERTIFICATED SERVICE AREA OF A UTILITY SERVICE PROVIDER: Notice required by §13.257, Water Code: The real property, described in Paragraph 2, that you are about to purchase may be located in a certificated water or sewer service area, which is authorized by law to provide water or sewer service to the properties in the certificated area. If your property is located in a certificated area there may be special costs or charges that you will be required to pay before you can receive water or sewer service. There may be a period required to construct lines or other facilities necessary to provide water or sewer service to your property. You are advised to

TAR 1601    Initialed for identification by Buyer _____ and Seller _____    TREC NO. 20-11

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com    188 KINGS COUR

Contract Concerning _____ **188 KING'S COURT** _____ Page 4 of 9  12-05-2011
**SOUTH PADRE ISLAND,     78597**
(Address of Property)

determine if the property is in a certificated area and contact the utility service provider to determine the cost that you will be required to pay and the period, if any, that is required to provide water or sewer service to your property. The undersigned Buyer hereby acknowledges receipt of the foregoing notice at or before the execution of a binding contract for the purchase of the real property described in Paragraph 2 or at closing of purchase of the real property.

(7) PUBLIC IMPROVEMENT DISTRICTS: If the Property is in a public improvement district, §6.014, Property Code, requires Seller to notify Buyer as follows: As a purchaser of this parcel of real property you are obligated to pay an assessment to a municipality or county for an improvement project undertaken by a public improvement district under Chapter 372, Local Government Code. The assessment may be due annually or in periodic installments. More information concerning the amount of the assessment and the due dates of that assessment may be obtained from the municipality or county levying the assessment. The amount of the assessments is subject to change. Your failure to pay the assessments could result in a lien on and the foreclosure of your property.

(8) TRANSFER FEES: If the Property is subject to a private transfer fee obligation, §5 205, Property Code, requires Seller to notify Buyer as follows: The private transfer fee obligation may be governed by Chapter 5, Subchapter G of the Texas Property Code.

**7. PROPERTY CONDITION:**

A. ACCESS, INSPECTIONS AND UTILITIES: Seller shall permit Buyer and Buyer's agents access to the Property at reasonable times. Buyer may have the Property inspected by inspectors selected by Buyer and licensed by TREC or otherwise permitted by law to make inspections. Seller at Seller's expense shall immediately cause existing utilities to be turned on and shall keep the utilities on during the time this contract is in effect.

B. SELLER'S DISCLOSURE NOTICE PURSUANT TO §5.008, TEXAS PROPERTY CODE (Notice): (Check one box only)
☒ (1) Buyer has received the Notice.
☐ (2) Buyer has not received the Notice. Within _____ days after the effective date of this contract, Seller shall deliver the Notice to Buyer. If Buyer does not receive the Notice, Buyer may terminate this contract at any time prior to the closing and the earnest money will be refunded to Buyer. If Seller delivers the Notice, Buyer may terminate this contract for any reason within 7 days after Buyer receives the Notice or prior to the closing, whichever first occurs, and the earnest money will be refunded to Buyer
☐ (3) The Seller is not required to furnish the notice under the Texas Property Code.

C. SELLER'S DISCLOSURE OF LEAD-BASED PAINT AND LEAD-BASED PAINT HAZARDS is required by Federal law for a residential dwelling constructed prior to 1978.

D. ACCEPTANCE OF PROPERTY CONDITION: (Check one box only)
☒ (1) Buyer accepts the Property in its present condition.
☐ (2) Buyer accepts the Property in its present condition provided Seller, at Seller's expense, shall complete the following specific repairs and treatments. _____ _____ (Do not insert general phrases, such as "subject to inspections" that do not identify specific repairs.)

NOTICE TO BUYER AND SELLER: Buyer's agreement to accept the Property in its present condition under Paragraph 7D(1) or (2) does not preclude Buyer from inspecting the Property under Paragraph 7A, from negotiating repairs or treatments in a subsequent amendment, or from terminating this contract during the Option Period, if any.

E. LENDER REQUIRED REPAIRS AND TREATMENTS: Unless otherwise agreed in writing, neither party is obligated to pay for lender required repairs, which includes treatment for wood destroying insects. If the parties do not agree to pay for the lender required repairs or treatments, this contract will terminate and the earnest money will be refunded to Buyer. If the cost of lender required repairs and treatments exceeds 5% of the Sales Price, Buyer may terminate this contract and the earnest money will be refunded to Buyer.

F. COMPLETION OF REPAIRS AND TREATMENTS: Unless otherwise agreed in writing, Seller shall complete all agreed repairs and treatments prior to the Closing Date. All required permits must be obtained, and repairs and treatments must be performed by persons who are licensed or otherwise authorized by law to provide such repairs or treatments. At Buyer's election, any transferable warranties received by Seller with respect to the repairs and treatments will be transferred to Buyer at Buyer's expense. If Seller fails to complete any agreed repairs and treatments prior to the Closing Date, Buyer may exercise remedies under Paragraph 15 or extend the Closing Date up to 15 days if necessary for Seller to complete the repairs and treatments.

TAR 1601    Initialed for identification by Buyer _____ and Seller _____    TREC NO. 20-11
188 KINGS COUR

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

Contract Concerning _____188 KING'S COURT_____
_____SOUTH PADRE ISLAND, 78597_____    Page 5 of 9 12-05-2011
(Address of Property)

G. ENVIRONMENTAL MATTERS: Buyer is advised that the presence of wetlands, toxic substances, including asbestos and wastes or other environmental hazards, or the presence of a threatened or endangered species or its habitat may affect Buyer's intended use of the Property. If Buyer is concerned about these matters, an addendum promulgated by TREC or required by the parties should be used.

H RESIDENTIAL SERVICE CONTRACTS: Buyer may purchase a residential service contract from a residential service company licensed by TREC. If Buyer purchases a residential service contract, Seller shall reimburse Buyer at closing for the cost of the residential service contract in an amount not exceeding $ 0_____. Buyer should review any residential service contract for the scope of coverage, exclusions and limitations. The purchase of a residential service contract is optional. Similar coverage may be purchased from various companies authorized to do business in Texas.

8. BROKERS' FEES: All obligations of the parties for payment of brokers' fees are contained in separate written agreements.

9. CLOSING:
A. The closing of the sale will be on or before _____January 10_____, _____2012_____, or within 7 days after objections made under Paragraph 6D have been cured or waived, whichever date is later (Closing Date). If either party fails to close the sale by the Closing Date, the non-defaulting party may exercise the remedies contained in Paragraph 15.

B. At closing:
(1) Seller shall execute and deliver a general warranty deed conveying title to the Property to Buyer and showing no additional exceptions to those permitted in Paragraph 6 and furnish tax statements or certificates showing no delinquent taxes on the Property

(2) Buyer shall pay the Sales Price in good funds acceptable to the escrow agent.

(3) Seller and Buyer shall execute and deliver any notices, statements, certificates, affidavits, releases, loan documents and other documents reasonably required for the closing of the sale and the issuance of the Title Policy.

(4) There will be no liens, assessments, or security interests against the Property which will not be satisfied out of the sales proceeds unless securing the payment of any loans assumed by Buyer and assumed loans will not be in default.

(5) If the Property is subject to a lease, Seller shall (i) deliver to Buyer the lease(s) and the move-in condition form signed by the tenant, if any, and (ii) transfer security deposits (as defined under §92.102, Property Code), if any, to Buyer. In such an event, Buyer shall deliver to the tenant a signed statement acknowledging that the Buyer has received the security deposit and is responsible for the return of the security deposit, and specifying the exact dollar amount of the security deposit

10. POSSESSION: Seller shall deliver to Buyer possession of the Property in its present or required condition, ordinary wear and tear excepted: ☐ upon closing and funding ☒ according to a temporary residential lease form promulgated by TREC or other written lease required by the parties. Any possession by Buyer prior to closing or by Seller after closing which is not authorized by a written lease will establish a tenancy at sufferance relationship between the parties. Consult your insurance agent prior to change of ownership and possession because insurance coverage may be limited or terminated. The absence of a written lease or appropriate insurance coverage may expose the parties to economic loss.

11. SPECIAL PROVISIONS: (Insert only factual statements and business details applicable to the sale. TREC rules prohibit licenses from adding factual statements or business details for which a contract addendum or other form has been promulgated by TREC for mandatory use.) Existing fixtures and Appliances including stove, refrigerator, dishwasher, microwave, washer/dryer will convey with the sale. Property will remain on the market, but seller will not show the property to prospective buyers after the expiration of the termination option period.

If seller accepts a written back up contract to purchase the property, seller shall notify buyer in writing; the buyer will be required to waive the 3rd Party Finance Contingency on or before the 3rd calendar day after the the seller's notice to buyer; other wise the contract will terminate automatically and all earnest monies will be refunded to buyer. Contract contingent upon acceptance of attached residential lease.

TAR 1601    Initialed for identification by Buyer _____ and Seller _____    TREC NO. 20-11

188 KINGS COUR

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

09/01/12  05:32 PM    GAITHERSBG    MD    Page 18

**12. SETTLEMENT AND OTHER EXPENSES:**
   A. The following expenses must be paid at or prior to closing:
     (1) Expenses payable by Seller (Seller's Expenses):
       (a) Releases of existing liens, including prepayment penalties and recording fees; release of Seller's loan liability; tax statements or certificates; preparation of deed; one-half of escrow fee; and other expenses payable by Seller under this contract.
       (b) Seller shall also pay an amount not to exceed $ 0 _____ to be applied in the following order: Buyer's Expenses which Buyer is prohibited from paying by FHA, VA, Texas Veterans Land Board or other governmental loan programs, and then to other Buyer's Expenses as allowed by the lender.
     (2) Expenses payable by Buyer (Buyer's Expenses): Appraisal fees; loan application fees; adjusted origination charges; credit reports; preparation of loan documents; interest on the notes from date of disbursement to one month prior to dates of first monthly payments; recording fees; copies of easements and restrictions; loan title policy with endorsements required by lender; loan-related inspection fees; photos; amortization schedules; one-half of escrow fee; all prepaid items, including required premiums for flood and hazard insurance, reserve deposits for insurance, ad valorem taxes and special governmental assessments; final compliance inspection; courier fee; repair inspection; underwriting fee; wire transfer fee; expenses incident to any loan; Private Mortgage Insurance Premium (PMI), VA Loan Funding Fee, or FHA Mortgage Insurance Premium (MIP) as required by the lender; and other expenses payable by Buyer under this contract.
   B. If any expense exceeds an amount expressly stated in this contract for such expense to be paid by a party, that party may terminate this contract unless the other party agrees to pay such excess. Buyer may not pay charges and fees expressly prohibited by FHA, VA, Texas Veterans Land Board or other governmental loan program regulations.

**13. PRORATIONS:** Taxes for the current year, interest, maintenance fees, assessments, dues and rents will be prorated through the Closing Date. The tax proration may be calculated taking into consideration any change in exemptions that will affect the current year's taxes. If taxes for the current year vary from the amount prorated at closing, the parties shall adjust the prorations when tax statements for the current year are available. If taxes are not paid at or prior to closing, Buyer shall pay taxes for the current year.

**14. CASUALTY LOSS:** If any part of the Property is damaged or destroyed by fire or other casualty after the effective date of this contract, Seller shall restore the Property to its previous condition as soon as reasonably possible, but in any event by the Closing Date. If Seller fails to do so due to factors beyond Seller's control, Buyer may (a) terminate this contract and the earnest money will be refunded to Buyer (b) extend the time for performance up to 15 days and the Closing Date will be extended as necessary or (c) accept the Property in its damaged condition with an assignment of insurance proceeds and receive credit from Seller at closing in the amount of the deductible under the insurance policy. Seller's obligations under this paragraph are independent of any other obligations of Seller under this contract.

**15. DEFAULT:** If Buyer fails to comply with this contract, Buyer will be in default, and Seller may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money as liquidated damages, thereby releasing both parties from this contract. If Seller fails to comply with this contract, Seller will be in default and Buyer may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money, thereby releasing both parties from this contract.

**16. MEDIATION:** It is the policy of the State of Texas to encourage resolution of disputes through alternative dispute resolution procedures such as mediation. Any dispute between Seller and Buyer related to this contract which is not resolved through informal discussion ☒ will ☐ will not be submitted to a mutually acceptable mediation service or provider. The parties to the mediation shall bear the mediation costs equally. This paragraph does not preclude a party from seeking equitable relief from a court of competent jurisdiction.

TAR 1601   Initialed for identification by Buyer _OGW_   and Seller _KGH_   TREC NO. 20-11

188 KING'S COURT
Contract Concerning _____ SOUTH PADRE ISLAND, 78597 _____ Page 7 of 9 12-05-2011
(Address of Property)

**17. ATTORNEY'S FEES:** A Buyer, Seller, Listing Broker, Other Broker, or escrow agent who prevails in any legal proceeding related to this contract is entitled to recover reasonable attorney's fees and all costs of such proceeding.

**18. ESCROW:**
  A. **ESCROW:** The escrow agent is not (i) a party to this contract and does not have liability for the performance or nonperformance of any party to this contract, (ii) liable for interest on the earnest money and (iii) liable for the loss of any earnest money caused by the failure of any financial institution in which the earnest money has been deposited unless the financial institution is acting as escrow agent.
  B. **EXPENSES:** At closing, the earnest money must be applied first to any cash down payment, then to Buyer's Expenses and any excess refunded to Buyer. If no closing occurs, escrow agent may: (i) require a written release of liability of the escrow agent from all parties, (ii) require payment of unpaid expenses incurred on behalf of a party, and (iii) only deduct from the earnest money the amount of unpaid expenses incurred on behalf of the party receiving the earnest money.
  C. **DEMAND:** Upon termination of this contract, either party or the escrow agent may send a release of earnest money to each party and the parties shall execute counterparts of the release and deliver same to the escrow agent. If either party fails to execute the release, either party may make a written demand to the escrow agent for the earnest money. If only one party makes written demand for the earnest money, escrow agent shall promptly provide a copy of the demand to the other party. If escrow agent does not receive written objection to the demand from the other party within 15 days, escrow agent may disburse the earnest money to the party making demand reduced by the amount of unpaid expenses incurred on behalf of the party receiving the earnest money and escrow agent may pay the same to the creditors. If escrow agent complies with the provisions of this paragraph, each party hereby releases escrow agent from all adverse claims related to the disbursal of the earnest money.
  D. **DAMAGES:** Any party who wrongfully fails or refuses to sign a release acceptable to the escrow agent within 7 days of receipt of the request will be liable to the other party for liquidated damages in an amount equal to the sum of: (i) three times the amount of the earnest money; (ii) the earnest money; (iii) reasonable attorney's fees; and (iv) all costs of suit.
  E. **NOTICES:** Escrow agent's notices will be effective when sent in compliance with Paragraph 21. Notice of objection to the demand will be deemed effective upon receipt by escrow agent.

**19. REPRESENTATIONS:** All covenants, representations and warranties in this contract survive closing. If any representation of Seller in this contract is untrue on the Closing Date, Seller will be in default. Unless expressly prohibited by written agreement, Seller may continue to show the Property and receive, negotiate and accept back up offers.

**20. FEDERAL TAX REQUIREMENTS:** If Seller is a "foreign person," as defined by applicable law, or if Seller fails to deliver an affidavit to Buyer that Seller is not a "foreign person," then Buyer shall withhold from the sales proceeds an amount sufficient to comply with applicable tax law and deliver the same to the Internal Revenue Service together with appropriate tax forms. Internal Revenue Service regulations require filing written reports if currency in excess of specified amounts is received in the transaction.

**21. NOTICES:** All notices from one party to the other must be in writing and are effective when mailed to, hand-delivered at, or transmitted by facsimile or electronic transmission as follows:

| To Buyer at: _____ | To Seller at: _____ |
|---|---|
| 503 SOUTH POINT DR | 195 ISABELLA POINT DR |
| PORT ISABEL, TX 78578 | PORT ISABEL, TX 78578 |
| | |
| Telephone: _____ | Telephone: _____ |
| Facsimile: _____ | Facsimile: _____ |
| E-mail: _____ | E-mail: _____ |

TAR 1601   Initialed for identification by Buyer _DCW_ and Seller _JGN_   TREC NO. 20-11
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com   188 KINGS COUR
Page 44 of 57                                                                    2:17cr390-009755

188 KING'S COURT

Contract Concerning     **SOUTH PADRE ISLAND,   78597**        Page 8 of 9   12-05-2011
                       (Address of Property)

22. **AGREEMENT OF PARTIES:** This contract contains the entire agreement of the parties and cannot be changed except by their written agreement. Addenda which are a part of this contract are (Check all applicable boxes):

☒ Third Party Financing Addendum for Credit Approval             ☐ Addendum for "Back-Up" Contract

☐ Seller Financing Addendum                            ☒ Addendum for Coastal Area Property

☒ Addendum for Property Subject to Mandatory Membership in a Property Owners Association        ☐ Environmental Assessment, Threatened or Endangered Species and Wetlands Addendum

☐ Buyer's Temporary Residential Lease         ☐ Seller's Temporary Residential Lease

☐ Loan Assumption Addendum                           ☐ Short Sale Addendum

☐ Addendum for Sale of Other Property by Buyer                       ☒ Addendum for Property Located Seaward of the Gulf Intracoastal Waterway

☐ Addendum for Reservation of Oil, Gas and Other Minerals              ☐ Addendum for Seller's Disclosure of Information on Lead-based Paint and Lead-based Paint Hazards as Required by Federal Law

☒ Other (list): **INFO OF BROKERAGE SERVCIES, MUD, TAR 1414, RESIDENT. LEASE**

23. **TERMINATION OPTION:** For nominal consideration, the receipt of which is hereby acknowledged by Seller, and Buyer's agreement to pay Seller $ 100.00 (Option Fee) within 2 days after the effective date of this contract, Seller grants Buyer the unrestricted right to terminate this contract by giving notice of termination to Seller within ___15___ days after the effective date of this contract (Option Period). If no dollar amount is stated as the Option Fee or if Buyer fails to pay the Option Fee to Seller within the time prescribed, this paragraph will not be a part of this contract and Buyer shall not have the unrestricted right to terminate this contract. If Buyer gives notice of termination within the time prescribed, the Option Fee will not be refunded; however, any earnest money will be refunded to Buyer. The Option Fee ☒ will ☐ will not be credited to the Sales Price at closing. **Time is of the essence for this paragraph and strict compliance with the time for performance is required.**

24. **CONSULT AN ATTORNEY:** TREC rules prohibit real estate licensees from giving legal advice. **READ THIS CONTRACT CAREFULLY.** If you do not understand the effect of this contract, consult an attorney BEFORE signing.

Buyer's Attorney is: _____      Seller's Attorney is: _____

Telephone: _____             Telephone: _____

Facsimile: _____              Facsimile: _____

E-mail: _____                  E-mail: _____

EXECUTED the _____ day of _____, _____ (EFFECTIVE DATE).
(BROKER: FILL IN THE DATE OF FINAL ACCEPTANCE.)

Buyer DAVID KEITH WILLS            Seller KATHERINE S HAUSE

Buyer _____          Seller _____

The form of this contract has been approved by the Texas Real Estate Commission. TREC forms are intended for use only by trained real estate licensees. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not intended for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, (512) 936-3000 (http://www.trec.texas.gov) TREC NO. 20-11. This form replaces TREC NO. 20-10.

TAR 1601                                              TREC NO. 20-11
                                                         188 KINGS COUR

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

| Contract Concerning | 188 King's Court<br>South Padre Island   78597<br>(Address of Property) | Page 9 of 9  12-05-2011 |

## BROKER INFORMATION

South Padre Coastal Real Estate
_____
Other Broker Firm          License No.

represents  [X] Buyer only as Buyer's agent
           [ ] Seller as Listing Broker's subagent

Mark Wesley              572-1720
_____
Licensed Supervisor of Associate    Telephone

Connie Clifton           (956) 592-4429
_____
Associate                      Telephone

POB 2048
_____
Other Broker's Address          Facsimile

South Padre Island  TX
_____
City           State    78597  Zip

miticonnie@gmail.com
_____
Associate Email Address

Troy Giles Realty              558083
_____
Listing Broker Firm        License No.

represents  [ ] Seller and Buyer as an intermediary
           [X] Seller only as Seller's agent

Troy Giles              (956) 761-2040
_____
Licensed Supervisor of Associate    Telephone

Deanna Bowman           (956) 346-6244
_____
Listing Associate              Telephone

5813 Padre Blvd          (956) 761-6080
_____
Listing Broker's Office Address    Facsimile

South Padre Island  TX    78597
_____
City           State    Zip

Deanna@TroyGilesRealty.com
_____
Listing Associate's Email Address

_____
Selling Associate              Telephone

_____
Selling Associate's Office Address    Facsimile

_____
City           State    Zip

_____
Selling Associate's Email Address

Listing Broker has agreed to pay Other Broker   3.000%   of the total sales price when the Listing Broker's fee is received. Escrow Agent is authorized and directed to pay other Broker from Listing Broker's fee at closing.

## OPTION FEE RECEIPT

Receipt of $ _____ (Option Fee) in the form of _____ is acknowledged.

_____
Seller or Listing Broker          Date

## CONTRACT AND EARNEST MONEY RECEIPT

Receipt of [ ] Contract and [ ] $ _____ Earnest Money in the form of _____
is acknowledged.
Escrow Agent: _____          Date: _____

By: _____                    _____
                                       Email Address
                                       Telephone: _____
_____
Address                                Facsimile: _____
_____
City           State    Zip

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

TREC NO. 20-11
2:17cr390-009757
Hause King's C



PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)          12-05-2011

## ADDENDUM FOR
## PROPERTY LOCATED SEAWARD OF THE
## GULF INTRACOASTAL WATERWAY
(SECTION 61.025, TEXAS NATURAL RESOURCES CODE)
### TO CONTRACT CONCERNING THE PROPERTY AT

188 KING'S COURT, SOUTH PADRE ISLAND,          78597
(Address of Property)

### DISCLOSURE NOTICE CONCERNING LEGAL AND ECONOMIC RISKS OF PURCHASING COASTAL REAL PROPERTY NEAR A BEACH

WARNING: THE FOLLOWING NOTICE OF POTENTIAL RISKS OF ECONOMIC LOSS TO YOU AS THE PURCHASER OF COASTAL REAL PROPERTY IS REQUIRED BY STATE LAW.

- READ THIS NOTICE CAREFULLY. DO NOT SIGN THIS CONTRACT UNTIL YOU FULLY UNDERSTAND THE RISKS YOU ARE ASSUMING.
- BY PURCHASING THIS PROPERTY, YOU MAY BE ASSUMING ECONOMIC RISKS OVER AND ABOVE THE RISKS INVOLVED IN PURCHASING INLAND REAL PROPERTY.
- IF YOU OWN A STRUCTURE LOCATED ON COASTAL REAL PROPERTY NEAR A GULF COAST BEACH, IT MAY COME TO BE LOCATED ON THE PUBLIC BEACH BECAUSE OF COASTAL EROSION AND STORM EVENTS.
- AS THE OWNER OF A STRUCTURE LOCATED ON THE PUBLIC BEACH, YOU COULD BE SUED BY THE STATE OF TEXAS AND ORDERED TO REMOVE THE STRUCTURE.
- THE COSTS OF REMOVING A STRUCTURE FROM THE PUBLIC BEACH AND ANY OTHER ECONOMIC LOSS INCURRED BECAUSE OF A REMOVAL ORDER WOULD BE SOLELY YOUR RESPONSIBILITY.

The real property described in this contract is located seaward of the Gulf Intracoastal Waterway to its southernmost point and then seaward of the longitudinal line also known as 97 degrees, 12', 19" which runs southerly to the international boundary from the intersection of the centerline of the Gulf Intracoastal Waterway and the Brownsville Ship Channel. If the property is in close proximity to a beach fronting the Gulf of Mexico, the purchaser is hereby advised that the public has acquired a right of use or easement to or over the area of any public beach by prescription, dedication, or presumption, or has retained a right by virtue of continuous right in the public since time immemorial, as recognized in law and custom.

The extreme seaward boundary of natural vegetation that spreads continuously inland customarily marks the landward boundary of the public easement. If there is no clearly marked natural vegetation line, the landward boundary of the easement is as provided by Sections 61.016 and 61.017, Natural Resources Code.

Much of the Gulf of Mexico coastline is eroding at rates of more than five feet per year. Erosion rates for all Texas Gulf property subject to the open beaches act are available from the Texas General Land Office.

State law prohibits any obstruction, barrier, restraint, or interference with the use of the public easement, including the placement of structures seaward of the landward boundary of the easement. OWNERS OF STRUCTURES ERECTED SEAWARD OF THE VEGETATION LINE (OR OTHER APPLICABLE EASEMENT BOUNDARY) OR THAT BECOME SEAWARD OF THE VEGETATION LINE AS A RESULT OF PROCESSES SUCH AS SHORELINE EROSION ARE SUBJECT TO A LAWSUIT BY THE STATE OF TEXAS TO REMOVE THE STRUCTURES.

The purchaser is hereby notified that the purchaser should: (1) determine the rate of shoreline erosion in the vicinity of the real property; and (2) seek the advice of an attorney or other qualified person before executing this contract or instrument of conveyance as to the relevance of these statutes and facts to the value of the property the purchaser is hereby purchasing or contracting to purchase.

Buyer DAVID KEITH WILLS          Seller KATHERINE S HAUSE

Buyer          Seller

This form has been approved by the Texas Real Estate Commission for use with similarly approved or promulgated contract forms. Such approval relates to this form only. TREC forms are intended for use only by trained real estate licensees. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not suitable for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, 512-936-3000 (http://www.trec.texas.gov) TREC No. 34-4. This form replaces TREC No. 34-3.

(TAR 1916) 12-05-2011          TREC No. 34-4
188 KINGS
South Padre Real Estate, Inc. 2600 Padre Blvd, Ste E South Padre Island, TX 78597          Phone: 956-592-4429          Fax: 956.761.4868
Connie Clifton          Page 47 of 57          Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com          2.17cr390-009758



PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)                    12-05-2011

# ADDENDUM FOR
# COASTAL AREA PROPERTY
(SECTION 33.135, TEXAS NATURAL RESOURCES CODE)

## TO CONTRACT CONCERNING THE PROPERTY AT

188 KING'S COURT, SOUTH PADRE ISLAND,   78597
(Address of Property)

### NOTICE REGARDING COASTAL AREA PROPERTY

1. The real property described in and subject to this contract adjoins and shares a common boundary with the tidally influenced submerged lands of the state. The boundary is subject to change and can be determined accurately only by a survey on the ground made by a licensed state land surveyor in accordance with the original grant from the sovereign. The owner of the property described in this contract may gain or lose portions of the tract because of changes in the boundary.

2. The seller, transferor, or grantor has no knowledge of any prior fill as it relates to the property described in and subject to this contract except: N/A

3. State law prohibits the use, encumbrance, construction, or placing of any structure in, on, or over state-owned submerged lands below the applicable tide line, without proper permission.

4. The purchaser or grantee is hereby advised to seek the advice of an attorney or other qualified person as to the legal nature and effect of the facts set forth in this notice on the property described in and subject to this contract. Information regarding the location of the applicable tide line as to the property described in and subject to this contract may be obtained from the surveying division of the General Land Office in Austin.

Buyer DAVID KEITH WILLS                          Seller KATHERINE S HAUSE

Buyer                                            Seller

This form has been approved by the Texas Real Estate Commission for use with similarly approved or promulgated contract forms. Such approval relates to this form only. TREC forms are intended for use only by trained real estate licensees. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not suitable for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, 512-936-3000 (http://www.trec.texas.gov) TREC No. 33-2 This form replaces TREC No. 33-1.

(TAR-1915) 12-05-2011                                          TREC No. 33-2

South Padre Real Estate, Inc. 2600 Padre Blvd, Ste E South Padre Island, TX 78597
Phone: 956-592-4429        Fax: 956.761.4868        Connie Clifton                          188 KINGS COUR
                    Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com
Page 48 of 57                                                           2:17cr390-009759

PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)                     01-07-2017

## ADDENDUM FOR PROPERTY SUBJECT TO MANDATORY MEMBERSHIP IN A PROPERTY OWNERS ASSOCIATION
### (NOT FOR USE WITH CONDOMINIUMS)
ADDENDUM TO CONTRACT CONCERNING THE PROPERTY AT

188 King's Court                                        South Padre Island
_____
(Street Address and City)

King's Landing Homeowners' Association 956-761-6961
_____
(Name of Property Owners Association (Association) and Phone Number)

**A. SUBDIVISION INFORMATION:** "Subdivision Information" means: (i) a current copy of the restrictions applying to the subdivision and bylaws and rules of the Association, and (ii) a resale certificate, all of which are described by Section 207.003 of the Texas Property Code.

(Check only one box):

☐ 1. Within _____ days after the effective date of the contract, Seller shall obtain, pay for, and deliver the Subdivision Information to the Buyer. If Seller delivers the Subdivision Information, Buyer may terminate the contract within 3 days after Buyer receives the Subdivision Information or prior to closing, whichever occurs first, and the earnest money will be refunded to Buyer. If Buyer does not receive the Subdivision Information, Buyer, as Buyer's sole remedy, may terminate the contract at any time prior to closing and the earnest money will be refunded to Buyer.

☒ 2. Within __10__ days after the effective date of the contract, Buyer shall obtain, pay for, and deliver a copy of the Subdivision Information to the Seller. If Buyer obtains the Subdivision Information within the time required, Buyer may terminate the contract within 3 days after Buyer receives the Subdivision Information or prior to closing, whichever occurs first, and the earnest money will be refunded to Buyer. If Buyer, due to factors beyond Buyer's control, is not able to obtain the Subdivision Information within the time required, Buyer may, as Buyer's sole remedy, terminate the contract within 3 days after the time required or prior to closing, whichever occurs first, and the earnest money will be refunded to Buyer.

☐ 3. Buyer has received and approved the Subdivision Information before signing the contract. Buyer ☐ does ☐ does not require an updated resale certificate. If Buyer requires an updated resale certificate, Seller, at Buyer's expense, shall deliver it to Buyer within 10 days after receiving payment for the updated resale certificate from Buyer. Buyer may terminate this contract and the earnest money will be refunded to Buyer if Seller fails to deliver the updated resale certificate within the time required.

☐ 4. Buyer does not require delivery of the Subdivision Information.

The title company or its agent is authorized to act on behalf of the parties to obtain the Subdivision Information ONLY upon receipt of the required fee for the Subdivision Information from the party obligated to pay.

**B. MATERIAL CHANGES.** If Seller becomes aware of any material changes in the Subdivision Information, Seller shall promptly give notice to Buyer. Buyer may terminate the contract prior to closing by giving written notice to Seller if: (i) any of the Subdivision Information provided was not true; or (ii) any material adverse change in the Subdivision Information occurs prior to closing, and the earnest money will be refunded to Buyer.

**C. FEES:** Except as provided by Paragraphs A and D , Buyer shall pay any and all Association fees or other charges associated with the transfer of the Property not to exceed $ 150.00 _____ and Seller shall pay any excess.

**D. DEPOSITS FOR RESERVES:** Buyer shall pay any deposits for reserves required at closing by the Association.

**E. AUTHORIZATION:** Seller authorizes the Association to release and provide the Subdivision Information and any updated resale certificate if requested by the Buyer, the Title Company, or any broker to this sale. If Buyer does not require the Subdivision Information or an updated resale certificate, and the Title Company requires information from the Association (such as the status of dues, special assessments, violations of covenants and restrictions, and a waiver of any right of first refusal), ☒ Buyer ☐ Seller shall pay the Title Company the cost of obtaining the information prior to the Title Company ordering the information.

**NOTICE TO BUYER REGARDING REPAIRS BY THE ASSOCIATION:** The Association may have the sole responsibility to make certain repairs to the Property. If you are concerned about the condition of any part of the Property which the Association is required to repair, you should not sign the contract unless you are satisfied that the Association will make the desired repairs.

_____            _____
Buyer David Keith Wills                   Seller Katherina S. Hause

_____            _____
Buyer                                     Seller

The form of this addendum has been approved by the Texas Real Estate Commission for use only with similarly approved or promulgated forms of contracts. Such approval relates to this contract form only. TREC forms are intended for use only by trained real estate licensees. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not intended for complex transactions. Texas Real Estate Commission P.O. Box 12188, Austin, TX 78711-2188 (512) 936-3000 (www.trec.texas.gov.) TREC No. 36-7 This form replaces TREC No. 36-6

(TAR 1922) 05-07-2012                                          TREC NO. 36-7

Tres Vidas Realty and Management 5511 Padre Blvd, South Padre Island, TX "787"      Phone 416.761.2840   Fax  956.761.6959   Hause King's
Interesa Houston

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

## Notice to Purchasers

The real property, described below, which you are about to purchase is located in the LAGUNA MADRE WATER DISTRICT. The district is a taxing authority separate from any other taxing authority and may, subject to voter approval, issue an unlimited amount of bonds and levy an unlimited rate of tax in payment of such bonds. As of this date, the rate of taxes levied by the district on real property located in the district is $0.0608200 on each $100 of assessed valuation. If the district has not yet levied taxes, the most recent projected rate of debt service tax, as of this date is $0.0608200 on each $100 of assessed valuation. The total amount of bonds which has been approved by the voters and which have been or may, at this date, be issued is $1,862,000.00, and the aggregate initial principal amount of all bonds issued for one or more of the specified facilities of the district and payable in whole or in part from property taxes is $1,862,000.00

The district has the authority to adopt and impose a standby fee on property in the district that has water, sewer, sanitary, or drainage facilities and services available but not connected and which does not have a house, building, or other improvements located thereon and does not substantially utilize the utility capacity available to the property. The district may exercise the authority without holding an election on the matter. As of this date, the amount of the standby fee is $0.00. An unpaid standby fee is a personal obligation of the person that owned the property at the time of imposition and is secured by a lien on the property. Any person may request a certificate from the district stating the amount, if any, of unpaid standby fees on a tract of property in the district.

The purpose of this district is to provide water, sewer, drainage, or flood control facilities and services within the district through the issuance of bonds payable in whole or in part from property taxes. The cost of these utility facilities is not included in the purchase price of your property, and these utility facilities are owned or to be owned by the district. The legal description of the property which you are acquiring is as follows:

_King Resubdivision Lot 13_

_8/22/12_
Date

_[signature]_
Seller

_____
Seller

PURCHASER IS ADVISED THAT THE INFORMATION SHOWN ON THIS FORM IS SUBJECT TO CHANGE BY THE DISTRICT AT ANY TIME. THE DISTRICT ROUTINELY ESTABLISHES TAX RATES DURING THE MONTHS OF SEPTEMBER THROUGH DECEMBER OF EACH YEAR, EFFECTIVE FOR THE YEAR IN WHICH THE TAX RATES ARE APPROVED BY THE DISTRICT. PURCHASER IS ADVISED TO CONTACT THE DISTRICT TO DETERMINE THE STATUS OF ANY CURRENT OR PROPOSED CHANGES TO THE INFORMATION SHOWN ON THIS FORM

The undersigned purchaser hereby acknowledges receipt of the foregoing notice at or prior to execution of a binding contract for the purchase of the real property described in such notice or at closing of purchase of the real property.

_9-1-12_
Date

_[signature]_
Buyer

_____
Buyer

**Approved by the Texas Real Estate Commission for Voluntary Use**
*Texas law requires all real estate licensees to give the following information about brokerage services to prospective buyers, tenants, sellers and landlords.*

10-10-11

# Information About Brokerage Services

**B**efore working with a real estate broker, you should know that the duties of a broker depend on whom the broker represents. If you are a prospective seller or landlord (owner) or a prospective buyer or tenant (buyer), you should know that the broker who lists the property for sale or lease is the owner's agent. A broker who acts as a subagent represents the owner in cooperation with the listing broker. A broker who acts as a buyer's agent represents the buyer. A broker may act as an intermediary between the parties if the parties consent in writing. A broker can assist you in locating a property, preparing a contract or lease, or obtaining financing without representing you. A broker is obligated by law to treat you honestly.

**IF THE BROKER REPRESENTS THE OWNER:**
The broker becomes the owner's agent by entering into an agreement with the owner, usually through a written - listing agreement, or by agreeing to act as a subagent by accepting an offer of subagency from the listing broker. A subagent may work in a different real estate office. A listing broker or subagent can assist the buyer but does not represent the buyer and must place the interests of the owner first. The buyer should not tell the owner's agent anything the buyer would not want the owner to know because an owner's agent must disclose to the owner any material information known to the agent.

**IF THE BROKER REPRESENTS THE BUYER:**
The broker becomes the buyer's agent by entering into an agreement to represent the buyer, usually through a written buyer representation agreement. A buyer's agent can assist the owner but does not represent the owner and must place the interests of the buyer first. The owner should not tell a buyer's agent anything the owner would not want the buyer to know because a buyer's agent must disclose to the buyer any material information known to the agent.

**IF THE BROKER ACTS AS AN INTERMEDIARY:**
A broker may act as an intermediary between the parties if the broker complies with The Texas Real Estate License Act. The broker must obtain the written consent of each party to the transaction to act as an intermediary. The written consent must state who will pay the broker and, in conspicuous bold or underlined print, set forth the broker's obligations as an intermediary. The broker is required to treat each party honestly and fairly and to comply with The Texas Real Estate License Act. A broker who acts as an intermediary in a transaction:

(1) shall treat all parties honestly;

(2) may not disclose that the owner will accept a price less than the asking price unless authorized in writing to do so by the owner;

(3) may not disclose that the buyer will pay a price greater than the price submitted in a written offer unless authorized in writing to do so by the buyer; and

(4) may not disclose any confidential information or any information that a party specifically instructs the broker in writing not to disclose unless authorized in writing to disclose the information or required to do so by The Texas Real Estate License Act or a court order or if the information materially relates to the condition of the property.

With the parties' consent, a broker acting as an intermediary between the parties may appoint a person who is licensed under The Texas Real Estate License Act and associated with the broker to communicate with and carry out instructions of one party and another person who is licensed under that Act and associated with the broker to communicate with and carry out instructions of the other party.

**If you choose to have a broker represent you,** you should enter into a written agreement with the broker that clearly establishes the broker's obligations and your obligations. The agreement should state how and by whom the broker will be paid. You have the right to choose the type of representation, if any, you wish to receive. Your payment of a fee to a broker does not necessarily establish that the broker represents you. If you have any questions regarding the duties and responsibilities of the broker, you should resolve those questions before proceeding.

Real estate licensee asks that you acknowledge receipt of this information about brokerage services for the licensee's records.

_____
Buyer, Seller, Landlord or Tenant

8/27/12
Date

Texas Real Estate Brokers and Salespersons are licensed and regulated by the Texas Real Estate Commission (TREC). If you have a question or complaint regarding a real estate licensee, you should contact TREC at P.O. Box 12188, Austin, Texas 78711-2188 , 512-936-3000 (http://www.trec.texas.gov)

(TAR-2501) 10-10-11                                                TREC No. OP-K

Troy Giles Realty and Management 5813 Padre Blvd South Padre Island, TX 78597
Phone:956-761-2040        Fax: 956.761.6080        Troy Giles                    Untitled

Produced with ZipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

2:17cr390-009762



Approved by the Texas Real Estate Commission for Voluntary Use          10-10-11
*Texas law requires all real estate licensees to give the following information about
brokerage services to prospective buyers, tenants, sellers and landlords.*

# Information About Brokerage Services

**B**efore working with a real estate broker, you should know that the duties of a broker depend on whom the broker represents. If you are a prospective seller or landlord (owner) or a prospective buyer or tenant (buyer), you should know that the broker who lists the property for sale or lease is the owner's agent. A broker who acts as a subagent represents the owner in cooperation with the listing broker. A broker who acts as a buyer's agent represents the buyer. A broker may act as an intermediary between the parties if the parties consent in writing. A broker can assist you in locating a property, preparing a contract or lease, or obtaining financing without representing you. A broker is obligated by law to treat you honestly.

## IF THE BROKER REPRESENTS THE OWNER:

The broker becomes the owner's agent by entering into an agreement with the owner, usually through a written - listing agreement, or by agreeing to act as a subagent by accepting an offer of subagency from the listing broker. A subagent may work in a different real estate office. A listing broker or subagent can assist the buyer but does not represent the buyer and must place the interests of the owner first. The buyer should not tell the owner's agent anything the buyer would not want the owner to know because an owner's agent must disclose to the owner any material information known to the agent.

## IF THE BROKER REPRESENTS THE BUYER:

The broker becomes the buyer's agent by entering into an agreement to represent the buyer, usually through a written buyer representation agreement. A buyer's agent can assist the owner but does not represent the owner and must place the interests of the buyer first. The owner should not tell a buyer's agent anything the owner would not want the buyer to know because a buyer's agent must disclose to the buyer any material information known to the agent.

## IF THE BROKER ACTS AS AN INTERMEDIARY:

A broker may act as an intermediary between the parties if the broker complies with The Texas Real Estate License Act. The broker must obtain the written consent of each party to the transaction to act as an intermediary. The written consent must state who will pay the broker and, in conspicuous bold or underlined print, set forth the broker's obligations as an intermediary. The broker is required to treat each party honestly and fairly and to comply with The Texas Real Estate License Act. A broker who acts as an intermediary in a transaction:

(1) shall treat all parties honestly;

(2) may not disclose that the owner will accept a price less than the asking price unless authorized in writing to do so by the owner;

(3) may not disclose that the buyer will pay a price greater than the price submitted in a written offer unless authorized in writing to do so by the buyer; and

(4) may not disclose any confidential information or any information that a party specifically instructs the broker in writing not to disclose unless authorized in writing to disclose the information or required to do so by The Texas Real Estate License Act or a court order or if the information materially relates to the condition of the property.

With the parties' consent, a broker acting as an intermediary between the parties may appoint a person who is licensed under The Texas Real Estate License Act and associated with the broker to communicate with and carry out instructions of one party and another person who is licensed under that Act and associated with the broker to communicate with and carry out instructions of the other party.

**If you choose to have a broker represent you,** you should enter into a written agreement with the broker that clearly establishes the broker's obligations and your obligations. The agreement should state how and by whom the broker will be paid. You have the right to choose the type of representation, if any, you wish to receive. Your payment of a fee to a broker does not necessarily establish that the broker represents you. If you have any questions regarding the duties and responsibilities of the broker, you should resolve those questions before proceeding.

---

Real estate licensee asks that you acknowledge receipt of this information about brokerage services for the licensee's records.

_D-PKwills_
_____          _____
Buyer, Seller, Landlord or Tenant                              Date

Texas Real Estate Brokers and Salespersons are licensed and regulated by the Texas Real Estate Commission (TREC). If you have a question or complaint regarding a real estate licensee, you should contact TREC at P.O. Box 12188, Austin, Texas 78711-2188 , 512-936-3000 (http://www.trec.texas.gov)

(TAR-2501) 10-10-11                                                                          TREC No. OP-K

South Padre Real Estate, Inc. 2600 Padre Blvd, Ste E South Padre Island, TX 78597                    188 KINGS COUR
Phone: 956-592-4429          Fax: 956.761.4868          Connie Clifton
Page 52 of 57 Produced with ZipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com  2:17cr390-009763



12-05-2011

PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)

## THIRD PARTY FINANCING ADDENDUM FOR CREDIT APPROVAL

TO CONTRACT CONCERNING THE PROPERTY AT

188 KING'S COURT                    SOUTH PADRE ISLAND
(Street Address and City)

Buyer shall apply promptly for all financing described below and make every reasonable effort to obtain credit approval for the financing (Credit Approval). Buyer shall furnish all information and documents required by lender for Credit Approval. Credit Approval will be deemed to have been obtained when (1) the terms of the loan(s) described below are available and (2) lender determines that Buyer has satisfied all of lender's requirements related to Buyer's assets, income and credit history. If Buyer cannot obtain Credit Approval, Buyer may give written notice to Seller within ___45___ days after the effective date of this contract and this contract will terminate and the earnest money will be refunded to Buyer. **If Buyer does not give such notice within the time required, this contract will no longer be subject to Credit Approval. Time is of the essence for this paragraph and strict compliance with the time for performance is required.**

*NOTE: Credit Approval does not include approval of lender's underwriting requirements for the Property, as specified in Paragraph 4 A (1) of the contract.*

Each note must be secured by vendor's and deed of trust liens.

**CHECK APPLICABLE BOXES:**

☒ **A. CONVENTIONAL FINANCING·**

☒ (1) A first mortgage loan in the principal amount of $ 560,000.00 _____ (excluding any financed PMI premium), due in full in _____30_____ year(s), with interest not to exceed ___5.000___ % per annum for the first ___30___ year(s) of the loan with Adjusted Origination Charges as shown on Buyer's Good Faith Estimate for the loan not to exceed ___1.000___ % of the loan.

☐ (2) A second mortgage loan in the principal amount of $ _____ (excluding any financed PMI premium), due in full in _____ year(s), with interest not to exceed _____ % per annum for the first _____ year(s) of the loan with Adjusted Origination Charges as shown on Buyer's Good Faith Estimate for the loan not to exceed _____ % of the loan.

☐ **B. TEXAS VETERANS LOAN:** A loan(s) from the Texas Veterans Land Board of $ _____ for a period in the total amount of _____ years at the interest rate established by the Texas Veterans Land Board.

☐ **C. FHA INSURED FINANCING:** A Section _____ FHA insured loan of not less than $ _____ (excluding any financed MIP), amortizable monthly for not less than _____ years, with interest not to exceed _____ % per annum for the first _____ year(s) of the loan with Adjusted Origination Charges as shown on Buyer's Good Faith Estimate for the loan not to exceed _____ % of the loan. As required by HUD-FHA, if FHA valuation is unknown, *"it is expressly agreed that, notwithstanding any other provision of this contract, the purchaser (Buyer) shall not be obligated to complete the purchase of the Property described herein or to incur any penalty by forfeiture of earnest money deposits or otherwise unless the purchaser (Buyer) has been given in accordance with HUD/FHA or VA requirements a written statement issued by the Federal Housing Commissioner, Department of Veterans Affairs, or a Direct Endorsement Lender setting forth the appraised value of the Property of not less than $ _____ . The purchaser (Buyer) shall have the privilege and option of proceeding with consummation of the contract without regard to the amount of the*

TAR 1901 12-05-2011    Initialed for identification by Buyer ⟨signature⟩ and Seller ⟨signature⟩    TREC NO. 40-5

South Padre Real Estate, Inc. 2600 Padre Blvd. Ste E South Padre Island, TX 78597    188 KINGS COUR
Phone 956 592-4429    Fax 956 761-4868    Connie Clifton
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com

Page 53 of 57    2:17cr390-009764

09/01/12    05:29 PM    GAITHERSBG    MD    Page 11

Third Party Financing Condition Addendum Concerning                    Page 2 of 2   12-05-2011

188 King's Court, South Padre Island,   78597
(Address of Property)

*appraised valuation. The appraised valuation is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will insure. HUD does not warrant the value or the condition of the Property. The purchaser (Buyer) should satisfy himself/herself that the price and the condition of the Property are acceptable."*

☐ D.  VA GUARANTEED FINANCING: A VA guaranteed loan of not less than $ _____ (excluding any financed Funding Fee), amortizable monthly for not less than _____ years, with interest not to exceed _____ % per annum for the first _____ year(s) of the loan with Adjusted Origination Charges as shown on Buyer's Good Faith Estimate for the loan not to exceed _____ % of the loan.

VA NOTICE TO BUYER: *"It is expressly agreed that, notwithstanding any other provisions of this contract, the Buyer shall not incur any penalty by forfeiture of earnest money or otherwise or be obligated to complete the purchase of the Property described herein, if the contract purchase price or cost exceeds the reasonable value of the Property established by the Department of Veterans Affairs. The Buyer shall, however, have the privilege and option of proceeding with the consummation of this contract without regard to the amount of the reasonable value established by the Department of Veterans Affairs."*

If Buyer elects to complete the purchase at an amount in excess of the reasonable value established by VA, Buyer shall pay such excess amount in cash from a source which Buyer agrees to disclose to the VA and which Buyer represents will not be from borrowed funds except as approved by VA. If VA reasonable value of the Property is less than the Sales Price, Seller may reduce the Sales Price to an amount equal to the VA reasonable value and the sale will be closed at the lower Sales Price with proportionate adjustments to the down payment and the loan amount.

Buyer hereby authorizes any lender to furnish to the Seller or Buyer or their representatives information relating only to the status of Credit Approval of Buyer.

_____          _____
Buyer David Keith Wills                            Seller Katherine S. Hause

_____          _____
Buyer And/Or Assigns                                Seller

This form has been approved by the Texas Real Estate Commission for use with similarly approved or promulgated contract forms. Such approval relates to this form only. TREC forms are intended for use only by trained real estate licensees. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not intended for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, (512) 936-3000 (http://www.trec.texas.gov) TREC No. 40-5. This form replaces TREC No. 40-4.

TAR 1901 12-05-2011                                                            TREC NO. 40-5

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

Hause King's C
2:17cr390-009765

Third Party Financing Condition Addendum Concerning                   Page 2 of 2  12-05-2011

188 KING'S COURT, SOUTH PADRE ISLAND,   78597
(Address of Property)

*appraised valuation. The appraised valuation is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will insure. HUD does not warrant the value or the condition of the Property. The purchaser (Buyer) should satisfy himself/herself that the price and the condition of the Property are acceptable."*

☐ D.   VA GUARANTEED FINANCING: A VA guaranteed loan of not less than $ _____
(excluding any financed Funding Fee), amortizable monthly for not less than _____ years, with interest not to exceed _____ % per annum for the first _____ year(s) of the loan with Adjusted Origination Charges as shown on Buyer's Good Faith Estimate for the loan not to exceed _____ % of the loan.

VA NOTICE TO BUYER: *"It is expressly agreed that, notwithstanding any other provisions of this contract, the Buyer shall not incur any penalty by forfeiture of earnest money or otherwise or be obligated to complete the purchase of the Property described herein, if the contract purchase price or cost exceeds the reasonable value of the Property established by the Department of Veterans Affairs. The Buyer shall, however, have the privilege and option of proceeding with the consummation of this contract without regard to the amount of the reasonable value established by the Department of Veterans Affairs."*

If Buyer elects to complete the purchase at an amount in excess of the reasonable value established by VA, Buyer shall pay such excess amount in cash from a source which Buyer agrees to disclose to the VA and which Buyer represents will not be from borrowed funds except as approved by VA. If VA reasonable value of the Property is less than the Sales Price, Seller may reduce the Sales Price to an amount equal to the VA reasonable value and the sale will be closed at the lower Sales Price with proportionate adjustments to the down payment and the loan amount.

Buyer hereby authorizes any lender to furnish to the Seller or Buyer or their representatives information relating only to the status of Credit Approval of Buyer.

_____                   _____
Buyer DAVID KEITH WILLS                            Seller KATHERINE S HAUSE


_____                   _____
Buyer                                              Seller

---

This form has been approved by the Texas Real Estate Commission for use with similarly approved or promulgated contract forms. Such approval relates to this form only. TREC forms are intended for use only by trained real estate licensees. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not intended for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, (512) 936-3000 (http://www.trec.texas.gov) TREC No. 40-5. This form replaces TREC No. 40-4.

TAR 1901 12-05-2011                                                      TREC NO. 40-5

Jan.12.2010  10:02 PM



TEXAS ASSOCIATION OF REALTORS®
# INFORMATION ABOUT SPECIAL FLOOD HAZARD AREAS

USE OF THIS FORM BY PERSONS WHO ARE NOT MEMBERS OF THE TEXAS ASSOCIATION OF REALTORS® IS NOT AUTHORIZED
©Texas Association of REALTORS, Inc. 2008

CONCERNING THE PROPERTY AT _____ 188 King's Court
South Padre Island,

## A. FLOOD AREAS:

(1) The Federal Emergency Management Agency (FEMA) designates areas that have a high risk of flooding as special flood hazard areas.

(2) A property that is in a special flood hazard area lies in a "V-Zone" or "A-Zone" as noted on flood insurance rate maps. Both V-Zone and A-Zone areas are areas with high risk of flooding. The V-Zone is the area of highest risk.

(3) Some properties may also lie in the "floodway" which is the channel of a river or other watercourse and the adjacent land areas that must be reserved in order to discharge a flood under FEMA rules. Communities must regulate development in these floodways.

## B. AVAILABILITY OF FLOOD INSURANCE:

(1) Generally flood insurance is available regardless of whether the property is located in or out of a special flood hazard area. Contact your insurance agent to determine if any limitations or restrictions apply to the property in which you are interested.

(2) FEMA encourages every property owner to purchase flood insurance regardless of whether the property is in a high, moderate, or low risk flood area.

(3) A homeowner may obtain flood insurance coverage (up to certain limits) through the National Flood Insurance Program. Supplemental coverage is available through private insurance carriers.

(4) A mortgage lender making a federally related mortgage will require the borrower to maintain flood insurance if the property is in a special flood hazard area.

## C. GROUND FLOOR REQUIREMENTS:

(1) Many homes in special flood hazard areas are built-up or are elevated. In elevated homes the ground floor typically lies below the base flood elevation and the first floor is elevated on piers, columns, posts, or piles. The base flood elevation is the highest level at which a flood is likely to occur as shown on flood insurance rate maps.

(2) Federal, state, county, and city regulations:
   (a) restrict the use and construction of any ground floor enclosures in elevated homes that are in special flood hazard areas; and
   (b) may prohibit or restrict the remodeling, rebuilding, and redevelopment of property and improvements in the floodway.

(3) The first floor of all homes must now be built above the base flood elevation.
   (a) Older homes may have been built in compliance with applicable regulations at the time of construction and may have first floors that lie below the base flood elevation, but flood insurance rates for such homes may be significant.
   (b) It is possible that modifications were made to a ground floor enclosure after a home was first built. The modifications may or may not comply with applicable regulations and may or may not affect flood insurance rates.
   (c) It is important for a buyer to determine if the first floor of a home is elevated at or above the base flood elevation. It is also important for a buyer to determine if the property lies in a floodway.

Page 1 of 2

(TAR 1414) 7-16-08                                                                                              188 King's

Phone: 956-761-5504            Fax: 956-761-5500

The West Group, Ltd. Management 1110 Padre Blvd. South Padre Island TX 78597        Produced with ZipForm® by zipLogix   18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

GAITHERSBG  MD

Jan.12.2010 10:02 PM

188 King's Court
South Padre Island,

Information about Special Flood Hazard Areas concerning

(4) Ground floor enclosures that lie below the base flood elevation may be used only for: (i) parking; (ii) storage; and (iii) building access. Plumbing, mechanical, or electrical items in ground floor enclosures that lie below the base flood elevation may be prohibited or restricted and may not be eligible for flood insurance coverage. Additionally:
(a) in A-Zones, the ground floor enclosures below the base flood elevation must have flow-through vents or openings that permit the automatic entry and exit of floodwaters;
(b) In V-Zones, the ground floor enclosures must have break-away walls, screening, or lattice walls; and
(c) in floodways, the remodeling or reconstruction of any improvements may be prohibited or otherwise restricted.

D. COMPLIANCE:

(1) The above-referenced property may or may not comply with regulations affecting ground floor enclosures below the base flood elevation.

(2) A property owner's eligibility to purchase or maintain flood insurance, as well as the cost of the flood insurance, is dependent on whether the property complies with the regulations affecting ground floor enclosures.

(3) A purchaser or property owner may be required to remove or modify a ground floor enclosure that is not in compliance with city or county building requirements or is not entitled to an exemption from such requirements.

(4) A flood insurance policy maintained by the current property owner does not mean that the property is in compliance with the regulations affecting ground floor enclosures or that the buyer will be able to continue to maintain flood insurance at the same rate.

(5) Insurance carriers calculate the cost of flood insurance using a rate that is based on the elevation of the lowest floor.
(a) if the ground floor lies below the base flood elevation and does not meet federal, state, county, and city requirements, the ground floor will be the lowest floor for the purpose of computing the rate;
(b) if the property is in compliance, the first elevated floor will be the lowest floor and the insurance rate will be significantly less than the rate for a property that is not in compliance;
(c) if the Property lies in a V-Zone the flood insurance rate will be impacted if a ground floor enclosure below the base flood elevation exceeds 299 square feet (even if constructed with break-away walls);

You are encouraged to:
(1) inspect the property for all purposes, including compliance with any ground floor enclosure requirement;
(2) review the flood insurance policy (costs and coverage) with your insurance agent; and
(3) contact the building permitting authority if you have any questions about building requirements or compliance issues.

Receipt acknowledged by:

_____  _____    _____  9/10/12
Signature          Date      Signature           Date

(TAR-1414) 7-16-08

Produced with ZipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

Page 2 of 2

House King's1'

Page 57 of 57
09/01/12  05:30 PM

GAITHERSBG  MD

2:17cr390-009768
Page 13

# EXHIBIT 20.1



## TEXAS ASSOCIATION OF REALTORS®
## RESIDENTIAL LEASE

USE OF THIS FORM BY PERSONS WHO ARE NOT MEMBERS OF THE TEXAS ASSOCIATION OF REALTORS® IS NOT AUTHORIZED.
©Texas Association of REALTORS®, Inc. 2012

**1. PARTIES:** The parties to this lease are:

the owner of the Property, Landlord,: _____ **Katherine Hause** ; and

Tenant(s): **David Keith Wills**

**2. PROPERTY:** Landlord leases to Tenant the following real property:

Address: **188 King's Court, South Padre Island, TX  78597**

legally described as: **King's Resubdivision Lot 13  (CAB 1 Slot 1599-A CCMR)**

in **Cameron** County, Texas, together with the following non-real-property items: **stove, refrigerator, dishwasher, microwave, washer/dryer**

The real property and the non-real-property are collectively called the "Property".

**3. TERM:**

A. <u>Primary Term</u>: The primary term of this lease begins and ends as follows:

Commencement Date: **March 28, 2012** Expiration Date: **September 30, 2012** .

B. <u>Delay of Occupancy</u>: Tenant must occupy the Property within 5 days after the Commencement Date. If Tenant is unable to occupy the Property by the 5th day after the Commencement Date because of construction on the Property or a prior tenant's holding over of the Property, Tenant may terminate this lease by giving written notice to Landlord before the Property becomes available to be occupied by Tenant, and Landlord will refund to Tenant the security deposit and any rent paid. Landlord will abate rent on a daily basis for a delay caused by construction or a prior tenant's holding over. This paragraph does not apply to any delay in occupancy caused by cleaning, repairs, or make-ready items.

**4. AUTOMATIC RENEWAL AND NOTICE OF TERMINATION:**

A. This lease automatically renews on a month-to-month basis unless Landlord or Tenant provides the other party <u>written</u> notice of termination no less than: *(Check only one box.)*

☒ (1) 30 days before the Expiration Date.

☐ (2) _____ days before the Expiration Date.

B. If this lease automatically renews on a month-to-month basis, it will continue to renew on a month-to-month basis until either party provides <u>written</u> notice of termination to the other party and the notice of termination will be effective: *(Check only one box.)*

☐ (1) on the last day of the month following the month in which the notice is given. Landlord is not obligated to prorate rent even if Tenant surrenders the Property before the termination date.

☒ (2) on the date designated in the notice but not sooner than 30 days after the notice is given and, if necessary, rent will be prorated on a daily basis.

(TAR-2001) 1-1-12       Tenants: _____, _____, _____, _____    & Landlord or Landlord's Representative: _____    Page 1 of 15

GOVERNMENT
EXHIBIT
20.1
17cr390

Residential Lease concerning: _____
188 King's Court
South Padre Island, TX  78597

C. Oral notice of termination is not sufficient under any circumstances. Time is of the essence for providing notice of termination (strict compliance with dates by which notice must be provided is required). The date on which rent is due does not apply to the requirement for providing written notice of termination. If a box is not checked under Paragraph 4A, Paragraph 4A(1) will apply. If a box is not checked under Paragraph 4B, Paragraph 4B(1) will apply.

## 5. RENT:

A. Monthly Rent: Tenant will pay Landlord monthly rent in the amount of $ 3,500.00 _____ for each full month during this lease. The first full month's rent is due and payable not later than _____ March 28, 2012 _____ by (select one or more): ☒ cashier's check ☐ electronic payment ☐ money order ☒ personal check or ☒ other means acceptable to Landlord.
   Thereafter, Tenant will pay the monthly rent so that Landlord receives the monthly rent on or before:
   ☒ (1) the first day of each month during this lease.
   ☐ (2) _____
   Weekends, holidays, and mail delays do not excuse Tenant's obligation to timely pay rent. $452.00

B. Prorated Rent: On or before _____ March 28, 2012 _____ Tenant will pay Landlord $467.00 prorated rent from the Commencement Date through the last day of the month in which this lease begins.

C. Place of Payment: Unless this lease provides otherwise, Tenant will remit all amounts due to Landlord under this lease to the following person or entity at the place stated and make all payments payable to the named person or entity. Landlord may later designate, in writing, another person or place to which Tenant must remit amounts due under this lease.
   Name:   Katherine Hause
   Address: 195 Isabella Point Drive
   Port Isabel, TX 78597
   Notice: Place the Property address and Tenant's name on all payments.

D. Method of Payment:
   (1) Tenant must pay all rent timely and without demand, deduction, or offset, except as permitted by law or this lease.
   (2) Time is of the essence for the payment of rent (strict compliance with rental due dates is required).
   (3) Unless the parties agree otherwise, Tenant may not pay rent in cash and will pay all rent by (select one or more): ☒ cashier's check ☐ electronic payment ☒ money order ☒ personal check or ☒ other means acceptable to Landlord.
   (4) Landlord ☒ requires ☐ does not require Tenant(s) to pay monthly rents by one payment.
   (5) If Tenant fails to timely pay any amounts due under this lease or if any check of Tenant is not honored by the institution on which it was drawn, Landlord may require Tenant to pay such amount and any subsequent amounts under this lease in certified funds. This paragraph does not limit Landlord from seeking other remedies under this lease for Tenant's failure to make timely payments with good funds.

E. Rent Increases: There will be no rent increases through the primary term. Landlord may increase the rent that will be paid during any month-to-month renewal period by providing at least 30 days written notice to Tenant.

## 6. LATE CHARGES:

A. If Landlord does not actually receive a rent payment in the full amount at the designated place of payment by the ___3rd___ day of each month at 11:59pm, Tenant will pay Landlord for each late payment:

(TAR-2001) 1-1-12      Tenants: _____, _____, _____, & Landlord or Landlord's Representative: _____, _____      Page 2 of 15

Residential Lease concerning: _____ 188 King's Court
South Padre Island, TX  78597 _____

(1) an initial late charge equal to (check one box only): ☒ (a) $ 35.00 _____ ; or ☐ (b) _____ % of one month's rent; and

(2) additional late charges of $ 10.00 _____ per day thereafter until rent and late charges are paid in full. Additional late charges for any one payment may not exceed more than 30 days.

**Notice: §92.019, Property Code prohibits assessing a late fee until rent has remained unpaid for at least one full day after the date on which the rent is due.**

B. For the purposes of paying rent and any late charges, the mailbox is not the agent for receipt for Landlord (the postmark date is not the date Landlord receives the payment). The parties agree that the late charge is based on a reasonable estimate of uncertain damages to the Landlord that are incapable of precise calculation and result from late payment of rent. Landlord's acceptance of a late charge does not waive Landlord's right to exercise remedies under Paragraph 27.

7. **RETURNED PAYMENT:** Tenant will pay Landlord $ 50.00 _____ for each payment Tenant tenders to Landlord which is returned or not honored by the institution on which it is drawn for any reason, plus any late charges until Landlord receives payment. Tenant must make any returned payment good by paying such amount(s) plus any associated charges in certified funds.

8. **APPLICATION OF FUNDS:** Regardless of any notation on a payment, Landlord may apply funds received from Tenant first to any non-rent obligations of Tenant, including but not limited to, late charges, returned payment charges, repairs, brokerage fees, periodic utilities, pet charges, and then to rent.

9. **PETS:**

A. Unless the parties agree otherwise in writing, Tenant may not permit, even temporarily, any pet on the Property (including but not limited to any mammal, reptile, bird, fish, rodent, or insect).

B. If Tenant violates this Paragraph 9 or any agreement to keep a pet on the Property, Landlord may take all or any of the following action:
(1) declare Tenant to be in default of this lease and exercise Landlord's remedies under Paragraph 27;
(2) charge Tenant, as additional rent, an initial amount of $ 500.00 _____ and $ 10.00 _____ per day thereafter per pet for each day Tenant violates the pet restrictions;
(3) remove or cause to be removed any unauthorized pet and deliver it to appropriate local authorities by providing at least 24-hour written notice to Tenant of Landlord's intention to remove the unauthorized pet; and
(4) charge to Tenant the Landlord's cost to:
(a) remove any unauthorized pet;
(b) exterminate the Property for fleas and other insects;
(c) clean and deodorize the Property's carpets and drapes; and
(d) repair any damage to the Property caused by the unauthorized pet.

C. When taking any action under Paragraph 9B Landlord will not be liable for any harm, injury, death, or sickness to any pet.

10. **SECURITY DEPOSIT:**

A. Security Deposit: On or before execution of this lease, Tenant will pay a security deposit to Landlord in the amount of $ 4,500.00 _____ by (select one or more): ☒ cashier's check  ☐ electronic payment ☒ money order  ☒ personal check or  ☒ other means acceptable to Landlord. "Security deposit" has the meaning assigned to that term in §92.102, Property Code.

(TAR-2001) 1-1-12    Tenants: _____ , _____ , _____ , _____ & Landlord or Landlord's Representative: _____    Page 3 of 15

Residential Lease concerning: _____188 King's Court_____
South Padre Island, TX  78597

B. <u>Interest</u>: No interest or income will be paid to Tenant on the security deposit. Landlord may place the security deposit in an interest-bearing or income-producing account and any interest or income earned will be paid to Landlord or Landlord's representative.

C. <u>Refund</u>: <u>Tenant must give Landlord at least thirty (30) days written notice of surrender before Landlord is obligated to account for or refund the security deposit. Any refund of the security deposit will be made payable to all Tenants named in this lease.</u>

**Notices about Security Deposits:**
(1) §92.108, Property Code provides that a tenant may not withhold payment of any portion of the last month's rent on grounds that the security deposit is security for unpaid rent.
(2) Bad faith violations of §92.108 may subject a tenant to liability up to 3 times the rent wrongfully withheld and the landlord's reasonable attorney's fees.
(3) The Property Code does not obligate a landlord to return or account for the security deposit until the tenant surrenders the Property and gives the landlord a written statement of the tenant's forwarding address, after which the landlord has 30 days in which to account.
(4) "Surrender" is defined in Paragraph 16 of this lease.
(5) One may view the Texas Property Code at the Texas Legislature's website which, as of the date shown in the lower left-hand corner of this form, is http://www.statutes.legis.state.tx.us/ .

D. <u>Deductions</u>:

(1) Landlord may deduct reasonable charges from the security deposit for:
    (a) damages to the Property, excluding normal wear and tear, and all reasonable costs associated to repair the Property;
    (b) costs for which Tenant is responsible to clean, deodorize, exterminate, and maintain the Property;
    (c) unpaid or accelerated rent;
    (d) unpaid late charges;
    (e) unpaid utilities and utility expenses Landlord incurs to maintain utilities to the Property as required by this Lease;
    (f) unpaid pet charges;
    (g) replacing unreturned keys, garage door openers, security devices, or other components;
    (h) the removal of unauthorized locks or fixtures installed by Tenant;
    (i) Landlord's cost to access the Property if made inaccessible by Tenant;
    (j) missing or burned-out light bulbs and fluorescent tubes (at the same location and of the same type and quality that are in the Property on the Commencement Date);
    (k) packing, removing, and storing abandoned property;
    (l) removing abandoned or illegally parked vehicles;
    (m) costs of reletting (as defined in Paragraph 27), if Tenant is in default;
    (n) attorney's fees, costs of court, costs of service, and other reasonable costs incurred in any legal proceeding against Tenant;
    (o) mailing costs associated with sending notices to Tenant for any violations of this lease;
    (p) any other unpaid charges or fees or other items for which Tenant is responsible under this lease;
    (q) cost to restore walls, flooring, landscaping or any alteration to the Property not approved in writing by Landlord; and
    (r) damages to the Property caused by smoking, including but not limited to stains, burns, odors, and removal of debris.

(2) If deductions exceed the security deposit, Tenant will pay to Landlord the excess within 10 days after Landlord makes written demand.

(TAR-2001) 1-1-12      Tenants: _____, _____, _____, _____  & Landlord or Landlord's Representative: _____      Page 4 of 15

Residential Lease concerning: _____
188 King's Court
South Padre Island, TX  78597

## 11. UTILITIES:

A. Tenant will pay all connection fees, service fees, usage fees, and all other costs and fees for all utilities to the Property (for example, electricity, gas, water, wastewater, garbage, telephone, alarm monitoring systems, cable, and Internet connections) except the following which Landlord will pay: <u>electricity, cable, water,</u> <u>trash, wi-fi, yard maintenance, pool maintenance, hoa fees,</u> *Tenants will* *pay electric in excess of $450 per month.* Unless otherwise agreed, amounts under this paragraph are payable directly to the service providers. *DW*

B. Unless provided by Landlord, Tenant must, at a minimum, keep the following utilities on, if available, at all times this lease is in effect: gas; electricity; water; wastewater; and garbage services.

**Notice: Before signing this lease, Tenant should determine if all necessary utilities are available to the Property and are adequate for Tenant's use.**

## 12. USE AND OCCUPANCY:

A. <u>Occupants</u>: Tenant may use the Property as a private residence only. The only persons Tenant may permit to reside on the Property during the term of this lease are (*include names and ages of all occupants*): <u>Self - David Wills, 59</u> <u>Wife - Lori White Wills, 53</u>

B. <u>Phone Numbers and E-mail</u>: Tenant must promptly inform Landlord of any changes in Tenant's phone numbers (home, work, and mobile) and e-mail not later than 5 days after a change.

C. <u>HOA Rules</u>: Tenant must comply with any owners' association rules or restrictive covenants affecting the Property. Tenant will reimburse Landlord for any fines or other charges assessed against Landlord for violations by Tenant of any owners' association rule or restrictive covenant.

D. <u>Prohibitions</u>: Unless otherwise authorized by this lease, Tenant may not install or permit any of the following on the Property, even temporarily: a spa, hot tub, above-ground pool, trampoline, or any item which causes a suspension or cancellation of insurance coverage or an increase in insurance premiums. Tenant may not permit any part of the Property to be used for: (1) any activity which is a nuisance, offensive, noisy, or dangerous; (2) the repair of any vehicle; (3) any business of any type, including but not limited to child care; (4) any activity which violates any zoning ordinance, owners' association rule, or restrictive covenant; (5) any illegal or unlawful activity; or (6) activity that obstructs, interferes with, or infringes on the rights of other persons near the Property.

E. <u>Guests</u>: Tenant may not permit any guest to stay on the Property longer than the amount of time permitted by any owners' association rule or restrictive covenant or _____ 30 _____ days without Landlord's written permission, whichever is less.

F. <u>Common Areas</u>: Landlord is not obligated to pay any non-mandatory or user fees for Tenant's use of any common areas or facilities (for example, pool or tennis courts).

## 13. PARKING RULES: Tenant may not permit more than _____ 4 _____ vehicles, including but not limited to automobiles, trucks, recreational vehicles, trailers, motorcycles, all-terrain vehicles, jet skis, and boats, on the Property unless authorized by Landlord in writing. Tenant may not park or permit any person to park any vehicles in the yard. Tenant may permit vehicles to be parked only in drives, garages, designated common parking areas, or in the street if not prohibited by law or an owners' association. Tenant may not store or permit any person to store any vehicles on or

(TAR-2001) 1-1-12    Tenants: _____, _____, _____, _____   & Landlord or Landlord's Representative: _____   Page 5 of 15

Hause Wills Le

2:17cr390-009718

Residential Lease concerning: _____ **188 King's Court**
**South Padre Island, TX 78597** _____

adjacent to the Property or on the street in front of the Property. In accordance with applicable state and local laws, Landlord may have towed, at Tenant's expense: (a) any inoperative vehicle on or adjacent to the Property; (b) any vehicle parked in violation of this paragraph or any additional parking rules made part of this lease; or (c) any vehicle parked in violation of any law, local ordinance, or owners' association rule.

## 14. ACCESS BY LANDLORD:

A. <u>Advertising</u>: Landlord may prominently display a "For Sale" or "For Lease" or similarly worded sign on the Property during the term of this lease or any renewal period. Landlord or Landlord's contractor may take interior or exterior photographs or images of the Property and use the photographs or images in any advertisements to lease or sell the Property.

B. <u>Access</u>: Before accessing the Property, Landlord or anyone authorized by Landlord will attempt to first contact Tenant, but may enter the Property at reasonable times without notice to make repairs or to show the Property to prospective tenants or buyers, inspectors, fire marshals, lenders, appraisers, or insurance agents. Additionally, Landlord or anyone authorized by Landlord may peacefully enter the Property at reasonable times without first attempting to contact Tenant and without notice to: (1) survey or review the Property's condition and take photographs to document the condition; (2) make emergency repairs; (3) exercise a contractual or statutory lien; (4) leave written notices; or (5) seize nonexempt property if Tenant is in default.

C. <u>Trip Charges</u>: If Landlord or Landlord's agents have made prior arrangements with Tenant to access the Property and are denied or are not able to access the Property because of Tenant's failure to make the Property accessible, Landlord may charge Tenant a trip charge of $ <u>25.00</u> .

D. <u>Keybox</u>: **A keybox is a locked container placed on the Property holding a key to the Property. The keybox is opened by a special combination, key, or programmed access device so that persons with the access device may enter the Property, even in Tenant's absence. The keybox is a convenience but involves risk (such as unauthorized entry, theft, property damage, or personal injury). Neither the Association of REALTORS® nor MLS requires the use of a keybox.**

(1) Tenant authorizes Landlord, Landlord's property manager, and Landlord's broker to place on the Property a keybox containing a key to the Property:
(a) during the last <u>30</u> days of this lease or any renewal or extension; and
(b) at any time Landlord lists the Property for sale with a Texas licensed broker.

(2) Tenant may withdraw Tenant's authorization to place a keybox on the Property by providing written notice to Landlord and paying Landlord a fee of $ <u>n/a</u> as consideration for the withdrawal. Landlord will remove the keybox within a reasonable time after receipt of the notice of withdrawal and payment of the required fee. Removal of the keybox does not alleviate Tenant's obligation to make the Property available for showings as indicated in Paragraph 14B.

(3) If Landlord or Landlord's agents are denied or are not able to access the Property after first attempting to contact Tenant, Landlord may charge Tenant a trip charge of $ <u>100.00</u> .

(4) <u>Landlord, the property manager, and Landlord's broker are not responsible to Tenant, Tenant's guests, family, or occupants for any damages, injuries, or losses arising from use of the keybox unless caused by Landlord, the property manager, or Landlord's broker.</u>

(TAR-2001) 1-1-12     Tenants: _____, _____, _____, _____ & Landlord or Landlord's Representative: _____     Page 6 of 15

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

Hause Wills Le

2:17cr390-009719

Residential Lease concerning: _____      188 King's Court
                                                       South Padre Island, TX   78597

## 15. MOVE-IN CONDITION:

A. Landlord makes no express or implied warranties as to the Property's condition. Tenant has inspected the Property and accepts it **AS-IS** provided that Landlord: ~~will~~ *Repair downstairs shower door*

B. Tenant will complete an Inventory and Condition Form, noting any damages to the Property, and deliver it to Landlord within _____10_____ days after the Commencement Date. If Tenant fails to timely deliver the Inventory and Condition Form, the Property will be deemed to be free of damages, unless otherwise expressed in this lease. The Inventory and Condition Form is not a request for repairs. Tenant must direct all requests for repairs in compliance with Paragraph 18.

## 16. MOVE-OUT:

A. Move-Out Condition: When this lease ends, Tenant will surrender the Property in the same condition as when received, normal wear and tear excepted. Tenant will leave the Property in a clean condition free of all trash, debris, and any personal property. Tenant may not abandon the Property.

B. Definitions:

(1) "Normal wear and tear" means deterioration that occurs without negligence, carelessness, accident, or abuse.

(2) "Surrender" occurs when all occupants have vacated the Property, in Landlord's reasonable judgment, and one of the following events occurs:
(a) the date Tenant specifies as the move-out or termination date in a written notice to Landlord has passed; or
(b) Tenant returns keys and access devices that Landlord provided to Tenant under this lease.

(3) "Abandonment" occurs when all of the following occur:
(a) all occupants have vacated the Property, in Landlord's reasonable judgment;
(b) Tenant is in breach of this lease by not timely paying rent; and
(c) Landlord has delivered written notice to Tenant, by affixing it to the inside of the main entry door or if the Landlord is prevented from entering the Property by affixing it to the outside of the main entry door, stating that Landlord considers the Property abandoned, and Tenant fails to respond to the affixed notice by the time required in the notice, which will not be less than 2 days from the date the notice is affixed to the main entry door.

C. Personal Property Left After Move-Out:

(1) If Tenant leaves any personal property in the Property after surrendering or abandoning the Property Landlord may:
(a) dispose of such personal property in the trash or a landfill;
(b) give such personal property to a charitable organization; or
(c) store and sell such personal property by following procedures in §54.045(b)-(e), Property Code.

(2) Tenant must reimburse Landlord all Landlord's reasonable costs under Paragraph 16C(1) for packing, removing, storing, and selling the personal property left in the Property after surrender or abandonment.

(TAR-2001) 1-1-12    Tenants: _____, _____, _____, _____ & Landlord or Landlord's Representative: _____    Page 7 of 15

Residential Lease concerning: _____  **188 King's Court**
**South Padre Island, TX   78597**

**17. PROPERTY MAINTENANCE:**

A. <u>Tenant's General Responsibilities</u>: Tenant, at Tenant's expense, must:
  (1)  keep the Property clean and sanitary;
  (2)  promptly dispose of all garbage in appropriate receptacles;
  (3)  supply and change heating and air conditioning filters at least once a month;
  (4)  supply and replace all light bulbs, fluorescent tubes, and batteries for smoke alarms, carbon monoxide detectors, garage door openers, ceiling fan remotes, and other devices (of the same type and quality that are in the Property on the Commencement Date);
  (5)  maintain appropriate levels of necessary chemicals or matter in any water softener;
  (6)  take action to promptly eliminate any dangerous condition on the Property;
  (7)  take all necessary precautions to prevent broken water pipes due to freezing or other causes;
  (8)  replace any lost or misplaced keys;
  (9)  pay any periodic, preventive, or additional extermination costs desired by Tenant;
  (10) remove any standing water;
  (11) know the location and operation of the main water cut-off valve and all electric breakers and how to switch the valve or breakers off at appropriate times to mitigate any potential damage;
  (12) water the foundation of the Property at reasonable and appropriate times; and
  (13) promptly notify Landlord, in writing, of all needed repairs.

B. <u>Yard Maintenance</u>:

  (1) *"Yard"* means all lawns, shrubbery, bushes, flowers, gardens, trees, rock or other landscaping, and other foliage on or encroaching on the Property or on any easement appurtenant to the Property, and does not include common areas maintained by an owners' association.

  (2) *"Maintain the yard"* means to perform activities such as, but not limited to: (a) mowing, fertilizing, and trimming the yard; (b) controlling pests in the yard; and (c) removing debris from the yard.

  (3) Unless prohibited by ordinance or other law, Tenant will water the yard at reasonable and appropriate times including but not limited to the following times: <u>automated sprinkler system will operate at</u> <u>times designated by Landlord.</u> _____ . Other than watering, the yard will be maintained as follows:

    ☒ (a) Landlord, at Landlord's expense, will maintain the yard. Tenant will permit Landlord and Landlord's contractors reasonable access to the yard and will remove any pet from the yard at appropriate times.

    ☐ (b) Tenant, at Tenant's expense, will maintain the yard.

    ☐ (c) Tenant will maintain in effect a scheduled yard maintenance contract with:  ☐ a contractor who regularly provides such service; ☐ _____ .

C. <u>Pool/Spa Maintenance</u>: Any pool or spa on the Property will be maintained according to a Pool/Spa Maintenance Addendum.

D. <u>Prohibitions</u>: If Tenant installs any fixtures on the Property, authorized or unauthorized, such as additional smoke alarms, locks, alarm systems, cables, satellite dishes, or other fixtures, such fixtures will become the property of the Landlord. Except as otherwise permitted by law, this lease, or in writing by Landlord, Tenant may <u>not</u>:
  (1)  remove any part of the Property or any of Landlord's personal property from the Property;
  (2)  remove, change, add, or rekey any lock;

(TAR-2001) 1-1-12   Tenants: _____, _____, _____, & Landlord or Landlord's Representative: _____   Page 8 of 15

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

Hause Wills Le

2:17cr390-009721

Residential Lease concerning: _____  **188 King's Court**
**South Padre Island, TX  78597**

   (3)  make holes in the woodwork, floors, or walls, except that a reasonable number of small nails may be used to hang pictures in sheetrock and grooves in paneling;

   (4)  permit any water furniture on the Property;

   (5)  install additional phone or video cables, outlets, antennas, satellite receivers, or alarm systems;

   (6)  alter, replace or remove flooring material, paint, or wallpaper;

   (7)  install, change, or remove any: fixture, appliance, or non-real-property item listed in Paragraph 2;

   (8)  keep or permit any hazardous material on the Property such as flammable or explosive materials;

   (9)  keep or permit any material or item which causes any liability or fire and extended insurance coverage to be suspended or canceled or any premiums to be increased;

(10)  dispose of any environmentally detrimental substance (for example, motor oil or radiator fluid) on the Property; or

(11)  cause or allow any lien to be filed against any portion of the Property.

E.  **Failure to Maintain:** If Tenant fails to comply with this Paragraph 17 or any Pool/Spa Maintenance Addendum, Landlord may, in addition to exercising Landlord's remedies under Paragraph 27, perform whatever action Tenant is obligated to perform and Tenant must immediately reimburse Landlord the reasonable expenses that Landlord incurs.

F.  **Smoking:** Smoking by Tenant, Tenant's guests, family, or occupants is ☐ permitted ☒ not permitted on the Property. If smoking is not permitted and does occur on the Property, Tenant will be in default and:

   (1)  Landlord may exercise Landlord's remedies under Paragraph 27; and

   (2)  Landlord may deduct from the security deposit damages to the Property caused by smoking, including but not limited to stains, burns, odors, and removal of debris.

**18. REPAIRS:** (Notice: Subchapter B, Chapter 92, Property Code governs repair obligations).

A.  **Repair Requests:** All requests for repairs must be in writing and delivered to Landlord. If Tenant is delinquent in rent at the time a repair notice is given, Landlord is not obligated to make the repair. In the event of an emergency related to the condition of the Property that materially affects the physical health or safety of an ordinary tenant, call: (956) 346-6244                     .
Ordinarily, a repair to the heating and air conditioning system is not an emergency.

B.  **NOTICE:** If Landlord fails to repair a condition that materially affects the physical health or safety of an ordinary tenant as required by this lease or the Property Code, Tenant may be entitled to exercise remedies under §92.056 and §92.0561 of the Property Code. If Tenant follows the procedures under those sections, the following remedies may be available to Tenant: (1) terminate the lease and obtain an appropriate refund under §92.056(f); (2) have the condition repaired or remedied according to §92.0561; (3) deduct from the rent the cost of the repair or remedy according to §92.0561; and (4) obtain judicial remedies according to §92.0563. Do not exercise these remedies without consulting an attorney or carefully reviewing the procedures under the applicable sections. The Property Code presumes that 7 days is a reasonable period of time for the Landlord to make a diligent effort to repair a condition unless there are circumstances which establish that a different period of time is appropriate (such as the severity and nature of the condition and the availability of materials, labor, and utilities). Failure to strictly follow the procedures in the applicable sections may cause Tenant to be in default of the lease.

C.  **Completion of Repairs:**

   (1) Tenant may not repair or cause to be repaired any condition, regardless of the cause, without Landlord's permission. All decisions regarding repairs, including the completion of any repair, whether to repair or replace the item, and the selection of contractors, will be at Landlord's sole discretion.

(TAR-2001) 1-1-12   Tenants: _____, _____, _____, _____ & Landlord or Landlord's Representative: _____   Page 9 of 15

Residential Lease concerning: _____ 
188 King's Court
South Padre Island, TX  78597
_____

(2) Landlord is not obligated to complete a repair on a day other than a business day unless required to do so by the Property Code.

D. **Payment of Repair Costs:** Except as otherwise specified in this lease, Landlord will pay to repair or remedy conditions in the Property in need of repair if Tenant complies with the procedures for requesting repairs as described in this Paragraph 18.

(1) Landlord will pay the entire cost to repair the following items not caused by Tenant or Tenant's negligence:
   (a) heating and air conditioning systems;
   (b) water heaters; or
   (c) water penetration from structural defects.

(2) Landlord will NOT pay to repair the following items unless caused by Landlord's negligence:
   (a) conditions caused by Tenant, an Occupant, or any guest or invitee of Tenant;
   (b) damage to doors, windows, and screens;
   (c) damage from windows or doors left open;
   (d) damage from wastewater stoppages caused by foreign or improper objects in lines that exclusively serve the Property;
   (e) items that are cosmetic in nature with no impact on the functionality or use of the item; and
   (f) the following specific items or appliances: N/A _____
   _____
   _____

E. **Trip Charges:** If a repair person is unable to access the Property after making arrangements with Tenant to complete the repair, Tenant will pay any trip charge the repair person may charge, which amount may be different from the amount stated in Paragraph 14C.

F. **Advance Payments and Reimbursements:** Landlord may require advance payment of repairs or payments under this Paragraph 18 for which Tenant is responsible. Tenant must promptly reimburse Landlord the amounts under this Paragraph 18 for which Tenant is responsible.

**19. SECURITY DEVICES AND EXTERIOR DOOR LOCKS:**

A. Subchapter D, Chapter 92, Property Code requires the Property to be equipped with certain types of locks and security devices. Landlord has rekeyed the security devices since the last occupant vacated the Property or will rekey the security devices within 7 days after Tenant moves in. "Security device" has the meaning assigned to that term in §92.151, Property Code.

B. All notices or requests by Tenant for rekeying, changing, installing, repairing, or replacing security devices must be in writing. Installation of additional security devices or additional rekeying or replacement of security devices desired by Tenant will be paid by Tenant in advance and may be installed only by contractors authorized by Landlord.

**20. SMOKE ALARMS:** Subchapter F, Chapter 92, Property Code requires the Property to be equipped with smoke alarms in certain locations. Requests for additional installation, inspection, or repair of smoke alarms must be in writing. Disconnecting or intentionally damaging a smoke alarm or removing a battery without immediately replacing it with a working battery may subject Tenant to civil penalties and liability for damages and attorney fees under §92.2611, Property Code.

(TAR-2001) 1-1-12     Tenants: _____, _____, _____, _____  & Landlord or Landlord's Representative: _____ Page 10 of 15

Residential Lease concerning: _____
188 King's Court
South Padre Island, TX  78597

21. **LIABILITY:** Unless caused by Landlord, Landlord is not responsible to Tenant, Tenant's guests, family, or occupants for any damages, injuries, or losses to person or property caused by fire, flood, water leaks, ice, snow, hail, winds, explosion, smoke, interruption of utilities, theft, burglary, robbery, assault, vandalism, other persons, condition of the Property, environmental contaminants (for example, carbon monoxide, asbestos, radon, lead-based paint, mold, fungus, etc.), or other occurrences or casualty losses. Tenant will promptly reimburse Landlord for any loss, property damage, or cost of repairs or service to the Property caused by Tenant, Tenant's guests, any occupants, or any pets.

22. **HOLDOVER:** If Tenant fails to vacate the Property at the time this lease ends Tenant will pay Landlord rent for the holdover period and indemnify Landlord and prospective tenants for damages, including but not limited to lost rent, lodging expenses, costs of eviction, and attorneys' fees. Rent for any holdover period will be three (3) times the monthly rent, calculated on a daily basis, and will be immediately due and payable daily without notice or demand.

23. **RESIDENTIAL LANDLORD'S LIEN:** Landlord will have a lien for unpaid rent against all of Tenant's nonexempt personal property that is in the Property and may seize such nonexempt property if Tenant fails to pay rent. Subchapter C, Chapter 54, Property Code governs the rights and obligations of the parties regarding Landlord's lien. Landlord may collect a charge for packing, removing, or storing property seized in addition to any other amounts Landlord is entitled to receive. Landlord may sell or dispose of any seized property in accordance with the provisions of §54.045, Property Code.

24. **SUBORDINATION:** This lease and Tenant's leasehold interest are and will be subject, subordinate, and inferior to: (i) any lien or encumbrance now or later placed on the Property by Landlord; (ii) all advances made under any such lien or encumbrance; (iii) the interest payable on any such lien or encumbrance; (iv) any and all renewals and extensions of any such lien or encumbrance; (v) any restrictive covenant; and (vi) the rights of any owners' association affecting the Property.

25. **CASUALTY LOSS OR CONDEMNATION:** Section 92.054, Property Code governs the rights and obligations of the parties regarding a casualty loss to the Property. Any proceeds, payment for damages, settlements, awards, or other sums paid because of a casualty loss to the Property will be Landlord's sole property. For the purpose of this lease, any condemnation of all or a part of the Property is a casualty loss.

26. **SPECIAL PROVISIONS:** *(Do not insert a lease-option or lease-purchase clause without the assistance of legal counsel. Special obligations and liabilities under statute apply to such transactions.)*
Tenants will allow home to be shown to prospective buyers with a 30 minute notice from Landlord's Realtor.  Tenants will keep home clean, in good order and ready for showing at all times.  Landlord reserves the right to terminate this lease agreement at any time upon accepted purchase contract with a 60 day written, move-out notice to tenants.  Tenants acknowledge property has a swimming pool and is bordered by the Laguna Madre.  Tenants hereby AGREE to hold harmless and indemnify Landlord from any and all accidents to any persons on the property including but not limited to the house, swimming pool and Laguna Madre.

27. **DEFAULT:**

A. If Landlord fails to comply with this lease, Tenant may seek any relief provided by law.

B. If Tenant fails to timely pay all amounts due under this lease or otherwise fails to comply with this lease, Tenant will be in default and:
(1) Landlord may terminate Tenant's right to occupy the Property by providing Tenant with at least one day written notice to vacate;

(TAR-2001) 1-1-12   Tenants: ____, ____, ____, ____ & Landlord or Landlord's Representative: _____ Page 11 of 15

Residential Lease concerning: _____  **188 King's Court**
**South Padre Island, TX   78597**

    (2) all unpaid rents which are payable during the remainder of this lease or any renewal period will be accelerated without notice or demand;

    (3) Landlord may exercise Landlord's lien under Paragraph 23 and any other rights under this lease or the Property Code; and

    (4) Tenant will be liable for:

        (a) any lost rent;

        (b) Landlord's cost of reletting the Property including but not limited to leasing fees, advertising fees, utility charges, and other fees reasonably necessary to relet the Property;

        (c) repairs to the Property for use beyond normal wear and tear;

        (d) all Landlord's costs associated with eviction of Tenant, including but not limited to attorney's fees, court costs, costs of service, witness fees, and prejudgment interest;

        (e) all Landlord's costs associated with collection of amounts due under this lease, including but not limited to collection fees, late charges, and returned check charges; and

        (f) any other recovery to which Landlord may be entitled by law.

C.  Notice to vacate under Paragraph 27B(1) may be by any means permitted by §24.005, Property Code.

D.  Landlord will attempt to mitigate any damage or loss caused by Tenant's breach by attempting to relet the Property to acceptable tenants and reducing Tenant's liability accordingly.

**28. EARLY TERMINATION:** This lease begins on the Commencement Date and ends on the Expiration date unless: (i) renewed under Paragraph 4; (ii) extended by written agreement of the parties; or (iii) terminated earlier under Paragraph 27, by agreement of the parties, applicable law, or this Paragraph 28.

A.  <u>Special Statutory Rights</u> Tenants may have special statutory rights to terminate the lease early in certain situations involving family violence, military deployment or transfer, or certain sex offenses.

    (1) <u>Military</u>: If Tenant is or becomes a servicemember or a dependent of a servicemember, Tenant may terminate this lease by delivering to Landlord a written notice of termination and a copy of an appropriate government document providing evidence of: (a) entrance into military service; (b) military orders for a permanent change of station (PCS); or (c) military orders to deploy with a military unit for not less than 90 days. Termination is effective on the 30th day after the first date on which the next rental payment is due after the date on which the notice is delivered. §92.017, Property Code governs the rights and obligations of the parties under this paragraph.

    (2) <u>Family Violence</u>: Tenant may terminate this lease if Tenant provides Landlord with a copy of a court order described under §92.016, Property Code protecting Tenant or an occupant from family violence committed by a cotenant or occupant of the Property. §92.016, Property Code governs the rights and obligations of the parties under this paragraph. If the family violence is committed by someone other than a cotenant or co-occupant of the Property, Tenant must give written notice of termination 30 days prior to the effective date of the notice.

    (3) <u>Sex Offenses</u>: Tenant may have special statutory rights to terminate this lease in certain situations involving sexual assault or sexual abuse. For more information about the types of abuse and assault covered by this provision, Tenant is advised to review §92.0161, Property Code.

B.  <u>Assignment, Subletting and Replacement Tenants</u>:

    (1) Tenant may not assign this lease or sublet the Property without Landlord's written consent.

    (2) If Tenant requests an early termination of this lease under this Paragraph 28B, Tenant may attempt to find a replacement tenant and may request Landlord to do the same. Landlord may, but is not obligated to, attempt to find a replacement tenant under this paragraph.

(TAR-2001) 1-1-12    Tenants: _____, _____, _____, _____ & Landlord or Landlord's Representative: _____    Page 12 of 15

Residential Lease concerning: _____ 188 King's Court
South Padre Island, TX  78597 _____

(3) Any assignee, subtenant, or replacement tenant must, in Landlord's discretion, be acceptable as a tenant and must sign: (a) a new lease with terms not less favorable to Landlord than this lease or otherwise acceptable to Landlord; (b) a sublease with terms approved by Landlord; or (c) an assignment of this lease in a form approved by Landlord.

(4) At the time Landlord agrees to permit an assignee, subtenant, or replacement tenant to occupy the Property, Tenant will pay Landlord:

   (a) if Tenant procures the assignee, subtenant, or replacement tenant:
   ☐ (i) $ <u>N/A</u> .
   ☐ (ii) _____<u>N/A</u>_____ % of one's month rent that the assignee, subtenant, or replacement tenant is to pay.

   (b) if Landlord procures the assignee, subtenant, or replacement tenant:
   ☐ (i) $ <u>N/A</u> .
   ☐ (ii) _____<u>N/A</u>_____ % of one's month rent that the assignee, subtenant, or replacement tenant is to pay.

(5) Unless expressly stated otherwise in an assignment or sublease, Tenant will not be released from Tenant's obligations under this lease because of an assignment or sublease. An assignment of this lease or a sublease of this lease without Landlord's written consent is voidable by Landlord.

**29. ATTORNEY'S FEES:** Any person who is a prevailing party in any legal proceeding brought under or related to the transaction described in this lease is entitled to recover prejudgment interest, attorney's fees, costs of service, and all other costs of the legal proceeding from the non-prevailing party.

**30. REPRESENTATIONS:** Tenant's statements in this lease and any application for rental are material representations. Each party to this lease represents that he or she is of legal age to enter into a contract. If Tenant makes a misrepresentation in this lease or in an application for rental, Tenant is in default.

**31. ADDENDA:** Incorporated into this lease are the following addenda, exhibits and other information. If Landlord's Rules and Regulations are made part of this lease, Tenant agrees to comply with the Rules and Regulations as Landlord may, at Landlord's discretion, amend from time to time.

| | |
|---|---|
| ☐ Addendum Regarding Lead-Based Paint | ☐ Agreement Between Brokers |
| ☒ Inventory & Condition Form | ☐ Landlord's Rules & Regulations |
| ☐ Landlord's Additional Parking Rules | ☒ Owners' Association Rules |
| ☐ Pet Agreement | ☒ Pool/Spa Maintenance Addendum |
| ☐ Protecting Your Home from Mold | ☒ Residential Lease Application |
| ☐ Agreement for Application Deposit & Hold | ☐ Residential Lease Guaranty |
| ☐ _____ | ☐ _____ |
| ☐ _____ | ☐ _____ |

**32. NOTICES:** All notices under this lease must be in writing and are effective when hand-delivered, sent by mail, or sent by electronic transmission to (*Do not insert an e-mail address or a fax number unless the party consents to receive notices under this lease at the e-mail address or fax number specified.*):

Tenant at the Property and a copy to:
<u>Connie Clifton</u>
_____
_____
E-mail:<u>MITConnie@gmail.com</u>
Fax:_____

Landlord c/o:
<u>Lynne Tate Real Estate, Deanna Bowman</u>
<u>2200 Padre Blvd</u>
<u>South Padre Island, TX 78597</u>
E-mail:<u>Deanna@LynneTateRealEstate.com</u>
Fax: <u>(956)761-1805</u>

(TAR-2001) 1-1-12    Tenants:_____,_____,_____ & Landlord or Landlord's Representative:_____ Page 13 of 15

Residential Lease concerning: _____  **188 King's Court**
**South Padre Island, TX  78597** _____

## 33. AGREEMENT OF PARTIES:

A. <u>Entire Agreement</u>: There are no oral agreements between Landlord and Tenant. This lease contains the entire agreement between Landlord and Tenant and may not be changed except by written agreement.

B. <u>Binding Effect</u>: This lease is binding upon and inures to the benefit of the parties to this lease and their respective heirs, executors, administrators, successors, and permitted assigns.

C. <u>Joint and Several</u>: All Tenants are jointly and severally liable for all provisions of this lease. Any act or notice to, refund to, or signature of, any one or more of the Tenants regarding any term of this lease, its extension, its renewal, or its termination is binding on all Tenants executing this lease.

D. <u>Waiver</u>: Landlord's past delay, waiver, or non-enforcement of a rental due date or any other right will not be deemed to be a waiver of any other breach by Tenant or any other right in this lease.

E. <u>Severable Clauses</u>: Should a court find any clause in this lease unenforceable, the remainder of this lease will not be affected and all other provisions in this lease will remain enforceable.

F. <u>Controlling Law</u>: The laws of the State of Texas govern the interpretation, validity, performance, and enforcement of this lease.

G. <u>Copyright</u>: If an active REALTOR® member of the Texas Association of REALTORS® or an active member of the State Bar of Texas does not negotiate this lease as a party or for one of the parties, either as a party's broker or attorney, this lease is voidable at will by Tenant.

## 34. INFORMATION:

A. Future inquiries about this lease, rental payments, and security deposits should be directed to the person listed for receipt of notices for Landlord under Paragraph 32.

B. It is Tenant's responsibility to determine, before signing this lease, if: (i) all services (e.g., utilities, connections, schools, and transportation) are accessible to or from the Property; (ii) such services are sufficient for Tenant's needs and wishes; and (iii) Tenant is satisfied with the Property's condition.

C. The brokers to this lease have no knowledge of whether Landlord is delinquent in the payment of any lien against the Property.

D. Unpaid rent and any unpaid amount under this lease are reportable to credit reporting agencies.

E. Landlord is not obligated to respond to any requests for Tenant's rental and payment history from a mortgage company or other prospective landlord until Tenant has given notice of termination of this lease and Tenant is not in breach of this lease. (*Notice: Landlord or Landlord's agent may charge a reasonable fee for processing such information.*)

F. If all occupants over 18 years of age die during this lease, Landlord may: (i) permit the person named below to access the Property at reasonable times in Landlord's or Landlord's agent's presence; (ii) permit the named person to remove Tenant's personal property; and (iii) refund the security deposit, less deductions, to the named person. Section 92.014, Property Code governs procedures to follow in the event of a tenant's death.
Name: <u>Steven White</u> _____ Phone: <u>(301)366-6075</u> _____
Address: <u>13329 Query Mill Rd. North Potomac, MD 20878</u> _____
E-mail: _____

(TAR-2001) 1-1-12   Tenants: _____, _____, _____, & Landlord or Landlord's Representative: _____   Page 14 of 15

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

Hause Wills Le

2:17cr390-009727

Residential Lease concerning: _____ **188 King's Court**
**South Padre Island, TX  78597**

G. The Texas Department of Public Safety maintains a database that the public may search, at no cost, to determine if registered sex offenders are located in certain areas (see www.txdps.state.tx.us under on-line services). For information concerning past criminal activity in certain areas, contact the local police department.

H. Landlord's insurance does not cover Tenant from loss of personal property. Landlord recommends that Tenant obtain insurance for casualties such as fire, flood, water damage, and theft. Tenant represents that Tenant ☐ intends ☒ does not intend to purchase such insurance.

I. Landlord's broker, **Lynne Tate Real Estate** _____ ,
☐ will ☒ will not act as the property manager for landlord.

J. This lease is negotiable between the parties. This lease is binding upon final acceptance. READ IT CAREFULLY. If you do not understand the effect of this lease, consult your attorney BEFORE signing.

K. This lease should not be used in conjunction with executory contracts of any type, such as contracts for deed, leases with options to purchase, or lease options, without the advice of an attorney.

_Landlord_  3/25/12 / Date          _Tenant_ _____ Date
**Katherine Hause**                  **David Keith Wills**

Landlord _____ Date            Tenant _____ Date

Or signed for Landlord under written property management
agreement or power of attorney:        Tenant _____ Date

By: _____ Date                 Tenant _____ Date

**Deanna Bowman**
Broker's Associate's Printed Name

**Deanna Bowman**                    **0459625**
Broker's Printed Name                License No.

**Lynne Tate Real Estate**
Firm Name

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com                Hause Wills Le

# EXHIBIT 20.2



GOVERNMENT
EXHIBIT
20.2
17cr390



TEXAS ASSOCIATION OF REALTORS®
## RESIDENTIAL LEASE

USE OF THIS FORM BY PERSONS WHO ARE NOT MEMBERS OF THE TEXAS ASSOCIATION OF REALTORS® IS NOT AUTHORIZED.
©Texas Association of REALTORS®, Inc. 2012

1. **PARTIES:** The parties to this lease are:

   the owner of the Property, Landlord,: _____ ; and

   Tenant(s): <u>DAVID KEITH WILLS</u> _____ .

2. **PROPERTY:** Landlord leases to Tenant the following real property:

   Address: <u>118 KINGS COURT, SOUTH PADRE ISLAND, TX  78597</u> _____
   legally described as: <u>KING RESUBDIVISION LOT 13 (CAB 1 SLOT 1599-A CCMR)</u> _____

   in _____<u>CAMERON</u>_____ County, Texas, together with the following non-real-property
   items: <u>N/A</u> _____ .

   The real property and the non-real-property are collectively called the "Property".

3. **TERM:**

   A. <u>Primary Term</u>: The primary term of this lease begins and ends as follows:

   Commencement Date: ____<u>October 1, 2012</u>____ Expiration Date: ____<u>January 9, 2012</u>____ .

   B. <u>Delay of Occupancy</u>: Tenant must occupy the Property within 5 days after the Commencement Date. If Tenant is unable to occupy the Property by the 5th day after the Commencement Date because of construction on the Property or a prior tenant's holding over of the Property, Tenant may terminate this lease by giving written notice to Landlord before the Property becomes available to be occupied by Tenant, and Landlord will refund to Tenant the security deposit and any rent paid. Landlord will abate rent on a daily basis for a delay caused by construction or a prior tenant's holding over. This paragraph does not apply to any delay in occupancy caused by cleaning, repairs, or make-ready items.

4. **AUTOMATIC RENEWAL AND NOTICE OF TERMINATION:**

   A. This lease automatically renews on a month-to-month basis unless Landlord or Tenant provides the other party written notice of termination not less than: *(Check only one box.)*
   ☒ (1) 30 days before the Expiration Date.
   ☐ (2)_____ days before the Expiration Date.

   B. If this lease automatically renews on a month-to-month basis, it will continue to renew on a month-to-month basis until either party provides written notice of termination to the other party and the notice of termination will be effective: *(Check only one box.)*
   ☐ (1) on the last day of the month following the month in which the notice is given. Landlord is not obligated to prorate rent even if Tenant surrenders the Property before the termination date.
   ☒ (2) on the date designated in the notice but not sooner than 30 days after the notice is given and, if necessary, rent will be prorated on a daily basis.

(TAR-2001) 1-1-12    Tenants: _____, _____ & Landlord or Landlord's Representative: _____    Page 1 of 15

South Padre Real Estate, Inc. 2600 Padre Blvd, Ste E South Padre Island, TX 78597
Phone: 956-592-4429      Fax: 956.761.4868      Connie Clifton          118 King's Cou
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026      www.zipLogix.com

<u>118 KINGS COURT</u>
<u>SOUTH PADRE ISLAND, TX  78597</u>

Residential Lease concerning: _____

C. Oral notice of termination is not sufficient under any circumstances. Time is of the essence for providing notice of termination (strict compliance with dates by which notice must be provided is required). The date on which rent is due does not apply to the requirement for providing written notice of termination. If a box is not checked under Paragraph 4A, Paragraph 4A(1) will apply. If a box is not checked under Paragraph 4B, Paragraph 4B(1) will apply.

**5. RENT:**

A. Monthly Rent: Tenant will pay Landlord monthly rent in the amount of $ <u>3,550.00</u>_____ for each full month during this lease. The first full month's rent is due and payable not later than ___<u>October 1, 2012</u>_____ by (select one or more): ☒ cashier's check  ☒ electronic payment  ☐ money order  ☐ personal check or ☒ other means acceptable to Landlord.
Thereafter, Tenant will pay the monthly rent so that Landlord receives the monthly rent on or before:
☐ (1) the first day of each month during this lease.
☒ (2) See special provisions_____
Weekends, holidays, and mail delays do not excuse Tenant's obligation to timely pay rent.

B. Prorated Rent: On or before_____<u>N/A</u>_____ Tenant will pay Landlord $_____ as prorated rent from the Commencement Date through the last day of the month in which this lease begins.

C. Place of Payment: Unless this lease provides otherwise, Tenant will remit all amounts due to Landlord under this lease to the following person or entity at the place stated and make all payments payable to the named person or entity. Landlord may later designate, in writing, another person or place to which Tenant must remit amounts due under this lease.
Name:  <u>KATHERINE HOUSE</u>_____
Address: <u>195 ISABELLA POINT DR</u>_____
<u>PORT ISABEL, TX 78597</u>_____
**Notice: Place the Property address and Tenant's name on all payments.**

D. Method of Payment:
(1) Tenant must pay all rent timely and without demand, deduction, or offset, except as permitted by law or this lease.
(2) Time is of the essence for the payment of rent (strict compliance with rental due dates is required).
(3) Unless the parties agree otherwise, Tenant may not pay rent in cash and will pay all rent by (select one or more): ☒ cashier's check  ☒ electronic payment  ☐ money order  ☐ personal check or ☒ other means acceptable to Landlord.
(4) Landlord ☒ requires ☐ does not require Tenant(s) to pay monthly rents by one payment.
(5) If Tenant fails to timely pay any amounts due under this lease or if any check of Tenant is not honored by the institution on which it was drawn, Landlord may require Tenant to pay such amount and any subsequent amounts under this lease in certified funds. This paragraph does not limit Landlord from seeking other remedies under this lease for Tenant's failure to make timely payments with good funds.

E. Rent Increases: There will be no rent increases through the primary term. Landlord may increase the rent that will be paid during any month-to-month renewal period by providing at least 30 days written notice to Tenant.

**6. LATE CHARGES:**

A. If Landlord does not actually receive a rent payment in the full amount at the designated place of payment by the ___<u>3RD</u>___ day of each month at 11:59pm, Tenant will pay Landlord for each late payment:

(TAR-2001) 1-1-12        Tenants: _____ & Landlord or Landlord's Representative: _____    Page 2 of 15

Residential Lease concerning: _____ **118 KINGS COURT**
                                       **SOUTH PADRE ISLAND, TX   78597** _____

(1) an initial late charge equal to *(check one box only)* : ☒ (a) $ <u>35.00</u> _____ ; or ☐ (b) _____ % of one month's rent; **and**

(2) additional late charges of $ <u>10.00</u> _____ per day thereafter until rent and late charges are paid in full. Additional late charges for any one payment may not exceed more than 30 days.

**Notice: §92.019, Property Code prohibits assessing a late fee until rent has remained unpaid for at least one full day after the date on which the rent is due.**

B. For the purposes of paying rent and any late charges, the mailbox is not the agent for receipt for Landlord (the postmark date is not the date Landlord receives the payment). The parties agree that the late charge is based on a reasonable estimate of uncertain damages to the Landlord that are incapable of precise calculation and result from late payment of rent. Landlord's acceptance of a late charge does not waive Landlord's right to exercise remedies under Paragraph 27.

7. **RETURNED PAYMENT:** Tenant will pay Landlord $ <u>50.00</u> _____ for each payment Tenant tenders to Landlord which is returned or not honored by the institution on which it is drawn for any reason, <u>plus any late charges until Landlord receives payment</u>. Tenant must make any returned payment good by paying such amount(s) plus any associated charges in certified funds.

8. **APPLICATION OF FUNDS:** <u>Regardless of any notation on a payment, Landlord may apply funds received from Tenant first to any non-rent obligations of Tenant, including but not limited to, late charges, returned payment charges, repairs, brokerage fees, periodic utilities, pet charges, and then to rent.</u>

9. **PETS:**

A. Unless the parties agree otherwise in writing, <u>Tenant may not permit, even temporarily, any pet on the Property</u> (including but not limited to any mammal, reptile, bird, fish, rodent, or insect).

B. If Tenant violates this Paragraph 9 or any agreement to keep a pet on the Property, Landlord may take all or any of the following action:

(1) declare Tenant to be in default of this lease and exercise Landlord's remedies under Paragraph 27;

(2) charge Tenant, as additional rent, an initial amount of $ <u>0</u> _____ and $ <u>0</u> _____ per day thereafter per pet for each day Tenant violates the pet restrictions;

(3) remove or cause to be removed any unauthorized pet and deliver it to appropriate local authorities by providing at least 24-hour written notice to Tenant of Landlord's intention to remove the unauthorized pet; and

(4) charge to Tenant the Landlord's cost to:

(a) remove any unauthorized pet;

(b) exterminate the Property for fleas and other insects;

(c) clean and deodorize the Property's carpets and drapes; and

(d) repair any damage to the Property caused by the unauthorized pet.

C. When taking any action under Paragraph 9B Landlord will not be liable for any harm, injury, death, or sickness to any pet.

10. **SECURITY DEPOSIT:**

A. <u>Security Deposit</u>: On or before execution of this lease, Tenant will pay a security deposit to Landlord in the amount of $ <u>4,500.00</u> _____ by *(select one or more)* : ☒ cashier's check ☐ electronic payment ☐ money order ☐ personal check or ☐ other means acceptable to Landlord. "Security deposit" has the meaning assigned to that term in §92.102, Property Code.

(TAR-2001) 1-1-12   Tenants: D̶ ̶l̶a̶w̶ _____, ___, ___ & Landlord or Landlord's Representative: _____   Page 3 of 15

Residential Lease concerning: _____ **118 KINGS COURT**
                                             **SOUTH PADRE ISLAND, TX  78597** _____

B. <u>Interest</u>: No interest or income will be paid to Tenant on the security deposit. Landlord may place the security deposit in an interest-bearing or income-producing account and any interest or income earned will be paid to Landlord or Landlord's representative.

C. <u>Refund</u>: <u>Tenant must give Landlord at least thirty (30) days written notice of surrender before Landlord is obligated to account for or refund the security deposit. Any refund of the security deposit will be made payable to all Tenants named in this lease.</u>

**Notices about Security Deposits:**
**(1)** §92.108, Property Code provides that a tenant may not withhold payment of any portion of the last month's rent on grounds that the security deposit is security for unpaid rent.
**(2)** Bad faith violations of §92.108 may subject a tenant to liability up to 3 times the rent wrongfully withheld and the landlord's reasonable attorney's fees.
**(3)** The Property Code does not obligate a landlord to return or account for the security deposit until the tenant surrenders the Property and gives the landlord a written statement of the tenant's forwarding address, after which the landlord has 30 days in which to account.
**(4)** "Surrender" is defined in Paragraph 16 of this lease.
**(5)** One may view the Texas Property Code at the Texas Legislature's website which, as of the date shown in the lower left-hand corner of this form, is http://www.statutes.legis.state.tx.us/ .

D. Deductions:

(1) Landlord may deduct reasonable charges from the security deposit for:
   (a) damages to the Property, excluding normal wear and tear, and all reasonable costs associated to repair the Property;
   (b) costs for which Tenant is responsible to clean, deodorize, exterminate, and maintain the Property;
   (c) unpaid or accelerated rent;
   (d) unpaid late charges;
   (e) unpaid utilities and utility expenses Landlord incurs to maintain utilities to the Property as required by this Lease;
   (f) unpaid pet charges;
   (g) replacing unreturned keys, garage door openers, security devices, or other components;
   (h) the removal of unauthorized locks or fixtures installed by Tenant;
   (i) Landlord's cost to access the Property if made inaccessible by Tenant;
   (j) missing or burned-out light bulbs and fluorescent tubes (at the same location and of the same type and quality that are in the Property on the Commencement Date);
   (k) packing, removing, and storing abandoned property;
   (l) removing abandoned or illegally parked vehicles;
   (m) costs of reletting (as defined in Paragraph 27), if Tenant is in default;
   (n) attorney's fees, costs of court, costs of service, and other reasonable costs incurred in any legal proceeding against Tenant;
   (o) mailing costs associated with sending notices to Tenant for any violations of this lease;
   (p) any other unpaid charges or fees or other items for which Tenant is responsible under this lease;
   (q) cost to restore walls, flooring, landscaping or any alteration to the Property not approved in writing by Landlord; and
   (r) damages to the Property caused by smoking, including but not limited to stains, burns, odors, and removal of debris.

(2) If deductions exceed the security deposit, Tenant will pay to Landlord the excess within 10 days after Landlord makes written demand.

(TAR-2001) 1-1-12    Tenants: _____ _____,_____ & Landlord or Landlord's Representative: _____    Page 4 of 15

Residential Lease concerning: _____ 118 KINGS COURT
SOUTH PADRE ISLAND, TX  78597 _____

## 11. UTILITIES:

A. Tenant will pay all connection fees, service fees, usage fees, and all other costs and fees for all utilities to the Property (for example, electricity, gas, water, wastewater, garbage, telephone, alarm monitoring systems, cable, and Internet connections) except the following which Landlord will pay: ELECTRICITY, CABLE, WATER, TRASH, WI-FI, YARD MAINTENANCE, POOL MAINTENANCE, HOA FEES, TENANTS WILL PAY ELECTRIC IN EXCESS OF $450 PER MONTH _____
Unless otherwise agreed, amounts under this paragraph are payable directly to the service providers.

B. Unless provided by Landlord, Tenant must, at a minimum, keep the following utilities on, if available, at all times this lease is in effect: gas; electricity; water; wastewater; and garbage services.

**Notice: Before signing this lease, Tenant should determine if all necessary utilities are available to the Property and are adequate for Tenant's use.**

## 12. USE AND OCCUPANCY:

A. Occupants: Tenant may use the Property as a private residence only. The only persons Tenant may permit to reside on the Property during the term of this lease are (include names and ages of all occupants):SELF: DAVID WILLS 59 YOA _____
SPOUSE: LORI WHITE WILLS 53 YOA _____

B. Phone Numbers and E-mail: Tenant must promptly inform Landlord of any changes in Tenant's phone numbers (home, work, and mobile) and e-mail not later than 5 days after a change.

C. HOA Rules: Tenant must comply with any owners' association rules or restrictive covenants affecting the Property. Tenant will reimburse Landlord for any fines or other charges assessed against Landlord for violations by Tenant of any owners' association rule or restrictive covenant.

D. Prohibitions: Unless otherwise authorized by this lease, Tenant may not install or permit any of the following on the Property, even temporarily: a spa, hot tub, above-ground pool, trampoline, or any item which causes a suspension or cancellation of insurance coverage or an increase in insurance premiums. Tenant may not permit any part of the Property to be used for: (1) any activity which is a nuisance, offensive, noisy, or dangerous; (2) the repair of any vehicle; (3) any business of any type, including but not limited to child care; (4) any activity which violates any zoning ordinance, owners' association rule, or restrictive covenant; (5) any illegal or unlawful activity; or (6) activity that obstructs, interferes with, or infringes on the rights of other persons near the Property.

E. Guests: Tenant may not permit any guest to stay on the Property longer than the amount of time permitted by any owners' association rule or restrictive covenant or _____ 30 _____ days without Landlord's written permission, whichever is less.

F. Common Areas: Landlord is not obligated to pay any non-mandatory or user fees for Tenant's use of any common areas or facilities (for example, pool or tennis courts).

## 13. PARKING RULES: 
Tenant may not permit more than _____ 4 _____ vehicles, including but not limited to automobiles, trucks, recreational vehicles, trailers, motorcycles, all-terrain vehicles, jet skis, and boats, on the Property unless authorized by Landlord in writing. Tenant may not park or permit any person to park any vehicles in the yard. Tenant may permit vehicles to be parked only in drives, garages, designated common parking areas, or in the street if not prohibited by law or an owners' association. Tenant may not store or permit any person to store any vehicles on or

Residential Lease concerning: _____  **118 KINGS COURT**
                                               **SOUTH PADRE ISLAND, TX  78597** _____

adjacent to the Property or on the street in front of the Property. In accordance with applicable state and local laws, Landlord may have towed, at Tenant's expense: (a) any inoperative vehicle on or adjacent to the Property; (b) any vehicle parked in violation of this paragraph or any additional parking rules made part of this lease; or (c) any vehicle parked in violation of any law, local ordinance, or owners' association rule.

## 14. ACCESS BY LANDLORD:

A. <u>Advertising</u>: Landlord may prominently display a "For Sale" or "For Lease" or similarly worded sign on the Property during the term of this lease or any renewal period. Landlord or Landlord's contractor may take interior or exterior photographs or images of the Property and use the photographs or images in any advertisements to lease or sell the Property.

B. <u>Access</u>: Before accessing the Property, Landlord or anyone authorized by Landlord will attempt to first contact Tenant, but may enter the Property at reasonable times without notice to make repairs or to show the Property to prospective tenants or buyers, inspectors, fire marshals, lenders, appraisers, or insurance agents. Additionally, Landlord or anyone authorized by Landlord may peacefully enter the Property at reasonable times without first attempting to contact Tenant and without notice to: (1) survey or review the Property's condition and take photographs to document the condition; (2) make emergency repairs; (3) exercise a contractual or statutory lien; (4) leave written notices; or (5) seize nonexempt property if Tenant is in default.

C. <u>Trip Charges</u>: If Landlord or Landlord's agents have made prior arrangements with Tenant to access the Property and are denied or are not able to access the Property because of Tenant's failure to make the Property accessible, Landlord may charge Tenant a trip charge of $ 25.00 _____ .

D. <u>Keybox</u>: **A keybox is a locked container placed on the Property holding a key to the Property. The keybox is opened by a special combination, key, or programmed access device so that persons with the access device may enter the Property, even in Tenant's absence. The keybox is a convenience but involves risk (such as unauthorized entry, theft, property damage, or personal injury). Neither the Association of REALTORS® nor MLS requires the use of a keybox.**

(1) Tenant authorizes Landlord, Landlord's property manager, and Landlord's broker to place on the Property a keybox containing a key to the Property:
(a) during the last _____ 0 _____ ' days of this lease or any renewal or extension; and
(b) at any time Landlord lists the Property for sale with a Texas licensed broker.

(2) Tenant may withdraw Tenant's authorization to place a keybox on the Property by providing written notice to Landlord and paying Landlord a fee of $ N/A _____ as consideration for the withdrawal. Landlord will remove the keybox within a reasonable time after receipt of the notice of withdrawal and payment of the required fee. Removal of the keybox does not alleviate Tenant's obligation to make the Property available for showings as indicated in Paragraph 14B.

(3) If Landlord or Landlord's agents are denied or are not able to access the Property after first attempting to contact Tenant, Landlord may charge Tenant a trip charge of $ 100.00 _____ .

(4) <u>Landlord, the property manager, and Landlord's broker are not responsible to Tenant, Tenant's guests, family, or occupants for any damages, injuries, or losses arising from use of the keybox unless caused by Landlord, the property manager, or Landlord's broker.</u>

(TAR-2001) 1-1-12    Tenants: ꕔ W ____,____,____  & Landlord or Landlord's Representative: _____  Page 6 of 15

Residential Lease concerning: _____ 118 KINGS COURT
SOUTH PADRE ISLAND, TX  78597 _____

## 15. MOVE-IN CONDITION:

A. Landlord makes no express or implied warranties as to the Property's condition. Tenant has inspected the Property and accepts it **AS-IS** provided that Landlord: **N/A** _____

B. Tenant will complete an Inventory and Condition Form, noting any damages to the Property, and deliver it to Landlord within _____ **10** _____ days after the Commencement Date. If Tenant fails to timely deliver the Inventory and Condition Form, the Property will be deemed to be free of damages, unless otherwise expressed in this lease. The Inventory and Condition Form is not a request for repairs. Tenant must direct all requests for repairs in compliance with Paragraph 18.

## 16. MOVE-OUT:

A. Move-Out Condition: When this lease ends, Tenant will surrender the Property in the same condition as when received, normal wear and tear excepted. Tenant will leave the Property in a clean condition free of all trash, debris, and any personal property. Tenant may not abandon the Property.

B. Definitions:

(1) *"Normal wear and tear"* means deterioration that occurs without negligence, carelessness, accident, or abuse.

(2) *"Surrender"* occurs when all occupants have vacated the Property, in Landlord's reasonable judgment, and one of the following events occurs:
(a) the date Tenant specifies as the move-out or termination date in a written notice to Landlord has passed; or
(b) Tenant returns keys and access devices that Landlord provided to Tenant under this lease.

(3) *"Abandonment"* occurs when all of the following occur:
(a) all occupants have vacated the Property, in Landlord's reasonable judgment;
(b) Tenant is in breach of this lease by not timely paying rent; and
(c) Landlord has delivered written notice to Tenant, by affixing it to the inside of the main entry door or if the Landlord is prevented from entering the Property by affixing it to the outside of the main entry door, stating that Landlord considers the Property abandoned, and Tenant fails to respond to the affixed notice by the time required in the notice, which will not be less than 2 days from the date the notice is affixed to the main entry door.

C. Personal Property Left After Move-Out:

(1) If Tenant leaves any personal property in the Property after surrendering or abandoning the Property Landlord may:
(a) dispose of such personal property in the trash or a landfill;
(b) give such personal property to a charitable organization; or
(c) store and sell such personal property by following procedures in §54.045(b)-(e), Property Code.

(2) Tenant must reimburse Landlord all Landlord's reasonable costs under Paragraph 16C(1) for packing, removing, storing, and selling the personal property left in the Property after surrender or abandonment.

(TAR-2001) 1-1-12    Tenants: _____,_____,_____,_____ & Landlord or Landlord's Representative: _____    Page 7 of 15

Residential Lease concerning: _____
118 KINGS COURT
SOUTH PADRE ISLAND, TX  78597 _____

## 17. PROPERTY MAINTENANCE:

A. Tenant's General Responsibilities: Tenant, at Tenant's expense, must:
   (1) keep the Property clean and sanitary;
   (2) promptly dispose of all garbage in appropriate receptacles;
   (3) supply and change heating and air conditioning filters at least once a month;
   (4) supply and replace all light bulbs, fluorescent tubes, and batteries for smoke alarms, carbon monoxide detectors, garage door openers, ceiling fan remotes, and other devices (of the same type and quality that are in the Property on the Commencement Date);
   (5) maintain appropriate levels of necessary chemicals or matter in any water softener;
   (6) take action to promptly eliminate any dangerous condition on the Property;
   (7) take all necessary precautions to prevent broken water pipes due to freezing or other causes;
   (8) replace any lost or misplaced keys;
   (9) pay any periodic, preventive, or additional extermination costs desired by Tenant;
   (10) remove any standing water;
   (11) know the location and operation of the main water cut-off valve and all electric breakers and how to switch the valve or breakers off at appropriate times to mitigate any potential damage;
   (12) water the foundation of the Property at reasonable and appropriate times; and
   (13) promptly notify Landlord, in writing, of all needed repairs.

B. Yard Maintenance:

   (1) "Yard" means all lawns, shrubbery, bushes, flowers, gardens, trees, rock or other landscaping, and other foliage on or encroaching on the Property or on any easement appurtenant to the Property, and does not include common areas maintained by an owners' association.

   (2) "Maintain the yard" means to perform activities such as, but not limited to: (a) mowing, fertilizing, and trimming the yard; (b) controlling pests in the yard; and (c) removing debris from the yard.

   (3) Unless prohibited by ordinance or other law, Tenant will water the yard at reasonable and appropriate times including but not limited to the following times: AUTOMATED SPRINKLER SYSTEM WILL OPERATE AT TIMES DESIGNATED BY LANDLORD. _____ . Other than watering, the yard will be maintained as follows:

   ☒ (a) Landlord, at Landlord's expense, will maintain the yard. Tenant will permit Landlord and Landlord's contractors reasonable access to the yard and will remove any pet from the yard at appropriate times.

   ☐ (b) Tenant, at Tenant's expense, will maintain the yard.

   ☐ (c) Tenant will maintain in effect a scheduled yard maintenance contract with: ☐ a contractor who regularly provides such service; ☐ _____ .

C. Pool/Spa Maintenance: Any pool or spa on the Property will be maintained according to a Pool/Spa Maintenance Addendum.

D. Prohibitions: If Tenant installs any fixtures on the Property, authorized or unauthorized, such as additional smoke alarms, locks, alarm systems, cables, satellite dishes, or other fixtures, such fixtures will become the property of the Landlord. Except as otherwise permitted by law, this lease, or in writing by Landlord, Tenant may not:
   (1) remove any part of the Property or any of Landlord's personal property from the Property;
   (2) remove, change, add, or rekey any lock;

(TAR-2001) 1-1-12    Tenants: _Drew_ , ___ , ___ , ___  & Landlord or Landlord's Representative: _____   Page 8 of 15

Residential Lease concerning: _____
118 KINGS COURT
SOUTH PADRE ISLAND, TX  78597

(3) make holes in the woodwork, floors, or walls, except that a reasonable number of small nails may be used to hang pictures in sheetrock and grooves in paneling;

(4) permit any water furniture on the Property;

(5) install additional phone or video cables, outlets, antennas, satellite receivers, or alarm systems;

(6) alter, replace or remove flooring material, paint, or wallpaper;

(7) install, change, or remove any: fixture, appliance, or non-real-property item listed in Paragraph 2;

(8) keep or permit any hazardous material on the Property such as flammable or explosive materials;

(9) keep or permit any material or item which causes any liability or fire and extended insurance coverage to be suspended or canceled or any premiums to be increased;

(10) dispose of any environmentally detrimental substance (for example, motor oil or radiator fluid) on the Property; or

(11) cause or allow any lien to be filed against any portion of the Property.

E. <u>Failure to Maintain</u>: If Tenant fails to comply with this Paragraph 17 or any Pool/Spa Maintenance Addendum, Landlord may, in addition to exercising Landlord's remedies under Paragraph 27, perform whatever action Tenant is obligated to perform and Tenant must immediately reimburse Landlord the reasonable expenses that Landlord incurs.

F. <u>Smoking</u>: Smoking by Tenant, Tenant's guests, family, or occupants is ☐ permitted ☒ not permitted on the Property. If smoking is not permitted and does occur on the Property, Tenant will be in default and:

(1) Landlord may exercise Landlord's remedies under Paragraph 27; and

(2) Landlord may deduct from the security deposit damages to the Property caused by smoking, including but not limited to stains, burns, odors, and removal of debris.

**18. REPAIRS:** (Notice: Subchapter B, Chapter 92, Property Code governs repair obligations).

A. <u>Repair Requests</u>: All requests for repairs must be in writing and delivered to Landlord. If Tenant is delinquent in rent at the time a repair notice is given, Landlord is not obligated to make the repair. In the event of an emergency related to the condition of the Property that materially affects the physical health or safety of an ordinary tenant, call: (956) 346-6244_____ .
Ordinarily, a repair to the heating and air conditioning system is not an emergency.

B. <u>NOTICE</u>: If Landlord fails to repair a condition that materially affects the physical health or safety of an ordinary tenant as required by this lease or the Property Code, Tenant may be entitled to exercise remedies under §92.056 and §92.0561 of the Property Code. If Tenant follows the procedures under those sections, the following remedies may be available to Tenant: (1) terminate the lease and obtain an appropriate refund under §92.056(f); (2) have the condition repaired or remedied according to §92.0561; (3) deduct from the rent the cost of the repair or remedy according to §92.0561; and (4) obtain judicial remedies according to §92.0563. Do not exercise these remedies without consulting an attorney or carefully reviewing the procedures under the applicable sections. The Property Code presumes that 7 days is a reasonable period of time for the Landlord to make a diligent effort to repair a condition unless there are circumstances which establish that a different period of time is appropriate (such as the severity and nature of the condition and the availability of materials, labor, and utilities). Failure to strictly follow the procedures in the applicable sections may cause Tenant to be in default of the lease.

C. <u>Completion of Repairs</u>:

(1) Tenant may not repair or cause to be repaired any condition, regardless of the cause, without Landlord's permission. All decisions regarding repairs, including the completion of any repair, whether to repair or replace the item, and the selection of contractors, will be at Landlord's sole discretion.

(TAR-2001) 1-1-12      Tenants: _____,_____,_____ & Landlord or Landlord's Representative: _____      Page 9 of 15

Residential Lease concerning: _____ 118 KINGS COURT
SOUTH PADRE ISLAND, TX 78597 _____

(2) Landlord is not obligated to complete a repair on a day other than a business day unless required to do so by the Property Code.

D. <u>Payment of Repair Costs</u>: Except as otherwise specified in this lease, Landlord will pay to repair or remedy conditions in the Property in need of repair if Tenant complies with the procedures for requesting repairs as described in this Paragraph 18.

(1) Landlord will pay the entire cost to repair the following items not caused by Tenant or Tenant's negligence:
(a) heating and air conditioning systems;
(b) water heaters; or
(c) water penetration from structural defects.

(2) Landlord will NOT pay to repair the following items unless caused by Landlord's negligence:
(a) conditions caused by Tenant, an Occupant, or any guest or invitee of Tenant;
(b) damage to doors, windows, and screens;
(c) damage from windows or doors left open;
(d) damage from wastewater stoppages caused by foreign or improper objects in lines that exclusively serve the Property;
(e) items that are cosmetic in nature with no impact on the functionality or use of the item; and
(f) the following specific items or appliances: <u>N/A</u> _____

_____

E. <u>Trip Charges</u>: If a repair person is unable to access the Property after making arrangements with Tenant to complete the repair, Tenant will pay any trip charge the repair person may charge, which amount may be different from the amount stated in Paragraph 14C.

F. <u>Advance Payments and Reimbursements</u>: Landlord may require advance payment of repairs or payments under this Paragraph 18 for which Tenant is responsible. Tenant must promptly reimburse Landlord the amounts under this Paragraph 18 for which Tenant is responsible.

19. SECURITY DEVICES AND EXTERIOR DOOR LOCKS:

A. Subchapter D, Chapter 92, Property Code requires the Property to be equipped with certain types of locks and security devices. Landlord has rekeyed the security devices since the last occupant vacated the Property or will rekey the security devices within 7 days after Tenant moves in. "Security device" has the meaning assigned to that term in §92.151, Property Code.

B. <u>All notices or requests by Tenant for rekeying, changing, installing, repairing, or replacing security devices must be in writing. Installation of additional security devices or additional rekeying or replacement of security devices desired by Tenant will be paid by Tenant in advance and may be installed only by contractors authorized by Landlord.</u>

20. SMOKE ALARMS: Subchapter F, Chapter 92, Property Code requires the Property to be equipped with smoke alarms in certain locations. <u>Requests for additional installation, inspection, or repair of smoke alarms must be in writing.</u> Disconnecting or intentionally damaging a smoke alarm or removing a battery without immediately replacing it with a working battery may subject Tenant to civil penalties and liability for damages and attorney fees under §92.2611, Property Code.

(TAR-2001) 1-1-12     Tenants: _____, _____, _____, _____ & Landlord or Landlord's Representative: _____ Page 10 of 15

Residential Lease concerning: _____
118 KINGS COURT
SOUTH PADRE ISLAND, TX  78597

21. **LIABILITY:** Unless caused by Landlord, Landlord is not responsible to Tenant, Tenant's guests, family, or occupants for any damages, injuries, or losses to person or property caused by fire, flood, water leaks, ice, snow, hail, winds, explosion, smoke, interruption of utilities, theft, burglary, robbery, assault, vandalism, other persons, condition of the Property, environmental contaminants (for example, carbon monoxide, asbestos, radon, lead-based paint, mold, fungus, etc.), or other occurrences or casualty losses. Tenant will promptly reimburse Landlord for any loss, property damage, or cost of repairs or service to the Property caused by Tenant, Tenant's guests, any occupants, or any pets.

22. **HOLDOVER:** If Tenant fails to vacate the Property at the time this lease ends Tenant will pay Landlord rent for the holdover period and indemnify Landlord and prospective tenants for damages, including but not limited to lost rent, lodging expenses, costs of eviction, and attorneys' fees. Rent for any holdover period will be three (3) times the monthly rent, calculated on a daily basis, and will be immediately due and payable daily without notice or demand.

23. **RESIDENTIAL LANDLORD'S LIEN:** Landlord will have a lien for unpaid rent against all of Tenant's nonexempt personal property that is in the Property and may seize such nonexempt property if Tenant fails to pay rent. Subchapter C, Chapter 54, Property Code governs the rights and obligations of the parties regarding Landlord's lien. Landlord may collect a charge for packing, removing, or storing property seized in addition to any other amounts Landlord is entitled to receive. Landlord may sell or dispose of any seized property in accordance with the provisions of §54.045, Property Code.

24. **SUBORDINATION:** This lease and Tenant's leasehold interest are and will be subject, subordinate, and inferior to: (i) any lien or encumbrance now or later placed on the Property by Landlord; (ii) all advances made under any such lien or encumbrance; (iii) the interest payable on any such lien or encumbrance; (iv) any and all renewals and extensions of any such lien or encumbrance; (v) any restrictive covenant; and (vi) the rights of any owners' association affecting the Property.

25. **CASUALTY LOSS OR CONDEMNATION:** Section 92.054, Property Code governs the rights and obligations of the parties regarding a casualty loss to the Property. Any proceeds, payment for damages, settlements, awards, or other sums paid because of a casualty loss to the Property will be Landlord's sole property. For the purpose of this lease, any condemnation of all or a part of the Property is a casualty loss.

26. **SPECIAL PROVISIONS:** *(Do not insert a lease-option or lease-purchase clause without the assistance of legal counsel. Special obligations and liabilities under statute apply to such transactions.)*
Tenants acknowledge property has a swimming pool and is bordered by the Laguna Madre.  Tenants hereby agree to hold harmless and indemnity Landlord from any and all accidents to any persons on the property including but not limited to the house, swimming pool and Laguna Madre. Tenant shall pay to Landlord the full amount of rental of $10,650.00 for the term of the lease as stated in 3.A. Tenants may keep person pet canines on the property with an additional $1000 pet deposit.

27. **DEFAULT:**

A. If Landlord fails to comply with this lease, Tenant may seek any relief provided by law.

B. If Tenant fails to timely pay all amounts due under this lease or otherwise fails to comply with this lease, Tenant will be in default and:
(1) Landlord may terminate Tenant's right to occupy the Property by providing Tenant with at least one day written notice to vacate;

(TAR-2001) 1-1-12        Tenants _____ & Landlord or Landlord's Representative: _____   Page 11 of 15

Residential Lease concerning: _____ 118 KINGS COURT
SOUTH PADRE ISLAND, TX 78597 _____

(2) all unpaid rents which are payable during the remainder of this lease or any renewal period will be accelerated without notice or demand;

(3) Landlord may exercise Landlord's lien under Paragraph 23 and any other rights under this lease or the Property Code; and

(4) Tenant will be liable for:

(a) any lost rent;

(b) Landlord's cost of reletting the Property including but not limited to leasing fees, advertising fees, utility charges, and other fees reasonably necessary to relet the Property;

(c) repairs to the Property for use beyond normal wear and tear;

(d) all Landlord's costs associated with eviction of Tenant, including but not limited to attorney's fees, court costs, costs of service, witness fees, and prejudgment interest;

(e) all Landlord's costs associated with collection of amounts due under this lease, including but not limited to collection fees, late charges, and returned check charges; and

(f) any other recovery to which Landlord may be entitled by law.

C. Notice to vacate under Paragraph 27B(1) may be by any means permitted by §24.005, Property Code.

D. Landlord will attempt to mitigate any damage or loss caused by Tenant's breach by attempting to relet the Property to acceptable tenants and reducing Tenant's liability accordingly.

**28. EARLY TERMINATION:** This lease begins on the Commencement Date and ends on the Expiration date unless: (i) renewed under Paragraph 4; (ii) extended by written agreement of the parties; or (iii) terminated earlier under Paragraph 27, by agreement of the parties, applicable law, or this Paragraph 28.

A. Special Statutory Rights Tenants may have special statutory rights to terminate the lease early in certain situations involving family violence, military deployment or transfer, or certain sex offenses.

(1) Military: If Tenant is or becomes a servicemember or a dependent of a servicemember, Tenant may terminate this lease by delivering to Landlord a written notice of termination and a copy of an appropriate government document providing evidence of: (a) entrance into military service; (b) military orders for a permanent change of station (PCS); or (c) military orders to deploy with a military unit for not less than 90 days. Termination is effective on the 30th day after the first date on which the next rental payment is due after the date on which the notice is delivered. §92.017, Property Code governs the rights and obligations of the parties under this paragraph.

(2) Family Violence: Tenant may terminate this lease if Tenant provides Landlord with a copy of a court order described under §92.016, Property Code protecting Tenant or an occupant from family violence committed by a cotenant or occupant of the Property. §92.016, Property Code governs the rights and obligations of the parties under this paragraph. If the family violence is committed by someone other than a cotenant or co-occupant of the Property, Tenant must give written notice of termination 30 days prior to the effective date of the notice.

(3) Sex Offenses: Tenant may have special statutory rights to terminate this lease in certain situations involving sexual assault or sexual abuse. For more information about the types of abuse and assault covered by this provision, Tenant is advised to review §92.0161, Property Code.

B. Assignment, Subletting and Replacement Tenants:

(1) Tenant may not assign this lease or sublet the Property without Landlord's written consent.

(2) If Tenant requests an early termination of this lease under this Paragraph 28B, Tenant may attempt to find a replacement tenant and may request Landlord to do the same. Landlord may, but is not obligated to, attempt to find a replacement tenant under this paragraph.

(TAR-2001) 1-1-12       Tenants: _____ , _____ , _____ , _____ & Landlord or Landlord's Representative: _____ Page 12 of 15

Residential Lease concerning: _____ 118 KINGS COURT
SOUTH PADRE ISLAND, TX  78597 _____

(3) Any assignee, subtenant, or replacement tenant must, in Landlord's discretion, be acceptable as a tenant and must sign: (a) a new lease with terms not less favorable to Landlord than this lease or otherwise acceptable to Landlord; (b) a sublease with terms approved by Landlord; or (c) an assignment of this lease in a form approved by Landlord.

(4) At the time Landlord agrees to permit an assignee, subtenant, or replacement tenant to occupy the Property, Tenant will pay Landlord:
(a) if Tenant procures the assignee, subtenant, or replacement tenant:
☐ (i)  $ <u>n/a</u> .
☐ (ii) _____ <u>n/a</u> % of one's month rent that the assignee, subtenant, or replacement tenant is to pay.

(b) if Landlord procures the assignee, subtenant, or replacement tenant:
☐ (i)  $ <u>n/a</u> .
☒ (ii) _____ <u>n/a</u> % of one's month rent that the assignee, subtenant, or replacement tenant is to pay.

(5) Unless expressly stated otherwise in an assignment or sublease, Tenant will not be released from Tenant's obligations under this lease because of an assignment or sublease. An assignment of this lease or a sublease of this lease without Landlord's written consent is voidable by Landlord.

**29. ATTORNEY'S FEES:** Any person who is a prevailing party in any legal proceeding brought under or related to the transaction described in this lease is entitled to recover prejudgment interest, attorney's fees, costs of service, and all other costs of the legal proceeding from the non-prevailing party.

**30. REPRESENTATIONS:** Tenant's statements in this lease and any application for rental are material representations. Each party to this lease represents that he or she is of legal age to enter into a contract. If Tenant makes a misrepresentation in this lease or in an application for rental, Tenant is in default.

**31. ADDENDA:** Incorporated into this lease are the following addenda, exhibits and other information. If Landlord's Rules and Regulations are made part of this lease, Tenant agrees to comply with the Rules and Regulations as Landlord may, at Landlord's discretion, amend from time to time.

☐ Addendum Regarding Lead-Based Paint
☒ Inventory & Condition Form
☐ Landlord's Additional Parking Rules
☒ Pet Agreement
☐ Protecting Your Home from Mold
☐ Agreement for Application Deposit & Hold
☐ _____
☐ _____

☐ Agreement Between Brokers
☐ Landlord's Rules & Regulations
☒ Owners' Association Rules
☒ Pool/Spa Maintenance Addendum
☒ Residential Lease Application
☐ Residential Lease Guaranty
☐ _____
☐ _____

**32. NOTICES:** All notices under this lease must be in writing and are effective when hand-delivered, sent by mail, or sent by electronic transmission to (Do not insert an e-mail address or a fax number unless the party consents to receive notices under this lease at the e-mail address or fax number specified.):

Tenant at the Property and a copy to:
<u>Connie Clifton</u>
_____
_____
E-mail: <u>MITConnie@gmail.com</u>
Fax: _____

Landlord c/o: *Troy Giles Realty*
~~Lynne Tate Real Estate~~, Deanna Bowman
~~2200 Padre Blvd~~ *5813 Padre Blvd*
South Padre Island, Tx 78597
E-mail: ~~Deanna@LynneTateRealEstate.com~~
Fax: ~~(956)-761-1805~~ *761-6680*
*Deanna @ Troy Giles Realy.com*

(TAR-2001) 1-1-12   Tenants: _____, _____, _____, _____ & Landlord or Landlord's Representative: _____   Page 13 of 15

Residential Lease concerning: _____
**118 KINGS COURT**
**SOUTH PADRE ISLAND, TX   78597**
_____

**33. AGREEMENT OF PARTIES:**

A. Entire Agreement: There are no oral agreements between Landlord and Tenant. This lease contains the entire agreement between Landlord and Tenant and may not be changed except by written agreement.

B. Binding Effect: This lease is binding upon and inures to the benefit of the parties to this lease and their respective heirs, executors, administrators, successors, and permitted assigns.

C. Joint and Several: All Tenants are jointly and severally liable for all provisions of this lease. Any act or notice to, refund to, or signature of, any one or more of the Tenants regarding any term of this lease, its extension, its renewal, or its termination is binding on all Tenants executing this lease.

D. Waiver: Landlord's past delay, waiver, or non-enforcement of a rental due date or any other right will not be deemed to be a waiver of any other breach by Tenant or any other right in this lease.

E. Severable Clauses: Should a court find any clause in this lease unenforceable, the remainder of this lease will not be affected and all other provisions in this lease will remain enforceable.

F. Controlling Law: The laws of the State of Texas govern the interpretation, validity, performance, and enforcement of this lease.

G. Copyright: If an active REALTOR® member of the Texas Association of REALTORS® or an active member of the State Bar of Texas does not negotiate this lease as a party or for one of the parties, either as a party's broker or attorney, this lease is voidable at will by Tenant.

**34. INFORMATION:**

A. Future inquiries about this lease, rental payments, and security deposits should be directed to the person listed for receipt of notices for Landlord under Paragraph 32.

B. It is Tenant's responsibility to determine, before signing this lease, if: (i) all services (e.g., utilities, connections, schools, and transportation) are accessible to or from the Property; (ii) such services are sufficient for Tenant's needs and wishes; and (iii) Tenant is satisfied with the Property's condition.

C. The brokers to this lease have no knowledge of whether Landlord is delinquent in the payment of any lien against the Property.

D. Unpaid rent and any unpaid amount under this lease are reportable to credit reporting agencies.

E. Landlord is not obligated to respond to any requests for Tenant's rental and payment history from a mortgage company or other prospective landlord until Tenant has given notice of termination of this lease and Tenant is not in breach of this lease. (*Notice: Landlord or Landlord's agent may charge a reasonable fee for processing such information.*)

F. If all occupants over 18 years of age die during this lease, Landlord may: (i) permit the person named below to access the Property at reasonable times in Landlord's or Landlord's agent's presence; (ii) permit the named person to remove Tenant's personal property; and (iii) refund the security deposit, less deductions, to the named person. Section 92.014, Property Code governs procedures to follow in the event of a tenant's death.
Name: STEVEN WHITE _____ Phone: (301) 366-6075 _____
Address: 13329 QUERY MILL RD, NORTH POTOMAC, MD 20878 _____
E-mail: _____

(TAR-2001) 1-1-12   Tenants: ____, ____, ____, ____ & Landlord or Landlord's Representative: _____   Page 14 of 15

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com      118 King's Cou
Page 14 of 15                                                                                    2:17cr390-009743

Residential Lease concerning: _____ **118 KINGS COURT**
**SOUTH PADRE ISLAND, TX  78597** _____

G. The Texas Department of Public Safety maintains a database that the public may search, at no cost, to determine if registered sex offenders are located in certain areas (see www.txdps.state.tx.us under on-line services). For information concerning past criminal activity in certain areas, contact the local police department.

H. Landlord's insurance does not cover Tenant from loss of personal property. Landlord recommends that Tenant obtain insurance for casualties such as fire, flood, water damage, and theft. Tenant represents that Tenant ☐ intends  ☒ does not intend to purchase such insurance.

I. Landlord's broker, ~~LYNNE TATE REAL ESTATE~~ *Troy Giles Realty* ,
☒ will ☐ will not  act as the property manager for landlord.

J. This lease is negotiable between the parties. This lease is binding upon final acceptance. READ IT CAREFULLY. If you do not understand the effect of this lease, consult your attorney BEFORE signing.

K. This lease should not be used in conjunction with executory contracts of any type, such as contracts for deed, leases with options to purchase, or lease options, without the advice of an attorney.

| | | | |
|---|---|---|---|
| _Kathryn S Wills_ | 9/10/12 | x _D P Wills_ | 03/24/2012 |
| Landlord | Date | Tenant | Date |
| | | DAVID KEITH WILLS | |

| | | | |
|---|---|---|---|
| | | | 03/24/2012 |
| Landlord | Date | Tenant | Date |

Or signed for Landlord under written property management agreement or power of attorney:

| | | | |
|---|---|---|---|
| By: _____ | | _____ | |
| | Date | Tenant | Date |

**Deanna Bowman** _____
Broker's Associate's Printed Name

**Deanna Bowman**      0459625
Broker's Printed Name     License No.

**Lynne Tate Real Estate** _____
Firm Name

| | | |
|---|---|---|
| | | |
| Tenant | | Date |

(TAR-2001) 1-1-12

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

Page 15 of 15

Page 15 of 15

2:17cr390-009744

118 King's Cou

# EXHIBIT 20.3



GOVERNMENT
EXHIBIT
20.3
17cr390

## TEXAS ASSOCIATION OF REALTORS®
# EXTENSION OF RESIDENTIAL LEASE

USE OF THIS FORM BY PERSONS WHO ARE NOT MEMBERS OF THE TEXAS ASSOCIATION OF REALTORS® IS NOT AUTHORIZED.
©Texas Association of REALTORS®, Inc. 2010

*NOTICE: Use this form only if date in the bottom, left-hand corner of the lease to be extended is*
*dated on or after June 1, 2010.*

CONCERNING THE RESIDENTIAL LEASE OF THE PROPERTY AT <u>188 KING'S COURT, SOUTH PADRE</u>
<u>ISLAND, 78597</u>                                                               between
<u>KATHERINE S HAUSE</u> (Landlord) and
<u>DAVID KEITH WILLS</u> (Tenant)

A. **Amendments to Lease:** Effective <u>January 1, 2013</u>, Landlord and Tenant extend and amend the
above-referenced lease as follows.

   (1) The Expiration Date in Paragraph 3 is changed to: <u>February 28, 2013</u>.

   (2) The monthly rent in Paragraph 5A is: ☒ changed to $ <u>4,050.00</u>      ☐ remains the same.

   (3) <u>Other:</u> Paragraph(s) _____ of the lease are amended as follows:
   <u>Landlord will market property for sale and for lease. Tenant will allow all</u>
   <u>showings with a 30 minute notice from landlord's Broker. Tenant will pay full</u>
   <u>amount of rent due in one payment as stipulated in original lease agreement.</u>
   <u>Total rent due is $8100 payable on or before January 9, 2013</u>

B. **Obligation to Return this Extension:** If Tenant does not sign and return this extension to Landlord on or before
   <u>January 9, 2013</u>, Landlord notifies Tenant that:
   ☒ (1) the lease, in accordance with its terms, will renew on a month-to-month basis, and Landlord notifies Tenant that
          the monthly rent will; ☒ (a) be $ <u>4,050.00</u>, effective <u>January 1, 2013</u>.
                                 ☐ (b) remain the same.
   ☐ (2) the lease will terminate on _____ and Tenant must vacate the Property by the
          date of termination.

_____   _DKWills_____ _1/5/2013_
Landlord                          Date     Tenant                        Date
KATHERINE S HAUSE                          DAVID KEITH WILLS

_____   _____
Landlord                          Date     Tenant                        Date
                                           and/or Assigns

Or signed for Landlord under written property management   _____
Agreement or power of attorney:                            Tenant                        Date

By:_____   _____
                                           Tenant                        Date

Printed Name: _____  Tenant's Phone & E-Mail

Firm Name: _____   Home          Work          Mobile
Broker's License No.:_____   E-Mail: _____
(TAR-2005) 6-1-10                                                      Page 1 of 1
South Padre Real Estate, Inc. 2600 Padre Blvd, Ste E South Padre Island, TX 78597
Phone: 956-592-4429      Fax: 956.761.4868      Connie Clifton            188 KINGS COUR
          Produced with ZipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

EXHIBIT 21





2:17cr390-009302



Page 300.10

2:17cr390-010411



2:17cr390-010412







# EXHIBIT 22

# <u>Video Exhibit (on CD)</u>
# <u>Transcript attached</u>



## UNITED STATES OF AMERICA
### vs.
### David Keith Wills
### 2:17-CR-390

22_With Timecodes.txt

| | | |
|---|---|---|
| 00:00:00.492 | 00001:01 | Detective Veronica Garcia: Video we're about to enter the |
| 00:00:02.621 | 02 | residence. Can you tell me what we're going to see when we enter |
| 00:00:05.814 | 03 | Jane: The house? Or you want me to like |
| 00:00:08.526 | 04 | Detective Veronica Garcia: Tell me what you see when we enter |
| 00:00:09.884 | 05 | those two doors. |
| 00:00:10.509 | 06 | Jane: The living room. |
| 00:00:11.253 | 07 | Detective Veronica Garcia: The living room? |
| 00:00:12.337 | 08 | Jane: And the kitchen is to the right. And there's a little |
| 00:00:15.212 | 09 | office right there. |
| 00:00:16.505 | 10 | Detective Veronica Garcia: Right where? |
| 00:00:17.326 | 11 | Jane: Right next on the left of the door when you enter, and |
| 00:00:21.521 | 12 | then theres stairs on the left. And they're like spiral, and you |
| 00:00:25.218 | 13 | go up and there's a big bed, like a big bedroom on the left. And |
| 00:00:30.220 | 14 | then there's a couple other rooms on the right side and then |
| 00:00:33.591 | 15 | there's like some doors. And like theres a view on the back. And |
| 00:00:36.886 | 16 | then another one right there inside. You'll get to see that. |
| 00:00:41.442 | 17 | Detective Samuel Lucio: And is that before you were telling us |
| 00:00:42.948 | 18 | about the window here? |
| 00:00:44.012 | 19 | Jane:  Yes. |
| 00:00:51.143 | 20 | Detective Samuel Lucio: So youre giving us permission to enter? |
| 00:00:53.333 | 21 | Male Participant I: Yes, sir. |
| 00:00:53.824 | 22 | Detective Samuel Lucio: Thank you for your help. This is the |
| 00:01:03.343 | 23 | spiral stairs she talked about, the kitchen. |
| 00:01:15.750 | 24 | [walking around the house] |
| 00:01:27.413 | 25 | Male Participant I: If you need light, feel free to turn on the |
| 00:01:29.681 | 00002:01 | lights. |
| 00:01:36.380 | 02 | Detective Samuel Lucio: Can we go upstairs? Is there anything |
| 00:01:37.551 | 03 | else that |
| 00:01:41.213 | 04 | Male Participant I: It's on the other side, sir.  And it's a tricky |
| 00:01:47.039 | 05 | one that they put in for me (Laughs) |
| 00:01:51.468 | 06 | Detective Samuel Lucio: Oh it does work. Its okay, we know its a master |
| 00:01:56.761 | 07 | bedroom. Male Participant I: There ya go. |

Page 1

22_With Timecodes.txt

| | | |
|---|---|---|
| 00:02:10.741 | 08 | Detective Samuel Lucio: Tell us what you remember about up here. |
| 00:02:13.167 | 09 | Jane: These carpets. And then inside, there is this cabinet like |
| 00:02:24.110 | 10 | behind the bed. Then there is a shower to the right, and theres |
| 00:02:28.705 | 11 | a sink on the left, and thats about it. |
| 00:02:35.531 | 12 | [walking around the house] [TV on the background] |
| 00:02:45.910 | 13 | Detective Samuel Lucio: So that's the cabinet that youre talking |
| 00:02:48.084 | 14 | about? |
| 00:02:48.620 | 15 | Jane: Yeah. |
| 00:02:49.448 | 16 | Detective Samuel Lucio: More in the shower? |
| 00:02:51.337 | 17 | Jane: Yeah. |
| 00:02:59.610 | 18 | Detective Samuel Lucio: Is this the room where you were brought into? |
| 00:03:01.861 | 19 | Jane: Yeah. |
| 00:03:04.707 | 20 | [TV on the background] |
| 00:03:21.748 | 21 | (00:03:29 end of audio) |

# EXHIBIT 23

# <u>Video Exhibit</u>



## UNITED STATES OF AMERICA
### vs.
### David Keith Wills
### 2:17-CR-390

# EXHIBIT 24

THE STATE OF TEXAS           §
                             §
COUNTY OF CAMERON            §

### LEASE AGREEMENT
© 2011 Brian G. Janis, P.C.

THIS Lease Agreement is made this 16th day of March, 2011, outside of Port Isabel, Texas, by and between PORT ISABEL - SAN BENITO NAVIGATION DISTRICT, hereinafter referred to as "LESSOR," a political subdivision of The State Of Texas, of 250 Industrial Drive, outside of Port Isabel, Cameron County, Texas 78578, and GLOBAL BLUE TECHNOLOGIES - CAMERON LLC, hereinafter referred to as "LESSEE," a Texas Limited Liability Company, of 11820 Parklawn Drive, Suite 540, Rockville, Montgomery County, Maryland 20852 (which is currently registered "to do business" in Texas).

WHEREAS, LESSOR is the owner of a parcel of land located at the Port Of Port Isabel - San Benito, and LESSOR is interested in leasing the said land to a new tenant.

WHEREAS, LESSEE is involved in a business requiring the use of such land and wishes to lease such land in connection with its business needs, the parties desiring to enter into a lease instrument for such property.

WHEREAS, the parties are willing and able to enter into this Lease Agreement, and the offer to reduce the various lease terms and provisions to a (new) written lease agreement has been accepted by the appropriate party.

NOW, THEREFORE, for and in consideration of the premises and the mutual promises of the parties, and the mutual benefits they will gain by the performance hereof, in accordance with the provisions hereinafter set forth, LESSOR and LESSEE agree as follows:

I.

Term Of Agreement

A.

This Lease Agreement shall have a term of two (2) years, beginning on the 16th day of March, 2011 and terminating on the 15th day of March, 2013. At the end of such term, or any renewal or extension thereof, LESSOR shall have the right to re-take the leased property, or alternatively, to re-lease same, except for an

LEASE AGREEMENT - PAGE 1



GOVERNMENT EXHIBIT
24
17cr390

2:17cr390-005222



option to renew, as set forth in Paragraph II below, being exercised by LESSEE.

### B.

All of the terms of this Lease Agreement shall survive (1) the execution of this Agreement, (2) the performance (or non-performance) of this Agreement, and (3) the said term of this Agreement.

### II.

### Option To Renew

### A.

LESSEE is hereby granted, provided that it is <u>not</u> in default in any particular under this Lease Agreement, <u>three</u> options to renew and extend the term of this Agreement for a term of two (2) years each (i.e., <u>no</u> more than <u>three</u> options for <u>two</u> years) upon the expiration of the original term of this Agreement (or any additional option term, as appropriate), but <u>only</u> <u>if</u> the said option is exercised.

### B.

Any such option (if exercised) will be under the same terms, covenants and conditions of this Lease Agreement, so far as is applicable, except as to rental fees (which are addressed in Paragraph VI below), and subject to all of the exceptions and reservations set forth in this Agreement.

### C.

Any such option will be exercised by a written notice setting forth LESSEE's election to exercise the said option, delivered to LESSOR by United States Mail, courier, hand-delivery or telefax, no later than the date that is thirty (30) days <u>prior</u> to the expiration date of the original (or any extended) term of this Lease Agreement.

LEASE AGREEMENT - PAGE 2

2:17cr390-005223

III.

## Property Being Leased

A.

The property being leased by LESSOR to LESSEE is a parcel of land described in the instrument annexed hereto as Exhibit "A" and incorporated by reference herein as if fully copied and set forth at length, with is <u>approximately</u> 5.464 acres, more or less.

B.

There is located on that property certain utility easements and certain improvements; LESSEE will elevate the soil profile with sufficient amounts of soil to provide a proper base (along the lines of a foundation) to support a "greenhouse" (like) structure on that land (on that soil).

IV.

## Use Of Premises

A.

The property being leased by LESSEE, under this Agreement, can be used <u>only</u> for the operation of a "('green culture') aquaculture facility for the purpose of breeding, raising and growing shrimp and other 'aquatic aquaculture' species," and any related purposes, within the discretion of LESSEE; however, the determination of the use of the premises fitting within such "description" is the exclusive province of LESSOR.

B.

LESSEE shall have the right to determine the times during which all or any part of the said leasehold and related facilities will be operated, provided that such determination is based on reason, considering demand, public safety (and health and welfare) and the need to maintain a profitable business.

C.

In <u>no</u> event will the leasehold premises or any part thereof be used or occupied as a residence or overnight facility.

LEASE AGREEMENT - PAGE 3

2:17cr390-005224

D.

No one has permission to fish from any facility in or at the Port Of Port Isabel - San Benito, including the said leasehold premises; further, no officer, employee, agent or contractor of LESSEE can grant permission or has permission to fish from or at the leasehold premises.

E.

LESSEE will be entitled, under this Agreement, to discharge certain "production liquids" into (only) a nearby "holding pond."

F.

LESSEE, under this Agreement, is to construct a permanent fence around the ("state of the art") "facility" (i.e., the said "greenhouse") to be constructed on the leased property, which fence will be of a good quality and grade; when this lease expires or is otherwise terminated, the said fence will remain on the property and become the property of PISBND.  Similarly, when this lease expires or is otherwise terminated, the said "facility" ("greenhouse") shall be removed from the leased property; however, when this "removal" occurs, all of the said "soil" (needed to construct the said "facility") is to remain on the leased property.

V.

Leasehold Operation

LESSEE shall maintain and operate the said leased area, facilities and/or processes in a lawful and proper manner, in accordance with the following:

A - LESSEE shall at all times maintain such area, facilities and processes in a safe, sound, clean and sanitary condition, and shall provide the personnel, equipment, services and commodities necessary to do so.

B - LESSEE shall be responsible for repairs in any manner related to the operation or use of the said business, and for any improvements (including the costs of or for the same [exclusively]) on the premises (whether existing or subsequently constructed, installed, removed or dismantled), and for any and all damages to any facility or equipment used by LESSEE under this Agreement, including general maintenance of and repairs to the leasehold area facilities and processes.

LEASE AGREEMENT - PAGE 4

2:17cr390-005225

C - A site and facility inspection will be performed prior to the commencement of the lease term to determine the condition of the premises, and to clean the same (the initial cleaning to be handled by LESSOR), as well as to examine any improvements to be made by LESSEE (it is anticipated that the inspection will be attended by representatives of both parties); also, LESSEE agrees to accept the premises in its current condition.

D - Plans and specifications for any buildings or structures, whether temporary or permanent, or any other improvements, equipment or facilities which may be utilized or constructed under this Lease Agreement, including any changes to the same, shall be approved by LESSOR prior to the use or the construction of any such structures, facilities or equipment, such approval not to be unreasonably withheld; LESSEE agrees to submit photographs, drawings or any other type of document required by LESSOR (including a set of all "as built" construction drawings, once all construction is completed) to assist LESSOR in considering and approving the said plans and specifications.

E - No alterations, additions or improvements shall be made on or to the premises, on the land, or along the channels, without the consent of LESSOR in writing, based on building, fire, setback, electric and health codes or standards adopted by LESSOR, which shall be no more stringent than the codes or standards enforced in the City Of Port Isabel, Texas; all alterations, additions and improvements made by LESSEE without such consent (which shall not be unreasonably withheld) shall, unless LESSOR elects otherwise, belong to LESSOR, at LESSEE's expense.

F - Any mechanic's or materialman's lien, contractor's/sub-contractor's claim or other encumbrance filed against the said property or any improvements thereon shall be promptly discharged by LESSEE.

G - LESSEE agrees not to erect, affix, display, post or place any sign, notice, advertisement or bill in or about any part of the said property or on any equipment or facilities used by LESSEE, without first securing the consent and approval of LESSOR, such approval not to be unreasonably withheld.

LEASE AGREEMENT - PAGE 5

2:17cr390-005226

H -   LESSOR reserves the right to enter upon the premises,
      facilities or equipment of LESSEE, during normal business
      hours, with at least 24 hours prior notice, for the
      purpose of confirming compliance with the terms of this
      Agreement.

I -   LESSEE agrees not to do or suffer any waste or nuisance
      upon the said premises, or to deface the premises or any
      part thereof, or to permit the same, during or at the
      termination of the said lease term, or any extension or
      renewal thereof.

J -   LESSEE also agrees that, upon the termination (or the
      expiration) of this Agreement, LESSEE shall leave the
      said premises in the condition that the said premises
      were in at the time of entry by LESSEE, reasonable wear
      and tear excepted, and any improvements to be constructed
      or made notwithstanding; to this extent, LESSEE may
      remove all trade fixtures, provided that LESSEE is not
      otherwise in default under this Agreement and that the
      same can be accomplished without damaging the premises,
      taking into account the provisions of Paragraph IV F
      above (as to a fence, "soil" and a "greenhouse"), and
      further, if such fixtures or any other personalty are
      abandoned, LESSOR is authorized to appropriate the same.

K -   LESSEE shall be responsible for providing electric,
      water, gas, sewer, garbage, cable, telephone and internet
      utilities (as appropriate) for the said premises, and
      LESSOR shall not be responsible for any utilities; all
      such utilities are located on the south right-of-way of
      the property, and LESSOR authorizes LESSEE to connect all
      such utilities on the south side of "Southpoint Drive,"
      and further, to perform the "boring" under that road to
      connect those utilities (but not the "cutting" of that
      road).

L -   All ad valorem or property taxes accruing on the said
      leasehold during the term of this Agreement, or any
      extension or renewal thereof, and the personalty in or on
      such leasehold, shall be the responsibility of LESSEE,
      there being no ad valorem or property taxes accruing on
      the realty upon which the leasehold is located (separate
      from the leasehold itself) as that (real) property (as to
      LESSOR) is exempt from taxation because LESSOR is a
      political subdivision of The State Of Texas.

<div align="center">LEASE AGREEMENT - PAGE 6</div>

2:17cr390-005227

M - In the event LESSEE is adjudicated as bankrupt or files for bankruptcy protection, this Agreement shall be unaffected and continue to be in full force and effect.

N - In the event the said property is the subject of condemnation proceedings, this Agreement shall remain in effect to the extent possible and the lease will be prorated accordingly, in the event of any such taking of the premises; any award of condemnation proceeds will be retained by LESSOR and LESSEE in accordance with the nature of the interests condemned (as defined by law).

O - LESSOR reserves the right to maintain rights-of-way and easements on, over and across the said property for utility lines, pipelines and/or roads necessary to develop tracts adjacent to that property, although LESSOR will avoid interference with existing facilities of LESSEE, so as to not reduce the utility or the usage of said property.

P - NO HAZARDOUS SUBSTANCES OR WASTE MATERIALS WILL BE PLACED ON OR STORED ON THE LEASED PREMISES, IN VIOLATION OF LAW OR THE PUBLIC HEALTH, SAFETY AND/OR WELFARE; MOREOVER, ANY SUCH ACTIVITY WILL BE CONTROLLED BY THE RELEVANT PERMITS AND ANY RELATED LAWS, INCLUDING FEDERAL AND STATE ENVIRONMENTAL LAWS, REGULATIONS, RULES AND ORDERS.

Q - This Lease Agreement is subject to any deeds of trust, security interests or mortgages that do or will constitute a lien against the leased premises, and any personalty thereon, as authorized by LESSOR (for financing and the like); to this extent, the said parties will execute any instruments, releases, conditional assignments or other documents required thereunder.

*             *             *

## VI.

### Rental Fees

#### A.

In consideration for the use of the property being leased, LESSEE will pay LESSOR the following sums during the term of this Agreement, such sums (as calculated in the currency of the United States Of America) to be paid as follows: (1) $2,500.00 per month, for the property referred to above (i.e., Exhibit "A"), payable on

LEASE AGREEMENT - PAGE 7

2:17cr390-005228

the first (1st) day of each month during the term of this Agreement (and any renewal or extension thereof), <u>except</u> that the first payment will <u>also</u> include the scheduled payments for the first six months of the original term of this lease (i.e., for a total of $15,000.00), which is to be paid <u>prior</u> to possession or occupancy by LESSEE of the said property, (2) in the event that required "permitting" for the anticipated "('green culture') aquaculture facility for the purpose of breeding, raising and growing shrimp and other 'aquatic aquaculture' species" is <u>not</u> granted (but <u>only</u> if the denial of a permit is due to factors beyond LESSEE's control), LESSEE will be <u>released</u> from any further obligation under this Agreement, and (3) LESSEE will reimburse LESSOR for all legal fees and expenses accrued in the drafting and recording (in the County property records) of this Agreement.

<p style="text-align:center">B.</p>

In the event of a renewal or extension of this lease, the said rental (and related) fees shall be subject to adjustment, but at no time shall the monthly rentals or charges be less than the foregoing amounts, and same will be calculated by taking the foregoing amounts and adjusting same in accordance with the Producer's Price Index ("for all goods"), as calculated every other year (i.e., in the second [2nd] and final year of the relevant term), in conjunction with an option to renew.

<p style="text-align:center">C.</p>

Any late payment (i.e., ten days after the due date) will require the payment of a charge of 10% of the amount due to avoid a default; any holding over beyond the expiration of the said lease term (or any renewal or extension thereof) will require the payment of prorata rentals, in accordance with the rates above.

<p style="text-align:center">D.</p>

Upon the execution of this Agreement by both parties, within a period of ten (10) business days thereafter, as security for the payment of all rents, fees and charges and for the satisfaction of all such obligations (e.g., the matters discussed in Paragraph IV F) contemplated by this Agreement, LESSEE will deposit the sum of $20,000.00, in the form of a bond, cash or cash equivalent, in a surety, bank or similar account, which will be <u>payable</u> to LESSOR in the <u>event</u> of any such <u>default</u> under this Agreement, and in the event <u>no</u> such default occurs, that sum is to be returned to LESSEE, at the expiration of the pertinent term of this Agreement, <u>provided</u> that <u>all</u> terms and provisions of this Agreement have been honored and satisfied by LESSEE (as appropriate).

<p style="text-align:center">LEASE AGREEMENT - PAGE 8</p>

2:17cr390-005229

E.

The parties agree that the consideration for the execution of this Agreement has been received by each (other) party, as appropriate.

VII.

## Ingress And Egress

During the term of this Agreement, LESSOR shall allow reasonable ingress and egress to and from the property being leased to LESSEE.

VIII.

## Insurance

A.

During the term of this Agreement, and prior to the use or occupancy of the premises by LESSEE, LESSEE shall procure and keep in force the following insurance:   (A) Liability And Property Damage Insurance with limits as to personal injury and death, and as to property damage, in amounts to be determined by LESSOR (with policy limits not less than $1,000,000.00 per person, $2,000,000.00 per occurrence and $2,000,000.00 for property damage); and (B) Fire And Hazard Insurance (including Extended Coverage, and if available, Windstorm and Flood Coverage) for the leased premises, in amounts to be determined by LESSOR (in an amount adequate to "reconstruct" the leased premises). (This is in addition to liability and any construction-related insurance required or normally contemplated for a construction project, including but not limited to Texas Worker's Compensation Insurance, if any construction is undertaken).

B.

LESSEE agrees to give LESSOR at least thirty (30) days notice of any material change in or cancellation of or non-renewal of such insurance policies; LESSEE shall provide LESSOR with either copies of those policies, or alternatively, Certificates Of Insurance, to confirm such coverage (prior to the lease term and/or occupancy of the premises, and thereafter, throughout the term of this Agreement, and any renewals or extensions of such Agreement).

LEASE AGREEMENT - PAGE 9

2:17cr390-005230

IX.

Indemnity

A.

LESSEE SHALL INDEMNIFY, PROTECT AND HOLD HARMLESS LESSOR, AND ITS RESPECTIVE COMMISSIONERS, OFFICERS, AGENTS, EMPLOYEES, REPRESENTATIVES, SUCCESSORS AND ASSIGNS, FROM ALL LIABILITIES, CLAIMS, DEMANDS, ACTIONS, LOSSES, DAMAGES AND COSTS, INCLUDING ALL COSTS OF DEFENSE THEREOF, OF ANY NATURE WHATSOEVER, FOR INJURY TO OR DEATH OF PERSONS OR LOSS OR DAMAGE TO PROPERTY, OR FOR ANY OTHER REASON, OCCURRING ON THE LEASED PROPERTY OR IN ANY MANNER ARISING FROM OR CONNECTED WITH LESSEE'S USE AND OCCUPANCY OF THE SAID PROPERTY DURING THE TERM OF THIS AGREEMENT OR ANY TIME OF OCCUPANCY OF THE PROPERTY BY LESSEE, INCLUDING ANY CLAIMS, LIABILITIES AND ACTIONS BASED UPON NUISANCE OR INVERSE CONDEMNATION OR ENVIRONMENTAL PENALTIES OR ASSESSMENTS, AND INCLUDING CLAIMS AND ACTIONS BASED UPON THE ACTS OR OMISSIONS OF LESSEE, OR ITS MANAGERS, OFFICERS, AGENTS, EMPLOYEES OR CONTRACTORS.

B.

Upon demand, LESSEE shall, at its own expense, defend LESSOR (as set forth above) against any and all such liabilities, claims, demands, actions, losses, damages and costs. Moreover, LESSEE shall give LESSOR prompt notice of any claim within its knowledge that in any way (directly or indirectly) affects either LESSOR or LESSEE; both parties shall have the right to participate in the defense of such claim to the extent of their interests.

X.

Termination

A.

This Agreement may be terminated prior to the end of the said lease term (1) by the mutual agreement of the parties, set forth in writing and signed by the parties, or (2) should either party default in conforming with or adhering to any requirement, condition or provision of this Agreement, and after such default is brought to the attention of the defaulting party, such default is not corrected (or, in the alternative, diligent efforts to cure the default have not been commenced) within fifteen (15) days.

LEASE AGREEMENT - PAGE 10

2:17cr390-005231

B.

The non-defaulting party may, at its option, extend the period of performance for the defaulting party to correct any such default; if the non-defaulting party attempts to terminate this Agreement on the basis of a default, the defaulting party has to be given an opportunity to be heard before the termination is finalized.

XI.

## Assignment

This Agreement shall not be assigned by LESSEE, except as indicated above, and the said premises shall not be sublet in whole or in part by LESSEE, without the consent and approval of LESSOR, which shall be set forth in writing and signed by both parties; any assignee or sublessee will be bound by the terms of this Agreement.

XII.

## Compliance With Law

Both parties will act, at all times, in compliance with all pertinent Port and County ordinances, orders, rules and regulations, as well as all applicable State and Federal laws.

XIII.

## Waiver

Any waiver by either party of any default under or breach of this Agreement shall not constitute a continuing waiver of such default or breach, or a waiver of or permission for (express or implied) any other or subsequent default or breach.

XIV.

## Parties Bound

A.

This Agreement shall be binding upon and inure to the benefit of the parties to this Agreement and their respective heirs, legal representatives, successors and assigns, as appropriate; however, there are no third party beneficiaries to this Agreement.

LEASE AGREEMENT - PAGE 11

2:17cr390-005232

B.

It is the specific intention of the parties to this Agreement that this Agreement constitutes a final and executed instrument binding upon all of the parties to the said instrument.

XV.

## Force Majeure

In the event that either party shall be prevented from completing performance of its respective obligations hereunder by an "act of God" or any other occurrence whatsoever which is beyond the control of the parties hereto, then such party shall be excused from any further performance of its obligations and undertakings hereunder, provided however, that in the event that any such performance is only interrupted or delayed, the affected party shall only be excused from such performance for that period of time as is reasonably necessary after such occurrence to remedy the effects thereof.

XVI.

## Entire Agreement

A.

This instrument contains the entire agreement between the parties relating to the rights granted herein and the obligations assumed herein, and supersedes any prior understandings, representations, memorandums or agreements regarding the property that is the subject of this Agreement.

B.

Any oral representations or modifications concerning this instrument shall be of no force or effect; this Agreement may be amended, provided that no amendment, modification or alteration of the terms of this Agreement shall be binding unless the same is set forth in writing and signed by both parties.

LEASE AGREEMENT - PAGE 12

2:17cr390-005233

XVII.

Breach Of Obligation

This Agreement is entire as to all of the performances to be rendered under it; the breach of any obligation to be performed by either party shall constitute a breach of the entire agreement and shall give the other party the right to terminate this Agreement, in accordance with Paragraph X A (regarding termination) above.

XVIII.

Law Governing

THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS (AND WHERE APPLICABLE, THE LAWS OF THE UNITED STATES OF AMERICA).

XIX.

Venue

THE OBLIGATIONS AND UNDERTAKINGS OF EACH OF THE PARTIES TO THIS AGREEMENT SHALL BE PERFORMABLE IN CAMERON COUNTY, TEXAS.

XX.

Warranties Or Representations

A.

LESSOR EXPRESSLY DISCLAIMS ANY AND ALL WARRANTIES, AND MAKES NO WARRANTIES OR REPRESENTATIONS ABOUT THIS AGREEMENT, OR THE RENEWAL OR EXTENSION OF THIS AGREEMENT, OR THE SAID PREMISES, INCLUDING BUT NOT LIMITED TO ITS FITNESS, CONDITION, CHARACTERISTICS, SIZE OR DIMENSIONS, OR ITS SUITABILITY FOR SUCH PURPOSES OR USES AS SET FORTH ABOVE OR AS OTHERWISE CONTEMPLATED (ALL OF WHICH IS A MATTER OF LESSEE's JUDGMENT), SAID PREMISES BEING PROVIDED, DELIVERED AND/OR LEASED "AS IS, WHERE IS," except as is set forth in this instrument.

B.

THE PARTIES TO THIS AGREEMENT SPECIFICALLY ACKNOWLEDGE THAT NO WARRANTY OR REPRESENTATION OF ANY KIND WHATSOEVER IS BEING MADE BY EITHER PARTY IN CONNECTION WITH THE EXECUTION OR PERFORMANCE OF THIS AGREEMENT, except as is set forth in this instrument.

LEASE AGREEMENT - PAGE 13

2:17cr390-005234

C.

THE PARTIES HERETO HEREBY AGREE TO RELEASE, INDEMNIFY AND HOLD HARMLESS EACH OTHER (PARTY) FROM ANY AND ALL CLAIMS ARISING FROM THE ENTRY INTO, THE EXECUTION OF, THE ENFORCEMENT OF, OR THE INTERPRETATION OF THIS AGREEMENT.

XXI.

Notice

Any notice to any party shall be in writing and sent by certified or registered mail, courier, hand-delivery or telefax, addressed to that party as set forth above, at that party's address as set forth above or such other address as may be designated; any such notice shall be deemed to have been given as of the date that the notice is deposited in the United States Mail, postage prepaid, or sent by courier, hand-delivery or telefax.

XXII.

Invalidity

A.

If any term, provision, covenant or condition of this Agreement is determined by an arbitrator (as explained below at Paragraph XXIV) to be invalid, illegal or unenforceable, the remainder of the said provisions of this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

B.

It is the intention of the parties to this Agreement that in lieu of each clause or provision of this Agreement that is determined to be invalid, illegal or unenforceable, there be added as a part of this Agreement a clause or provision as similar in terms to such invalid, illegal or unenforceable clause or provision as is possible which shall nevertheless be valid, legal and enforceable.

LEASE AGREEMENT - PAGE 14

## XXIII.

### Construction Of Instrument

#### A.

Each of the parties hereto has counsel or has had the opportunity to be represented by counsel in regard to the negotiation and the drafting of this Agreement; accordingly, this Agreement shall not be construed in favor of either party.

#### B.

As used in this Agreement, whenever the context so indicates, (1) the masculine, feminine or neuter gender, (2) the singular or plural number, and (3) the individual or corporate capacity, shall each be deemed to include the others.

## XXIV.

### Arbitration

#### A.

ANY DISPUTE, CONTROVERSY OR CLAIM ARISING UNDER OR RELATING TO THIS AGREEMENT, OR THE BREACH, TERMINATION OR INVALIDITY THEREOF, SHALL BE SETTLED (EXCEPT WHERE THE PARTIES HERETO RESOLVE ANY SUCH DISPUTE, CONTROVERSY OR CLAIM BY AGREEMENT) BY ARBITRATION ONLY (I.E., ANY SUCH DISPUTE, CONTROVERSY OR CLAIM WILL NOT BE RESOLVED BY OR THROUGH ANY COURT OR JUDICIAL PROCEEDING, AND FURTHER, THERE SHALL BE NO PRE-TRIAL DISCOVERY), IN ACCORDANCE WITH THE FEDERAL ARBITRATION ACT AND THE COMMERCIAL ARBITRATION RULES OF THE AMERICAN ARBITRATION ASSOCIATION (THIS DOES NOT REQUIRE THE USE OF SUCH ASSOCIATION AND SUCH RULES ARE ONLY PROCEDURES FOR THE ARBITRATION), USING ONE ARBITRATOR, TO BE SELECTED BY AGREEMENT OF THE PARTIES - SUCH ARBITRATION TO BE CONDUCTED IN BROWNSVILLE, CAMERON COUNTY, TEXAS, IN THE ENGLISH LANGUAGE – AND A JUDGMENT UPON THE AWARD RENDERED BY THE ARBITRATOR MAY BE ENTERED IN ANY COURT HAVING JURISDICTION THEREOF.

#### B.

If any proceeding is initiated to resolve a dispute arising under or relating to this Agreement by either of the parties hereto, it is expressly agreed that the prevailing party shall be entitled to recover from the other party reasonable attorney fees, costs and expenses, in addition to any other (including but not

2:17cr390-005236

limited to declaratory, injunctive or monetary) relief that may be awarded.

## XXV.

### Authority

#### A.

The parties to this Agreement specifically warrant and represent that (1) the signatories below are authorized to act on behalf of the respective party to this instrument, (2) the signatories have been authorized to execute this instrument by the said parties in accordance with the requisite corporate formalities of each such party, (3) the execution of this instrument by the said signatories constitutes the binding act of each such party to this instrument, and (4) the execution of this instrument and the adoption of same by each party is authorized by law.

#### B.

This Lease Agreement has been authorized by LESSOR, acting through its Navigation And Canal Commission, for LESSEE, pursuant to Sections 63.153, 63.157, 60.038 and 60.039 of the Texas Water Code.

#### C.

Pursuant to Section 60.038 (b) of the Texas Water Code, the said property is hereby declared, by the Navigation & Canal Commission of LESSOR, to be "surplus land" not needed for use by LESSOR in connection with the development of a "navigation project."

## XXVI.

### Time Of Essence

Time is of the essence of this Lease Agreement.


\*            \*            \*


LEASE AGREEMENT - PAGE 16


2:17cr390-005237

EFFECTIVE this 16th day of March, 2011 outside of Port Isabel, Texas.

                    PORT ISABEL - SAN BENITO NAVIGATION
                    DISTRICT, Lessor


                    _____
                    Victor Barrera, Chairman Of
                    The Navigation & Canal Commission
                    (03-__-11)

ATTEST:



_____
Robert A. Ostos, Secretary Of
The Navigation & Canal
Commission (03-__-11)


                    GLOBAL BLUE TECHNOLOGIES - CAMERON LLC, a
                    Texas Limited Liability Company, by and
                    through GLOBAL BLUE TECHNOLOGIES - USA
                    LLC, a Florida Limited Liability Company
                    and (its) Managing Member, Lessee


                    _____
                    Stephen C. La Pointe, President/CEO Of
                    GLOBAL BLUE TECHNOLOGIES - USA LLC
                    (03-10-11)

ATTEST:

_____
Name: Tiffany Field
Title: Public Notary
Exp. 4/10/2012              (03-10-11)

┌─────────────────────────────┐
│      TIFFANY FIELD          │
│     NOTARY PUBLIC           │
│   MONTGOMERY COUNTY         │
│      MARYLAND               │
└─────────────────────────────┘

                    LEASE AGREEMENT - PAGE 17

2:17cr390-005238

\*                    \*                    \*

## ACKNOWLEDGEMENTS

THE STATE OF TEXAS          §
                           §
COUNTY OF CAMERON           §

This instrument was acknowledged before me on March 16th, 2011 by VICTOR BARRERA, Chairman of the Navigation & Canal Commission of the PORT ISABEL - SAN BENITO NAVIGATION DISTRICT, a political subdivision of The State Of Texas, on behalf of the said District.



_____
Notary Public in and for
The State Of Texas

THE STATE OF MARYLAND       §
                           §
COUNTY OF MONTGOMERY        §

This instrument was acknowledged before me on March 10, 2011 by STEPHEN C. LA POINTE, President/CEO of GLOBAL BLUE TECHNOLOGIES - USA LLC, a Florida Limited Liability Company and (the) Managing Member of GLOBAL BLUE TECHNOLOGIES - CAMERON LLC, a Texas Limited Liability Company, on behalf of the said Company.

TIFFANY FIELD
NOTARY PUBLIC
MONTGOMERY COUNTY
MARYLAND

_____
Notary Public in and for
The State Of Maryland   Exp. 4/10/2012

\*                    \*                    \*

AFTER RECORDING RETURN TO:

BRIAN G. JANIS, P.C.
777 E. Harrison St., 2nd Fl.
Brownsville, Texas 78520-8520
Telephone: 956/541-2168
Telefax: 956/541-8663

PREPARED IN THE LAW OFFICE OF:

BRIAN G. JANIS, P.C.
777 E. Harrison St., 2nd Fl.
Brownsville, Texas 78520-8520
Telephone: 956/541-2168
Telefax: 956/541-8663

LEASE AGREEMENT - PAGE 18

2:17cr390-005239



EXHIBIT " A ."

MARTIN, BROWN & PEREZ
Engineering & Surveying, Inc.

EXHIBIT A
PAGE ___ OF ___ PAGES

2:17cr390-005240

# EXHIBIT 25



GLOBAL
BLUE
TECHNOLOGIES
CAMERON

November 8, 2013

Steven B. Bearden
Port Director
Port Isabel-San Benito Navigation District
250 Industrial Drive
Port Isabel, Texas 78578

RE: TERMINATION OF LEASE

Dear Steve,

Global Blue Technologies-Cameron under the terms of the Lease Agreement dated March 16, 2011, (Section X, Termination A.) would like to request from the PISBND Canal and Navigation District Commissioners, a mutually agreed upon early termination of the lease agreement. Under the current renewal agreement, the Lease agreement concludes on March 15, 2015.

The reason for the early termination is the unsuccessful search for a suitable expansion site in the Cameron County coastal areas which if we had found available would have enabled us to remain. At present we have found property in the Rockport, Texas area and have started construction on a full size grow out farm for the expansion of Global Blue Technologies. While we would have liked to have kept our small test farm facility in Port Isabel, the economics of two facilities so far apart would have been detrimental to the growth of GBT. On a positive note, though, we plan on using the Tex-Pac facility located in the PISBND Canal and Navigation District as processors for our harvested shrimp.

Global Blue Technologies-Cameron would like to vacate the property on or about December 31, 2013.

Once GBT-Cameron is approved for early termination, pursuant to the terms of the Lease Agreement; GBT-C will remove all structures, piping, plastic (including pond linings),concrete (including concrete blocks), fencing and will grade leased property where the present structure is located to a flat smooth surface where current ponds are located. Should weather or other events prevent a completion on the above date, December 31, 2013 for the decommissioning, then GBT-C will continue to pay the present rent until decommissioning is completed.

Global Blue Technologies-Cameron has appreciated the support of the staff at the Navigation District and of the Commissioners who have shown us every courtesy while a tenet. We would appreciate your support in approving this termination of lease.

Respectfully,

Jim Salmon
Global Blue Technologies-Cameron, LLC

GOVERNMENT
EXHIBIT
25
17cr390

# EXHIBIT 26

File No. 328117
County Clerk, Aransas County, Texas

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

GF #021305 **WARRANTY DEED WITH VENDOR'S LIEN**

**DATE:**
March 11, 2013

**GRANTOR:**
VICTORIA H KENNEDY

**GRANTOR'S MAILING ADDRESS:**
P. O. Box 2258
Rockport, TX 78381

**GRANTEE:**
DAVID WILLS and wife, LORI WHITE WILLS

**GRANTEE'S MAILING ADDRESS:**
506 Lakewood Drive
Rockport, TX 78382

**CONSIDERATION:**
TEN AND NO/100 DOLLARS ($10.00) and other valuable consideration and a note of even date that is in the principal sum of $186,000.00 and is executed by Grantee, payable to the order of PNC Mortgage, a division of PNC Bank, National Association. The note is secured by a vendor's lien retained in favor of PNC Mortgage, a division of PNC Bank, National Association this deed and by a deed of trust of even date from Grantee to Middleberg, Riddle and Gianna, Trustee.

**PROPERTY (INCLUDING ANY IMPROVEMENTS)**
Lot No. TEN (10), Block No. TWENTY-THREE (23), ROCKPORT COUNTRY CLUB, Unit No. TWO (2), Aransas County, Texas, according to the plat thereof recorded in Volume 4, Page 31, Plat Records, Aransas County, Texas.

**RESERVATIONS FROM AND EXCEPTIONS TO CONVEYANCE AND WARRANTY:**

1. All, leases, grants, exceptions or reservations of coal, lignite, oil, gas and other minerals, together with all rights, privileges, and immunities relating thereto.

2. Subdivision plat of record in Volume 4, Page 31, Plat Records, Aransas County, Texas, and easements shown thereon.

3. Contract Easement and Use Restrictions granted 02-03-1984, of record in Volume 319, Page 386, Deed Records, and Contract Amendments recorded under Clerk's File No. 137321, Official Public Records, Aransas County, Texas.

4. Agreements as to rights of memberships in ROCKPORT COUNTRY CLUB, recorded under Clerk's File Nos. 185385, 185792, 197075 and amended under 226258, Official Public Records, Aransas County, Texas.

5. Oil, Gas and Mineral Leases from Emory M. Spencer to Houston Oil and Mineral Corporation, of record in Volume 90, Page 439 and in Volume 95, Page 489, Oil and Gas Records, Aransas County, Texas.

6. Right of Way dated 02-01-1929 from Alvin L. Dietel to Aransas County, of record in Volume M-2, Page 597, Deed Records,

GOVERNMENT EXHIBIT
26
17cr390

CERTIFIED TO BE A TRUE AND CORRECT COPY

328117

File No. _____
County Clerk, Aransas County, Texas

Aransas County, Texas.

7.  Restrictions of record in Volume 254, Page 150; Volume 282, Page 271; Volume 313, Page 199; and under Clerk's File Nos. 153865, 185358, 185732, 197075, and amended under 226258, 278425, and 312740, Official Public Records and amendments in Volume 324, Page 124, re-filed in Volume 327, Page 422; and in Volume 331, Page 296, Deed Records, Aransas County, Texas.

Grantor, for the consideration and subject to the reservations from and exceptions to conveyance and warranty, grants, sells, and conveys to Grantee the property, together with all and singular the right and appurtenances thereto in any wise belonging, to have and hold it to Grantee, Grantee's heirs, executors, administrators, successors, or assigns forever. Grantor binds Grantor and Grantor's heirs, executors, administrators, and successors to warrant and forever defend all and singular the property to Grantee, and Grantee's heirs, executors, administrators, successors, and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof, except as to the reservations from and exceptions to conveyance and warranty.

The vendor's lien against and superior title to the property are retained until each note described is fully paid according to it's terms, at which time this deed shall become absolute.

PNC Mortgage, a division of PNC Bank, National Association at Grantee's request, has paid in cash to Grantor that portion of the purchase price of the property that is evidenced by the note described. The vendor's lien and superior title to the property are retained for the benefit of PNC Mortgage, a division of PNC Bank, National Association and are transferred to that party without recourse on Grantor.

VICTORIA H KENNEDY

THE STATE OF TEXAS        }
COUNTY OF ARANSAS         }

This instrument was acknowledged before me on the 14 day of Mar, 2013, by VICTORIA H KENNEDY.

JACKIE BAUER
MY COMMISSION EXPIRES
April 24, 2014

Notary Public, State of Texas
My Commission Expires: _____
Printed Name of Notary

CERTIFIED TO BE A TRUE AND CORRECT COPY

VALERIE K. AMASON, County Clerk
Aransas County

PG 2 OF 3

2:17cr390-009780

File No. **328117**
County Clerk, Aransas County, Texas

STATE OF TEXAS
COUNTY OF ARANSAS

I hereby certify that this instrument was FILED on the date
and at the time stamped hereon by me and was duly
RECORDED in the OFFICIAL PUBLIC RECORDS of ARANSAS
COUNTY, TX. as stamped hereon by me on 3-13-13



PEGGY L. FRIEBELE, COUNTY CLERK
ARANSAS COUNTY, TEXAS

FILED FOR RECORD IN OPR
AT ___3:55___ P.M.

| INDEXED |     MAR 1 3 2013

PEGGY L. FRIEBELE, COUNTY CLERK
ARANSAS COUNTY, TEXAS

3/24

WGW

I, VALERIE K. AMASON, COUNTY CLERK,
ARANSAS COUNTY, TEXAS do hereby certify
that this is a true and correct copy as same appears of
record in my office. Witness my hand and seal of office on:
8-15-2019
VALERIE K. AMASON
ARANSAS COUNTY CLERK



DEPUTY
PG ___3___ OF ___3___

# EXHIBIT 28



GOVERNMENT
EXHIBIT
28
17cr390

EXHIBIT 29



GOVERNMENT
EXHIBIT
29
17cr390









EXHIBIT 30

# <u>Government Exhibit provided on Thumb-drive</u>



## UNITED STATES OF AMERICA
### vs.
### David Keith Wills
### 2:17-CR-390

EXHIBIT 31

Received on _____ (date) at _____ (time)



### TEXAS ASSOCIATION OF REALTORS®
## RESIDENTIAL LEASE APPLICATION
USE OF THIS FORM BY PERSONS WHO ARE NOT MEMBERS OF THE TEXAS ASSOCIATION OF REALTORS® IS NOT AUTHORIZED.
©Texas Association of REALTORS®, Inc. 2007
*Each occupant and co-applicant 18 years or older must submit a separate application.*

Property Address: _210 Oak Bay, #402, Rockport, TX 78382_
Anticipated: Move-In Date: _2/26/13_ Monthly Rent: $ _1200.00_ Security Deposit: $ _1200.00_
Applicant was referred to Landlord by:
☒ Real estate agent _Sandi Swanson_ (name) _____ (phone)
☐ Newspaper ☐ Sign ☐ Internet ☐ Other _____

Applicant's name (first, middle, last) _Global Blue Technologies - Cameron, LLC_
Is there a co-applicant? ☐ yes ☒ no *If yes, co-applicant must submit a separate application.*
Applicant's former last name (malden or married) _____
E-mail _5clogbt@gmail.com_ Home Phone _____
Work Phone _301 770-1230_ Mobile/Pager _301 922-8130_
T/N Soc. Sec. No. _27-4504737_ Driver License No. _____ in _____ (state)
Date of Birth _____ Height _____ Weight _____ Eye Color _____
Hair Color _____ Marital Status _____ Citizenship _____ (country)

Emergency Contact: Name: _Stephen C. LaPointe_
Address: _3204 Tower Oaks Blvd, Ste 170 Rockville, MD 20852_
Phone: _301 770-1230_ E-mail: _5clogbt@gmail.com_

Name all other persons who will occupy the Property:
Name: _James Salmon_ Relationship: _Employee_ Age: _66_
Name: _Stephen R Berry_ Relationship: _Employee_ Age: _28_
Name: _____ Relationship: _____ Age: _____
Name: _____ Relationship: _____ Age: _____

Applicant's Current Address: _N/A_ Apt. No. _____
_____ (city, state, zip)
Landlord's Name: _____ Email: _____
Phone: *Day:* _____ *Nt:* _____ *Mb:* _____ *Fax:* _____
Date Moved-In _____ Move-Out Date _____ Rent $ _____
Reason for move: _____

Applicant's Previous Address: _N/A_ Apt. No. _____
_____ (city, state, zip)
Previous Landlord's Name: _____ Email: _____
Phone: *Day:* _____ *Nt:* _____ *Mb:* _____ *Fax:* _____
Date Moved-In _____ Date Moved-Out _____ Rent $ _____
Reason for move: _____

Applicant's Current Employer: _N/A_
Address: _____ (street, city, stole, zip)
Supervisor's Name: _____ Phone: _____ Fax: _____
E-mail: _____
Start Date: _____ Gross Monthly Income: $ _____ Position: _____

*Note: If Applicant is self-employed, Landlord may require one or more previous year's tax return attested by a CPA, attorney, or other tax professional.*



GOVERNMENT EXHIBIT
31
17cr390

DKW-0000003415

Residential Lease Application concerning _210 Oak Bay, #402, Rockport, TX 78382_

Applicant's Previous Employer: _N/A_
Address: _____ (street, city, state, zip)
Supervisor's Name: _____  Phone: _____  Fax: _____
E-mail: _____
Employed from _____ to _____  Gross Monthly Income: $ _____  Position: _____

Describe other income Applicant wants considered: _N/A_

List all vehicles to be parked on the Property:

| Type | Year | Make | Model | License/State | Mo.Pvmt. |
|------|------|------|-------|---------------|----------|
| _Rental vehicles to be used_ | | | | | |

List all pets to be kept on the Property (dogs, cats, birds, reptiles, fish, and other pets): _None_

| Type & Breed | Name | Color | Weight | Age | Gender | Neutered? | Declawed? | Rabies Shots Current? |
|---|---|---|---|---|---|---|---|---|
| | | | | | | ☐ yes ☐ no | ☐ yes ☐ no | ☐ yes ☐ no |
| | | | | | | ☐ yes ☐ no | ☐ yes ☐ no | ☐ yes ☐ no |

| | Yes | No | Explanation |
|---|---|---|---|
| Will any waterbeds or water-filled furniture be on the Property? | ☐ | ☒ | _____ |
| Does anyone who will occupy the Property smoke? | ☐ | ☒ | _____ |
| Will Applicant maintain renter's insurance? | ☐ | ☒ | _____ |
| Is Applicant or Applicant's spouse, even if separated, in military? | ☐ | ☒ | _____ |
| If yes, is the military person serving under orders limiting the military person's stay to one year or less? | ☐ | ☒ | _____ |
| Has Applicant ever: | | | |
| been evicted? | ☐ | ☒ | _____ |
| been asked to move out by a landlord? | ☐ | ☒ | _____ |
| breached a lease or rental agreement? | ☐ | ☒ | _____ |
| filed for bankruptcy? | ☐ | ☒ | _____ |
| lost property in a foreclosure? | ☐ | ☒ | _____ |
| had _any_ credit problems, slow-pays or delinquencies? | ☐ | ☒ | _____ |
| been convicted of a crime? | ☐ | ☒ | _____ |
| Is any occupant a registered sex offender? | ☐ | ☒ | _____ |
| Are there any criminal matters pending against any occupant? | ☐ | ☒ | _____ |
| Is there additional information Applicant wants considered? | ☐ | ☒ | _____ |

**Authorization:** Applicant authorizes Landlord and Landlord's agent, at any time before, during, or after any tenancy, to:
(1) obtain a copy of Applicant's credit report;
(2) obtain a criminal background check related to Applicant and any occupant; and
(3) verify any rental or employment history or verify any other information related to this application with persons knowledgeable of such information.

**Notice of Landlord's Right to Continue to Show the Property:** Unless Landlord and Applicant enter into a separate written agreement otherwise, the Property remains on the market until a lease is signed by all parties and Landlord may continue to show the Property to other prospective tenants and accept another offer.

(TAR-2003) 10-16-07                                                                 Page 2 of 4

Produced with ZipForm™ by RE FormsNet, LLC 18025 Fifteen Mile Road, Clinton Township, Michigan 48035 www.zipform.com

Key Allegro Pr

DKW-0000003416

Residential Lease Application concerning _210 Oak Bay #402, Rockport, TX 78382_

**Privacy Policy:** Landlord's agent or property manager maintains a privacy policy that is available upon request.

**Fees:** Applicant submits a non-refundable fee of $ ___N/A___ for processing and reviewing this application and *(check only one box if applicable):*

- ☐ (1) $ _____ to be applied to the security deposit upon execution of a lease or returned to Applicant if a lease is not executed.
- ☐ (2) an Application Deposit of $ _____ in accordance with the attached Agreement for Application Deposit and Hold on Property (TAR No. 2009 or similar agreement).

**Acknowledgement & Representation:**

(1) Signing this application indicates that Applicant has had the opportunity to review Landlord's tenant selection criteria, which is available upon request. The tenant selection criteria may include factors such as criminal history, credit history, current income and rental history.

(2) Applicant understands that providing inaccurate or incomplete information is grounds for rejection of this application and forfeiture of any application fee and may be grounds to declare Applicant in breach of any lease the Applicant may sign.

(3) Applicant represents that the statements in this application are true and complete.

_Stephen ChaPointe_ as CFO for _2/18/13_
Applicant's Signature                                    Date
_Global Blue Technologies - Cameron_

---

*For Landlord's Use:*

On _____, _____ (name/initials) notified

☐ *Applicant* ☐ _____ *by* ☐ *phone* ☐ *mail* ☐ *e-mail* ☐ *fax* ☐ *in person that Applicant was*

☐ *approved* ☐ *not approved. Reason for disapproval:* _____ _____

---

(TAR-2003) 10-16-07                                                                     Page 3 of 4

Produced with ZipForm™ by RE FormsNet, LLC 18025 Fifteen Mile Road, Clinton Township, Michigan 48035 www.zipform.com                    Key Allegro Pr

DKW-0000003417

# EXHIBIT 32



TEXAS ASSOCIATION OF REALTORS®
# RESIDENTIAL LEASE
USE OF THIS FORM BY PERSONS WHO ARE NOT MEMBERS OF THE TEXAS ASSOCIATION OF REALTORS® IS NOT AUTHORIZED.
©Texas Association of REALTORS®, Inc. 2012

**1. PARTIES:** The parties to this lease are:

the owner of the Property, Landlord,: _____ **Key Allegro Prop Mangement** _____ ; and

Tenant(s): **Global Blue Technologies , Cameron LLC** _____ .

**2. PROPERTY:** Landlord leases to Tenant the following real property:

Address: **210 Oak Bay #402, Rockport, , Tx 78382**
legally described as: **Oak Bay Club Resort Condominiums, Unit 402 & 1.454% Int Common Elements**
In _____ **Aransas** _____ County, Texas, together with the following non-real-property
items: **Stove, Refrigerator, Microwaver, Washer & Dryer** .

The real property and the non-real-property are collectively called the "Property".

**3. TERM:**

A. <u>Primary Term</u>: The primary term of this lease begins and ends as follows:

Commencement Date: _____ **February 26, 2013** _____ Expiration Date: _____ **March 1, 2014** .

B. <u>Delay of Occupancy</u>: Tenant must occupy the Property within 5 days after the Commencement Date. If Tenant is unable to occupy the Property by the 5th day after the Commencement Date because of construction on the Property or a prior tenant's holding over of the Property, Tenant may terminate this lease by giving written notice to Landlord before the Property becomes available to be occupied by Tenant, and Landlord will refund to Tenant the security deposit and any rent paid. Landlord will abate rent on a daily basis for a delay caused by construction or a prior tenant's holding over. This paragraph does not apply to any delay in occupancy caused by cleaning, repairs, or make-ready items.

**4. AUTOMATIC RENEWAL AND NOTICE OF TERMINATION:**

A. This lease automatically renews on a month-to-month basis unless Landlord or Tenant provides the other party <u>written</u> notice of termination not less than: *(Check only one box.)*
☒ (1) 30 days before the Expiration Date.
☐ (2)_____ days before the Expiration Date.

B. If this lease automatically renews on a month-to-month basis, it will continue to renew on a month-to-month basis until either party provides <u>written</u> notice of termination to the other party and the notice of termination will be effective: *(Check only one box.)*
☐ (1) on the last day of the month following the month in which the notice is given. Landlord is not obligated to prorate rent even if Tenant surrenders the Property before the termination date.
☐ (2) on the date designated in the notice but not sooner than 30 days after the notice is given and, if necessary, rent will be prorated on a daily basis.

(TAR-2001) 1-1-12    Tenants: _____ , _____ , _____ & Landlord or Landlord's Representative: _____ , _____    Page 1 of 15

GOVERNMENT
EXHIBIT
32
17cr390

DKW-0000003399

Residential Lease concerning: _____ 210 Oak Bay #402 _____
                                              Rockport, , Tx  78382

C. Oral notice of termination is not sufficient under any circumstances. Time is of the essence for providing notice of termination (strict compliance with dates by which notice must be provided is required). The date on which rent is due does not apply to the requirement for providing written notice of termination. If a box is not checked under Paragraph 4A, Paragraph 4A(1) will apply. If a box is not checked under Paragraph 4B, Paragraph 4B(1) will apply.

## 5. RENT:

A. Monthly Rent: Tenant will pay Landlord monthly rent in the amount of $ __1,200.00__ for each full month during this lease. The first full month's rent is due and payable not later than __March 1, 2013__ by (select one or more): ☒ cashier's check ☐ electronic payment ☒ money order ☒ personal check or ☒ other means acceptable to Landlord.
Thereafter, Tenant will pay the monthly rent so that Landlord receives the monthly rent on or before:
☒ (1) the first day of each month during this lease.
☐ (2) _____ .
Weekends, holidays, and mail delays do not excuse Tenant's obligation to timely pay rent.

B. Prorated Rent: On or before __February 26, 2013__ Tenant will pay Landlord $ __128.58__ as prorated rent from the Commencement Date through the last day of the month in which this lease begins.

C. Place of Payment: Unless this lease provides otherwise, Tenant will remit all amounts due to Landlord under this lease to the following person or entity at the place stated and make all payments payable to the named person or entity. Landlord may later designate, in writing, another person or place to which Tenant must remit amounts due under this lease.
  Name: __Key Allegro Property Management__
  Address: __1798 Bay Shore Drive__
  __Rockport, Texas 78382__
  Notice: Place the Property address and Tenant's name on all payments.

D. Method of Payment:
  (1) Tenant must pay all rent timely and without demand, deduction, or offset, except as permitted by law or this lease.
  (2) Time is of the essence for the payment of rent (strict compliance with rental due dates is required).
  (3) Unless the parties agree otherwise, Tenant may not pay rent in cash and will pay all rent by (select one or more): ☒ cashier's check ☐ electronic payment ☒ money order ☒ personal check or ☒ other means acceptable to Landlord.
  (4) Landlord ☒ requires ☐ does not require Tenant(s) to pay monthly rents by one payment.
  (5) If Tenant fails to timely pay any amounts due under this lease or if any check of Tenant is not honored by the institution on which it was drawn, Landlord may require Tenant to pay such amount and any subsequent amounts under this lease in certified funds. This paragraph does not limit Landlord from seeking other remedies under this lease for Tenant's failure to make timely payments with good funds.

E. Rent Increases: There will be no rent increases through the primary term. Landlord may increase the rent that will be paid during any month-to-month renewal period by providing at least 30 days written notice to Tenant.

## 6. LATE CHARGES:

A. If Landlord does not actually receive a rent payment in the full amount at the designated place of payment by the __10th__ day of each month at 11:59pm, Tenant will pay Landlord for each late payment:

(TAR-2001) 1-1-12    Tenants: ___, ___, ___, ___ & Landlord or Landlord's Representative: ___, ___    Page 2 of 15

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com    210 Oak Bay #4

DKW-0000003400

Residential Lease concerning: _____
**210 Oak Bay #402**
**Rockport , Tx 78382**

(1) an initial late charge equal to *(check one box only)* : ☒ (a) $ **25.00**_____ ; or ☐ (b)_____ % of one month's rent; and

(2) additional late charges of $ **5.00**_____ per day thereafter until rent and late charges are paid in full. Additional late charges for any one payment may not exceed more than 30 days.

**Notice: §92.019, Property Code prohibits assessing a late fee until rent has remained unpaid for at least one full day after the date on which the rent is due.**

B. For the purposes of paying rent and any late charges, the mailbox is not the agent for receipt for Landlord (the postmark date is not the date Landlord receives the payment). The parties agree that the late charge is based on a reasonable estimate of uncertain damages to the Landlord that are incapable of precise calculation and result from late payment of rent. Landlord's acceptance of a late charge does not waive Landlord's right to exercise remedies under Paragraph 27.

7. **RETURNED PAYMENT:** Tenant will pay Landlord $ **45.00**_____ for each payment Tenant tenders to Landlord which is returned or not honored by the institution on which it is drawn for any reason, plus any late charges until Landlord receives payment. Tenant must make any returned payment good by paying such amount(s) plus any associated charges in certified funds.

8. **APPLICATION OF FUNDS:** Regardless of any notation on a payment, Landlord may apply funds received from Tenant first to any non-rent obligations of Tenant, including but not limited to, late charges, returned payment charges, repairs, brokerage fees, periodic utilities, pet charges, and then to rent.

9. **PETS:**

A. Unless the parties agree otherwise in writing, Tenant may not permit, even temporarily, any pet on the Property (including but not limited to any mammal, reptile, bird, fish, rodent, or insect).

B. If Tenant violates this Paragraph 9 or any agreement to keep a pet on the Property, Landlord may take all or any of the following action:

(1) declare Tenant to be in default of this lease and exercise Landlord's remedies under Paragraph 27;

(2) charge Tenant, as additional rent, an initial amount of $ **500.00**_____ and $ **25.00**_____ per day thereafter per pet for each day Tenant violates the pet restrictions;

(3) remove or cause to be removed any unauthorized pet and deliver it to appropriate local authorities by providing at least 24-hour written notice to Tenant of Landlord's intention to remove the unauthorized pet; and

(4) charge to Tenant the Landlord's cost to:

(a) remove any unauthorized pet;

(b) exterminate the Property for fleas and other insects;

(c) clean and deodorize the Property's carpets and drapes; and

(d) repair any damage to the Property caused by the unauthorized pet.

C. When taking any action under Paragraph 9B Landlord will not be liable for any harm, injury, death, or sickness to any pet.

10. **SECURITY DEPOSIT:**

A. Security Deposit: On or before execution of this lease, Tenant will pay a security deposit to Landlord in the amount of $ **1,200.00**_____ by *(select one or more)* : ☒ cashier's check ☐ electronic payment ☒ money order ☒ personal check or ☒ other means acceptable to Landlord. "Security deposit" has the meaning assigned to that term in §92.102, Property Code.

(TAR-2001) 1-1-12    Tenants: _____ , _____ , _____ , _____ & Landlord or Landlord's Representative: _____ , _____    Page 3 of 15

DKW-0000003401

210 Oak Bay #402

Residential Lease concerning: _____ Rockport_, _Tx_ 78382 _____

B. Interest: No interest or income will be paid to Tenant on the security deposit. Landlord may place the security deposit in an interest-bearing or income-producing account and any interest or income earned will be paid to Landlord or Landlord's representative.

C. Refund: Tenant must give Landlord at least thirty (30) days written notice of surrender before Landlord is obligated to account for or refund the security deposit. Any refund of the security deposit will be made payable to all Tenants named in this lease.

**Notices about Security Deposits:**
**(1) §92.108, Property Code provides that a tenant may not withhold payment of any portion of the last month's rent on grounds that the security deposit is security for unpaid rent.**
**(2) Bad faith violations of §92.108 may subject a tenant to liability up to 3 times the rent wrongfully withheld and the landlord's reasonable attorney's fees.**
**(3) The Property Code does not obligate a landlord to return or account for the security deposit until the tenant surrenders the Property and gives the landlord a written statement of the tenant's forwarding address, after which the landlord has 30 days in which to account.**
**(4) "Surrender" is defined in Paragraph 16 of this lease.**
**(5) One may view the Texas Property Code at the Texas Legislature's website which, as of the date shown in the lower left-hand corner of this form, is http://www.statutes.legis.state.tx.us/ .**

D. Deductions:

(1) Landlord may deduct reasonable charges from the security deposit for:
   (a) damages to the Property, excluding normal wear and tear, and all reasonable costs associated to repair the Property;
   (b) costs for which Tenant is responsible to clean, deodorize, exterminate, and maintain the Property;
   (c) unpaid or accelerated rent;
   (d) unpaid late charges;
   (e) unpaid utilities and utility expenses Landlord incurs to maintain utilities to the Property as required by this Lease;
   (f) unpaid pet charges;
   (g) replacing unreturned keys, garage door openers, security devices, or other components;
   (h) the removal of unauthorized locks or fixtures installed by Tenant;
   (i) Landlord's cost to access the Property if made inaccessible by Tenant;
   (j) missing or burned-out light bulbs and fluorescent tubes (at the same location and of the same type and quality that are in the Property on the Commencement Date);
   (k) packing, removing, and storing abandoned property;
   (l) removing abandoned or illegally parked vehicles;
   (m) costs of reletting (as defined in Paragraph 27), if Tenant is in default;
   (n) attorney's fees, costs of court, costs of service, and other reasonable costs incurred in any legal proceeding against Tenant;
   (o) mailing costs associated with sending notices to Tenant for any violations of this lease;
   (p) any other unpaid charges or fees or other items for which Tenant is responsible under this lease;
   (q) cost to restore walls, flooring, landscaping or any alteration to the Property not approved in writing by Landlord; and
   (r) damages to the Property caused by smoking, including but not limited to stains, burns, odors, and removal of debris.

(2) If deductions exceed the security deposit, Tenant will pay to Landlord the excess within 10 days after Landlord makes written demand.

(TAR-2001) 1-1-12     Tenants: _____ , _____ , _____ , _____ & Landlord or Landlord's Representative: _____ , _____     Page 4 of 15

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com     210 Oak Bay #4

DKW-0000003402

Residential Lease concerning: _____ **210 Oak Bay #402**
**Rockport , Tx 78382** _____

## 11. UTILITIES:

A. Tenant will pay all connection fees, service fees, usage fees, and all other costs and fees for all utilities to the Property (for example, electricity, gas, water, wastewater, garbage, telephone, alarm monitoring systems, cable, and Internet connections) except the following which Landlord will pay: **All utilities are to be in tenants name within 3 days of move in.** _____.

Unless otherwise agreed, amounts under this paragraph are payable directly to the service providers.

B. Unless provided by Landlord, Tenant must, at a minimum, keep the following utilities on, if available, at all times this lease is in effect: gas; electricity; water; wastewater; and garbage services.

**Notice: Before signing this lease, Tenant should determine if all necessary utilities are available to the Property and are adequate for Tenant's use.**

## 12. USE AND OCCUPANCY:

A. Occupants: Tenant may use the Property as a private residence only. The only persons Tenant may permit to reside on the Property during the term of this lease are (*Include names and ages of all occupants*):**James Salmon (66) Employee; Stephen R Berry (28) Employee** _____.

_____.

B. Phone Numbers and E-mail: Tenant must promptly inform Landlord of any changes in Tenant's phone numbers (home, work, and mobile) and e-mail not later than 5 days after a change.

C. HOA Rules: Tenant must comply with any owners' association rules or restrictive covenants affecting the Property. Tenant will reimburse Landlord for any fines or other charges assessed against Landlord for violations by Tenant of any owners' association rule or restrictive covenant.

D. Prohibitions: Unless otherwise authorized by this lease, Tenant may not install or permit any of the following on the Property, even temporarily: a spa, hot tub, above-ground pool, trampoline, or any item which causes a suspension or cancellation of insurance coverage or an increase in insurance premiums. Tenant may not permit any part of the Property to be used for: (1) any activity which is a nuisance, offensive, noisy, or dangerous; (2) the repair of any vehicle; (3) any business of any type, including but not limited to child care; (4) any activity which violates any zoning ordinance, owners' association rule, or restrictive covenant; (5) any illegal or unlawful activity; or (6) activity that obstructs, interferes with, or infringes on the rights of other persons near the Property.

E. Guests: Tenant may not permit any guest to stay on the Property longer than the amount of time permitted by any owners' association rule or restrictive covenant or _____ **15** _____ days without Landlord's written permission, whichever is less.

F. Common Areas: Landlord is not obligated to pay any non-mandatory or user fees for Tenant's use of any common areas or facilities (for example, pool or tennis courts).

## 13. PARKING RULES: Tenant may not permit more than ___ **2** ___ vehicles, including but not limited to automobiles, trucks, recreational vehicles, trailers, motorcycles, all-terrain vehicles, jet skis, and boats, on the Property unless authorized by Landlord in writing. Tenant may not park or permit any person to park any vehicles in the yard. Tenant may permit vehicles to be parked only in drives, garages, designated common parking areas, or in the street if not prohibited by law or an owners' association. Tenant may not store or permit any person to store any vehicles on or

Residential Lease concerning: _____ 210 Oak Bay #402
**Rockport , Tx 78382** _____

adjacent to the Property or on the street in front of the Property. In accordance with applicable state and local laws, Landlord may have towed, at Tenant's expense: (a) any inoperative vehicle on or adjacent to the Property; (b) any vehicle parked in violation of this paragraph or any additional parking rules made part of this lease; or (c) any vehicle parked in violation of any law, local ordinance, or owners' association rule.

**14. ACCESS BY LANDLORD:**

A. <u>Advertising:</u> Landlord may prominently display a "For Sale" or "For Lease" or similarly worded sign on the Property during the term of this lease or any renewal period. Landlord or Landlord's contractor may take interior or exterior photographs or images of the Property and use the photographs or images in any advertisements to lease or sell the Property.

B. <u>Access:</u> Before accessing the Property, Landlord or anyone authorized by Landlord will attempt to first contact Tenant, but may enter the Property at reasonable times without notice to make repairs or to show the Property to prospective tenants or buyers, inspectors, fire marshals, lenders, appraisers, or insurance agents. Additionally, Landlord or anyone authorized by Landlord may peacefully enter the Property at reasonable times without first attempting to contact Tenant and without notice to: (1) survey or review the Property's condition and take photographs to document the condition; (2) make emergency repairs; (3) exercise a contractual or statutory lien; (4) leave written notices; or (5) seize nonexempt property if Tenant is in default.

C. <u>Trip Charges:</u> If Landlord or Landlord's agents have made prior arrangements with Tenant to access the Property and are denied or are not able to access the Property because of Tenant's failure to make the Property accessible, Landlord may charge Tenant a trip charge of $ <u>45.00</u> .

D. **<u>Keybox:</u> A keybox is a locked container placed on the Property holding a key to the Property. The keybox is opened by a special combination, key, or programmed access device so that persons with the access device may enter the Property, even in Tenant's absence. The keybox is a convenience but involves risk (such as unauthorized entry, theft, property damage, or personal injury). Neither the Association of REALTORS® nor MLS requires the use of a keybox.**

(1) Tenant authorizes Landlord, Landlord's property manager, and Landlord's broker to place on the Property a keybox containing a key to the Property:
(a) during the last _____ **N/A** _____ days of this lease or any renewal or extension; and
(b) at any time Landlord lists the Property for sale with a Texas licensed broker.

(2) Tenant may withdraw Tenant's authorization to place a keybox on the Property by providing written notice to Landlord and paying Landlord a fee of $ <u>N/A</u> as consideration for the withdrawal. Landlord will remove the keybox within a reasonable time after receipt of the notice of withdrawal and payment of the required fee. Removal of the keybox does not alleviate Tenant's obligation to make the Property available for showings as indicated in Paragraph 14B.

(3) If Landlord or Landlord's agents are denied or are not able to access the Property after first attempting to contact Tenant, Landlord may charge Tenant a trip charge of $ <u>N/A</u> .

(4) <u>Landlord, the property manager, and Landlord's broker are not responsible to Tenant, Tenant's guests, family, or occupants for any damages, injuries, or losses arising from use of the keybox unless caused by Landlord, the property manager, or Landlord's broker.</u>

Residential Lease concerning: _____  210 Oak Bay #402
Rockport, , Tx  78382 _____

## 15. MOVE-IN CONDITION:

A.  Landlord makes no express or implied warranties as to the Property's condition. Tenant has inspected the Property and accepts it **AS-IS** provided that Landlord: <u>clean, a/c filters checked, smoke alarm</u> <u>batteries checked</u> _____ .

B.  Tenant will complete an Inventory and Condition Form, noting any damages to the Property, and deliver it to Landlord within _____**14**_____ days after the Commencement Date. If Tenant fails to timely deliver the Inventory and Condition Form, the Property will be deemed to be free of damages, unless otherwise expressed in this lease. <u>The Inventory and Condition Form is not a request for repairs. Tenant must direct all requests for repairs in compliance with Paragraph 18.</u>

## 16. MOVE-OUT:

A.  <u>Move-Out Condition</u>: When this lease ends, Tenant will surrender the Property in the same condition as when received, normal wear and tear excepted. Tenant will leave the Property in a clean condition free of all trash, debris, and any personal property. <u>Tenant may not abandon the Property</u>.

B.  <u>Definitions</u>:

(1) *"Normal wear and tear"* means deterioration that occurs without negligence, carelessness, accident, or abuse.

(2) *"Surrender"* occurs when all occupants have vacated the Property, in Landlord's reasonable judgment, and one of the following events occurs:
(a) the date Tenant specifies as the move-out or termination date in a written notice to Landlord has passed; or
(b) Tenant returns keys and access devices that Landlord provided to Tenant under this lease.

(3) *"Abandonment"* occurs when all of the following occur:
(a) all occupants have vacated the Property, in Landlord's reasonable judgment;
(b) Tenant is in breach of this lease by not timely paying rent; and
(c) Landlord has delivered written notice to Tenant, by affixing it to the inside of the main entry door or if the Landlord is prevented from entering the Property by affixing it to the outside of the main entry door, stating that Landlord considers the Property abandoned, and Tenant fails to respond to the affixed notice by the time required in the notice, which will not be less than 2 days from the date the notice is affixed to the main entry door.

C.  <u>Personal Property Left After Move-Out</u>:

(1) If Tenant leaves any personal property in the Property after surrendering or abandoning the Property Landlord may:
(a) dispose of such personal property in the trash or a landfill;
(b) give such personal property to a charitable organization; or
(c) store and sell such personal property by following procedures in §54.045(b)-(e), Property Code.

(2) Tenant must reimburse Landlord all Landlord's reasonable costs under Paragraph 16C(1) for packing, removing, storing, and selling the personal property left in the Property after surrender or abandonment.

Residential Lease concerning: _____ **210 Oak Bay #402**
**Rockport , Tx 78382**

## 17. PROPERTY MAINTENANCE:

A. Tenant's General Responsibilities: Tenant, at Tenant's expense, must:
   (1) keep the Property clean and sanitary;
   (2) promptly dispose of all garbage in appropriate receptacles;
   (3) supply and change heating and air conditioning filters at least once a month;
   (4) supply and replace all light bulbs, fluorescent tubes, and batteries for smoke alarms, carbon monoxide detectors, garage door openers, ceiling fan remotes, and other devices (of the same type and quality that are in the Property on the Commencement Date);
   (5) maintain appropriate levels of necessary chemicals or matter in any water softener;
   (6) take action to promptly eliminate any dangerous condition on the Property;
   (7) take all necessary precautions to prevent broken water pipes due to freezing or other causes;
   (8) replace any lost or misplaced keys;
   (9) pay any periodic, preventive, or additional extermination costs desired by Tenant;
   (10) remove any standing water;
   (11) know the location and operation of the main water cut-off valve and all electric breakers and how to switch the valve or breakers off at appropriate times to mitigate any potential damage;
   (12) water the foundation of the Property at reasonable and appropriate times; and
   (13) promptly notify Landlord, in writing, of all needed repairs.

B. Yard Maintenance:

   (1) "Yard" means all lawns, shrubbery, bushes, flowers, gardens, trees, rock or other landscaping, and other foliage on or encroaching on the Property or on any easement appurtenant to the Property, and does not include common areas maintained by an owners' association.

   (2) "Maintain the yard" means to perform activities such as, but not limited to: (a) mowing, fertilizing, and trimming the yard; (b) controlling pests in the yard; and (c) removing debris from the yard.

   (3) Unless prohibited by ordinance or other law, Tenant will water the yard at reasonable and appropriate times including but not limited to the following times: __HOA maintains yard_____

   _____ . Other than watering, the yard will be maintained as follows:

   ☐ (a) Landlord, at Landlord's expense, will maintain the yard. Tenant will permit Landlord and Landlord's contractors reasonable access to the yard and will remove any pet from the yard at appropriate times.

   ☐ (b) Tenant, at Tenant's expense, will maintain the yard.

   ☐ (c) Tenant will maintain in effect a scheduled yard maintenance contract with:  ☐ a contractor who regularly provides such service; ☐ _____ .

C. Pool/Spa Maintenance: Any pool or spa on the Property will be maintained according to a Pool/Spa Maintenance Addendum.

D. Prohibitions: If Tenant installs any fixtures on the Property, authorized or unauthorized, such as additional smoke alarms, locks, alarm systems, cables, satellite dishes, or other fixtures, such fixtures will become the property of the Landlord. Except as otherwise permitted by law, this lease, or in writing by Landlord, Tenant may not:
   (1) remove any part of the Property or any of Landlord's personal property from the Property;
   (2) remove, change, add, or rekey any lock;

(TAR-2001) 1-1-12   Tenants: ___ , ___ , ___ , ___ & Landlord or Landlord's Representative: ___ , ___   Page 8 of 15

Residential Lease concerning: _____
210 Oak Bay #402
Rockport , Tx 78382
_____

(3) make holes in the woodwork, floors, or walls, except that a reasonable number of small nails may be used to hang pictures in sheetrock and grooves in paneling;
(4) permit any water furniture on the Property;
(5) install additional phone or video cables, outlets, antennas, satellite receivers, or alarm systems;
(6) alter, replace or remove flooring material, paint, or wallpaper;
(7) install, change, or remove any: fixture, appliance, or non-property item listed in Paragraph 2;
(8) keep or permit any hazardous material on the Property such as flammable or explosive materials;
(9) keep or permit any material or item which causes any liability or fire and extended insurance coverage to be suspended or canceled or any premiums to be increased;
(10) dispose of any environmentally detrimental substance (for example, motor oil or radiator fluid) on the Property; or
(11) cause or allow any lien to be filed against any portion of the Property.

E. <u>Failure to Maintain</u>: If Tenant fails to comply with this Paragraph 17 or any Pool/Spa Maintenance Addendum, Landlord may, in addition to exercising Landlord's remedies under Paragraph 27, perform whatever action Tenant is obligated to perform and Tenant must immediately reimburse Landlord the reasonable expenses that Landlord incurs.

F. <u>Smoking</u>: Smoking by Tenant, Tenant's guests, family, or occupants is ☐ permitted ☒ not permitted on the Property. If smoking is not permitted and does occur on the Property, Tenant will be in default and:
(1) Landlord may exercise Landlord's remedies under Paragraph 27; and
(2) Landlord may deduct from the security deposit damages to the Property caused by smoking, including but not limited to stains, burns, odors, and removal of debris.

**18. REPAIRS:** (Notice: Subchapter B, Chapter 92, Property Code governs repair obligations).

A. <u>Repair Requests</u>: All requests for repairs must be in writing and delivered to Landlord. If Tenant is delinquent in rent at the time a repair notice is given, Landlord is not obligated to make the repair. In the event of an emergency related to the condition of the Property that materially affects the physical health or safety of an ordinary tenant, call: (361) 463-1162 .
Ordinarily, a repair to the heating and air conditioning system is not an emergency.

B. <u>NOTICE</u>: If Landlord fails to repair a condition that materially affects the physical health or safety of an ordinary tenant as required by this lease or the Property Code, Tenant may be entitled to exercise remedies under §92.056 and §92.0561 of the Property Code. If Tenant follows the procedures under those sections, the following remedies may be available to Tenant: (1) terminate the lease and obtain an appropriate refund under §92.056(f); (2) have the condition repaired or remedied according to §92.0561; (3) deduct from the rent the cost of the repair or remedy according to §92.0561; and (4) obtain judicial remedies according to §92.0563. Do not exercise these remedies without consulting an attorney or carefully reviewing the procedures under the applicable sections. The Property Code presumes that 7 days is a reasonable period of time for the Landlord to make a diligent effort to repair a condition unless there are circumstances which establish that a different period of time is appropriate (such as the severity and nature of the condition and the availability of materials, labor, and utilities). Failure to strictly follow the procedures in the applicable sections may cause Tenant to be in default of the lease.

C. <u>Completion of Repairs</u>:

(1) Tenant may not repair or cause to be repaired any condition, regardless of the cause, without Landlord's permission. All decisions regarding repairs, including the completion of any repair, whether to repair or replace the item, and the selection of contractors, will be at Landlord's sole discretion.

Residential Lease concerning: _____  210 Oak Bay #402
Rockport , Tx  78382  _____

(2) Landlord is not obligated to complete a repair on a day other than a business day unless required to do so by the Property Code.

D. <u>Payment of Repair Costs</u>: Except as otherwise specified in this lease, Landlord will pay to repair or remedy conditions in the Property in need of repair if Tenant complies with the procedures for requesting repairs as described in this Paragraph 18.

(1) Landlord will pay the entire cost to repair the following items not caused by Tenant or Tenant's negligence:
   (a)  heating and air conditioning systems;
   (b)  water heaters; or
   (c)  water penetration from structural defects.

(2) Landlord will NOT pay to repair the following items unless caused by Landlord's negligence:
   (a)  conditions caused by Tenant, an Occupant, or any guest or invitee of Tenant;
   (b)  damage to doors, windows, and screens;
   (c)  damage from windows or doors left open;
   (d)  damage from wastewater stoppages caused by foreign or improper objects in lines that exclusively serve the Property;
   (e)  items that are cosmetic in nature with no impact on the functionality or use of the item; and
   (f)  the following specific items or appliances: <u>tenant must maintain a/c filters any</u>
        <u>service call resulting from a/c filter will be at expense of tenant</u>

E. <u>Trip Charges</u>: If a repair person is unable to access the Property after making arrangements with Tenant to complete the repair, Tenant will pay any trip charge the repair person may charge, which amount may be different from the amount stated in Paragraph 14C.

F. <u>Advance Payments and Reimbursements</u>: Landlord may require advance payment of repairs or payments under this Paragraph 18 for which Tenant is responsible. Tenant must promptly reimburse Landlord the amounts under this Paragraph 18 for which Tenant is responsible.

19. SECURITY DEVICES AND EXTERIOR DOOR LOCKS:

A. Subchapter D, Chapter 92, Property Code requires the Property to be equipped with certain types of locks and security devices. Landlord has rekeyed the security devices since the last occupant vacated the Property or will rekey the security devices within 7 days after Tenant moves in. "Security device" has the meaning assigned to that term in §92.151, Property Code.

B. <u>All notices or requests by Tenant for rekeying, changing, installing, repairing, or replacing security devices must be in writing. Installation of additional security devices or additional rekeying or replacement of security devices desired by Tenant will be paid by Tenant in advance and may be installed only by contractors authorized by Landlord.</u>

20. SMOKE ALARMS: Subchapter F, Chapter 92, Property Code requires the Property to be equipped with smoke alarms in certain locations. <u>Requests for additional installation, inspection, or repair of smoke alarms must be in writing.</u> Disconnecting or intentionally damaging a smoke alarm or removing a battery without immediately replacing it with a working battery may subject Tenant to civil penalties and liability for damages and attorney fees under §92.2611, Property Code.

(TAR-2001) 1-1-12     Tenants: ___, ___, ___, ___, & Landlord or Landlord's Representative: ___, ___  Page 10 of 15

DKW-0000003408

Residential Lease concerning: _____  210 Oak Bay #402
                                                      Rockport , Tx 78382 _____

**21. LIABILITY:** Unless caused by Landlord, Landlord is <u>not</u> responsible to Tenant, Tenant's guests, family, or occupants for any damages, injuries, or losses to person or property caused by fire, flood, water leaks, ice, snow, hail, winds, explosion, smoke, interruption of utilities, theft, burglary, robbery, assault, vandalism, other persons, condition of the Property, environmental contaminants (for example, carbon monoxide, asbestos, radon, lead-based paint, mold, fungus, etc.), or other occurrences or casualty losses. <u>Tenant will promptly reimburse Landlord for any loss, property damage, or cost of repairs or service to the Property caused by Tenant, Tenant's guests, any occupants, or any pets</u> .

**22. HOLDOVER:** If Tenant fails to vacate the Property at the time this lease ends Tenant will pay Landlord rent for the holdover period and indemnify Landlord and prospective tenants for damages, including but not limited to lost rent, lodging expenses, costs of eviction, and attorneys' fees. Rent for any holdover period will be three (3) times the monthly rent, calculated on a daily basis, and will be immediately due and payable daily without notice or demand.

**23. RESIDENTIAL LANDLORD'S LIEN:**  <u>Landlord will have a lien for unpaid rent against all of Tenant's nonexempt personal property that is in the Property and may seize such nonexempt property if Tenant fails to pay rent. Subchapter C, Chapter 54, Property Code governs the rights and obligations of the parties regarding Landlord's lien. Landlord may collect a charge for packing, removing, or storing property seized in addition to any other amounts Landlord is entitled to receive. Landlord may sell or dispose of any seized property in accordance with the provisions of §54.045, Property Code.</u>

**24. SUBORDINATION:** This lease and Tenant's leasehold interest are and will be subject, subordinate, and inferior to: (i) any lien or encumbrance now or later placed on the Property by Landlord; (ii) all advances made under any such lien or encumbrance; (iii) the interest payable on any such lien or encumbrance; (iv) any and all renewals and extensions of any such lien or encumbrance; (v) any restrictive covenant; and (vi) the rights of any owners' association affecting the Property.

**25. CASUALTY LOSS OR CONDEMNATION:** Section 92.054, Property Code governs the rights and obligations of the parties regarding a casualty loss to the Property. Any proceeds, payment for damages, settlements, awards, or other sums paid because of a casualty loss to the Property will be Landlord's sole property. For the purpose of this lease, any condemnation of all or a part of the Property is a casualty loss.

**26. SPECIAL PROVISIONS:** *(Do not insert a lease-option or lease-purchase clause without the assistance of legal counsel. Special obligations and liabilities under statute apply to such transactions.)*
No alterations to interior, exterior with owner approval. NO pets, NO smoking in house. Tenant must maintain a/c filters, any service call resulting from a/c filter will be at expense of tenant. Tenant is not to remove smoke alarms. Tenant is signing one year lease with option to extend at the end of lease.

**27. DEFAULT:**

A. If Landlord fails to comply with this lease, Tenant may seek any relief provided by law.

B. If Tenant fails to timely pay all amounts due under this lease or otherwise fails to comply with this lease, Tenant will be in default and:
   (1) Landlord may terminate Tenant's right to occupy the Property by providing Tenant with at least one day written notice to vacate;

(TAR-2001) 1-1-12    Tenants: _____ , _____ , _____ , _____ & Landlord or Landlord's Representative: _____ , _____ Page 11 of 15

Residential Lease concerning: _____ **210 Oak Bay #402**
**Rockport , Tx 78382** _____

    (2) all unpaid rents which are payable during the remainder of this lease or any renewal period will be accelerated without notice or demand;

    (3) Landlord may exercise Landlord's lien under Paragraph 23 and any other rights under this lease or the Property Code; and

    (4) Tenant will be liable for:

      (a) any lost rent;

      (b) Landlord's cost of reletting the Property including but not limited to leasing fees, advertising fees, utility charges, and other fees reasonably necessary to relet the Property;

      (c) repairs to the Property for use beyond normal wear and tear;

      (d) all Landlord's costs associated with eviction of Tenant, including but not limited to attorney's fees, court costs, costs of service, witness fees, and prejudgment interest;

      (e) all Landlord's costs associated with collection of amounts due under this lease, including but not limited to collection fees, late charges, and returned check charges; and

      (f) any other recovery to which Landlord may be entitled by law.

C. Notice to vacate under Paragraph 27B(1) may be by any means permitted by §24.005, Property Code.

D. Landlord will attempt to mitigate any damage or loss caused by Tenant's breach by attempting to relet the Property to acceptable tenants and reducing Tenant's liability accordingly.

**28. EARLY TERMINATION:** This lease begins on the Commencement Date and ends on the Expiration date unless: (i) renewed under Paragraph 4; (ii) extended by written agreement of the parties; or (iii) terminated earlier under Paragraph 27, by agreement of the parties, applicable law, or this Paragraph 28.

A. <u>Special Statutory Rights</u> Tenants may have special statutory rights to terminate the lease early in certain situations involving family violence, military deployment or transfer, or certain sex offenses.

    (1) <u>Military:</u> If Tenant is or becomes a servicemember or a dependent of a servicemember, Tenant may terminate this lease by delivering to Landlord a written notice of termination and a copy of an appropriate government document providing evidence of: (a) entrance into military service; (b) military orders for a permanent change of station (PCS); or (c) military orders to deploy with a military unit for not less than 90 days. Termination is effective on the 30th day after the first date on which the next rental payment is due after the date on which the notice is delivered. §92.017, Property Code governs the rights and obligations of the parties under this paragraph.

    (2) <u>Family Violence</u>: Tenant may terminate this lease if Tenant provides Landlord with a copy of a court order described under §92.016, Property Code protecting Tenant or an occupant from family violence committed by a cotenant or occupant of the Property. §92.016, Property Code governs the rights and obligations of the parties under this paragraph. If the family violence is committed by someone other than a cotenant or co-occupant of the Property, Tenant must give written notice of termination 30 days prior to the effective date of the notice.

    (3) <u>Sex Offenses</u>: Tenant may have special statutory rights to terminate this lease in certain situations involving sexual assault or sexual abuse. For more information about the types of abuse and assault covered by this provision, Tenant is advised to review §92.0161, Property Code.

B. <u>Assignment, Subletting and Replacement Tenants:</u>

    (1) Tenant may not assign this lease or sublet the Property without Landlord's written consent.

    (2) If Tenant requests an early termination of this lease under this Paragraph 28B, Tenant may attempt to find a replacement tenant and may request Landlord to do the same. Landlord may, but is not obligated to, attempt to find a replacement tenant under this paragraph.

---

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com    210 Oak Bay #4

DKW-0000003410

Residential Lease concerning: _____  210 Oak Bay #402
Rockport , Tx 78382

(3) Any assignee, subtenant, or replacement tenant must, in Landlord's discretion, be acceptable as a tenant and must sign: (a) a new lease with terms not less favorable to Landlord than this lease or otherwise acceptable to Landlord; (b) a sublease with terms approved by Landlord; or (c) an assignment of this lease in a form approved by Landlord.

(4) At the time Landlord agrees to permit an assignee, subtenant, or replacement tenant to occupy the Property, Tenant will pay Landlord:
(a) if Tenant procures the assignee, subtenant, or replacement tenant:
☐ (i) $ N/A .
☐ (ii) _____N/A_____ % of one's month rent that the assignee, subtenant, or replacement tenant is to pay.

(b) if Landlord procures the assignee, subtenant, or replacement tenant:
☐ (i) $ N/A .
☐ (ii) _____N/A_____ % of one's month rent that the assignee, subtenant, or replacement tenant is to pay.

(5) Unless expressly stated otherwise in an assignment or sublease, Tenant will not be released from Tenant's obligations under this lease because of an assignment or sublease. An assignment of this lease or a sublease of this lease without Landlord's written consent is voidable by Landlord.

**29. ATTORNEY'S FEES:** Any person who is a prevailing party in any legal proceeding brought under or related to the transaction described in this lease is entitled to recover prejudgment interest, attorney's fees, costs of service, and all other costs of the legal proceeding from the non-prevailing party.

**30. REPRESENTATIONS:** Tenant's statements in this lease and any application for rental are material representations. Each party to this lease represents that he or she is of legal age to enter into a contract. If Tenant makes a misrepresentation in this lease or in an application for rental, Tenant is in default.

**31. ADDENDA:** Incorporated into this lease are the following addenda, exhibits and other information. If Landlord's Rules and Regulations are made part of this lease, Tenant agrees to comply with the Rules and Regulations as Landlord may, at Landlord's discretion, amend from time to time.

☐ Addendum Regarding Lead-Based Paint  
☒ Inventory & Condition Form  
☐ Landlord's Additional Parking Rules  
☐ Pet Agreement  
☐ Protecting Your Home from Mold  
☐ Agreement for Application Deposit & Hold  
☐ _____  
☐ _____  

☐ Agreement Between Brokers  
☐ Landlord's Rules & Regulations  
☐ Owners' Association Rules  
☐ Pool/Spa Maintenance Addendum  
☒ Residential Lease Application  
☐ Residential Lease Guaranty  
☐ _____  
☐ _____  

**32. NOTICES:** All notices under this lease must be in writing and are effective when hand-delivered, sent by mail, or sent by electronic transmission to *(Do not insert an e-mail address or a fax number unless the party consents to receive notices under this lease at the e-mail address or fax number specified.)*:

Tenant at the Property and a copy to:  
_____  
_____  
_____  
E-mail: _____  
Fax: _____  

Landlord c/o:  
Key Allegro Property Management  
1798 Bay Shore Drive  
Rockport, Tx 78382  
E-mail: rentals@keyallegro.com  
Fax: (361) 729-7967  

(TAR-2001) 1-1-12   Tenants: _____ , _____ , _____ , _____ & Landlord or Landlord's Representative: _____ , _____   Page 13 of 15

DKW-0000003411

Residential Lease concerning: _____ 210 Oak Bay #402
Rockport, , Tx 78382 _____

**33. AGREEMENT OF PARTIES:**

A. <u>Entire Agreement</u>: There are no oral agreements between Landlord and Tenant. This lease contains the entire agreement between Landlord and Tenant and may not be changed except by written agreement.

B. <u>Binding Effect</u>: This lease is binding upon and inures to the benefit of the parties to this lease and their respective heirs, executors, administrators, successors, and permitted assigns.

C. <u>Joint and Several</u>: All Tenants are jointly and severally liable for all provisions of this lease. Any act or notice to, refund to, or signature of, any one or more of the Tenants regarding any term of this lease, its extension, its renewal, or its termination is binding on all Tenants executing this lease.

D. <u>Waiver</u>: Landlord's past delay, waiver, or non-enforcement of a rental due date or any other right will not be deemed to be a waiver of any other breach by Tenant or any other right in this lease.

E. <u>Severable Clauses</u>: Should a court find any clause in this lease unenforceable, the remainder of this lease will not be affected and all other provisions in this lease will remain enforceable.

F. <u>Controlling Law</u>: The laws of the State of Texas govern the interpretation, validity, performance, and enforcement of this lease.

G. <u>Copyright</u>: If an active REALTOR® member of the Texas Association of REALTORS® or an active member of the State Bar of Texas does not negotiate this lease as a party or for one of the parties, either as a party's broker or attorney, this lease is voidable at will by Tenant.

**34. INFORMATION:**

A. Future inquiries about this lease, rental payments, and security deposits should be directed to the person listed for receipt of notices for Landlord under Paragraph 32.

B. It is Tenant's responsibility to determine, before signing this lease, if: (i) all services (e.g., utilities, connections, schools, and transportation) are accessible to or from the Property; (ii) such services are sufficient for Tenant's needs and wishes; and (iii) Tenant is satisfied with the Property's condition.

C. The brokers to this lease have no knowledge of whether Landlord is delinquent in the payment of any lien against the Property.

D. Unpaid rent and any unpaid amount under this lease are reportable to credit reporting agencies.

E. Landlord is not obligated to respond to any requests for Tenant's rental and payment history from a mortgage company or other prospective landlord until Tenant has given notice of termination of this lease and Tenant is not in breach of this lease. (*Notice: Landlord or Landlord's agent may charge a reasonable fee for processing such information.*)

F. If all occupants over 18 years of age die during this lease, Landlord may: (i) permit the person named below to access the Property at reasonable times in Landlord's or Landlord's agent's presence; (ii) permit the named person to remove Tenant's personal property; and (iii) refund the security deposit, less deductions, to the named person. Section 92.014, Property Code governs procedures to follow in the event of a tenant's death.
Name: <u>Stephen C LaPointe</u>                           Phone: <u>(301)770-1230</u>
Address: <u>3204 Tower Oaks Blvd Ste 170 Rockville, MD 20852</u>
E-mail: <u>scl.gbt@gmail.com</u>

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com.

210 Oak Bay #4
DKW-0000003412

Residential Lease concerning: _____ ,  **210 Oak Bay #402**
**Rockport , Tx 78382**

G. The Texas Department of Public Safety maintains a database that the public may search, at no cost, to determine if registered sex offenders are located in certain areas (see www.txdps.state.tx.us under on-line services). For information concerning past criminal activity in certain areas, contact the local police department.

H. Landlord's insurance does not cover Tenant from loss of personal property. Landlord recommends that Tenant obtain insurance for casualties such as fire, flood, water damage, and theft. Tenant represents that Tenant ☐ intends ☒ does not intend to purchase such insurance.

I. Landlord's broker, **Key Allegro Real Estate, Carla Rinohe** _____ ,
☐ will ☒ will not act as the property manager for landlord.

J. This lease is negotiable between the parties. This lease is binding upon final acceptance. READ IT CAREFULLY. If you do not understand the effect of this lease, consult your attorney BEFORE signing.

K. This lease should not be used in conjunction with executory contracts of any type, such as contracts for deed, leases with options to purchase, or lease options, without the advice of an attorney.

_____  Date
Landlord
**Key Allegro Prop Mangement**

_____  Date
Landlord

Or signed for Landlord under written property management agreement or power of attorney:

By: _____
                                     Date

**Cindy Grieves**
Broker's Associate's Printed Name

**Key Allegro Real Estate      0316045**
Broker's Printed Name          License No.

**Key Allegro Property Management**
Firm Name

_____  CFO  2/22/13
Tenant                           Date
**Global Blue Technologies**

_____  Date
Tenant
**Cameron LLC**

_____  Date
Tenant

_____  Date
Tenant

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

DKW-0000003413



**RENTALS**

## RESIDENT QUALIFYING RENTAL CRITERIA
## FOR KEY ALLEGRO PROPERTY MANAGEMENT

We are delighted that you are interested in leasing a home or condo with Key Allegro Property Management. In order to help you in making your decision, we have listed below the criteria for qualifying as a resident with us.

1. A separate rental application must be fully completed, dated and signed by each applicant and all co-applicants. Spouses can complete one rental application.

2. The rental application will be reviewed at the time of submission to ensure we have all information needed to determine your eligibility.

3. Each applicant must provide a government photo identification and allow it to be photocopied.

4. If applicant's family will be occupying the dwelling, the family size must be appropriate for the available home or condo, i.e., no more than the beds provided will allow. Children younger than six months are not considered occupants of the property at the time of lease signing. When they are six months old, they are considered occupants.

5. Employment and monthly income must be verifiable. Total monthly income of all applicants must be 3 (three) times monthly rent. (Otherwise, a guarantor is necessary.) The guarantor must complete and sign a lease guaranty agreement. The lease may only be guaranteed by a relative or employer.

6. Applicants(s) may be denied occupancy for the following reasons:

    A. Falsification of application by any applicant
    B. Incomplete application by any applicant
    C. Insufficient income (total of all applicants)
    D. Criminal conviction history of violent or sexual crime committed by any applicant or by other occupants (including children) who plan to live in unit.
    F. Poor rental profile of any applicant (rental history reports are obtained)
        Rental History Of:
        1. Non – payment or frequent late payment of rent.
        2. Eviction
        3. Drug use
        4. Poor housekeeping
        5. Poor supervision of applicant's child
        6. Unruly or destructive behavior by applicant, applicant's children or applicant's guest.
        7. Violence to persons or property by applicant, applicant's children or applicant's guest

We do not discriminate on the basis of race, color, religion, sex, national origin, disability or familial status.

**I HAVE READ AND UNDERSTAND THE ABOVE RENTAL CRITERIA.**

_(signature)_ 2/18/13 _____ _____
Applicant          Date                    Applicant              Date
CFO for Global Blue
Technologies- Cameron, LLC

P.O. BOX 1765    ROCKPORT, TEXAS 78381    (361) 729-6588    FAX (361) 729-7967

DKW-0000003414

# EXHIBIT 33





2:17cr390-004861











2:17cr390-004867

EXHIBIT 33A

2:17cr390-004858





GOVERNMENT
EXHIBIT
33A
17cr390

# EXHIBIT 34

327956

File No._____
County Clerk, Aransas County, Texas

### Warranty Deed with Vendor's Lien

**Notice of confidentiality rights: If you are a natural person, you may remove or strike any or all of the following information from any instrument that transfers an interest in real property before it is filed for record in the public records: your Social Security number or your driver's license number.**

Date:  February _14_, 2013

Grantor:  **Port Bay Point, LP, a Texas limited partnership**

Grantor's Mailing Address:  613 Driftwood Place, Ingleside, Nueces County, Texas  78362

Grantee:  **Global Blue Technologies-Cameron, LLC, a Texas limited liability company**

Grantee's Mailing Address:  503 Southpoint Dr., Port Isabel, Cameron County, Texas  78578

Consideration:

Cash and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, including a note of even date executed by Grantee and payable to the order of Grantor in the principal amount of Five Hundred Forty Thousand and no/100 Dollars ($540,000.00). The note is secured by a first and superior vendor's lien and superior title retained in this deed and by a first-lien deed of trust of even date from Grantee to Mark B. Gilbreath, trustee.

Property (including any improvements):

BEING 181.382 acres of land out of Tract 1 of the Welhausen and Driscoll's Sixth Subdivision of the Taft Farm Lands, a map of which is recorded in Volume 1, Page 50 of the Plat Records of Aransas County, Texas, with said 181.382 acre tract being more particularly described by metes and bounds on **EXHIBIT "A"** attached hereto, made a part hereof and incorporated herein, as if written verbatim:

SAVE AND EXCEPT 10.25 acres of land out of a tract called 183.4 acres (also known as 181.382 acres), out of Tract No. One (1) of the Welhausen and Driscoll's Sixth Subdivision of the Taft Farmlands, a Map of which is recorded in Volume 1, Page 50 of the Plat Records of Aransas County, Texas, said 10.25 acre tract being more particularly described by metes and bounds on **EXHIBIT "B"** attached hereto, made a part hereof and incorporated herein, as if written verbatim.





GOVERNMENT
EXHIBIT
34
17cr390

CERTIFIED TO BE A TRUE AND CORRECT COPY
VALERIE K. AMASON, County Clerk
Aransas County
PG __1__ OF __6__

File No. **327956**

County Clerk, Aransas County, Texas

Reservations from Conveyance:

Grantor reserves all of the Mineral Estate owned by Grantor. "Mineral Estate" means all oil, gas and other minerals in and under the Property, any royalty under any existing or future lease covering any part of the Property, production and drilling rights, lease payments, and all related benefits. Grantor waives Grantor's surface rights (including rights of ingress and egress).

Exceptions to Conveyance and Warranty:

1.   Liens described as part of the Consideration and any other liens described in this deed as being either assumed by Grantee or subject to which title is taken by Grantee; validly existing restrictive covenants common to the platted subdivision in which the Property is located; standby fees, taxes, and assessments by any taxing authority for the year 2013 and subsequent years, and subsequent taxes and assessments by any taxing authority for prior years due to change in land usage or ownership; validly existing utility easements created by the dedication deed or plat of the subdivision in which the Property is located; any discrepancies, conflicts, or shortages in area or boundary lines, or any encroachments or protrusions, or any overlapping of improvements; homestead or community property or survivorship rights, if any, of any spouse of Grantee; and any validly existing titles or rights asserted by anyone, including but not limited to persons, the public, corporations, governments, or other entities, to (a) tidelands or lands comprising the shores or beds of navigable or perennial rivers and streams, lakes, bays, gulfs, or oceans, (b) lands beyond the line of the harbor or bulkhead lines as established or changed by any government, (c) filled-in lands or artificial islands, (d) water rights, including riparian rights, or (e) the area extending from the line of mean low tide to the line of vegetation or the right of access to that area or easement along and across that area.

2.   Rights of Parties in Possession under any lease assigned by Grantor to Grantee.

3.   Any visible and apparent unrecorded easements on the insured property.

4.   Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the title that would be disclosed by an accurate and complete land survey of the land.

5.   All leases, grants, exception or reservation of coal, lignite, oil, gas and other minerals, together with all rights, privileges, and immunities relation thereto, appearing the Public Records.

6.   Mineral and/or royalty interest, the royalties, bonuses, rentals and all other rights in connection with said mineral and/or royalty rights, bonuses and rentals described in instrument from Banker Mortgage Company to W. L. Moody, Jr. dated January 25, 1945, of record in Volume Y-2, Page 260, Deed Records of Aransas County, Texas, reference to which instrument is here made for all purposes.

2

CERTIFIED TO BE A TRUE AND CORRECT COPY

VALERIE K. AMASON, County Clerk
Aransas County

PG _3_ OF _6_

**327956**

File No.
County Clerk, Aransas County, Texas

7.     A one-thirty-second (1/32nd) non-participating royalty interest in and to all the oil, gas and other minerals on, in, under or that may be produced from the subject property is EXCEPTED herefrom, as the same is set forth in instrument from The Moody Foundation, et al to Copano Ranch, Inc. dated May 9, 1963, of record in Volume S-4, Page 305 Deed Records of Aransas County, Texas, reference to which instrument is here made for all purposes.

8.     Easement and Right of Way executed by Mantai Shrimp Farms, Inc. to Central Power and Light Company, dated February 21, 1995, recorded under County Clerk's File No. 199444 Real Property Records of Aransas County, Texas. (Blanket Easement)

9.     Reservation of the right to use that certain roadway known as the Jeff Davis Highway, or alternatively, the Rockport-Bayside Road, together with rights set out in Deed from Moody Foundation to Copano Ranch, for the purposes of ingress and egress to the property, as set out in Deed recorded under County Clerk's File No. 177695, Official Public Records of Aransas County, Texas.

10.    The land described in this Policy shall not be deemed to include any house trailer, mobile home or mobile dwelling on the subject property.

11.    Rights of ingress and egress to present and future owners, their licensees and successors, of the 10.25 acre tract from the property described on Exhibit B herein.

12.    Title to all the oil, gas and other minerals in, under and that may be produced from the land, together with all rights, privileges and immunities relating thereto heretofore reserved unto and/or conveyed by predecessors in title.

---

Grantor, for the Consideration and subject to the Reservations from Conveyance and the Exceptions to Conveyance and Warranty, grants, sells, and conveys to Grantee the Property, together with all and singular the rights and appurtenances thereto in any way belonging, to have and to hold it to Grantee and Grantee's heirs, successors, and assigns forever. Grantor binds Grantor and Grantor's heirs and successors to warrant and forever defend all and singular the Property to Grantee and Grantee's heirs, successors, and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof, except as to the Reservations from Conveyance and the Exceptions to Conveyance and Warranty.

The vendor's lien against and superior title to the Property are retained until each note described is fully paid according to its terms, at which time this deed will become absolute.

When the context requires, singular nouns and pronouns include the plural.

3

CERTIFIED TO BE A TRUE AND
CORRECT COPY

VALERIE K. AMASON, County Clerk
Aransas County

PG ___3___ OF ___6___

327956

File No. _____
County Clerk, Aransas County, Texas

**Port Bay Point, LP**, a Texas limited partnership

By: **GP Port Bay Point, LLC**, a Texas limited partnership, General Partner

By: _____
**Glenn D. Guillory**, Member

By: _____
**Lynn Lee**, Member

STATE OF TEXAS
COUNTY OF Nueces _____

This instrument was acknowledged before me on 2/14/13 by **Glenn D. Guillory**, Member of GP Port Bay Point, LLC, General Partner, on behalf of Port Bay Point, LP, a Texas limited partnership.

Notary Public, State of Texas
My commission expires: _____

JESSICA NICOLE HANSEN
MY COMMISSION EXPIRES
January 16, 2017

STATE OF TEXAS
COUNTY OF Nueces _____

This instrument was acknowledged before me on 2/14/13 by **Lynn Lee**, Member of GP Port Bay Point, LLC, General Partner, on behalf of Port Bay Point, LP, a Texas limited partnership.

Notary Public, State of Texas
My commission expires: _____

JESSICA NICOLE HANSEN
MY COMMISSION EXPIRES
January 16, 2017

| AFTER RECORDING RETURN TO: | PREPARED IN THE LAW OFFICE OF: |
|---|---|
| SECURITY TITLE<br>5325 Saratoga Blvd., Suite 225<br>Corpus Christi, Texas  78413<br>GF# 134890512 | NICOLAS, MORRIS, GILBREATH &<br>SMITH, L.L.P.<br>5306 Holly Rd, Ste B<br>Corpus Christi, Texas  78411 |

2/11/2013i:\tf\port_bay-global\wdv.docx:saw

4

CERTIFIED TO BE A TRUE AND
CORRECT COPY

VALERIE K. AMASON, County Clerk
Aransas County

PG  4  OF  6

327956
File No.
County Clerk, Aransas County, Texas

EXHIBIT "A"

FIELD NOTES
September 16, 1981

BEING 161.382 ACRES OF LAND OUT OF TRACT 1 OF THE WELHAUSEN AND DRISCOLL'S SIXTH SUBDIVISION OF THE TAFT FARM LANDS, "A MAP OF", WHICH IS RECORDED IN VOLUME 1, PAGE 50, MAP RECORDS OF ARANSAS COUNTY, TEXAS, WITH SAID 161.382 ACRE TRACT BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

BEGIN at a 5/8" iron rod set at the point of intersection of the North R.O.W. line of the Old Jeff Davis Highway, now closed and abandoned by the Commissioners Court recorded in Volume 18, Pages 495 thru 498, Commissioners Court Minutes of Aransas County, Texas, with the centerline of Copano Retreat Road and from whence 5/8" iron rod & broken concrete monument marked R.M.C. No. 13 bears South 30°00'00" West a distance of 50.15 feet with said 5/8" iron rod set being the Southeast corner and PLACE OF BEGINNING of this survey;

THENCE, North 64°34'30" West along and with the old North R.O.W. line of said Jeff Davis Highway a distance of 3544.60 feet to a 5/8" iron rod set and an angle point in said North R.O.W. line;

THENCE, North 70°48'00" West continuing along and with said R.O.W. a distance of 160.0 feet to a 5/8" iron rod set for the Southwest corner of this survey;

THENCE, North 25°42'00" East a distance of 1500.0 feet to a 5/8" iron rod and wood post set along the shoreline of Swan Lake for an exterior corner of this survey;

THENCE, North 76°42'00" East a distance of 1970.0 feet to a 5/8" iron rod and wood post set along the shoreline of Swan Lake for an interior corner of this survey;

THENCE, North 27°44'12" East a distance of 545.73 feet to a 5/8" iron rod and wood post set along the shoreline of Swan Lake at a point of land for the Northwesterly corner of this survey;

THENCE, following along the meanders of said shoreline as follows:

South 56°00'00" East a distance of 225.0 feet to a 5/8" iron rod and wood post;
South 80°00'00" East a distance of 400.0 feet to a 5/8" iron rod and wood post;
South 65°54'50" East a distance of 380.0 feet to a 5/8" iron rod and wood post;
and, South 55°07'01" East a distance of 225.10 feet to a 5/8" iron rod and wood post set for the most Northerly Northeast corner of this survey;

THENCE, In a Southerly direction along and with the meanders of Copano Bay as follows:
South 28°00'46" West a distance of 777.34 feet to a wood post;
South 39°33'44" West a distance of 202.06 feet to a wood post;
South 20°59'20" West a distance of 382.19 feet to a wood post;
South 31°52'23" West a distance of 196.33 feet to a wood post;
South 21°03'59" West a distance of 807.45 feet to a wood post;
South 07°25'53" East a distance of 508.73 feet to a wood post;
South 13°31'33" East a distance of 434.06 feet to a wood post;
and South 37°46'37" East a distance of 482.53 feet to a wood post set for the most Southerly Northeast corner of this survey;

THENCE, South 30°00'00" West at 17.15 feet pass a 5/8" iron rod set on high ground for reference and in all a distance of 276.06 feet to the PLACE OF BEGINNING and containing 161.382 acres of land more or less;

J. L. BRUNDRETT, JR., P.E., R.P.S.
Registration Nos. 41289 & 2133

STATE OF TEXAS
REGISTERED
J. L. BRUNDRETT, JR.
2133
PROFESSIONAL
LAND SURVEYOR

RECORDER'S MEMORANDUM:
All or part of the text on this page was not clearly legible.

CERTIFIED TO BE A TRUE AND CORRECT COPY
STATE OF TEXAS ARANSAS COUNTY
VALERIE K. AMASON, County Clerk
Aransas County
PG 5 OF 6

327956
File No.
County Clerk, Aransas County, Texas

EXHIBIT "B" SAVE & EXCEPT TRACT

FIELD NOTES

JUNE 2, 2005

BEING 10.25 ACRES OF LAND OUT OF A TRACT CALLED 183.4 ACRES, OUT OF TRACT NO. ONE (1), OF THE WELLHAUSEN AND DRISCOLL'S SIXTH SUBDIVISION, OF THE TAFT FARMLANDS, A MAP OF WHICH IS RECORDED IN VOLUME 1, PAGE 50, MAP RECORDS OF ARANSAS COUNTY, TEXAS, WITH SAID 10.25 ACRE TRACT BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS;

BEGIN at a point on the shoreline of Swan Lake of Copano Bay and being the most Northerly corner of said 183.4 acre tract from whence the original Southeast corner of said 183.4 acre tract bears South 07°28'38" East a distance of 3931.98 feet, the Northeast corner of said 183.4 acre tract bears South 73°59'33" East a distance of 1228.95 feet and the Southwest corner of said 183.4 acre tract bears South 50°42'42" West a distance of 3670.32 feet, with said point on the shoreline of Swan Lake of Copano Bay being the most NORTHERLY corner and PLACE OF BEGINNING of this description;

THENCE, South 86°00'00" East along and with the shoreline of Copano Bay a distance of 97.55 feet to a point for the NORTHEAST corner of this description;

THENCE, South 00°56'12" East and crossing proposed Lot No. 11 of the proposed Pisces Paradise Subdivision, a distance of 434.99 feet to a point in the North R.O.W. line of a proposed road and being the SOUTHEAST corner of this description;

THENCE, in a Southwesterly direction along and with the Northwesterly R.O.W. line of said proposed road a circular curve to the left with a central angle of 25°04'52", a radius of 174.0 feet a chord of 75.56 feet, a tangent of 38.70 feet, for an arc distance of 76.17 feet to the point of tangency; thence, in a Southwesterly direction continuing along and with the said proposed roadway South 28°44'21" West a distance of 430.08 feet to the point of curvature of a circular curve to the right with a central angle of 42°20'15", a radius of 90.0 feet, a chord of 65.0 feet, a tangent of 34.85 feet, for an arc distance of 66.50 feet, to the point of tangency; thence, in a Southwesterly direction continuing along and with the North R.O.W. of said proposed road, South 76°42'00" West a distance of 688.00 feet to a point for the SOUTHWEST corner of this description;

THENCE, North 13°18'00" West along and with the common boundary between proposed Lot Nos. 5 and 6 of said proposed Pisces Paradise Subdivision, a distance of 398.0 feet to a point on the shoreline of Swan Lake of Copano Bay and being the NORTHWEST corner of this description;

THENCE, North 76°42'00" East along and with the shoreline of Swan Lake of Copano Bay a distance of 660.0 feet to a point for an INTERIOR corner of this description;

THENCE, North 27°44'12" East continuing along and with the shoreline of Swan Lake of Copano Bay a distance of 586.73 feet to the PLACE OF BEGINNING and containing 10.25 acres or 446,492 square feet of land more or less.

NOTE: SEE ACCOMPANYING FIELD NOTE EXHIBIT

050602d2fn

RECORDER'S MEMORANDUM:
All or part of the text on this page was not clearly legible.

FILED FOR RECORD IN OPR
AT 10:06 A.M.

6/36

MAR 05 2013

PEGGY L. FRIEBELE, COUNTY CLERK
ARANSAS COUNTY, TEXAS

STATE OF TEXAS
COUNTY OF ARANSAS

I hereby certify that this instrument was FILED on the date and at the time affixed hereon by me and was duly RECORDED in the OFFICIAL PUBLIC RECORDS of ARANSAS COUNTY, TX. as stamped hereon by me on 3-5-2013

Peggy L. Friebele
PEGGY L. FRIEBELE, COUNTY CLERK
ARANSAS COUNTY, TEXAS

Ratco JLA

I, VALERIE K. AMASON, COUNTY CLERK, ARANSAS COUNTY, TEXAS do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office on: 8-26-2019

VALERIE K. AMASON
ARANSAS COUNTY CLERK
DEPUTY Gayle S. Otto
PG 6 OF 6

2:17cr390-009790

EXHIBIT 35

**STATE OF TEXAS**

**COUNTY OF TRAVIS**

### AFFIDVAIT

BEFORE ME, the undersigned authority, personally appeared _Stephanie M. Morrison_
who, being by me duly sworn, deposes as follows:

My name is _Stephanie M. Morrison_ ; I am over 18 years of age, of sound mind,
capable of making this affidavit, and personally acquainted with the facts herein stated;

I am the Custodian of Records for _Omni Hotels Management Corporation_ Attached hereto are
_4_ pages of records from _Omni Hotels Management Corporation_. The said _4_ pages
are kept in the regular course of business, and it was the regular course of business of
_Omni Hotels Management Corporation_ for an employee or representative with personal
knowledge of the act, event or condition recorded to make the memorandum or record or to
transmit information thereof to be included in such memorandum of record; and the
memorandum or record was made at or near the time of the act, event or condition recorded, or
reasonable soon thereafter. The records attached hereto are original or exact duplicates of the
original.



Affiant

SWORN TO AND SUBSCRIBED before me on the _16th_ day of _February_, 2016.



STEPHANIE C NEW
Notary Public, State of Texas
Comm. Expires 07-01-2019
Notary ID 13028113-0

Notary Public
State of Texas

GOVERNMENT
EXHIBIT
35
17cr390

2:17cr390-005317

```
      ROOM SERVICE BAYFRONT
       OMNI CORPUS CHRISTI
        CORPUS CHRISTI, TX

  264 JOE
  ------------------------------------
  TBL 1136/1    CHK 3237  GST 1
         FEB09'14  8:29PM
  ------------------------------------

    DELIVERY CHARGE      2.95
    CLUB                12.00
    WOODFORD RES        15.00
  1  BG CAB 90Z         10.50
  1 SAN PELLEGRINO       4.00

    FOOD SALES          18.95
    LIQUOR SALES        15.00
    WINE SALES          10.50
    R/S SVC CHARGE       8.89
    TAX                  3.33
    TOTAL          $ 5 6 . 6 7

  GRATUITY           1 0 . 0 0

  TOTAL                6 6 . 6 7

  NAME (PRINT)  Wills

  SIGNATURE  X  ple

  ROOM NUMBER  113 6

        THANK YOU
```

```
      ROOM SERVICE BAYFRONT
       OMNI CORPUS CHRISTI
        CORPUS CHRISTI, TX

  264 JOE                       1
  ------------------------------------
  TBL 1136/1    CHK 3237  GST 1
         FEB09'14  8:29PM
  ------------------------------------

  1 DELIVERY CHARGE      2.95
  1 CLUB                12.00
  2 WOODFORD RES        15.00
  1 HOG CAB 90Z         10.50
  1 SAN PELLEGRINO       4.00

    FOOD SALES          18.95
    LIQUOR SALES        15.00
    WINE SALES          10.50
    TIP/OTHER           10.00
    R/S SVC CHARGE       8.89
    TAX                  3.33
    PAYMENT             66.67
    $ CHARGE TIP        10.00
    WILLS, DAVID
    ROOM CHARGE         66.67
  -----264 CLOSED FEB09  9:33PM----
```

1/080

2:17cr390-005318

```
        REPUBLIC OF TEXAS                    REPUBLIC OF TEXAS
            BAR & GRILL                          BAR & GRILL
        CORPUS CHRISTI, TX                    CORPUS CHRISTI, TX

    625 VERALYN                          625 VERALYN                  1

    TBL 11/1    CHK 3857  GST 2          TBL 11/1    CHK 3857  GST 2
          FEB09'14  5:54PM                     FEB09'14  5:54PM


      1 GREY GOOSE        9.00            1 GREY GOOSE        9.00
      6 WO    RES        60.00            6 WO      RES      60.00
      1 P    NAPOLEON    10.00            1 P.    POLEON     10.00
         -0 ----          0.00               0- ----         0.00
      2 6 OZ  FILET      36.00                 FILET         36
         ENTRE           36.00                            38   38
      ASPARAGUS          10.00            1 ASPARAGUS

      FOOD   ES          94.00            FOOD SALES         94.00
      LIQUOR SALES       69.00            LIQUOR SALES       69.00
      TAX                13.45            TIP/OTHER          40.00
      TOTAL       $176.45                 TAX                13.45
                                          PAYMENT           216.45
                     40.00                $ CHARGE TIP       40.00
    GRATUITY                              WILLS, DAVID
                   $216.45                ROOM CHARGE       216.45
    TOTAL                          ----625 CLOSED FEB09  7:03PM----

    NAME (PRINT)  David K Wills

    SIGNATURE     DP K Wills

    ROOM NUMBER    1136

            THANK YOU
```

## Check Detail

| Check | Table | Check Opened | Minutes | Guests | Reference Info | Location | Employee |
|-------|-------|--------------|---------|--------|----------------|----------|----------|
| 3857 | 11 | 2/9/2014 5:54 PM | 69.00 | 2 | | Property | VERALYN AMAYA |
| | | 5:54 PM | 1 | | GREY GOOSE | 9.00 | REPUBLIC OF TEX | VERALYN AMAYA |
| | | 5:54 PM | 1 | | TONIC | | REPUBLIC OF TEX | VERALYN AMAYA |
| | | 5:54 PM | 1 | | WOODFORD RES | 10.00 | REPUBLIC OF TEX | VERALYN AMAYA |
| | | 5:54 PM | 1 | | NEAT | | REPUBLIC OF TEX | VERALYN AMAYA |
| | | 5:54 PM | 1 | | WOODFORD RES | 10.00 | REPUBLIC OF TEX | VERALYN AMAYA |
| | | 5:54 PM | 1 | | NEAT | | REPUBLIC OF TEX | VERALYN AMAYA |
| | | 5:54 PM | 1 | | special prep | | REPUBLIC OF TEX | VERALYN AMAYA |
| | | 5:54 PM | | | DBL | | REPUBLIC OF TEX | VERALYN AMAYA |
| | | 5:54 PM | 1 | | BFSTK NAPOLEON | 10.00 | REPUBLIC OF TEX | VERALYN AMAYA |
| | | 5:54 PM | 1 | | special prep | | REPUBLIC OF TEX | VERALYN AMAYA |
| | | 5:54 PM | | | SPLIT NO ONION | | REPUBLIC OF TEX | VERALYN AMAYA |
| | | 5:54 PM | 1 | | ----O---O------- | | REPUBLIC OF TEX | VERALYN AMAYA |
| | | 5:54 PM | 1 | | 8OZ FILET MIGNON | 36.00 | REPUBLIC OF TEX | VERALYN AMAYA |
| | | 5:54 PM | 1 | | med rare | | REPUBLIC OF TEX | VERALYN AMAYA |
| | | 5:54 PM | 1 | | VENISON | 38.00 | REPUBLIC OF TEX | VERALYN AMAYA |
| | | 5:54 PM | 1 | | med rare | | REPUBLIC OF TEX | VERALYN AMAYA |
| | | 5:54 PM | 1 | | ASPARAGUS | 10.00 | REPUBLIC OF TEX | VERALYN AMAYA |
| | | 5:54 PM | 1 | | WOODFORD RES | 10.00 | REPUBLIC OF TEX | VERALYN AMAYA |
| | | 5:54 PM | 1 | | NEAT | | REPUBLIC OF TEX | VERALYN AMAYA |
| | | 5:54 PM | 1 | | WOODFORD RES | 10.00 | REPUBLIC OF TEX | VERALYN AMAYA |
| | | 5:54 PM | 1 | | NEAT | | REPUBLIC OF TEX | VERALYN AMAYA |
| | | 5:54 PM | 1 | | special prep | | REPUBLIC OF TEX | VERALYN AMAYA |
| | | 5:54 PM | | | DBL | | REPUBLIC OF TEX | VERALYN AMAYA |
| | | 5:54 PM | 1 | | WOODFORD RES | 10.00 | REPUBLIC OF TEX | VERALYN AMAYA |
| | | 5:54 PM | 1 | | NEAT | | REPUBLIC OF TEX | VERALYN AMAYA |
| | | 5:54 PM | 1 | | WOODFORD RES | 10.00 | REPUBLIC OF TEX | VERALYN AMAYA |
| | | 5:54 PM | 1 | | NEAT | | REPUBLIC OF TEX | VERALYN AMAYA |
| | | 5:54 PM | 1 | | special prep | | REPUBLIC OF TEX | VERALYN AMAYA |
| | | 5:54 PM | | | $ CHARGE TIP | 40.00 | REPUBLIC OF TEX | VERALYN AMAYA |
| | | 5:54 PM | | | DBBL | | REPUBLIC OF TEX | VERALYN AMAYA |
| | | 5:54 PM | | | WILLS, DAVID | | REPUBLIC OF TEX | VERALYN AMAYA |
| | | 5:54 PM | | | ROOM CHARGE | 216.45 | REPUBLIC OF TEX | VERALYN AMAYA |

| | |
|---|---|
| Sub Total | 163.00 |
| Tax | 13.45 |
| Service Charge | 40.00 |
| Check Total | 216.45 |

1/1

5/2/2017 7:32 AM

2:17cr390-005320

## Check Detail

| Check | Table | Check Opened | Minutes | Guests | Reference Info | Location | Employee |
|-------|-------|--------------|---------|--------|----------------|----------|----------|
| 3237 | 1136 | 2/9/2014 8:29 PM | 64.00 | 1 | | Property | JOE FLORES |
| | | 8:29 PM | 1 | | DELIVERY CHARGE | 2.95 | ROOM SERVICE -BF | JOE FLORES |
| | | 8:29 PM | 1 | | CLUB | 12.00 | ROOM SERVICE -BF | JOE FLORES |
| | | 8:29 PM | 1 | | fries | | ROOM SERVICE -BF | JOE FLORES |
| | | 8:29 PM | 1 | | WOODFORD RES | 7.50 | ROOM SERVICE -BF | JOE FLORES |
| | | 8:29 PM | 1 | | DRY | | ROOM SERVICE -BF | JOE FLORES |
| | | 8:29 PM | 1 | | WOODFORD RES | 7.50 | ROOM SERVICE -BF | JOE FLORES |
| | | 8:29 PM | 1 | | DRY | | ROOM SERVICE -BF | JOE FLORES |
| | | 8:29 PM | 1 | | special prep | | ROOM SERVICE -BF | JOE FLORES |
| | | 8:29 PM | | | ICE ON THE SIDE | | ROOM SERVICE -BF | JOE FLORES |
| | | 8:29 PM | 1 | | HOG CAB 9OZ | 10.50 | ROOM SERVICE -BF | JOE FLORES |
| | | 8:29 PM | 1 | | SAN PELLEGRINO | 4.00 | ROOM SERVICE -BF | JOE FLORES |
| | | 8:29 PM | | | $ CHARGE TIP | 10.00 | ROOM SERVICE -BF | JOE FLORES |
| | | 9:33 PM | | | R/S SVC CHARGE | 8.89 | ROOM SERVICE -BF | JOE FLORES |
| | | 8:29 PM | | | WILLS, DAVID | | ROOM SERVICE -BF | JOE FLORES |
| | | 8:29 PM | | | ROOM CHARGE | 66.67 | ROOM SERVICE -BF | JOE FLORES |

| | |
|---|---|
| Sub Total | 44.45 |
| Tax | 3.33 |
| Service Charge | 10.00 |
| Check Total | 57.78 |

1/1

5/2/2017 7:31 AM

2:17cr390-005321

# EXHIBIT 35.1

Page 1 of 1

# OMNI ❧ HOTELS & RESORTS

corpus christi | texas

900 North Shoreline Blvd.
Corpus Christi, TX 78401
Phone: 361-887-1600 • Fax: 361-887-6715
Reservations: 800-843-6664

WILLS, DAVID
GLOBAL BLUE TECHNOLOGIES

Rockport, TX  78382 US

Room Number: 1136
Daily Rate: 141.00
Room Type: KNB
No. of Guests: 1 / 0

| ARRIVAL | DEPARTURE | CREDIT CARD | RATE PLAN | CATEGORY | ACCOUNT |
|---------|-----------|-------------|-----------|----------|---------|
| 2/9/2014 | 2/10/2014 | XXXXXXXXXXXX7262 | GLOBBT | ESP | 14501737007 |

| DATE | ROOM NO. | DESCRIPTION | REFERENCE | AMOUNT |
|------|----------|-------------|-----------|--------|
| 2/9/2014 | 1136 | REPUBLIC OF TEXAS | 1136/3857/19:03/REPUBLIC OF TEXAS | $216.45 |
| 2/9/2014 | 1136 | VISA | CV***7262 | ($216.45) |
| 2/9/2014 | 1136 | ROOM SERVICE BAYFRONT | 1136/3237/21:33/ROOM SERVICE BAYFRONT | $66.67 |
| 2/9/2014 | 1136 | VALET PARKING $18 | VALET PARKING $18 | $18.00 |
| 2/9/2014 | 1136 | ROOM CHARGE | #1136 WILLS, DAVID | $141.00 |
| 2/9/2014 | 1136 | CITY OCC TAX - 9% | CITY OCC TAX - 9% | $12.69 |
| 2/9/2014 | 1136 | STATE OCC TAX - 6% | STATE OCC TAX - 6% | $8.46 |
| 2/10/2014 | 1136 | VISA | VISA | ($246.82) |



GOVERNMENT
EXHIBIT
35.1
17cr390

**TOTAL DUE:** $0.00

TERMS:   DUE AND PAYABLE UPON PRESENTATION.  I AGREE THAT MY LIABILITY FOR THIS
BILL IS NOT WAIVED AND AGREE TO BE HELD PERSONALLY LIABLE IN THE EVENT THAT THE
INDICATED PERSON, COMPANY OR ASSOCIATION FAILS TO PAY FOR ANY PART OR THE FULL
AMOUNT OF THESE CHARGES.

EXHIBIT 35.2

ROOM SERVICE BAYFRONT
OMNI CORPUS CHRISTI
CORPUS CHRISTI, TX

264 JOE
------------------------------
TBL 1136/1    CHK 3237  GST 1
        FEB09'14  8:29PM
------------------------------

: DELIVERY CHARGE        2.95
: CLUB                  12.00
_ .OODFORD RES          15.00
1  OG CAB 90Z           10.50
1 SAN PELLEGRINO         4.00

  FOOD SALES            18.95
  LIQUOR SALES          15.00
  WINE SALES            10.50
  R/S SVC CHARGE         8.89
  TAX                    3.33
  TOTAL         $56.67

GRATUITY          10.00

TOTAL             66.67

NAME (PRINT) Wills

SIGNATURE

ROOM NUMBER  1136

        THANK YOU


ROOM SERVICE BAYFRONT
OMNI CORPUS CHRISTI
CORPUS CHRISTI, TX

264 JOE                        1
------------------------------
TBL 1136/1    CHK 3237  GST 1
        FEB09'14  8:29PM
------------------------------

1 DELIVERY CHARGE        2.95
1 CLUB                  12.00
2 WOODFORD RES          15.00
1 HOG CAB 90Z           10.50
1 SAN PELLEGRINO         4.00

  FOOD SALES            18.95
  LIQUOR SALES          15.00
  WINE SALES            10.50
  TIP/OTHER             10.00
  R/S SVC CHARGE         8.89
  TAX                    3.33
  PAYMENT               66.67
  $ CHARGE TIP          10.00
  WILLS, DAVID
  ROOM CHARGE           66.67
----264 CLOSED FEB09  9:33PM----

Yo8o

GOVERNMENT
EXHIBIT
35.2
17cr390

2:17cr390-004791

# EXHIBIT 35.2A

REPUBLIC OF TEXAS
BAR & GRILL
CORPUS CHRISTI, TX

625 VERALYN

TBL 11/1      CHK 3857  GST 2
FEB09'14  5:54PM

1 GREY GOOSE          9.00
6 WORT... RES        60.00
1 B...  NAPOLEON     10.??
.-0-.....          0.??
...8 OZ  FILET      36.00
ENTECON          36.00
A...E...S...        16.??

FOOD SALES           94.00
LIQUOR SALES         69.00
TAX                  13.45
TOTAL          $176.45
                40.00
GRATUITY

TOTAL          $216.45

NAME (PRINT)  David K Wills

SIGNATURE      DP K Wills

ROOM NUMBER       1136

THANK YOU

REPUBLIC OF TEXAS
BAR & GRILL
CORPUS CHRISTI, TX

625 VERALYN                    1

TBL 11/1      CHK 3857  GST 2
FEB09'14  5:54PM

1 GREY GOOSE          9.00
6 WORT... RES        60.00
1 B...  POLEON       10.00
.-0-.....          0.00
...  FILET          36..
V...ISON           36.??
1 ASPARAGUS          ...

FOOD SALES           94.00
LIQUOR SALES         69.00
TIP/OTHER            40.00
TAX                  13.45
PAYMENT             216.45
$ CHARGE TIP         40.00
WILLS, DAVID
ROOM CHARGE         216.45
----625 CLOSED FEB09  7:03PM----

GOVERNMENT
EXHIBIT
35.2A
17cr390

EXHIBIT 38

## BUSINESS RECORDS AFFIDAVIT

Before me, the undersigned authority, personally appeared _Harivadan C. Patel_, who, being by me duly sworn, deposed as follows:

My name is _Harivadan C. Patel_, I am of sound mind, capable of making this affidavit, and personally acquainted with the facts herein stated:

I am the custodian of the records of _Bayfront Inn - Corpus Christi_. Attached hereto are ___1___ pages of records from _Bayfront Inn - Corpus Christi_ _____. These said ___1___ pages of records are kept by _Bayfront Inn Corpus Christi_ in the regular course of business, and it was the regular course of business of ___ _Bayfront Inn - Corpus Christi_ for an employee or representative of _Bayfront Inn Corpus Christi_ with knowledge of the act, event, condition, opinion, or diagnosis, recorded to make the record or to transmit information thereof to be included in such record; and the record was made at or near the time or reasonably soon thereafter.

The records attached hereto are the original or exact duplicates of the original.

_____
Affiant

SWORN to and SUBSCRIBED before me this __11__ day of _February_____, A.D., 20_16_.

_Antonio "Tony" DeLong_
~~Notary Public~~ Printed Name
_Peace officer_

_____
Notary Public Signature

My Commission Expires

GOVERNMENT
EXHIBIT
38
17cr390

2:17cr390-004816

234

BAYFRONT INN - CORPUS CHRISTI
601 NORTH SHORELINE BLVD.
CORPUS CHRISTI, TX 78401
361-883-7271
bayfrontinncc@gmail.com
Printed: 2/11/2016 - 8:58am

MARIA LOSOYA
3702 SAN JACINTO
BROWNSVILLE TX 78520

Room: 234 1 KING NS BAY
Daily Rate:
Check-in: 03/02/14    Out: 03/03/14    Nights: 1

| Date | CHARGES | | | | | PAYMENT | | | | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| | Room | Phone | Misc. | Tax | Total | Credit | Cash | Bill | Total | |
| | 79.00 | 0.00 | 0.00 | 11.85 | 90.85 | 0.00 | 90.85 | 0.00 | 90.85 | 0.00 |

(Taxes - CITY: $7.11, STATE: $4.74)

AMOUNT TENDERED : $0.00
CHANGE : $0.00

Check-out time: 11:00am    Check-in time: 3:00pm

2:17cr390-004817