# EXHIBIT 111



Target Number:     (202) 384-8493
Service Provider:  Verizon
Time Zone:         Switch That Processed Text
Filtered by:       (956) 543-2483
                   (956) 408-9429
Phone numbers reformatted for readability

|     | MDN            | Msg Send Date     | Originating Address | Destination Address |
|-----|----------------|-------------------|---------------------|---------------------|
| 1   | (202) 384-8493 | 11/19/2014 0:14   | (956) 408-9429      | (202) 384-8493      |
| 2   | (202) 384-8493 | 3/27/2015 23:49   | (202) 384-8493      | (956) 408-9429      |
| 3   | (202) 384-8493 | 3/27/2015 23:51   | (956) 408-9429      | (202) 384-8493      |
| 4   | (202) 384-8493 | 3/27/2015 23:55   | (202) 384-8493      | (956) 408-9429      |
| 5   | (202) 384-8493 | 3/27/2015 23:57   | (956) 408-9429      | (202) 384-8493      |
| 6   | (202) 384-8493 | 3/28/2015 0:00    | (202) 384-8493      | (956) 408-9429      |
| 7   | (202) 384-8493 | 3/28/2015 0:03    | (956) 408-9429      | (202) 384-8493      |
| 8   | (202) 384-8493 | 3/28/2015 0:04    | (202) 384-8493      | (956) 408-9429      |
| 9   | (202) 384-8493 | 3/28/2015 0:05    | (956) 408-9429      | (202) 384-8493      |
| 10  | (202) 384-8493 | 3/28/2015 0:08    | (202) 384-8493      | (956) 408-9429      |
| 11  | (202) 384-8493 | 3/28/2015 0:10    | (956) 408-9429      | (202) 384-8493      |
| 12  | (202) 384-8493 | 3/28/2015 0:10    | (202) 384-8493      | (956) 408-9429      |
| 13  | (202) 384-8493 | 3/28/2015 0:10    | (956) 408-9429      | (202) 384-8493      |
| 14  | (202) 384-8493 | 3/28/2015 0:12    | (202) 384-8493      | (956) 408-9429      |
| 15  | (202) 384-8493 | 3/28/2015 0:12    | (956) 408-9429      | (202) 384-8493      |
| 16  | (202) 384-8493 | 3/28/2015 0:12    | (956) 408-9429      | (202) 384-8493      |
| 17  | (202) 384-8493 | 3/28/2015 0:14    | (202) 384-8493      | (956) 408-9429      |
| 18  | (202) 384-8493 | 3/28/2015 0:17    | (956) 408-9429      | (202) 384-8493      |
| 19  | (202) 384-8493 | 3/28/2015 0:20    | (202) 384-8493      | (956) 408-9429      |
| 20  | (202) 384-8493 | 3/28/2015 0:22    | (956) 408-9429      | (202) 384-8493      |
| 21  | (202) 384-8493 | 3/28/2015 0:23    | (202) 384-8493      | (956) 408-9429      |
| 22  | (202) 384-8493 | 3/28/2015 0:23    | (956) 408-9429      | (202) 384-8493      |
| 23  | (202) 384-8493 | 3/28/2015 0:24    | (956) 408-9429      | (202) 384-8493      |
| 24  | (202) 384-8493 | 3/28/2015 0:25    | (202) 384-8493      | (956) 408-9429      |
| 25  | (202) 384-8493 | 3/28/2015 0:26    | (956) 408-9429      | (202) 384-8493      |
| 26  | (202) 384-8493 | 3/28/2015 0:31    | (202) 384-8493      | (956) 408-9429      |
| 27  | (202) 384-8493 | 3/28/2015 0:36    | (956) 408-9429      | (202) 384-8493      |
| 28  | (202) 384-8493 | 3/28/2015 0:37    | (956) 408-9429      | (202) 384-8493      |
| 29  | (202) 384-8493 | 3/28/2015 0:43    | (202) 384-8493      | (956) 408-9429      |
| 30  | (202) 384-8493 | 3/28/2015 0:45    | (956) 408-9429      | (202) 384-8493      |
| 31  | (202) 384-8493 | 3/28/2015 0:48    | (202) 384-8493      | (956) 408-9429      |

GOVERNMENT
EXHIBIT
111
17cr390

# EXHIBIT 112

Target Number:        (202) 308-1244
Service Provider:     Verizon
Time Zone:            Switch That Processed Call
Filtered by:          (956) 543-2483
                      (956) 408-9429
Phone numbers reformatted for readability

|   | Mobile Directory Number | Dialed Digit Number | Call Direction | Seizure Dt Tm | Seizure Duration | Calling Party Number |
|---|---|---|---|---|---|---|
| 1 | (202) 308-1244 | (202) 308-1244 | 6 | 1/25/2015 21:06 | 587 | (956) 408-9429 |
| 2 | (202) 308-1244 | (202) 308-1244 | 6 | 1/25/2015 21:38 | 523 | (956) 408-9429 |
| 3 | (202) 308-1244 | (202) 308-1244 | 6 | 1/25/2015 22:59 | 2263 | (956) 408-9429 |
| 4 | (202) 308-1244 | (202) 308-1244 | F | 4/8/2015 10:38 | 60 | (956) 408-9429 |
| 5 | (202) 308-1244 | (202) 308-1244 | 6 | 4/8/2015 10:38 | 25 | (956) 408-9429 |
| 6 | (202) 308-1244 | (202) 308-1244 | F | 4/8/2015 10:58 | 55 | (956) 408-9429 |
| 7 | (202) 308-1244 | (202) 308-1244 | 6 | 4/8/2015 10:58 | 24 | (956) 408-9429 |
| 8 | (202) 308-1244 | (956) 408-9429 | 3 | 4/8/2015 11:10 | 41 | (202) 308-1244 |
| 9 | (202) 308-1244 | (956) 408-9429 | 3 | 4/8/2015 11:11 | 217 | (202) 308-1244 |



GOVERNMENT
EXHIBIT
112
17cr390

# EXHIBIT 113

Target Number:     (202) 308-1244
Service Provider:  Verizon
Time Zone:         Switch That Processed Text
Filtered by:       (956) 543-2483
                   (956) 408-9429
Phone numbers reformatted for readability

|   | MDN | Msg Send Date | Originating Address | Destination Address |
|---|-----|---------------|---------------------|---------------------|
| 1 | 2023081244 | 4/8/2015 10:39 | 9564089429 | 2023081244 |
| 2 | 2023081244 | 4/8/2015 10:59 | 9564089429 | 2023081244 |

GOVERNMENT
EXHIBIT
113
17cr390
PENGAD 800-631-6989

# EXHIBIT 114A

David Wills: 2023081244
John Aquilino: 2023081858

---------------Text Message for date/time - 2015-04-08T15:37:08.000Z---------------
Message Subject:
Source Address: 2023081858
Destinations: [2023081244]
Message Contents
Paul said u are not in trouble. She is for child pornography. He awaits ur call after meeting

---------------Text Message for date/time - 2015-04-08T17:35:57.000Z---------------
Message Subject:
Source Address: 2023081244
Destinations: [2023081858]
Message Contents
Call me once you are off the phone with Jim and Stephen.

---------------Text Message for date/time - 2015-04-08T19:05:15.000Z---------------
Message Subject:
Source Address: 2023081244
Destinations: [2023081858]
Message Contents
Koji just texted they are in the car with Issac heading to QM. What a day. I am totally sick to my stomach. Any positive advice. I need support, feeling pretty isolated.

---------------Text Message for date/time - 2015-04-08T20:29:45.000Z---------------
Message Subject:
Source Address: 2023081858
Destinations: [2023081244]
Message Contents
Read my memo

---------------Text Message for date/time - 2015-04-08T22:54:58.000Z---------------
Message Subject:
Source Address: 2023081244
Destinations: [2023081858]

1

GOVERNMENT
EXHIBIT
114A
17cr390

David Wills: 2023081244
John Aquilino: 2023081858

Message Contents
Ok, my nerves are shot. Just finished dinner with Koji and family, heading to Harris,Teeter then home. What a messed up day.

---------------Text Message for date/time - 2015-04-08T22:58:42.000Z---------------
Message Subject:
Source Address: 2023081858
Destinations: [2023081244]
Message Contents
Okay. There is no police report. Your oversize brain is kicking your ass. Think not negative thoughts.

---------------Text Message for date/time - 2015-04-08T23:10:57.000Z---------------
Message Subject:
Source Address: 2023081244
Destinations: [2023081858]
Message Contents
My oversize brain is screamig " danger, danger, Will Robinson". I am sick to my stomach and want to scream

---------------Text Message for date/time - 2015-04-08T23:12:07.000Z---------------
Message Subject:
Source Address: 2023081858
Destinations: [2023081244]
Message Contents
Stop it. I think the mom is delusional

---------------Text Message for date/time - 2015-04-08T23:16:58.000Z---------------
Message Subject:
Source Address: 2023081858
Destinations: [2023081244]
Message Contents
Cover Arnold its 47 up there. Medsage from Mary

2

David Wills: 2023081244
John Aquilino: 2023081858

---------------Text Message for date/time - 2015-04-08T23:47:23.000Z---------------
Message Subject:
Source Address: 2023081244
Destinations: [2023081858]
Message Contents
I hope you are correct

---------------Text Message for date/time - 2015-04-09T00:04:09.000Z---------------
Message Subject:
Source Address: 2023081858
Destinations: [2023081244]
Message Contents
I am. On a more important note. When you get back we have to have a memorial service for eduardo's right nut. It died of strangulation. Twisted artery killed it.

---------------Text Message for date/time - 2015-04-09T00:16:31.000Z---------------
Message Subject:
Source Address: 2023081244
Destinations: [2023081858]
Message Contents
I am counting on you being correct. Sorry to hear about Eduardo's loss.

---------------Text Message for date/time - 2015-04-09T00:17:50.000Z---------------
Message Subject:
Source Address: 2023081858
Destinations: [2023081244]
Message Contents
Im pretty sure she is just living in a sick fantasy land.

---------------Text Message for date/time - 2015-04-09T00:29:16.000Z---------------
Message Subject:
Source Address: 2023081244
Destinations: [2023081858]
Message Contents
I pray you are right but I doubt it. I think the whole family is screwed up.

David Wills: 2023081244
John Aquilino: 2023081858

---------------Text Message for date/time - 2015-04-09T00:32:50.000Z---------------
Message Subject:
Source Address: 2023081858
Destinations: [2023081244]
Message Contents
Where better develope a twisted sense of reality. Or maybe the wierdness is all in her mind

---------------Text Message for date/time - 2015-04-09T00:34:50.000Z---------------
Message Subject:
Source Address: 2023081244
Destinations: [2023081858]
Message Contents
All I know is this has been an epic bad day for me.

---------------Text Message for date/time - 2015-04-09T00:36:41.000Z---------------
Message Subject:
Source Address: 2023081858
Destinations: [2023081244]
Message Contents
Better day tomorrow. What went on with Peter and imatez

---------------Text Message for date/time - 2015-04-09T01:02:39.000Z---------------
Message Subject:
Source Address: 2023081244
Destinations: [2023081858]
Message Contents
Excellent meetings. They are determined to bring TCI on line. I could just barely hang on terrified this new set of allegations would destroy everything I have worked for.

---------------Text Message for date/time - 2015-04-09T01:03:36.000Z---------------
Message Subject:
Source Address: 2023081858
Destinations: [2023081244]
Message Contents
It wont cause it doesnt exist

---------------Text Message for date/time - 2015-04-09T01:13:59.000Z---------------
Message Subject:
Source Address: 2023081244
Destinations: [2023081858]
Message Contents
Please stay with me on this one. I am beaten down from 4 years of cancer and
losing Lori. I need
help fighting this one.

---------------Text Message for date/time - 2015-04-09T01:14:50.000Z---------------
Message Subject:
Source Address: 2023081858
Destinations: [2023081244]
Message Contents
Just call her a dumb cunt

---------------Text Message for date/time - 2015-04-09T01:15:31.000Z---------------
Message Subject:
Source Address: 2023081244
Destinations: [2023081858]
Message Contents
Not sure why but I am terrified of this one. Maybe just beat down.

David Wills: 2023081244
John Aquilino: 2023081858

---------------Text Message for date/time - 2015-04-09T01:16:48.000Z---------------
Message Subject:
Source Address: 2023081858
Destinations: [2023081244]
Message Contents
Never answer her call again. You are emotionally vulnerable. Exercise is
rebuilding but not
enough yet

---------------Text Message for date/time - 2015-04-09T01:20:04.000Z---------------
Message Subject:
Source Address: 2023081244
Destinations: [2023081858]
Message Contents
Thanks. Just promise you will hang in with me on this one.

---------------Text Message for date/time - 2015-04-09T01:21:38.000Z---------------
Message Subject:
Source Address: 2023081858
Destinations: [2023081244]
Message Contents
I cannot believe you asked that question. Im in this to the ultimate end

---------------Text Message for date/time - 2015-04-09T01:22:41.000Z---------------
Message Subject:
Source Address: 2023081244
Destinations: [2023081858]
Message Contents
I am not doubting you, I am doubting me.

---------------Text Message for date/time - 2015-04-09T02:28:08.000Z---------------
Message Subject:
Source Address: 2023081858
Destinations: [2023081244]
Message Contents
Just normal. You think wayvtoo much. Learn to put in neutral and veg

---------------Text Message for date/time - 2015-04-09T02:29:02.000Z---------------
Message Subject:
Source Address: 2023081244
Destinations: [2023081858]
Message Contents
I want to but John I am really spooked by this one.

---------------Text Message for date/time - 2015-04-09T02:30:52.000Z---------------
Message Subject:
Source Address: 2023081858
Destinations: [2023081244]
Message Contents
Natural but you are building into worse case with nothing but your imagination

---------------Text Message for date/time - 2015-04-09T02:31:46.000Z---------------
Message Subject:
Source Address: 2023081244
Destinations: [2023081858]
Message Contents
I know but it is a little more than my imagination, the call said I have been reported to the police.

---------------Text Message for date/time - 2015-04-09T02:32:25.000Z---------------
Message Subject:
Source Address: 2023081858
Destinations: [2023081244]
Message Contents
And a police detective said you were not

7

---------------Text Message for date/time - 2015-04-09T02:33:11.000Z---------------
Message Subject:
Source Address: 2023081244
Destinations: [2023081858]
Message Contents
I am scared that just means it had not registered yet.


---------------Text Message for date/time - 2015-04-09T02:34:27.000Z---------------
Message Subject:
Source Address: 2023081858
Destinations: [2023081244]
Message Contents
Again you are making it real in your mind. She made it up.


---------------Text Message for date/time - 2015-04-09T02:35:00.000Z---------------
Message Subject:
Source Address: 2023081244
Destinations: [2023081858]
Message Contents
I doubt it. She sounded terrified herself.


---------------Text Message for date/time - 2015-04-09T02:36:00.000Z---------------
Message Subject:
Source Address: 2023081858
Destinations: [2023081244]
Message Contents
In her mind. Or if it is another shakedown attempt it was to hook u


---------------Text Message for date/time - 2015-04-09T02:36:52.000Z---------------
Message Subject:
Source Address: 2023081244
Destinations: [2023081858]
Message Contents
Just stay with me. I need you more than ever.

8

David Wills: 2023081244
John Aquilino: 2023081858

---------------Text Message for date/time - 2015-04-09T02:37:29.000Z---------------
Message Subject:
Source Address: 2023081858
Destinations: [2023081244]
Message Contents
I am not going anywhere. Didbyou cover the palm

---------------Text Message for date/time - 2015-04-09T02:38:10.000Z---------------
Message Subject:
Source Address: 2023081244
Destinations: [2023081858]
Message Contents
Yes. You are more worried about Arnold than me.

---------------Text Message for date/time - 2015-04-09T02:38:39.000Z---------------
Message Subject:
Source Address: 2023081858
Destinations: [2023081244]
Message Contents
No. Thst is just your insecurity

---------------Text Message for date/time - 2015-04-09T02:38:56.000Z---------------
Message Subject:
Source Address: 2023081244
Destinations: [2023081858]
Message Contents
Tru dat.

---------------Text Message for date/time - 2015-04-09T16:14:45.000Z---------------
Message Subject:
Source Address: 2023081858
Destinations: [2023081244]
Message Contents
Looks like Margaret is on board.

9

David Wills: 2023081244
John Aquilino: 2023081858

---------------Text Message for date/time - 2015-04-09T16:16:19.000Z---------------
Message Subject:
Source Address: 2023081244
Destinations: [2023081858]
Message Contents
If my life wasn't about to end I would be smiling. congrats to Eduardo.

---------------Text Message for date/time - 2015-04-09T16:18:26.000Z---------------
Message Subject:
Source Address: 2023081858
Destinations: [2023081244]
Message Contents
Sorry you are condemned to a long life with us

---------------Text Message for date/time - 2015-04-09T16:19:37.000Z---------------
Message Subject:
Source Address: 2023081244
Destinations: [2023081858]
Message Contents
If that is my future I will be estatic. My dark and emotionally upset mind sees
nothing but terrible.

---------------Text Message for date/time - 2015-04-09T16:21:48.000Z---------------
Message Subject:
Source Address: 2023081858
Destinations: [2023081244]
Message Contents
Time to open the door and leave the dark

---------------Text Message for date/time - 2015-04-09T16:30:06.000Z---------------
Message Subject:
Source Address: 2023081244
Destinations: [2023081858]
Message Contents
I am going to have to dig deep and find the fortitude to fight one more slanderous
attack. Maybe
you are correct, maybe this is the last shit the devil has to throw at me.


---------------Text Message for date/time - 2015-04-09T16:41:50.000Z---------------
Message Subject:
Source Address: 2023081858
Destinations: [2023081244]
Message Contents
I believe that. Topic change. Tomorrow Stephen and i meet with Dennis Cooper
for the cookoff.
Im thinking at Stephen' place or Sp Woods. He is a one man operation working
seafood since
1970s. Apparently Eduardo knows him. Any thoughts re: setting up some
relationship with SSPI.
JASON said he just bought and sold 10k pounds of snapper.


---------------Text Message for date/time - 2015-04-09T19:56:24.000Z---------------
Message Subject:
Source Address: 2023081858
Destinations: [2023081244]
Message Contents

David Wills: 2023081244
John Aquilino: 2023081858

---------------Text Message for date/time - 2015-04-09T21:45:17.000Z---------------
Message Subject:
Source Address: 2023081244
Destinations: [2023081858]
Message Contents
Nice presentation. Talked to Stephen sounds like the group left very impressed. I am so pissed
that my personal crisis is destroying my ability to enjoy our business success. Ross wired 4 million to GBT todsy, for 6.9 total. Only 3.1 to go and they have firm commitments for almost all the rest.

---------------Text Message for date/time - 2015-04-09T21:46:20.000Z---------------
Message Subject:
Source Address: 2023081858
Destinations: [2023081244]
Message Contents
Great was that Broins

---------------Text Message for date/time - 2015-04-09T21:48:59.000Z---------------
Message Subject:
Source Address: 2023081244
Destinations: [2023081858]
Message Contents
3 million from Broin. 1 million from others.

---------------Text Message for date/time - 2015-04-09T21:51:03.000Z---------------
Message Subject:
Source Address: 2023081244
Destinations: [2023081858]
Message Contents
My nerves are shot, so I am breaking my rule and having a drink tonight, one day early. You have no idea how much you helped when you promise I will get through this. For some reason I trust your instincts. Thanks.

David Wills: 2023081244
John Aquilino: 2023081858

---------------Text Message for date/time - 2015-04-09T21:53:00.000Z---------------
Message Subject:
Source Address: 2023081858
Destinations: [2023081244]
Message Contents
Hey i ve trusted you for 20 years. Why not

---------------Text Message for date/time - 2015-04-09T21:58:03.000Z---------------
Message Subject:
Source Address: 2023081244
Destinations: [2023081858]
Message Contents
Yes, but making money is not hard, keeping me out of you know where and functioning is huge.

---------------Text Message for date/time - 2015-04-09T22:11:51.000Z---------------
Message Subject:
Source Address: 2023081858
Destinations: [2023081244]
Message Contents
Im talking about trust and friendship.

---------------Text Message for date/time - 2015-04-09T22:16:05.000Z---------------
Message Subject:
Source Address: 2023081244
Destinations: [2023081858]
Message Contents
I am counting on you and Paul to make sure I get through this without confinement. I would rather die and that is not hyperbole.

David Wills: 2023081244
John Aquilino: 2023081858

---------------Text Message for date/time - 2015-04-09T22:30:33.000Z---------------
Message Subject:
Source Address: 2023081858
Destinations: [2023081244]
Message Contents
I believe u

---------------Text Message for date/time - 2015-04-09T22:52:14.000Z---------------
Message Subject:
Source Address: 2023081244
Destinations: [2023081858]
Message Contents
I mean it. I am just praying it does not come to that.

---------------Text Message for date/time - 2015-04-09T22:53:25.000Z---------------
Message Subject:
Source Address: 2023081858
Destinations: [2023081244]
Message Contents
It wont

---------------Text Message for date/time - 2015-04-09T22:56:36.000Z---------------
Message Subject:
Source Address: 2023081244
Destinations: [2023081858]
Message Contents
That's what I am clinging to. I have you and Paul this time. And freinds and some
money. I do not intend to be a victim.

---------------Text Message for date/time - 2015-04-09T23:34:36.000Z---------------
Message Subject:
Source Address: 2023081858
Destinations: [2023081244]
Message Contents
And u wont

14

David Wills: 2023081244
John Aquilino: 2023081858

---------------Text Message for date/time - 2015-04-09T23:35:43.000Z---------------
Message Subject:
Source Address: 2023081244
Destinations: [2023081858]
Message Contents
Keep telling me, for the first time in my life I do not feel alone. Thanks.

---------------Text Message for date/time - 2015-04-09T23:37:12.000Z---------------
Message Subject:
Source Address: 2023081858
Destinations: [2023081244]
Message Contents
To the end my friend

---------------Text Message for date/time - 2015-04-09T23:40:01.000Z---------------
Message Subject:
Source Address: 2023081244
Destinations: [2023081858]
Message Contents
I know. Let's just make sure this is not the end.

---------------Text Message for date/time - 2015-04-09T23:41:50.000Z---------------
Message Subject:
Source Address: 2023081858
Destinations: [2023081244]
Message Contents
No butt head. The end 30 years from now.

David Wills: 2023081244
John Aquilino: 2023081858

---------------Text Message for date/time - 2015-04-09T23:49:12.000Z---------------

Message Subject:

Source Address: 2023081244

Destinations: [2023081858]

Message Contents

Excellent. That's what I need to hear.

16

# EXHIBIT 115A

David Wills: 2023081244
Sara Baker: 3302246197

---------------Text Message for date/time - 2015-04-09T01:26:02.000Z---------------
Message Subject:
Source Address: 3302246197
Destinations: [2023081244]
Message Contents
Kids are good. John picked up the computer. Office cleaned. All in all a good day.

GOVERNMENT
EXHIBIT
115A
17cr390

# EXHIBIT 116

Target Number:        (956) 408-9429
Service Provider:     AT&T
Time Zone:            UTC
Filtered by:          (361) 205-7674
                      (202) 384-8493
                      (202) 308-1244
Phone numbers reformatted for readability



GOVERNMENT
EXHIBIT
116
17cr390

|  | ConnDateTime(UTC) | ET | OriginatingNumber | TerminatingNumber |
|---|---|---|---|---|
| 1 | 7/29/2014 3:23 | 25:15:00 | (202) 384-8493 | (956) 408-9429 |
| 2 | 8/1/2014 2:06 | 16:25 | (202) 384-8493 | (956) 408-9429 |
| 3 | 8/5/2014 2:29 | 12:42 | (202) 384-8493 | (956) 408-9429 |
| 4 | 8/5/2014 15:45 | 4:06 | (202) 384-8493 | (956) 408-9429 |
| 5 | 8/11/2014 1:23 | 17:04 | (202) 384-8493 | (956) 408-9429 |
| 6 | 8/13/2014 0:09 | 27:51:00 | (202) 384-8493 | (956) 408-9429 |
| 7 | 8/17/2014 16:35 | 11:32 | (202) 384-8493 | (956) 408-9429 |
| 8 | 8/21/2014 18:25 | 6:49 | (202) 384-8493 | (956) 408-9429 |
| 9 | 9/5/2014 23:56 | 18:37 | (202) 384-8493 | (956) 408-9429 |
| 10 | 9/6/2014 1:23 | 4:31 | (202) 384-8493 | (956) 408-9429 |
| 11 | 9/7/2014 2:24 | 14:36 | (202) 384-8493 | (956) 408-9429 |
| 12 | 9/7/2014 4:40 | 0:09 | (202) 384-8493 | (956) 408-9429 |
| 13 | 9/7/2014 4:41 | 0:05 | (956) 408-9429 | (202) 384-8493 |
| 14 | 9/7/2014 4:45 | 10:56 | (956) 408-9429 | (202) 384-8493 |
| 15 | 9/7/2014 17:24 | 18:46 | (202) 384-8493 | (956) 408-9429 |
| 16 | 9/8/2014 22:33 | 19:48 | (202) 384-8493 | (956) 408-9429 |
| 17 | 9/9/2014 0:07 | 1:58 | (202) 384-8493 | (956) 408-9429 |
| 18 | 9/9/2014 1:36 | 26:04:00 | (202) 384-8493 | (956) 408-9429 |
| 19 | 9/12/2014 21:21 | 0:43 | (202) 384-8493 | (956) 408-9429 |
| 20 | 9/12/2014 21:34 | 24:28:00 | (202) 384-8493 | (956) 408-9429 |
| 21 | 9/13/2014 4:09 | 1:19 | (202) 384-8493 | (956) 408-9429 |
| 22 | 9/14/2014 1:19 | 32:47:00 | (202) 384-8493 | (956) 408-9429 |
| 23 | 9/14/2014 3:25 | 53:40:00 | (202) 384-8493 | (956) 408-9429 |
| 24 | 9/14/2014 4:25 | 0:05 | (956) 408-9429 | (202) 384-8493 |
| 25 | 9/14/2014 4:25 | 0:03 | (956) 408-9429 | (202) 384-8493 |
| 26 | 9/14/2014 4:26 | 0:02 | (956) 408-9429 | (202) 384-8493 |
| 27 | 9/14/2014 4:26 | 0:01 | (956) 408-9429 | (202) 384-8493 |
| 28 | 9/14/2014 4:27 | 0:04 | (956) 408-9429 | (202) 384-8493 |
| 29 | 9/14/2014 4:31 | 0:03 | (956) 408-9429 | (202) 384-8493 |
| 30 | 9/14/2014 4:32 | 0:02 | (956) 408-9429 | (202) 384-8493 |
| 31 | 9/14/2014 4:37 | 0:00 | (956) 408-9429 | (361) 205-7674 |
| 32 | 9/14/2014 4:37 | 0:02 | (956) 408-9429 | (202) 384-8493 |
| 33 | 9/14/2014 4:39 | 0:02 | (956) 408-9429 | (202) 384-8493 |
| 34 | 9/14/2014 4:48 | 0:02 | (956) 408-9429 | (202) 384-8493 |
| 35 | 9/14/2014 15:00 | 11:59 | (202) 384-8493 | (956) 408-9429 |
| 36 | 9/15/2014 1:59 | 65:13:00 | (202) 384-8493 | (956) 408-9429 |
| 37 | 9/16/2014 3:24 | 26:23:00 | (202) 384-8493 | (956) 408-9429 |

| | | | |
|---|---|---|---|
| 38 | 9/17/2014 18:45 | 0:46 (202) 384-8493 | (956) 408-9429 |
| 39 | 9/17/2014 20:41 | 0:15 (202) 384-8493 | (956) 408-9429 |
| 40 | 9/29/2014 22:50 | 0:05 (202) 384-8493 | (956) 408-9429 |
| 41 | 9/29/2014 22:50 | 4:49 (956) 408-9429 | (202) 384-8493 |
| 42 | 9/29/2014 23:15 | 0:34 (202) 384-8493 | (956) 408-9429 |
| 43 | 10/7/2014 1:48 | 28:30:00 (202) 384-8493 | (956) 408-9429 |
| 44 | 10/9/2014 3:41 | 28:01:00 (202) 384-8493 | (956) 408-9429 |
| 45 | 10/10/2014 3:13 | 36:13:00 (202) 384-8493 | (956) 408-9429 |
| 46 | 10/14/2014 15:39 | 1:29 (202) 384-8493 | (956) 408-9429 |
| 47 | 10/25/2014 1:22 | 17:13 (202) 384-8493 | (956) 408-9429 |
| 48 | 10/25/2014 2:11 | 16:23 (202) 384-8493 | (956) 408-9429 |
| 49 | 10/25/2014 3:52 | 0:06 (202) 384-8493 | (956) 408-9429 |
| 50 | 10/25/2014 3:53 | 12:08 (956) 408-9429 | (202) 384-8493 |
| 51 | 10/25/2014 19:38 | 0:37 (202) 384-8493 | (956) 408-9429 |
| 52 | 10/28/2014 3:54 | 1:51 (202) 384-8493 | (956) 408-9429 |
| 53 | 10/28/2014 3:57 | 18:11 (202) 384-8493 | (956) 408-9429 |
| 54 | 10/30/2014 1:32 | 19:30 (202) 384-8493 | (956) 408-9429 |
| 55 | 11/2/2014 1:57 | 42:49:00 (202) 384-8493 | (956) 408-9429 |
| 56 | 11/4/2014 1:58 | 1:24 (202) 384-8493 | (956) 408-9429 |
| 57 | 11/5/2014 3:21 | 10:51 (202) 384-8493 | (956) 408-9429 |
| 58 | 11/5/2014 17:32 | 14:10 (202) 384-8493 | (956) 408-9429 |
| 59 | 11/6/2014 0:04 | 0:05 (202) 384-8493 | (956) 408-9429 |
| 60 | 11/6/2014 0:05 | 11:26 (956) 408-9429 | (202) 384-8493 |
| 61 | 11/6/2014 2:49 | 16:26 (202) 384-8493 | (956) 408-9429 |
| 62 | 11/6/2014 14:56 | 0:05 (202) 384-8493 | (956) 408-9429 |
| 63 | 11/6/2014 14:58 | 7:08 (956) 408-9429 | (202) 384-8493 |
| 64 | 11/7/2014 0:32 | 17:16 (202) 384-8493 | (956) 408-9429 |
| 65 | 11/7/2014 2:26 | 0:09 (202) 384-8493 | (956) 408-9429 |
| 66 | 11/7/2014 2:27 | 35:34:00 (956) 408-9429 | (202) 384-8493 |
| 67 | 11/7/2014 16:50 | 4:59 (202) 384-8493 | (956) 408-9429 |
| 68 | 11/7/2014 19:03 | 5:56 (202) 384-8493 | (956) 408-9429 |
| 69 | 11/7/2014 19:20 | 2:11 (202) 384-8493 | (956) 408-9429 |
| 70 | 11/7/2014 23:19 | 32:44:00 (202) 384-8493 | (956) 408-9429 |
| 71 | 11/11/2014 4:26 | 13:39 (202) 384-8493 | (956) 408-9429 |
| 72 | 11/17/2014 18:01 | 12:02 (202) 384-8493 | (956) 408-9429 |
| 73 | 11/18/2014 0:13 | 0:06 (202) 384-8493 | (956) 408-9429 |
| 74 | 11/18/2014 0:15 | 0:05 (202) 384-8493 | (956) 408-9429 |
| 75 | 11/18/2014 0:16 | 0:00 (202) 384-8493 | (956) 408-9429 |
| 76 | 11/18/2014 0:46 | 0:00 (202) 384-8493 | (956) 408-9429 |
| 77 | 11/18/2014 1:01 | 18:47 (956) 408-9429 | (202) 384-8493 |
| 78 | 11/18/2014 3:44 | 20:18 (202) 384-8493 | (956) 408-9429 |
| 79 | 11/19/2014 2:41 | 1:04 (202) 384-8493 | (956) 408-9429 |
| 80 | 11/19/2014 2:42 | 48:34:00 (956) 408-9429 | (202) 384-8493 |
| 81 | 11/19/2014 3:32 | 2:04 (202) 384-8493 | (956) 408-9429 |
| 82 | 11/19/2014 4:58 | 0:00 (956) 408-9429 | (202) 384-8493 |
| 83 | 11/19/2014 5:14 | 0:07 (202) 384-8493 | (956) 408-9429 |
| 84 | 11/19/2014 5:15 | 10:51 (202) 384-8493 | (956) 408-9429 |

| | | | | |
|---|---|---|---|---|
| 85 | 11/19/2014 18:02 | 0:21 | (202) 384-8493 | (956) 408-9429 |
| 86 | 11/19/2014 18:13 | 2:20 | (202) 384-8493 | (956) 408-9429 |
| 87 | 11/20/2014 2:12 | 26:07:00 | (202) 384-8493 | (956) 408-9429 |
| 88 | 11/20/2014 4:35 | 0:01 | (956) 408-9429 | (202) 384-8493 |
| 89 | 11/20/2014 4:35 | 0:04 | (956) 408-9429 | (202) 384-8493 |
| 90 | 11/20/2014 4:36 | 12:35 | (202) 384-8493 | (956) 408-9429 |
| 91 | 11/20/2014 15:20 | 6:47 | (202) 384-8493 | (956) 408-9429 |
| 92 | 11/21/2014 4:54 | 27:07:00 | (202) 384-8493 | (956) 408-9429 |
| 93 | 11/21/2014 18:29 | 21:17 | (202) 384-8493 | (956) 408-9429 |
| 94 | 11/21/2014 19:38 | 0:02 | (956) 408-9429 | (202) 384-8493 |
| 95 | 11/22/2014 16:09 | 0:06 | (956) 408-9429 | (202) 384-8493 |
| 96 | 11/23/2014 2:11 | 13:10 | (202) 384-8493 | (956) 408-9429 |
| 97 | 11/23/2014 3:04 | 0:02 | (956) 408-9429 | (202) 384-8493 |
| 98 | 11/23/2014 4:30 | 4:14 | (202) 384-8493 | (956) 408-9429 |
| 99 | 11/23/2014 16:11 | 0:07 | (202) 384-8493 | (956) 408-9429 |
| 100 | 11/23/2014 16:17 | 5:05 | (956) 408-9429 | (202) 384-8493 |
| 101 | 11/23/2014 16:23 | 1:26 | (202) 384-8493 | (956) 408-9429 |
| 102 | 11/26/2014 3:54 | 3:45 | (202) 384-8493 | (956) 408-9429 |
| 103 | 11/26/2014 16:56 | 10:56 | (202) 384-8493 | (956) 408-9429 |
| 104 | 11/27/2014 4:51 | 24:14:00 | (202) 384-8493 | (956) 408-9429 |
| 105 | 11/29/2014 0:53 | 23:38 | (202) 384-8493 | (956) 408-9429 |
| 106 | 11/29/2014 8:01 | 0:09 | (202) 384-8493 | (956) 408-9429 |
| 107 | 11/29/2014 8:03 | 11:07 | (956) 408-9429 | (202) 384-8493 |
| 108 | 11/30/2014 3:44 | 34:00:00 | (202) 384-8493 | (956) 408-9429 |
| 109 | 12/1/2014 1:51 | 3:58 | (202) 384-8493 | (956) 408-9429 |
| 110 | 12/1/2014 3:18 | 2:38 | (202) 384-8493 | (956) 408-9429 |
| 111 | 12/1/2014 17:18 | 0:06 | (202) 384-8493 | (956) 408-9429 |
| 112 | 12/1/2014 17:19 | 0:25 | (202) 384-8493 | (956) 408-9429 |
| 113 | 12/1/2014 17:25 | 2:02 | (956) 408-9429 | (202) 384-8493 |
| 114 | 12/1/2014 17:58 | 22:01 | (202) 384-8493 | (956) 408-9429 |
| 115 | 12/1/2014 19:13 | 0:31 | (202) 384-8493 | (956) 408-9429 |
| 116 | 12/1/2014 19:38 | 0:06 | (202) 384-8493 | (956) 408-9429 |
| 117 | 12/1/2014 19:39 | 0:02 | (202) 384-8493 | (956) 408-9429 |
| 118 | 12/1/2014 19:39 | 0:54 | (956) 408-9429 | (202) 384-8493 |
| 119 | 12/1/2014 19:46 | 0:04 | (202) 384-8493 | (956) 408-9429 |
| 120 | 12/1/2014 19:48 | 0:18 | (202) 384-8493 | (956) 408-9429 |
| 121 | 12/1/2014 21:40 | 0:06 | (202) 384-8493 | (956) 408-9429 |
| 122 | 12/1/2014 21:42 | 5:06 | (956) 408-9429 | (202) 384-8493 |
| 123 | 12/4/2014 1:25 | 39:41:00 | (956) 408-9429 | (202) 384-8493 |
| 124 | 12/5/2014 5:39 | 0:03 | (202) 384-8493 | (956) 408-9429 |
| 125 | 12/5/2014 5:43 | 17:08 | (956) 408-9429 | (202) 384-8493 |
| 126 | 12/6/2014 3:32 | 43:23:00 | (202) 384-8493 | (956) 408-9429 |
| 127 | 12/9/2014 5:48 | 13:53 | (202) 384-8493 | (956) 408-9429 |
| 128 | 12/10/2014 7:12 | 21:47 | (202) 384-8493 | (956) 408-9429 |
| 129 | 12/12/2014 22:30 | 8:03 | (202) 384-8493 | (956) 408-9429 |
| 130 | 12/16/2014 18:06 | 3:02 | (202) 384-8493 | (956) 408-9429 |
| 131 | 12/20/2014 5:20 | 0:05 | (202) 384-8493 | (956) 408-9429 |

| 132 | 12/20/2014 5:29 | 22:31 | (956) 408-9429 | (202) 384-8493 |
| 133 | 12/27/2014 3:18 | 0:18 | (202) 384-8493 | (956) 408-9429 |
| 134 | 12/27/2014 3:19 | 22:25 | (956) 408-9429 | (202) 384-8493 |
| 135 | 12/29/2014 18:12 | 5:48 | (202) 384-8493 | (956) 408-9429 |
| 136 | 12/31/2014 15:05 | 0:03 | (956) 408-9429 | (202) 384-8493 |
| 137 | 12/31/2014 16:10 | 1:13 | (202) 384-8493 | (956) 408-9429 |
| 138 | 12/31/2014 18:28 | 0:38 | (202) 384-8493 | (956) 408-9429 |
| 139 | 12/31/2014 19:32 | 0:30 | (202) 384-8493 | (956) 408-9429 |
| 140 | 12/31/2014 19:41 | 0:41 | (956) 408-9429 | (202) 384-8493 |
| 141 | 1/22/2015 5:04 | 20:22 | (202) 384-8493 | (956) 408-9429 |
| 142 | 1/26/2015 1:53 | 33:03:00 | (202) 384-8493 | (956) 408-9429 |
| 143 | 1/26/2015 2:36 | 26:33:00 | (956) 408-9429 | (202) 384-8493 |
| 144 | 1/26/2015 3:06 | 9:38 | (956) 408-9429 | (202) 308-1244 |
| 145 | 1/26/2015 3:38 | 8:35 | (956) 408-9429 | (202) 308-1244 |
| 146 | 1/26/2015 4:24 | 0:06 | (956) 408-9429 | (202) 384-8493 |
| 147 | 1/26/2015 4:59 | 0:02 | (956) 408-9429 | (202) 384-8493 |
| 148 | 1/26/2015 5:00 | 37:33:00 | (956) 408-9429 | (202) 308-1244 |
| 149 | 3/28/2015 4:49 | 0:05 | (956) 408-9429 | (202) 384-8493 |
| 150 | 3/28/2015 4:49 | 0:00 | (956) 408-9429 | (202) 384-8493 |
| 151 | 3/28/2015 4:49 | 11:04 | (956) 408-9429 | (202) 384-8493 |
| 152 | 4/4/2015 13:17 | 5:40 | (202) 384-8493 | (956) 408-9429 |
| 153 | 4/8/2015 14:39 | 0:26 | (956) 408-9429 | (202) 308-1244 |
| 154 | 4/8/2015 14:57 | 0:04 | (956) 408-9429 | (202) 384-8493 |
| 155 | 4/8/2015 14:58 | 0:24 | (956) 408-9429 | (202) 308-1244 |
| 156 | 4/8/2015 15:10 | 0:26 | (202) 308-1244 | (956) 408-9429 |
| 157 | 4/8/2015 15:11 | 3:19 | (202) 308-1244 | (956) 408-9429 |

# EXHIBIT 117

Target Number:        (956) 408-9429
Service Provider:     AT&T
Time Zone:            UTC
Filtered by:          (361) 205-7674
                      (202) 384-8493
                      (202) 308-1244
Phone numbers reformatted for readability

|    | ConnDateTime(UTC) | OriginatingNumber | TerminatingNumber |
|----|-------------------|-------------------|-------------------|
| 1  | 11/19/2014 5:14   | 19564089429       | 12023848493       |
| 2  | 3/28/2015 3:49    | 12023848493       | 19564089429       |
| 3  | 3/28/2015 3:51    | 19564089429       | 12023848493       |
| 4  | 3/28/2015 3:55    | 12023848493       | 19564089429       |
| 5  | 3/28/2015 3:57    | 19564089429       | 12023848493       |
| 6  | 3/28/2015 4:00    | 12023848493       | 19564089429       |
| 7  | 3/28/2015 4:03    | 19564089429       | 12023848493       |
| 8  | 3/28/2015 4:04    | 12023848493       | 19564089429       |
| 9  | 3/28/2015 4:05    | 19564089429       | 12023848493       |
| 10 | 3/28/2015 4:08    | 12023848493       | 19564089429       |
| 11 | 3/28/2015 4:10    | 12023848493       | 19564089429       |
| 12 | 3/28/2015 4:10    | 19564089429       | 12023848493       |
| 13 | 3/28/2015 4:10    | 19564089429       | 12023848493       |
| 14 | 3/28/2015 4:12    | 12023848493       | 19564089429       |
| 15 | 3/28/2015 4:12    | 19564089429       | 12023848493       |
| 16 | 3/28/2015 4:12    | 19564089429       | 12023848493       |
| 17 | 3/28/2015 4:14    | 12023848493       | 19564089429       |
| 18 | 3/28/2015 4:17    | 19564089429       | 12023848493       |
| 19 | 3/28/2015 4:20    | 12023848493       | 19564089429       |
| 20 | 3/28/2015 4:22    | 19564089429       | 12023848493       |
| 21 | 3/28/2015 4:23    | 12023848493       | 19564089429       |
| 22 | 3/28/2015 4:23    | 19564089429       | 12023848493       |
| 23 | 3/28/2015 4:24    | 19564089429       | 12023848493       |
| 24 | 3/28/2015 4:25    | 12023848493       | 19564089429       |
| 25 | 3/28/2015 4:26    | 19564089429       | 12023848493       |
| 26 | 3/28/2015 4:32    | 12023848493       | 19564089429       |
| 27 | 3/28/2015 4:36    | 19564089429       | 12023848493       |
| 28 | 3/28/2015 4:37    | 19564089429       | 12023848493       |
| 29 | 3/28/2015 4:43    | 12023848493       | 19564089429       |
| 30 | 3/28/2015 4:45    | 19564089429       | 12023848493       |
| 31 | 3/28/2015 4:48    | 12023848493       | 19564089429       |

GOVERNMENT
EXHIBIT
117
17cr390
PENGAD 800-631-6989

# EXHIBIT 118



| | |
|---|---|
| Posting Date | 2012 Jul 16 |
| Bank # | 096 |
| Research Seq # | 8003500384 |
| Account # | 51070041 |
| Dollar Amount | $325.00 |
| Check/Store # | 2162 |
| DB/CR | DB |
| Record Type # | 01 |

**GOVERNMENT EXHIBIT**

118

17cr390

# EXHIBIT 119





4865784691

| | |
|---|---|
| Posting Date | 2015 Apr 20 |
| Bank # | 096 |
| Research Seq # | 8106952463 |
| Account # | 51070041 |
| Dollar Amount | $9,000.00 |
| Check/Store # | 2518 |
| DB/CR | DB |
| Record Type # | 01 |

GOVERNMENT
EXHIBIT
119
17cr390



Posting Date       2015 Apr 20
Bank #             096
Research Seq #     8107269744
Account #          51070041
Dollar Amount      $4,000.00
Check/Store #      2519
DB/CR              DB
Record Type #      01

# EXHIBIT 120

REDE Page 165 of 489



REQUEST 00006048203000000 325.00
ROLL ECIA   20120713  000004883739310+
JOB ECIA  E  ACCT 000000051070041
REQUESTOR A099300
12001533  04/22/2015 Research 12005041

Subpoena Processing Chandler
S3928-020
Phoenix  AZ  85038



GOVERNMENT
EXHIBIT
120
17cr390

2:17cr390-003235

Primary account number:      ■ April 9, 2013 – May 8, 2013   ■ Page 2 of 5



# Wells Fargo Way2Save® Checking

## Activity summary

| | |
|---|---|
| Beginning balance on 4/9 | $46.37 |
| Deposits/Additions | 850.00 |
| Withdrawals/Subtractions | - 824.79 |
| Ending balance on 5/8 | $71.58 |

**Account number**   · ▬

MARIA CANDELARIA LOSOYA

*Texas/Arkansas account terms and conditions apply*

For Direct Deposit and Automatic Payments use
Routing Number (RTN): 111900659

### Overdraft Protection

Your account is linked to the following for Overdraft Protection:
■   Savings  ·

## Transaction history

| Date | Check Number | Description | Deposits/ Additions | Withdrawals/ Subtractions | Ending daily balance |
|---|---|---|---|---|---|
| 4/9 | | Deposit Made In A Branch/Store | 70.90 | | 116.37 |
| 4/15 | | Deposit Made In A Branch/Store | 260.00 | | |
| 4/15 | | Barclaycard US Creditcard xxxxx3244 Candy Losoya | | 50.00 | |
| 4/15 | | Capital One Phone Pymt 310239069094746 2467179137Losoya Candy | | 25.00 | 301.37 |
| 4/16 | | Check Crd Purchase 04/16 People to People A 509-534-6200 WA 486630xxxxxx0203 083105880173831 7McC=8299 | | 300.00 | |
| 4/16 | | Save As You Go Transfer Debit to Xxxxxxxxxx4694 | | 1.00 | 0.37 |
| 4/17 | | Deposit Made In A Branch/Store | 40.00 | | 40.37 |
| 4/18 | | Deposit Made In A Branch/Store | 50.00 | | |
| 4/18 | | Recur Debit Crd Pmt04/17 Freedom Fitness 956-5447867 TX 486630xxxxxx0203 493107416737330 7McC=7997 | | 31.39 | |
| 4/18 | | Save As You Go Transfer Debit to Xxxxxxxxxx4694 | | 1.00 | 57.98 |
| 4/22 | | Deposit Made In A Branch/Store | 130.00 | | |
| 4/22 | | ATT Payment 042013 191801003Car1Y Candy Losoya | | 83.70 | |
| 4/22 | | Save As You Go Transfer Debit to Xxxxxxxxxx4694 | · | 1.00 | 103.28 |
| 4/23 | | Reliant Energy 0121D 000003190808 Candelaria Losoya | | 95.00 | |
| 4/23 | | Save As You Go Transfer Debit to Xxxxxxxxxx4694 · | | 1.00 | 7.28 |
| 4/29 | | Deposit Made In A Branch/Store | 100.00 | | 107.28 |
| 4/30 | ^ 150 | Sears Retail Purchase 130428 150 Brow, TX | | 100.00 | 7.28 |
| 5/8 | | Deposit Made In A Branch/Store | 100.00 | | |
| 5/8 | | Recur Debit Crd Pmt05/05 Freedom Fitness 956-5447867 TX 486630xxxxxx0203 393125422886641 7McC=7997 | | 21.70 | |
| 5/8 | | Save As You Go Transfer Debit to Xxxxxxxxxx4694 | | 1.00 | 84.58 |
| 5/8 | | Deposit Made In A Branch/Store | 100.00 | | |
| 5/8 | | Chase Epay 130507 1555721512 597351742630397 | | 100.00 | |
| 5/8 | | Save As You Go Transfer Debit to Xxxxxxxxxx4694 | | 1.00 | |
| 5/8 | | Monthly Service Fee | | 12.00 | 71.58 |
| Ending balance on 5/8 | | | | | 71.58 |
| **Totals** | | | **$850.00** | **$824.79** | |

*The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted. If you had insufficient available funds when a transaction posted, fees may have been assessed.*

^  *Converted check:Check converted to an electronic format by your payee or designated representative. Checks converted to electronic format cannot be returned, copied or imaged.*

2:17cr390-003825

Primary account number:   .        .    ■ June 11, 2013 - July 9, 2013 ■ Page 2 of 5



# Wells Fargo Way2Save® Checking

## Activity summary

| | |
|---|---|
| Beginning balance on 6/11 | $388.73 |
| Deposits/Additions | 400.00 |
| Withdrawals/Subtractions | - 682.13 |
| Ending balance on 7/9 | $106.60 |

Account number:        ..⸴

MARIA CANDELARIA LOSOYA

*Texas/Arkansas account terms and conditions apply*

For Direct Deposit and Automatic Payments use
Routing Number (RTN): 111900659

## Overdraft Protection

Your account is linked to the following for Overdraft Protection:

■   Savings

## Transaction history

| Date | Check Number | Description | Deposits/ Additions | Withdrawals/ Subtractions | Ending daily balance |
|---|---|---|---|---|---|
| 6/11 | | Check Crd Purchase 06/10 People to People A 509-534-6200 WA 486830xxxxxx0203 283161607836689 ?McC=8299 | | 300.00 | |
| 6/11 | | Save As You Go Transfer Debit to Xxxxxxxxxxx4694 | | 1.00 | 87.73 |
| 6/13 | | Barclaycard US Creditcard xxxxx0189 Candy Losoya | | 70.00 | |
| 6/13 | | Save As You Go Transfer Debit to Xxxxxxxxxxx4694 | | 1.00 | 16.73 |
| 6/14 | | Deposit | 50.00 | | |
| 6/14 | | Capital One Phone Pymt 316439879057536 2467179137Losoya Candy | | 50.00 | |
| 6/14 | | Save As You Go Transfer Debit to Xxxxxxxxxxx4694 | | 1.00 | 15.73 |
| 6/17 | | Deposit | 80.00 | | 95.73 |
| 6/19 | | Deposit Made In A Branch/Store | 30.00 | | |
| 6/19 | | Reliant Energy 0121D 000003190808 Candelaria Losoya | | 82.00 | |
| 6/19 | | Save As You Go Transfer Debit to Xxxxxxxxxxx4694 | | 1.00 | 42.73 |
| 6/20 | | Sprint8006396111 Achbillpay 130618 xxxxx2057 Maria C. Losoya | | 28.43 | |
| 6/20 | | Save As You Go Transfer Debit to Xxxxxxxxxxx4694 | | 1.00 | 13.30 |
| 6/27 | | POS Purchase - 06/27 Mach ID 000000 Stripes 2164 Brownsville TX 02030038317862984701 9 ?McC=5542 | | 10.00 | |
| 6/27 | | Save As You Go Transfer Debit to Xxxxxxxxxxx4694 | | 1.00 | 2.30 |
| 6/28 | | Deposit Made In A Branch/Store | 100.00 | | 102.30 |
| 7/8 | | Deposit Made In A Branch/Store | 140.00 | | |
| 7/8 | | Recur Debit Crd Pmt07/05 Freedom Fitness 956-5447867 TX 486830xxxxxx0203 483186409747866 ?McC=7997 | | 21.70 | |
| 7/8 | | Chase Epay 130706 1596421685 597351742930397 | | 100.00 | |
| 7/8 | | Save As You Go Transfer Debit to Xxxxxxxxxxx4694 | | 2.00 | 118.60 |
| 7/9 | | Monthly Service Fee | | 12.00 · | 106.60 |
| Ending balance on 7/9 | | | | | 106.60 |
| **Totals** | | | **$400.00** | **$682.13** | |

*The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted. If you had insufficient available funds when a transaction posted, fees may have been assessed.*

## Monthly service fee summary

For a complete list of fees and detailed account information, please see the Wells Fargo Fee and Information Schedule and Account Agreement applicable to your account or talk to a banker. Go to wellsfargo.com/feefaq to find answers to common questions about the monthly service fee on your account.

| | | |
|---|---|---|
| Fee period 06/11/2013 - 07/09/2013 | Standard monthly service fee $12.00 | You paid $12.00 |

Primary account number:   ⬛ July 10, 2013 - August 8, 2013   ⬛ Page 2 of 5



# Wells Fargo Way2Save® Checking

## Activity summary

| | |
|---|---|
| Beginning balance on 7/10 | $100.60 |
| Deposits/Additions | 885.00 |
| Withdrawals/Subtractions | - 968.68 |
| **Ending balance on 8/8** | **$22.91** |

Account number:

MARIA CANDELARIA LOSOYA

*Texas/Arkansas account terms and conditions apply*

For Direct Deposit and Automatic Payments use
Routing Number (RTN): 111900659

### Overdraft Protection

Your account is linked to the following for Overdraft Protection:
- Savings

## Transaction history

| Date | Check Number | Description | Deposits/ Additions | Withdrawals/ Subtractions | Ending daily balance |
|---|---|---|---|---|---|
| 7/15 | | Deposit Made In A Branch/Store | 320.00 | | |
| 7/15 | | Barclaycard US Creditcard xxxxx4274 Candy Losoya | | 30.00 | |
| 7/15 | | Capital One Phone Pymt 319439879036941 2467179137Losoya Candy | | 20.00 | |
| 7/15 | | Overdraft Protection From 5360554694 | 37.50 | | |
| 7/15 | | Overdraft Transfer Fee | | 12.50 | 401.60 |
| 7/16 | | Deposit Made In A Branch/Store | 100.00 | | |
| 7/16 | | Check Crd Purchase 07/15 People to People A 509-534-6200 WA 486830xxxxxx0203 163196671796810 ?McC=8299 | | 400.00 | |
| 7/16 | | Save As You Go Transfer Debit to Xxxxxxxxxxx4694 | | 1.00 | 100.60 |
| 7/17 | | Sprint8006396111 Achbillpay 130715 xxxxx2057 Maria C. Losoya | | 60.00 | |
| 7/17 | | Save As You Go Transfer Debit to Xxxxxxxxxxx4694 | | 1.00 | 39.60 |
| 7/19 | | Deposit Made In A Branch/Store | 140.00 | | 179.60 |
| 7/22 | | Reliant Energy 0121 D 000003190808 Candelaria Losoya | | 150.00 | |
| 7/22 | | Save As You Go Transfer Debit to Xxxxxxxxxxx4694 | | 1.00 | 28.60 |
| 7/24 | | Deposit Made In A Branch/Store | 50.00 | | 78.60 |
| 7/25 | | Sprint8006396111 Achbillpay 130723 xxxxx2057 Maria C. Losoya | | 51.99 | |
| 7/26 | | Save As You Go Transfer Debit to Xxxxxxxxxxx4694 | | 1.00 | 26.61 |
| 7/29 | | Deposit Made In A Branch/Store | 100.00 | | 125.61 |
| 7/30 | | POS Purchase - 07/30 Mach ID 000000 Stripes 2186 Brownsville TX 0203 00383211596993204 ?McC=5542 | | 11.00 | |
| 7/30 | ^ 177 | Sears Retail Purchase 130728 177 Brow, TX | | 100.00 | |
| 7/30 | | Save As You Go Transfer Debit to Xxxxxxxxxxx4694 | | 1.00 | 13.61 |
| 8/5 | | Overdraft Protection From 5360554694 | 37.50 | | |
| 8/5 | | Overdraft Transfer Fee | | 12.50 | 38.61 |
| 8/8 | | Recur Debit Crd Pmt08/05 Freedom Fitness 956-5447867 TX 486830xxxxxx0203 303217521565234 ?McC=7997 | | 21.70 | |
| 8/6 | | Save As You Go Transfer Debit to Xxxxxxxxxxx4694 | | 1.00 | 15.91 |
| 8/7 | | Deposit Made In A Branch/Store | 100.00 | | 115.91 |
| 8/8 | | Chase Epay 130807 1618554949 597351742930397 | | 80.00 | |
| 8/8 | | Save As You Go Transfer Debit to Xxxxxxxxxxx4694 | | 1.00 | |
| 8/8 | | Monthly Service Fee | | 12.00 | 22.91 |
| **Ending balance on 8/8** | | | | | **22.91** |
| **Totals** | | | **$885.00** | **$968.69** | |

*The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted. If you had insufficient available funds when a transaction posted, fees may have been assessed.*

*^ Converted check: Check converted to an electronic format by your payee or designated representative. Checks converted to electronic format cannot be returned, copied or imaged.*

Primary account number:  ■ August 9, 2013 - September 10, 2013  ■ Page 2 of 5



# Wells Fargo Way2Save® Checking

## Activity summary

| | |
|---|---|
| Beginning balance on 8/9 | $22.91 |
| Deposits/Additions | 1,080.00 |
| Withdrawals/Subtractions | - 856.67 |
| **Ending balance on 9/10** | **$246.24** |

Account number:

**MARIA CANDELARIA LOSOYA**

*Texas/Arkansas account terms and conditions apply*

For Direct Deposit and Automatic Payments use
Routing Number (RTN): 111900659

### Overdraft Protection

Your account is linked to the following for Overdraft Protection:

■ Savings -

## Transaction history

| Date | Check Number | Description | Deposits/ Additions | Withdrawals/ Subtractions | Ending daily balance |
|---|---|---|---|---|---|
| 8/13 | | Deposit Made In A Branch/Store | 60.00 | | |
| 8/13 | | Barclaycard US Creditcard xxxxx9982 Candy Losoya | | 50.00 | |
| 8/13 | | Save As You Go Transfer Debit to Xxxxxxxxxx4694 | | 1.00 | 31.91 |
| 8/14 | | Capital One Phone Pymt 322539879040861 2467179137Losoya Candy | | 20.00 | |
| 8/14 | | Save As You Go Transfer Debit to Xxxxxxxxxx4694 | | 1.00 | 10.91 |
| 8/19 | | Deposit Made In A Branch/Store | 400.00 | | |
| 8/19 | | Deposit Made In A Branch/Store | 100.00 | | |
| 8/19 | | Check Crd Purchase 08/17 People to People A 509-534-6200 WA 486830xxxxxx0203 163229583271140 7McC=8299 | | 300.00 | |
| 8/19 | | POS Purchase - 08/17 Mach ID 000000 Stripes 2186 Brownsville TX 0203 0030322981621140117401 7McC=5542 | | 10.00 | |
| 8/19 | | Save As You Go Transfer Debit to Xxxxxxxxxx4694 | | 2.00 | 198.91 |
| 8/21 | | Deposit Made In A Branch/Store | 50.00 | | |
| 8/21 | | Reliant Energy 0121D 000003190608 Candelaria Losoya | | 244.00 | |
| 8/21 | | Save As You Go Transfer Debit to Xxxxxxxxxx4694 | | 1.00 | 3.91 |
| 8/28 | | Deposit Made In A Branch/Store | 110.00 | | 113.91 |
| 8/29 | | Sprint806396111 Achbillpay 130827 xxxxx2057 Maria C. Losoya | | 79.97 | |
| 8/29 | | Save As You Go Transfer Debit to Xxxxxxxxxx4694 | | 1.00 | 32.94 |
| 9/5 | | Deposit Made In A Branch/Store | 300.00 | | 332.94 |
| 9/6 | | Deposit Made In A Branch/Store | 60.00 | | |
| 9/6 | | Recur Debit Crd Pmt09/05 Freedom Fitness 956-5447867 TX 486830xxxxxx0203 463248486366887 7McC=7997 | | 21.70 | |
| 9/6 | | Save As You Go Transfer Debit to Xxxxxxxxxx4694 | | 1.00 | 370.24 |
| 9/9 | | Chase Epay 130007 1639398014 597351742930397 | | 100.00 | |
| 9/9 | | Save As You Go Transfer Debit to Xxxxxxxxxx4694 | | 1.00 | 269.24 |
| 9/10 | | POS Purchase - 09/10 Mach ID 000000 Stripes 2186 Brownsville TX 0203 004632537 12068674 7McC=5542 | | 10.00 | |
| 9/10 | | Save As You Go Transfer Debit to Xxxxxxxxxx4694 | | 1.00 | |
| 9/10 | | Monthly Service Fee | | 12.00 | 248.24 |
| **Ending balance on 9/10** | | | | | 248.24 |
| **Totals** | | | **$1,080.00** | **$856.67** | |

*The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted. If you had insufficient available funds when a transaction posted, fees may have been assessed.*

Primary account number:   ■ September 11, 2013 - October 8, 2013   ■ Page 2 of 6   

# Wells Fargo Way2Save® Checking

## Activity summary

| | |
|---|---|
| Beginning balance on 9/11 | $246.24 |
| Deposits/Additions | 545.00 |
| Withdrawals/Subtractions | - 674.23 |
| Ending balance on 10/8 | $117.01 |

Account number:

MARIA CANDELARIA LOSOYA

*Texas/Arkansas account terms and conditions apply*

For Direct Deposit and Automatic Payments use
Routing Number (RTN): 111900659

## Overdraft Protection

Your account is linked to the following for Overdraft Protection:

■   Savings

## Transaction history

| Date | Check Number | Description | Deposits/ Additions | Withdrawals/ Subtractions | Ending daily balance |
|---|---|---|---|---|---|
| 9/13 | | Barclaycard US Creditcard xxxxx3128 Candy Losoya | | 50.00 | |
| 9/13 | | Save As You Go Transfer Debit to Xxxxxxxxxxx4694 | | 1.00 | 195.24 |
| 9/16 | | Deposit Made In A Branch/Store | 100.00 | | |
| 9/16 | | POS Purchase - 09/16 Mach ID 000000 Stripes 2166 Brownsville TX 0203 00463259697091014 ?McC=5542 | | 8.03 | |
| 9/16 | | Capital One Phone Pymt 325639879051102 2467179137Losoya Candy | | 20.00 | |
| 9/16 | | Save As You Go Transfer Debit to Xxxxxxxxxxx4694 | | 2.00 | 265.21 |
| 9/19 | | Deposit Made In A Branch/Store | 85.00 | | |
| 9/19 | | Reliant Energy 0121D 000003190808 Candelaria Losoya | | 150.00 | |
| 9/19 | | Save As You Go Transfer Debit to Xxxxxxxxxxx4694 | | 1.00 | 199.21 |
| 9/23 | | Deposit Made In A Branch/Store | 60.00 | | |
| 9/23 | | POS Purchase - 09/21 Mach ID 000000 Stripes 2166 Brownsville TX 0203 00303284576925058 ?McC=5542 | | 3.50 | |
| 9/23 | | Save As You Go Transfer Debit to Xxxxxxxxxxx4694 | | 1.00 | 254.71 |
| 9/24 | | Reliant Energy 0121D 000003190808 Candelaria Losoya | | 100.00 | |
| 9/24 | | Save As You Go Transfer Debit to Xxxxxxxxxxx4694 | | 1.00 | 153.71 |
| 9/30 | | Deposit Made In A Branch/Store | 50.00 | | 203.71 |
| 10/1 | | Check Crd Purchase 09/30 People to People A 509-534-6200 WA 486630xxxxxx0203 163273557193030 ?McC=8299 | | 200.00 | |
| 10/1 | | Save As You Go Transfer Debit to Xxxxxxxxxxx4694 | | 1.00 | 2.71 |
| 10/2 | | Deposit Made In A Branch/Store | 50.00 | | 52.71 |
| 10/7 | | Recur Debit Crd Pmt10/05 Freedom Fitness 956-5447867 TX 486630xxxxxx0203 583278498911607 ?McC=7997 | | 21.70 | |
| 10/7 | | Save As You Go Transfer Debit to Xxxxxxxxxxx4694 | | 1.00 | 30.01 |
| 10/8 | | Deposit Made In A Branch/Store | 200.00 | | |
| 10/8 | | Chase Epay 131007 1661261351 597351742930397 | | 100.00 | |
| 10/8 | | Save As You Go Transfer Debit to Xxxxxxxxxxx4694 | | 1.00 | |
| 10/8 | | Monthly Service Fee | | 12.00 | 117.01 |
| Ending balance on 10/8 | | | | | 117.01 |
| **Totals** | | | **$545.00** | **$674.23** | |

*The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted. If you had insufficient available funds when a transaction posted, fees may have been assessed.*

## Monthly service fee summary

For a complete list of fees and detailed account information, please see the Wells Fargo Fee and Information Schedule and Account Agreement applicable to your account or talk to a banker. Go to wellsfargo.com/feefaq to find answers to common questions about the monthly service fee on your account.

2:17cr390-003852

Primary account number:  ■ October 9, 2013 - November 8, 2013  ■ Page 2 of 7



# Summary of accounts

## Checking/Prepaid and Savings

| Account | Page | Account number | Ending balance last statement | Ending balance this statement |
|---|---|---|---|---|
| Wells Fargo Way2Save® Checking | 2 | 2045309297 | 117.01 | 18.31 |
| Wells Fargo Way2Save® Savings | 4 | 5360554694 | 22.50 | 30.50 |
| | Total deposit accounts | | $139.51 | $48.81 |

# Wells Fargo Way2Save® Checking

### Activity summary

| | |
|---|---|
| Beginning balance on 10/9 | $117.01 |
| Deposits/Additions | 760.00 |
| Withdrawals/Subtractions | - 858.70 |
| Ending balance on 11/8 | $18.31 |

Account number:

**MARIA CANDELARIA LOSOYA**

*Texas/Arkansas account terms and conditions apply*

For Direct Deposit and Automatic Payments use
Routing Number (RTN): 111900659

**Overdraft Protection**

Your account is linked to the following for Overdraft Protection:
■ Savings

## Transaction history

| Date | Check Number | Description | Deposits/ Additions | Withdrawals/ Subtractions | Ending daily balance |
|---|---|---|---|---|---|
| 10/15 | | Barclaycard US Creditcard xxxxx0395 Candy Losoya | | 60.00 | |
| 10/15 | | Capital One Phone Pymt 326739879021413 2467179137Losoya Candy | | 30.00 | |
| 10/15 | | Save As You Go Transfer Debit to Xxxxxxxxxxx4694 | | 2.00 | 25.01 |
| 10/17 | | Deposit Made In A Branch/Store | 100.00 | | |
| 10/17 | | POS Purchase - 10/17 Mach ID 000000 Heb Gas #489 Brownsville TX 0203 00000000345997361 ?McC=5542 | | 10.00 | |
| 10/17 | | Sprint8006396111 Achbillpay 131015 xxxxx2057 Maria C. Losoya | | 53.00 | |
| 10/17 | | Save As You Go Transfer Debit to Xxxxxxxxxxx4694 | | 2.00 | 60.01 |
| 10/22 | | Deposit Made In A Branch/Store | 80.00 | | |
| 10/22 | | Reliant Energy 0121D 000003190808 Candelaria Losoya | | 124.00 | |
| 10/22 | | Save As You Go Transfer Debit to Xxxxxxxxxxx4694 | | 1.00 | 15.01 |
| 10/29 | | Deposit Made In A Branch/Store | 160.00 | | 175.01 |
| 10/30 | | Deposit Made In A Branch/Store | 300.00 | | |
| 10/30 | ^ 162 | Sears Retail Purchase 131028 162 Brow, TX | | 140.00 | 335.01 |
| 11/1 | | Check Crd Purchase 10/31 People to People A 509-534-6200 WA 486830xxxxxx0203 163304742550720 ?McC=6299 | | 300.00 | |
| 11/1 | | Save As You Go Transfer Debit to Xxxxxxxxxxx4694 | | 1.00 | 34.01 |
| 11/6 | | Recur Debit Crd Pmt11/05 Freedom Fitness 956-5447887 TX 486830xxxxxx0203 303309557069179 ?McC=7997 | | 21.70 | |
| 11/6 | | Save As You Go Transfer Debit to Xxxxxxxxxxx4694 | | 1.00 | 11.31 |
| 11/8 | | Deposit Made In A Branch/Store | 120.00 | | |
| 11/8 | | Chase Epay 131107 1682938592 597351742930397 | | 100.00 | |

Primary account number: • ■ January 10, 2014 - February 10, 2014  ■ Page 2 of 7



## Summary of accounts

### Checking/Prepaid and Savings

| Account | Page | Account number | Ending balance last statement | Ending balance this statement |
|---|---|---|---|---|
| Wells Fargo Way2Save® Checking | 2 | 2045309297 | 786.67 | 3,983.69 |
| Wells Fargo Way2Save® Savings | 5 | 5380554694 | 7.00 | 17.00 |
| | Total deposit accounts | | $793.67 | $4,000.69 |

## Wells Fargo Way2Save® Checking

### Activity summary

| | |
|---|---|
| Beginning balance on 1/10 | $786.67 |
| Deposits/Additions | 4,282.00 |
| Withdrawals/Subtractions | - 1,084.98 |
| Ending balance on 2/10 | $3,983.69 |

Account number:

**MARIA CANDELARIA LOSOYA**

Texas/Arkansas account terms and conditions apply

For Direct Deposit use
Routing Number (RTN): 111900659

### Overdraft Protection

Your account is linked to the following for Overdraft Protection:
■ Savings ·

## Transaction history

| Date | Check Number | Description | Deposits/ Additions | Withdrawals/ Subtractions | Ending daily balance |
|---|---|---|---|---|---|
| 1/13 | | Check Crd Purchase 01/12 People to People A 800-534-6200 WA 486830xxxxxx0203 084012731704146 ?McC=8299 | | 300.00 | |
| 1/13 | | Barclaycard US Creditcard xxxxx7409 Candy Losoya | | 50.00 | |
| 1/13 | | Save As You Go Transfer Debit to Xxxxxxxxxx4694 | | 2.00 | 434.67 |
| 1/16 | | POS Purchase - 01/16 Mach ID 000000 Stripes 2186 Brownsville TX 0203 00304016692616747 ?McC=5542 | | 11.01 | |
| 1/16 | | Save As You Go Transfer Debit to Xxxxxxxxxx4694 | | 1.00 | 422.66 |
| 1/17 | | Reliant Energy 0121D 000003190808 Candelaria Losoya | | 140.00 | |
| 1/17 | | Save As You Go Transfer Debit to Xxxxxxxxxx4694 | | 1.00 | 281.66 |
| 1/22 | | Deposit Made In A Branch/Store | 100.00 | | |
| 1/22 | | Reliant Energy 0121D 000003190808 Candelaria Losoya | | 138.26 | |
| 1/22 | | Save As You Go Transfer Debit to Xxxxxxxxxx4694 | | 1.00 | 242.40 |
| 1/23 | | Deposit Made In A Branch/Store | 100.00 | | |
| 1/23 | | POS Purchase - 01/23 Mach ID 000000 Stripes 2186 Brownsville TX 0203 00304023639879272 ?McC=5542 | | 20.00 | |
| 1/23 | | Save As You Go Transfer Debit to Xxxxxxxxxx4694 | | 1.00 | 321.40 |
| 1/27 | | POS Purchase - 01/25 Mach ID 000000 Stripes 2186 Brownsville TX 0203 00584025796539494 ?McC=5542 | | 10.01 | |
| 1/27 | | Save As You Go Transfer Debit to Xxxxxxxxxx4694 | | 1.00 | 310.39 |
| 1/29 | | Discover E-Payment 140128 3968 Losoya Ricardo | 260.00 | | |
| 1/29 | | Save As You Go Transfer Debit to Xxxxxxxxxx4694 | | 1.00 | 49.39 |
| 2/4 | | POS Purchase - 02/04 Mach ID 000000 Stripes 2186 Brownsville TX 0203 00304035584793562 ?McC=5542 | | 11.00 | |
| 2/4 | | Save As You Go Transfer Debit to Xxxxxxxxxx4694 | | 1.00 | 37.39 |

2:17cr390-003876

Primary account number:   ~~~~~~~   ■ February 11, 2014 – March 10, 2014   ■ Page 3 of 7



## Transaction history

| Date | Check Number | Description | Deposits/ Additions | Withdrawals/ Subtractions | Ending daily balance |
|------|------|-------------|------|------|------|
| 2/11 | 164 | Cashed Check | | 2,000.00 | 1,963.69 |
| 2/13 | | Barclaycard US Creditcard xxxxx3029 Candy Losoya | | 50.00 | |
| 2/13 | | Save As You Go Transfer Debit to Xxxxxxxxxxxx4694 | | 1.00 | 1,932.69 |
| 2/14 | | POS Purchase - 02/14 Mach ID 000000 Stripes 2164 Brownsville TX 0203 0058404575892704B ?McC=5542 | | 20.15 | |
| 2/14 | | Save As You Go Transfer Debit to Xxxxxxxxxxxx4694 | | 1.00 | 1,911.54 |
| 2/18 | | POS Purchase - 02/15 Mach ID 000000 Stripes 9117 Port Isabel TX 0203 0038404718941295 ?McC=5542 | | 12.05 | |
| 2/18 | | Check Crd Purchase 02/17 People to People A 509-534-6200 WA 486630xxxxxx0203 384048676163019 ?McC=8299 | | 200.00 | |
| 2/18 | | Save As You Go Transfer Debit to Xxxxxxxxxxxx4694 | | 2.00 | 1,697.49 |
| 2/19 | | POS Purchase - 02/19 Mach ID 000000 Stripes 2166 Brownsville TX 0203 0038405083036250B ?McC=5542 | | 10.00 | |
| 2/19 | | ATM Withdrawal - 02/19 Mach ID 6824F 1175 Fm 802 Brownsville TX 0203 0005831 | | 300.00 | |
| 2/19 | | Reliant Energy 0121D 000003190808 Candelaria Losoya | | 150.00 | |
| 2/19 | | Save As You Go Transfer Debit to Xxxxxxxxxxxx4694 | | 2.00 | 1,235.49 |
| 2/21 | | POS Purchase - 02/21 Mach ID 000000 Dillards 0729 Browns Brownsville TX 0203 0030405284940252557 ?McC=5311 | | 29.22 | |
| 2/21 | | POS Purchase - 02/21 Mach ID 000000 American Eagle Brownsville TX 0203 00000000004068291 ?McC=5691 | | 48.66 | |
| 2/21 | | Save As You Go Transfer Debit to Xxxxxxxxxxxx4694 | | 2.00 | 1,155.61 |
| 2/24 | | POS Purchase - 02/22 Mach ID 000000 00115 Rio Grande Fac Mercedes TX 0203 00000000546454237 ?McC=5655 | | 259.75 | |
| 2/24 | | Save As You Go Transfer Debit to Xxxxxxxxxxxx4694 | | 1.00 | 894.86 |
| 2/25 | | Reliant Energy 0121D 000003190808 Candelaria Losoya | | 150.00 | |
| 2/26 | | Save As You Go Transfer Debit to Xxxxxxxxxxxx4694 | | 1.00 | 743.86 |
| 2/26 | | POS Purchase - 02/26 Mach ID 000000 Heb 446 Brownsville TX 0203 00000000050178892 ?McC=5411 | | 30.30 | |
| 2/26 | | Save As You Go Transfer Debit to Xxxxxxxxxxxx4694 | | 1.00 | 712.56 |
| 2/28 | | Check Crd Purchase 02/27 Constentino Hairdr Brownsville TX 486630xxxxxx0203 284059011655252 ?McC=7230 | | 70.00 | |
| 2/28 | | Save As You Go Transfer Debit to Xxxxxxxxxxxx4694 | | 1.00 | 641.56 |
| 3/3 | | Discover E-Payment 140228 3968 Losoya Ricardo | | 257.00 | |
| 3/3 | | Save As You Go Transfer Debit to Xxxxxxxxxxxx4694 | | 1.00 | 383.56 |
| 3/6 | | Recur Debit Crd Pmt03/05 Freedom Fitness 856-5447867 TX 486630xxxxxx0203 384084559892395 ?McC=7997 111900659DA | | 21.70 | |
| 3/6 | | Save As You Go Transfer Debit to Xxxxxxxxxxxx4694 | | 1.00 | 360.86 |
| 3/10 | | Chase Epay 140307 1702609624 597351742930397 | | 100.00 | |
| 3/10 | | Save As You Go Transfer Debit to Xxxxxxxxxxxx4694 | | 1.00 | 259.86 |
| Ending balance on 3/10 | | | | | 259.86 |
| **Totals** | | | **$0.00** | **$3,723.63** | |

*The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted. If you had insufficient available funds when a transaction posted, fees may have been assessed.*

## Summary of checks written   (checks listed are also displayed in the preceding Transaction history)

| Number | Date | Amount |
|--------|------|--------|
| 164 | 2/11 | 2,000.00 |

## Monthly service fee summary

For a complete list of fees and detailed account information, please see the Wells Fargo Fee and Information Schedule and Account Agreement applicable to your account or talk to a banker. Go to wellsfargo.com/feefaq to find answers to common questions about the monthly service fee on your account.

2:17cr390-003884

# EXHIBIT 121



# Always at your service …

At Capital One®, we're here for you day or night. No holding on the phone. No waiting in line. Simply choose a service …

- **Capital One text messaging**—enroll and get the latest on your account
- **Card replacement**—when it's damaged or not working
- **Travel notification**—the easy way to let us know when you go
- **Pay your bill online**—save a stamp, save a check, save the hassle

Log into **www.capitalone.com** to take advantage of these and other on-the-go services.

500602



| | Page 1 of 2 |
| --- | --- |
| | Customer Service 1-800-903-3637 |
| | www.capitalone.com |

Nov. 27 - Dec. 26, 2013   30 Days in Billing Cycle

**Visa Platinum**   Account ending in 3699

| NEW BALANCE | MINIMUM PAYMENT | DUE DATE |
| --- | --- | --- |
| $1,032.85 | $25.00 | Jan 23, 2014 |

PLEASE PAY AT LEAST THIS AMOUNT

Credit Limit: $3,550.00   Cash Advance Credit Limit: $3,550.00
Available Credit: $2,517.15   Available Credit for Cash Advances: $2,517.15

**MINIMUM PAYMENT WARNING:** If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance. For example:

| Payment Amount Each Period If No Additional Charges Are Made | Approximate Time to Pay Off Statement Balance | Estimated Total Cost |
| --- | --- | --- |
| Minimum Payment | 5 Years | $1,296 |
| $33 | 3 Years | $1,176 |

Your estimated savings if you pay off this balance in 3 years: $120

If you would like information about credit counseling services, call 1-888-326-8055.

**LATE PAYMENT WARNING:** If we do not receive your minimum payment by your due date, you may have to pay a late fee of up to $35.00 and your APRs may be increased up to the Penalty APR of 23.15%.

| Previous Balance | | Payments and Credits | | Fees and Interest Charged | | Transactions | | New Balance |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| $2,196.69 | − | $7,296.58 | + | $6.72 | + | $6,126.02 | = | $1,032.85 |

**TRANSACTIONS**

**PAYMENTS, CREDITS & ADJUSTMENTS FOR DAVID K WILLS #3699**

| 1 | 27 NOV CAPITAL ONE ONLINE PYMTAuthDate 27-NOV | ($755.00) |
| --- | --- | --- |
| 2 | 30 NOV CAPITAL ONE ONLINE PYMTAuthDate 30-NOV | ($477.00) |
| 3 | 03 DEC CAPITAL ONE ONLINE PYMTAuthDate 02-DEC | ($1,105.00) |
| 4 | 05 DEC CAPITAL ONE ONLINE PYMTAuthDate 05-DEC | ($513.58) |
| 5 | 08 DEC CAPITAL ONE ONLINE PYMTAuthDate 07-DEC | ($621.00) |
| 6 | 09 DEC CAPITAL ONE ONLINE PYMTAuthDate 09-DEC | ($725.00) |
| 7 | 12 DEC CAPITAL ONE ONLINE PYMTAuthDate 12-DEC | ($1,050.00) |
| 8 | 17 DEC CAPITAL ONE ONLINE PYMTAuthDate 16-DEC | ($1,000.00) |
| 9 | 23 DEC CAPITAL ONE ONLINE PYMTAuthDate 23-DEC | ($1,050.00) |

**TRANSACTIONS FOR DAVID K WILLS #3699**

| 1 | 25 NOV DARNESTOWN LIBERTY, LLGAITHERSBURGMD | $69.82 |
| --- | --- | --- |
| 2 | 26 NOV NATIONAL AIRPORT GRILLWASHINGTONDC | $20.86 |
| 3 | 27 NOV Amazon Services-Kindle866-216-1072WA | $14.74 |
| 4 | 27 NOV Amazon Services-Kindle866-216-1072WA | $10.91 |
| 5 | 27 NOV JDS COVE HARBOR CROCKPORTTX | $16.75 |
| 6 | 29 NOV Amazon Services-Kindle866-216-1072WA | $2.99 |
| 7 | 29 NOV Amazon Services-Kindle866-216-1072WA | $0.99 |
| 8 | 30 NOV Amazon Services-Kindle866-216-1072WA | $2.99 |

Transactions continue on page 2

 **+ MORE**

Credit cards are only part of the equation.

Learn about all the ways we can serve your needs at **capitalone.com**

300010

**INTEREST CHARGE CALCULATION**

Your Annual Percentage Rate (APR) is the annual interest rate on your account.

| Type of Balance | Annual Percentage Rate (APR) | Balance Subject to Interest Rate | Interest Charge |
| --- | --- | --- | --- |
| Purchases | 8.65% P | $242.17 | $1.72 |
| Cash Advances | 13.55% P | $0.00 | $0.00 |

P,L,D,F = Variable Rate. See reverse of page 1 for details

PLEASE RETURN PORTION BELOW WITH PAYMENT OR LOG ON TO WWW.CAPITALONE.COM TO MAKE YOUR PAYMENT ONLINE.

1 4388649134643699 26 1032851050000025006



Account ending in 3699

| Due Date | New Balance | Minimum Payment | Amount Enclosed |
| --- | --- | --- | --- |
| Jan 23, 2014 | $1,032.85 | $25.00 | . |

PLEASE PAY AT LEAST THIS AMOUNT

**ORGANIZATION MADE EASY.**

Forget the filing. Manage your account online and simplify your life.

Sign up at www.capitalone.com

400011



GOVERNMENT EXHIBIT

121

17cr390

PENGAD 800-631-6989

DAVID K WILLS
501 LAKEWOOD ST
ROCKPORT, TX 78382-6958

Capital One Bank (USA), N.A.
P.O. Box 60599
City of Industry, CA 91716-0599

Please make checks payable to Capital One Bank (USA), N.A. and mail with this coupon in the enclosed envelope.

001
26

**How can I Avoid Paying Interest Charges?** Each month you pay your "New Balance" in full, you will have a minimum grace period of 25 days with no interest charge on all new: 1) purchases, 2) balance transfers, 3) special purchases and 4) other charges. If you have been paying your account in full with no interest charges applied and you do not pay your next bill in full, prorated interest charges will be assessed. There is no grace period on cash advances, special transfers, or on any new transaction where there is an unpaid balance from a previous bill.

**How is the Interest Charge applied?** Interest charges accrue from the 1) date of the transaction, 2) date the transaction is processed or 3) first calendar day of the billing period. Interest charges accrue on every unpaid amount until it is paid in full. This means you may owe interest charges even if you pay the entire "New Balance" one month, but did not do so for the previous month. Unpaid interest charges are added to the proper segment of your Account. However, we reserve the right to not assess interest charges at any time.

**Do you assess a Minimum Interest Charge?** Yes. A minimum INTEREST CHARGE of $0.50 will be assessed for each billing period your account is subject to an interest charge.

**How do you Calculate the Interest Charge?** We use a method called Average Daily Balance (including new transactions). Under this method, we first calculate your daily balance, for each segment, 1) take the beginning balance and add in new transactions and the periodic interest charge on the previous day's balance, then 2) subtract any payments and credits for that segment as of that day. The result is the daily balance for each segment. However, if you paid your previous month's balance in full (or if your balance was zero or a credit amount), new transactions which post to your purchase or special purchase segments are not added to the daily balances. Also, transactions that are subject to a grace period are not added to the daily balances.

Next, to find your Average Daily Balance: 1) add the daily balances together for each segment, and 2) divide the sum by the number of days in the billing cycle.

At the end of each billing cycle, we determine your Interest Charge as follows: 1) multiply your Average Daily Balance by the daily periodic rate (APR divided by 365) for that segment, and 2) multiply the result by the number of days in the billing period. NOTE: Due to rounding or a minimum interest charge, this calculation may vary from the interest charge actually assessed.

**How can my Variable Account Percentage Rate (APR) change?** Your APR may increase or decrease based on one of the following reported Indexes (reported in The Wall Street Journal). To find which index is used for your account, look for a letter code on the front of this statement next to your APR(s). Then check the table below:

| Code next to your APR(s) | How do we calculate your APR(s)? Index + margin (previously disclosed to you) | When your APR(s) will change |
|---|---|---|
| P | Prime Rate + margin 3 month LIBOR + margin | The first day of the billing periods that end in Jan., April, July, and Oct. |
| D | Prime Rate + margin 1 month LIBOR + margin | The last day of each monthly billing period. |

**Are there Additional Fees** associated with my account? Yes, under certain circumstances, you may be assessed a Late or Returned Payment fee. You may also be assessed Overlimit fees if permitted by law. We reserve the right to not assess fees without prior notice and without waiving our right to assess a similar fee later.

**How can I Avoid Membership Fees?** If a Renewal Notice is printed on the front of this statement, you may avoid paying an annual membership fee by contacting Customer Service no more than 45 days after the last day in the billing cycle covered by this statement that we close your account. To avoid paying a monthly membership fee, contact Customer Service anytime to request that we close your account, and we will stop assessing your monthly membership fee.

**How can I Close My Account?** You can contact Customer Service anytime to request that we close your account. At that time, we'll explain any additional steps to account closure, including balance pay down information and timelines. Please note that if you use your credit card or charges post to your account after you ask us to close it, we can keep your account open.

**What happens if my Account is Suspended?** We may close or suspend your account and your right to obtain credit at any time and for any reason, even if you are not in default. Account suspension can be permanent or temporary. If your account is closed or suspended you must 1) stop using your credit card and account, 2) cancel all automatic payments, 3) destroy all credit cards and access checks, and 4) pay all amounts you owe us, even if they were charged after the account was closed or suspended.

**How do I Make Payments?** At any time, you may pay the minimum payment, the total unpaid balance, or any amount in between. Payments may be made in several ways:
1) Online by going to www.capitalone.com and logging into your account;
2) Telephone Voice Response System by dialing 1-800-955-7070 and following the voice prompts. When you make a phone payment through our voice response system, you authorize us to initiate an ACH or electronic payment that will be debited from your bank account. Funds may be withdrawn from your bank account as soon as the same day we process your payment;
3) Calling our telephone number 1-800-955-7070 and providing your information to our representative;
4) Payments by mail should be sent to the mailing address provided on the bottom portion of this statement.

**When will you Credit My Payment?**
- For online or over the phone, as of the business day we receive it, as long as they are made by 5 p.m. ET.
- For mailed payments, as of the business day we receive it, as long as: 1) you send the bottom portion of this statement and your check in the enclosed remittance envelope, and 2) your payment is received in one of our processing centers by 5 p.m. local time. Please allow at least (7) business days for mail delivery. Mailed payments received by us at any other location or in any other form may not be credited as of the day we receive them.

**Do you Process Prepay Checks as an Electronic Funds Transfer?** Payments will be processed in one of two ways: When you provide a check or check information to make a payment, you authorize us or our agents to use the information to make a one-time ACH transaction or other electronic fund transfer from your deposit account. We may also use the information to process the payment as a check transaction.

**What if I file for Bankruptcy?** If you are subject to bankruptcy protection, this communication is for information only; it is not an attempt to collect, assess or recover a debt or claim. Do not send us payments without speaking with your bankruptcy attorney or the Bankruptcy Court. If you or your attorney would like to contact our bankruptcy claims services directly, please contact: Capital One • PO Box 30285 • Salt Lake City, UT 84130-0285

**BILLING RIGHTS SUMMARY (Does Not Apply to Small Business Accounts)**
**What To Do If You Think You Find A Mistake On Your Statement:** If you think there is an error on your statement write to us at:

Capital One
P.O. Box 30285
Salt Lake City, UT 84130-0285

In your letter, give us the following information:
- Account information: Your name and account number.
- Dollar amount: The dollar amount of the suspected error.
- Description of Problem: If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

You must contact us within 60 days after the error appeared on your statement.

You must notify us of any potential errors in writing. You may call us or notify us electronically, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question. We will notify you in writing within 30 days of our receipt of your letter.

While we investigate whether or not there has been an error, the following are true:
- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount.
- While you do not have to pay the amount in question until we send you a notice about the outcome of our investigation, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit line.

Within 90 days of our receipt of your letter, we will send you a written notice explaining either that we corrected the error (to appear on your next statement) or the reasons we believe the bill is correct.

**Your Rights If You Are Dissatisfied With Your Credit Card Purchases.** If you are dissatisfied with the goods or services that you have purchased with your credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the purchase. To use this right, the following must be true:
1) You must have used your credit card for the purchase. Purchases made with cash advances from an ATM or with a check that accesses your credit card account do not qualify; and
2) You must not yet have fully paid for the purchase.

If all of the criteria above are met and you are still dissatisfied with the purchase, contact us in writing at:

Capital One
P.O. Box 30285
Salt Lake City, UT 84130-0285

While we investigate, the same rules apply to the disputed amount as discussed above. After we finish our investigation, we will tell you our decision. At that point, if we think you owe an amount and you do not pay we may report you as delinquent.

Capital One supports information privacy protection: see our website at www.capitalone.com.
© 2011 Capital One. Capital One is a federally registered service mark. All rights reserved.

ETC-08
11/2011

---

**Changing Address?**

Address ...........................................................

Home Phone ...................................................

Alternate Phone .............................................
E-mail
Address ...........................................................

Please print address or phone number above using blue or black ink.

**Not quite ready to make payments online?**

No problem. Follow these simple steps to make sure we process your payment smoothly:



- Don't staple or paper clip your check to the payment slip
- Be sure to use the payment envelope that came with your statement. Using a different envelope could delay processing.



- Please don't include any additional correspondence.
- Last but not least, be sure to write the last four digits of your account number on your check.



## Take Control with Online Statements

**Managing your account online is easy:**

- Check your balance and view recent activity
- View and print copies of past statements
- Pay your bill online

Sign up at: www.capitalone.com

Capital One



| | | Page 2 of 2 | | |
|---|---|---|---|---|
| Capital One | Customer Service 1-800-903-3637 www.capitalone.com | | Nov. 27 – Dec. 26, 2013    30 Days in Billing Cycle | |

| Visa Platinum | | Account ending in 3699 | Credit Limit: | $3,550.00 |
|---|---|---|---|---|
| NEW BALANCE | MINIMUM PAYMENT | DUE DATE | Available Credit: | $2,517.15 |
| | | | Cash Advance Credit Limit: | $3,550.00 |
| $1,032.85 | $25.00 | Jan 23, 2014 | Available Credit for Cash Advances: | $2,517.15 |

| Previous Balance | | Payments and Credits | | Fees and Interest Charged | | Transactions | | New Balance |
|---|---|---|---|---|---|---|---|---|
| $2,196.69 | – | $7,296.58 | + | $6.72 | + | $6,126.02 | = | $1,032.85 |

### TRANSACTIONS CONTINUED

**TRANSACTIONS FOR DAVID K WILLS #3699 (CONTINUED)**

| | | | |
|---|---|---|---|
| 9 | 30 NOV | Amazon Services-Kindle866-216-1072WA | $10.65 |
| 10 | 01 DEC | WALGREENS #9205ROCKPORTTX | $254.95 |
| 11 | 01 DEC | CITY OF ROCKPORT TAX316-729-2213TX | $105.85 |
| 12 | 01 DEC | CITY ROCKPORT CONV FEE800-487-4567CA | $4.95 |
| 13 | 02 DEC | Amazon.comAMZN.COM/BILLWA | $137.44 |
| 14 | 04 DEC | THE ORVIS COMPANY INC800-635-7635VA | $75.97 |
| 15 | 04 DEC | CAPITAL GRILLE000805490RLANDOFL | $582.98 |
| 16 | 05 DEC | BASS PRO SHOPSORLANDOFL | $108.66 |
| 17 | 07 DEC | RELIANT ENERGY866-222-7100TX | $280.81 |
| 18 | 08 DEC | COMCAST OF MONTGOMERY800-COMCASTMD | $225.76 |
| 19 | 09 DEC | STARBUCKS CARD RELOAD800-782-7282WA | $25.00 |
| 20 | 09 DEC | WALGREENS #9205ROCKPORTTX | $1,514.85 |
| 21 | 11 DEC | CHILIS PORTLANDPORTLANDTX | $23.46 |
| 22 | 12 DEC | TWC*TIME WARNER CABLE888-TWCABLETX | $247.94 |
| 23 | 12 DEC | Amazon.comAMZN.COM/BILLWA | $30.99 |
| 24 | 12 DEC | DRS MCINTYRE AND GARZACORPUS CHRISTTX | $30.00 |
| 25 | 12 DEC | WALGREENS #9205ROCKPORTTX | $18.92 |
| 26 | 12 DEC | LensCrafters 10001428CORPUS CHRISTTX | $312.00 |
| 27 | 14 DEC | THE ORVIS COMPANY INC800-635-7635VA | $336.72 |
| 28 | 15 DEC | CHOPHOUSE MIAMI 305MIAMIFL | $326.57 |
| 29 | 16 DEC | JK TILE CO.,INC.CORPUS CHRISTTX | $847.87 |
| 30 | 17 DEC | NEW TOKYO JAPANESE CUISINGAITHERSBURGMD | $90.20 |
| 31 | 17 DEC | MCG DLC 21232 POTOMACPOTOMACMD | $91.54 |
| 32 | 19 DEC | TRAVELERS MEDICAL SERVICWASHINGTONDC | $98.00 |
| 33 | 19 DEC | HARRIS TEETER #0375GERMANTOWNMD | $146.11 |
| 34 | 19 DEC | LUIGISWASHINGTONDC | $43.80 |
| 35 | 24 DEC | Amazon Services-Kindle866-216-1072WA | $6.99 |
| 36 | 24 DEC | Amazon Services-Kindle866-216-1072WA | $6.99 |

| | |
|---|---|
| Total for David K Wills #3699 | $6,126.00 |

▶ **Total Transactions This Period**    $6,126.02

**FEES**

| | | | |
|---|---|---|---|
| 1 | 26 DEC | CAPITAL ONE MONTHLY MEMBER FEE | $5.00 |
| | | Total Fees This Period | $5.00 |

**INTEREST CHARGED**

| | |
|---|---|
| INTEREST CHARGE:PURCHASES | $1.72 |
| Total Interest This Period | $1.72 |

**TOTALS YEAR TO DATE**

| | |
|---|---|
| Total Fees This Year | $60.00 |
| Total Interest This Year | $149.95 |

# EXHIBIT 122


**Bank of America**

P.O. Box 15284
Wilmington, DE 19850

**Customer service information**

📞 Customer service: 1.800.432.1000

TDD/TTY users only: 1.800.288.4408

En Español: 1.800.688.6086

🖥 bankofamerica.com

✉ Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

SARA J BAKER
JEREMIAH D BAKER
2180 DEMORY LN #36
ARANSAS PASS, TX  78336-4612

| |
|---|
| Please see the Account Changes section of your statement for details regarding important changes to your account. |

# Your BofA Core Checking

for April 9, 2015 to May 6, 2015

Account number: 4880 4748 9811

**SARA J BAKER    JEREMIAH D BAKER**

## Account summary

| | |
|---|---|
| Beginning balance on April 9, 2015 | $130.08 |
| Deposits and other additions | 9,517.89 |
| ATM and debit card subtractions | -4,280.07 |
| Other subtractions | -1,026.70 |
| Checks | -0.00 |
| Service fees | -0.00 |
| **Ending balance on May 6, 2015** | $4,341.20 |

# Choose Bank of America for your next auto loan

Whether you're buying or refinancing an automobile,
we'll help you make an informed decision. Plus, as a
Bank of America customer, you may qualify for a discount.

**Get a decision in minutes at bankofamerica.com/lowpayment.**

GOVERNMENT
EXHIBIT
122
17cr390

This is not a commitment to lend. Credit subject to approval. Your relationship with Bank of America may entitle you to rate discounts. These discounts are subject
to change. Any discounts will be reflected in the interest rate quoted upon loan approval.    AR384C7D    SSM-02-15-0063.B

# IMPORTANT INFORMATION:
## BANK DEPOSIT ACCOUNTS

Updating your contact information - We encourage you to keep your contact information up-to-date. This includes address, email and phone number. If your information has changed, the easiest way to update it is by visiting the Help & Support tab of Online Banking. Or, you can call our Customer Service team.

Deposit agreement - When you opened your account, you received a deposit agreement and fee schedule and agreed that your account would be governed by the terms of these documents, as we may amend them from time to time.  These documents are part of the contract for your deposit account and govern all transactions relating to your account, including all deposits and withdrawals.  Copies of both the deposit agreement and fee schedule which contain the current version of the terms and conditions of your account relationship may be obtained at our banking centers.

Electronic transfers: In case of errors or questions about your electronic transfers - If you think your statement or receipt is wrong or you need more information about an electronic transfer (e.g., ATM transactions, direct deposits or withdrawals, point-of-sale transactions) on the statement or receipt, telephone or write us at the address and number listed on the front of this statement as soon as you can.  We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

  – Tell us your name and account number.
  – Describe the error or transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
  – Tell us the dollar amount of the suspected error.

For consumer accounts used primarily for personal, family or household purposes, we will investigate your complaint and will correct any error promptly.  If we take more than 10 business days (10 calendar days if you are a Massachusetts customer) (20 business days if you are a new customer, for electronic transfers occurring during the first 30 days after the first deposit is made to your account) to do this, we will credit your account for the amount you think is in error, so that you will have use of the money during the time it will take to complete our investigation.

For other accounts, we investigate, and if we find we have made an error, we credit your account at the conclusion of our investigation.

Reporting other problems - You must examine your statement carefully and promptly.  You are in the best position to discover errors and unauthorized transactions on your account.  If you fail to notify us in writing of suspected problems or an unauthorized transaction within the time period specified in the deposit agreement (which periods are no more than 60 days after we make the statement available to you and in some cases are 30 days or less), we are not liable to you for, and you agree to not make a claim against us for the problems or unauthorized transactions.

Direct deposits - If you have arranged to have direct deposits made to your account at least once every 60 days from the same person or company, you may call us at the telephone number listed on the front of this statement to find out if the deposit was made as scheduled.  You may also review your activity online or visit a banking center for information.

© 2015 Bank of America Corporation

Bank of America, N.A. Member FDIC and    Equal Housing Lender

**Bank of America** 

**Your checking account**

SARA J BAKER   |   Account # 4880 4748 9811   |   April 9, 2015 to May 6, 2015

## Deposits and other additions

| Date | Description | Amount |
|------|-------------|--------|
| 04/17/15 | Online Banking transfer from SAV 9840 Confirmation# 4128579795 | 2,500.00 |
| 04/20/15 | BKOFAMERICA MOBILE 04/18 3347071945 DEPOSIT          *MOBILE          TX | 4,000.00 |
| 05/01/15 | Square Inc          DES:150501A2   ID:M1133735971  INDN:Sara J Baker          CO ID:9424300002 | 0.49 |
|  | PPD | |
| 05/04/15 | Square Inc          DES:150504N2   ID:L1316112909  INDN:Sara J Baker          CO ID:9424300002 | 3,017.40 |
|  | PPD | |
| **Total deposits and other additions** | | **$9,517.89** |

## Withdrawals and other subtractions

### ATM and debit card subtractions

| Date | Description | Amount |
|------|-------------|--------|
| 04/10/15 | CHECKCARD  0409 PIZZA HUT #23654 ROCKPORT     TX 55500805100207288500193 | -28.11 |
| 04/13/15 | CHECKCARD  0409 MCDONALD'S F17577 ROCKPORT     TX 05140485099720042008894 | -15.45 |
| 04/20/15 | CHECKCARD  0417 ATT AUTH RETAILER ROCKPORT     TX 55436875108731089818128 | -67.24 |
| 04/20/15 | CHECKCARD  0417 BEST BUY     000 CORPUS CHRISTTX 15410195107295740114176 | -1,285.93 |
| 04/20/15 | BKOFAMERICA ATM 04/19 #000007059 WITHDRWL ARANSAS PASS          ARANSAS PASS  TX | -200.00 |
| 04/22/15 | CHECKCARD  0420 PCC 9434 ROCKPORT     TX 05140485111120004043035 | -41.07 |
| 04/27/15 | CHECKCARD  0425 AT&T*BILL PAYMENT 08002882020 TX 55480775116002436221862 | -1,242.85 |
| 04/27/15 | CHECKCARD  0425 WAL-MART #0458 ARANSAS PASS TX 05416015115141000554658 | -8.66 |
| 04/27/15 | CHECKCARD  0425 ALLEGRO BAY RESTA ROCKPORT     TX 75428175116861100814542 | -133.08 |
| 04/27/15 | CHECKCARD  0426 BACKWOODS INGLESIDE     TX 55421355116985324810940 | -34.00 |
| 04/27/15 | CHECKCARD  0426 HOKKAIDO BUFFET INGLESIDE     TX 25247805116001807399275 | -28.75 |
| 04/27/15 | CHECKCARD  0426 WAL-MART #0458 ARANSAS PASS TX 05416015116141000492304 | -184.51 |
| 04/28/15 | CHECKCARD  0424 HAMPTONS LANDING ARANSAS PASS TX 75263595117852200091012 | -123.69 |

*continued on the next page*

## Take comfort in knowing you have Overdraft Protection

**Overdraft Protection** helps you avoid overdraft fees and declined transactions by automatically transferring money when it's needed from one of your eligible Bank of America® accounts to an eligible checking account.*

Visit bankofamerica.com/aboutodp.

*Overdraft Protection transfer fees may apply. Refer to your Personal Schedule of Fees at bankofamerica.com/feesataglance for details.
Bank of America, N.A. Member FDIC. ©2015 Bank of America Corporation          ARWK7LJJ          SSM-02-15-0060.A2

SARA J BAKER  |  Account # 4880 4748 9811  |  April 9, 2015 to May 6, 2015

## Withdrawals and other subtractions - continued

### ATM and debit card subtractions - continued

| Date | Description | Amount |
|------|-------------|-------:|
| 04/28/15 | CHECKCARD 0426 LOWES #02506* ARANSAS PASS TX 55432865117000331541571 | -116.52 |
| 04/29/15 | CHECKCARD 0428 MINIT MAN 10 MINI ROCKPORT      TX 25247805118001949008725 | -58.80 |
| 04/29/15 | CHECKCARD 0428 ARANSAS COUNTY MV ROCKPORT      TX 55420365119185186980124 | -66.00 |
| 04/29/15 | CHECKCARD 0428 OPAY ARANSAS COUN AUBURN      AL 55420365119185186980249 | -1.65 |
| 04/29/15 | CHECKCARD 0428 MCDONALD'S F17577 ROCKPORT      TX 05140485118720041677340 | -5.41 |
| 04/29/15 | CHECKCARD 0428 WAL-MART #0440 ROCKPORT      TX 55483825119091000035235 | -128.35 |
| 04/29/15 | CHECKCARD 0428 WM SUPERCENTER #4 ARANSAS PASS TX 05436845119400016866700 | -51.44 |
| 04/30/15 | CHECKCARD 0429 LOWES #02506* ARANSAS PASS TX 55432865120000730216952 | -4.30 |
| 05/01/15 | CHECKCARD 0429 TACO BELL #20344/ ROCKPORT      TX 55263525120206788100592 | -21.64 |
| 05/01/15 | BKOFAMERICA ATM 05/01 #000002363 WITHDRWL ARANSAS PASS      ARANSAS PASS TX | -100.00 |
| 05/04/15 | CHECKCARD 0502 WM SUPERCENTER #4 ROCKPORT      TX 05436845123400022605336 | -54.28 |
| 05/05/15 | CHECKCARD 0503 WAL-MART #0458 ARANSAS PASS TX 55483825124091007663198 | -176.91 |
| 05/05/15 | CHECKCARD 0503 CABLE ONE INC 1 877-6922253  AZ 55417345123271231609123 | -60.72 |
| 05/06/15 | CHECKCARD 0503 CORNER STORE 0427 ARANSAS PASS TX 05140485124120000095661 | -40.71 |
| **Total ATM and debit card subtractions** | | **-$4,280.07** |

### Other subtractions

| Date | Description | Amount |
|------|-------------|-------:|
| 05/01/15 | Automatic Transfer to SAV 9840 Confirmation# 31476 | -25.00 |
| 05/01/15 | Square Inc      DES:150501A2  ID:M1133729049 INDN:Sara J Baker      CO ID:9424300002 WEB | -0.49 |
| 05/05/15 | MARINE ONE      DES:ACHWEB PMT ID:0004549887 INDN:BAKER      CO ID:0752686951 WEB | -546.21 |
| 05/05/15 | WELLS FARGO DLR  DES:FEE & PMTS ID:7850211800  INDN:SARA,J,BAKER      CO ID:9330291646 WEB | -455.00 |
| **Total other subtractions** | | **-$1,026.70** |

☑  To help you BALANCE YOUR CHECKING ACCOUNT, visit bankofamerica.com/statementbalance or the Statements and Documents tab in Online Banking for a printable version of the How to Balance Your Account Worksheet.

## Account Changes

At Bank of America, we're committed to keeping you up-to-date on any changes that may impact your banking accounts.

**We want to keep you informed about important changes coming to your checking account starting July 6, 2015.**
Today when you use your debit card to pay for a purchase, the merchant asks us to authorize a transaction amount. We typically place a hold on your account for the transaction amount authorized, which reduces the available balance in your account. For some travel related transactions, holds are not placed because the merchant's request is an estimate. However, starting July 6, 2015, when you use your debit card to pay for a purchase, we will place a hold on your account for the full amount requested by the merchant, even if the amount requested is an estimate, and reduce your available balance by the amount requested.

If the request authorization appears to be an estimate, the transaction detail for your account in Online Banking may show, "Amount may change – waiting for final amount from merchant." If the final transaction amount ends up being different than the amount we authorized, your account balance will be adjusted when we receive the final transaction amount.

We're pleased to serve your financial needs. If you have any questions regarding this change, please call the number listed on this statement or visit bankofamerica.com/locator to find a banking center nearest you.

This page intentionally left blank

# EXHIBIT 123





| Date Presented | Sequence | State | Remitter Account Number | Remitter R/T Number |
|---|---|---|---|---|
| 6/6/2017 | 7152146950 | ZZ | 51070041 | 5200011 |

| Amount Presented | Check Number | Image Indicator | Sorry Indicator | Deposit Sequence |
|---|---|---|---|---|
| $12,500.00 | 0 | 1 | 0 | 7152146949 |

| Deposit Account | ImgVolNo |
|---|---|
| 446023912962 | 1 |

GOVERNMENT
EXHIBIT
123
17cr390

DAVID K WILLS
13329 QUERY MILL RD.
NORTH POTOMAC, MD 20878

2790

7-11
520 6530

Date 7/1/17

Pay to the order of SARA J BENZ                                $ 12,500 00

Twelve thousand five hundred                          Dollars

M&T Bank                                                 M&a Select

Memo #2 (loan)                              J. P. K. Wills

⑆052000113⑆    51070041⑈ 2790

| | | |
|---|---|---|
| **Date Presented** | **Sequence** | **State** |
| 7/10/2017 | 7352410761 | ZZ |

| **Remitter Account Number** | **Remitter R/T Number** |
|---|---|
| 51070041 | 5200011 |

| **Amount Presented** | **Check Number** | **Image Indicator** | **Sorry Indicator** | **Deposit Sequence** |
|---|---|---|---|---|
| $12,500.00 | 0 | 1 | 0 | 7352410760 |

| **Deposit Account** | **ImgVolNo** |
|---|---|
| 446023912962 | 1 |



DO NOT WRITE, STAMP, OR SIGN BELOW THIS LINE
CHECK HERE AFTER MOBILE OR REMOTE DEPOSIT

| Date Presented | Sequence | State | Remitter Account Number | Remitter R/T Number |
|---|---|---|---|---|
| 8/10/2017 | 7552539919 | ZZ | 51070041 | 5200011 |

| Amount Presented | Check Number | Image Indicator | Sorry Indicator | Deposit Sequence |
|---|---|---|---|---|
| $12,500.00 | 0 | 1 | 0 | 7552539918 |

| Deposit Account | ImgVolNo | | | |
|---|---|---|---|---|
| 446023912962 | 1 | | | |

Printed using ImageView Portable



| Date Presented | Sequence | State | Remitter Account Number | Remitter R/T Number |
|---|---|---|---|---|
| 9/11/2017 | 7652031606 | ZZ | 51070041 | 5200011 |

| Amount Presented | Check Number | Image Indicator | Sorry Indicator | Deposit Sequence |
|---|---|---|---|---|
| $12,500.00 | 0 | 1 | 0 | 7652031605 |

| Deposit Account | ImgVolNo |
|---|---|
| 446023912962 | 1 |

Printed using ImageView Portable



| Date Presented | Sequence | State | Remitter Account Number | Remitter R/T Number |
|---|---|---|---|---|
| 10/10/2017 | 7752117162 | ZZ | 51070041 | 5200011 |

| Amount Presented | Check Number | Image Indicator | Sorry Indicator | Deposit Sequence |
|---|---|---|---|---|
| $12,500.00 | 0 | 1 | 0 | 7752117161 |

| Deposit Account | ImgVolNo |
|---|---|
| 446023912962 | 1 |

# 6 of 20

**DAVID K WILLS**
13329 QUERY MILL RD.
NORTH POTOMAC, MD 20878

2835

7-11
630 6538

Date 11/1/17

Pay to the order of _SARA J. BENZ_ | $ 12,500.00

_twelve thousand five hundred_ ————— DOLLARS

M&T Bank 6 of 20

M&TSelect.

MEMO _M3 - loan/advance_    D P K Wills

⑈052000113⑈   5 6   0041⑈ 2835

| Date Presented | Sequence | State | Remitter Account Number | Remitter R/T Number |
|---|---|---|---|---|
| 11/3/2017 | 7352813164 | ZZ | 50041 | 5200011 |

| Amount Presented | Check Number | Image Indicator | Sorry Indicator | Deposit Sequence |
|---|---|---|---|---|
| $12,500.00 | 0 | 1 | 0 | 7352813163 |

| Deposit Account | ImgVolNo |
|---|---|
| 446023912962 | 1 |

# EXHIBIT 124



Seq: 93
Batch: 595441
Date: 12/13/17

Seq:00093 12/13/17
DAT:595441 CC:3585012204
WT:01 LTPS:Jacksonville
BC:Evergreen Point BC MD9-920

| Date Presented | Sequence | State | Remitter Account Number | Remitter R/T Number |
|---|---|---|---|---|
| 12/13/2017 | 4952216209 | ZZ | 51070041 | 5200011 |

| Amount Presented | Check Number | Image Indicator | Sorry Indicator | Deposit Sequence |
|---|---|---|---|---|
| $12,500.00 | 0 | 1 | 0 | 4952216208 |

| Deposit Account | ImgVolNo |
|---|---|
| 446040048039 | 1 |



GOVERNMENT
EXHIBIT
124
17cr390



Trust Account
David R. Wills

0100
37-65/1119 7966

1/12/18
Date

Pay to the Order of  Sara J. Benz          $ 12,500

twelve thousand five hundred          Dollars

Wells Fargo Bank, N.A.
Texas
wellsfargo.com

# 80 of 20. 5.

For  Steve Loan (ms)          Richard J. Fallin

⑈111900659⑈ 2139037119⑈ 00100

| Date Presented | Sequence | State | Remitter Account Number | Remitter R/T Number |
|---|---|---|---|---|
| 1/16/2018 | 7752557613 | ZZ | 2139037119 | 11190065 |

| Amount Presented | Check Number | Image Indicator | Sorry Indicator | Deposit Sequence |
|---|---|---|---|---|
| $12,500.00 | 0 | 1 | 0 | 7752557612 |

| Deposit Account | ImgVolNo |
|---|---|
| 446040048039 | 1 |



| Date Presented | Sequence | State | Remitter Account Number | Remitter R/T Number |
|---|---|---|---|---|
| 2/6/2018 | 7352784511 | ZZ | 2139037119 | 11190065 |

| Amount Presented | Check Number | Image Indicator | Sorry Indicator | Deposit Sequence |
|---|---|---|---|---|
| $12,500.00 | 0 | 1 | 0 | 7352784510 |

| Deposit Account | ImgVolNo |
|---|---|
| 446040048039 | 1 |



| Date Presented | Sequence | State | Remitter Account Number | Remitter R/T Number |
|---|---|---|---|---|
| 3/7/2018 | 7552693610 | ZZ | 2139037119 | 11190065 |

| Amount Presented | Check Number | Image Indicator | Sorry Indicator | Deposit Sequence |
|---|---|---|---|---|
| $12,500.00 | 0 | 1 | 0 | 7552693609 |

| Deposit Account | ImgVolNo |
|---|---|
| 446040048039 | 1 |

DAVID  WILLS TRUST ACCOUNT
1521 MARKET ST SUITE D
ROCKPORT, TX 78382

530
37-65/1119 7905

4/2/18   Date

Pay to the
Order of   SARA J Benz                        $ 12,500 ⁰⁰

twelve thousand five hundred                  Dollars

Wells Fargo Bank  N.A.
Trust
wellsfargo.com

For  # 11 of 20 (MS-admie)       Richard J Feldman

⑆111900659⑆  2139037119⑈  00530

| Date Presented | Sequence | State | Remitter Account Number | Remitter R/T Number |
|---|---|---|---|---|
| 4/6/2018 | 7852138281 | ZZ | 2139037119 | 11190065 |

| Amount Presented | Check Number | Image Indicator | Sorry Indicator | Deposit Sequence |
|---|---|---|---|---|
| $12,500.00 | 0 | 1 | 0 | 7852138280 |

| Deposit Account | ImgVolNo |
|---|---|
| 446040048039 | 1 |

Printed using ImageView Portable



DAVID WILLS TRUST ACCOUNT
1521 MARKET ST SUITE D
ROCKPORT, TX 78382

535
37-65/1119 7965

-5-1-18- Date

Pay to the
Order of __Sara J. Benz__ $ 12,500 00

twelve thousand five hundred ____ Dollars

Wells Fargo Bank, N.A.
Texas
wellsfargo.com

For __£ 12 of 20__          Richard G Faldrow

⑈111900659⑈ 213903711911⑈ 00535



| Date Presented | Sequence | State | Remitter Account Number | Remitter R/T Number |
|---|---|---|---|---|
| 5/7/2018 | 7152151199 | ZZ | 2139037119 | 11190065 |

| Amount Presented | Check Number | Image Indicator | Sorry Indicator | Deposit Sequence |
|---|---|---|---|---|
| $12,500.00 | 0 | 1 | 0 | 7152151198 |

| Deposit Account | ImgVolNo |
|---|---|
| 446040048039 | 1 |

Printed using ImageView Portable



**DAVID WILLS TRUST ACCOUNT**
1521 MARKET ST SUITE D
ROCKPORT, TX 78382

548
37-65/1119 7965

Date 6/2/18

Pay to the Order of _Sara J. Benz_    $ 12,500

_twelve thousand five hundred_ — Dollars

Wells Fargo Bank, N.A.
Texas
wellsfargo.com

For _#13 of 20_    _Richard Fields_

⑈1119006559⑈ 2139037119⑈ 00548

| Date Presented | Sequence | State | Remitter Account Number | Remitter R/T Number |
|---|---|---|---|---|
| 6/11/2018 | 7752357626 | ZZ | 2139037119 | 11190065 |

| Amount Presented | Check Number | Image Indicator | Sorry Indicator | Deposit Sequence |
|---|---|---|---|---|
| $12,500.00 | 0 | 1 | 0 | 7752357625 |

| Deposit Account | ImgVolNo |
|---|---|
| 446040048039 | 1 |

Printed using ImageView Portable



| Date Presented | Sequence | State | Remitter Account Number | Remitter R/T Number |
|---|---|---|---|---|
| 7/5/2018 | 7652060275 | ZZ | 2139037119 | 11190065 |

| Amount Presented | Check Number | Image Indicator | Sorry Indicator | Deposit Sequence |
|---|---|---|---|---|
| $12,500.00 | 0 | 1 | 0 | 7652060274 |

| Deposit Account | ImgVolNo |
|---|---|
| 446040048039 | 1 |



---

| <u>Date Presented</u> | <u>Sequence</u> | <u>State</u> | <u>Remitter Account Number</u> | <u>Remitter R/T Number</u> |
|---|---|---|---|---|
| 8/17/2018 | 7852189896 | ZZ | 2139037119 | 11190065 |

| <u>Amount Presented</u> | <u>Check Number</u> | <u>Image Indicator</u> | <u>Sorry Indicator</u> | <u>Deposit Sequence</u> |
|---|---|---|---|---|
| $12,500.00 | 0 | 1 | 0 | 7852189895 |

| <u>Deposit Account</u> | <u>ImgVolNo</u> |
|---|---|
| 446040048039 | 1 |



DAVID WILLS TRUST ACCOUNT
1521 MARKET ST SUITE D
ROCKPORT, TX 78382

580

37-65/1119 7965

4/2/18
Date

Pay to the
Order of  SARA J Benz          $12,500⁰⁰

twelve thousand five hundred     Dollars

Wells Fargo Bank, N.A.
Texas
wellsfargo.com

For  # 16 of 20 —              Richael J Felding

⑈111900659⑈ 2139037119⑈ 00580

| Date Presented | Sequence | State | Remitter Account Number | Remitter R/T Number |
|---|---|---|---|---|
| 9/12/2018 | 7752398471 | ZZ | 2139037119 | 11190065 |

| Amount Presented | Check Number | Image Indicator | Sorry Indicator | Deposit Sequence |
|---|---|---|---|---|
| $12,500.00 | 0 | 1 | 0 | 7752398470 |

| Deposit Account | ImgVolNo |
|---|---|
| 446040048039 | 1 |

Printed using ImageView Portable

DAVID WILLS TRUST ACCOUNT
1521 MARKET ST SUITE D
ROCKPORT, TX 78382

588
37-65/1119 7965

9/28/18
Date

Pay to the
Order of _SARA. J. BENZ_____ | $ 12,500⁰⁰

twelve thousand five hundred_____ Dollars

Wells Fargo Bank, N.A.
Texas
wellsfargo.com

oct—

For #17 of 20

Richard J Feldman

⑈1119008591⑈ 2139037119⑈ 00588

| Date Presented | Sequence | State | Remitter Account Number | Remitter R/T Number |
|---|---|---|---|---|
| 10/12/2018 | 7952962299 | ZZ | 2139037119 | 11190065 |

| Amount Presented | Check Number | Image Indicator | Sorry Indicator | Deposit Sequence |
|---|---|---|---|---|
| $12,500.00 | 0 | 1 | 0 | 7952962298 |

| Deposit Account | ImgVolNo |
|---|---|
| 446040048039 | 1 |



| Date Presented | Sequence | State | Remitter Account Number | Remitter R/T Number |
|---|---|---|---|---|
| 11/7/2018 | 7952325586 | ZZ | 2139037119 | 11190065 |

| Amount Presented | Check Number | Image Indicator | Sorry Indicator | Deposit Sequence |
|---|---|---|---|---|
| $12,500.00 | 0 | 1 | 0 | 7952325585 |

| Deposit Account | ImgVolNo |
|---|---|
| 446040048039 | 1 |

Printed using ImageView Portable



| Date Presented | Sequence | State | Remitter Account Number | Remitter R/T Number |
|---|---|---|---|---|
| 12/7/2018 | 7152640387 | ZZ | 2139037119 | 11190065 |

| Amount Presented | Check Number | Image Indicator | Sorry Indicator | Deposit Sequence |
|---|---|---|---|---|
| $12,500.00 | 0 | 1 | 0 | 7152640386 |

| Deposit Account | ImgVolNo |
|---|---|
| 446040048039 | 1 |

Printed using ImageView Portable



| Date Presented | Sequence | State | Remitter Account Number | Remitter R/T Number |
|---|---|---|---|---|
| 1/14/2019 | 7152458033 | ZZ | 2139037119 | 11190065 |

| Amount Presented | Check Number | Image Indicator | Sorry Indicator | Deposit Sequence |
|---|---|---|---|---|
| $12,500.00 | 0 | 1 | 0 | 7152458032 |

| Deposit Account | ImgVolNo |
|---|---|
| 446040048039 | 1 |

# EXHIBIT 125



GOVERNMENT
EXHIBIT
125

17cr390

# EXHIBIT 126





2:17cr390-005189

# EXHIBIT 127

STATE OF MINNESOTA   )
                     )      SS.
COUNTY OF HENNEPIN   )

## AFFIDAVIT
## CUSTODIAN OF RECORDS

1. My name is Sudhahar Velusamy, I am of sound mind, capable of making this

Affidavit, and personally acquainted with the facts herein stated.

2. I am a Senior IT Director for Best Buy Enterprise Services, Inc.

3. Enclosed herein are two text files from Best Buy Enterprise Services, Inc.  All

of these records are kept by Best Buy Enterprise Services, Inc. in the regular

course of its business, and it was the regular course of the business of Best Buy

Enterprise Services, Inc. for an employee or representative of the corporation,

with knowledge of the act, event, condition, opinion or diagnosis recorded, to

make the record or to transmit the information thereof to be included in such

record; and the record was made at or near the time of the act, event, condition,

opinion, or diagnosis.

4. The records attached hereto are the original or exact duplicates of the original.

Signed and sworn to before me on this 20ᵗʰ day of September, 2019.

_Rachel Csintyan_
Notary Public

RACHEL CSINTYAN
Notary Public
Minnesota
My Commission Expires January 31, 2024



**GOVERNMENT
EXHIBIT
127
17cr390**

2:17cr390-010590

```
********** START RECEIPT **********
%$#200%        WELCOME TO BEST BUY #235
 $#200%        CORPUS CHRISTI, TX 78412
 $#200%            (361)857-8300
%$#200%
%$#200%          Keep your receipt!
%$#200%
%$#210%
%$#220%
%$#230%Val #:000080-559291-611412-783269-891503-645
%$#230%
%$#240%0235 071 6885 06/05/14   11:34 00136706
%$#240%
%$#250%
%$#300%9263076   U365              9.99
%$#300%  VZW SAMSUNG GUSTO 2
%$#300%  SERIAL # *************03CB
%$#300%  ITEM TAX 0.82
%$#300%1243373   Prepaid 911      0.20 N
%$#300%       Service Fee
%$#300%7011912   $15 AIRCARD       15.00
%$#300%  TOP UP VERIZON $15 CARD
%$#300%  SERIAL # ******************3697
%$#300%  ITEM TAX 1.24
%$#300%1243373   Prepaid 911      0.30 N
%$#300%       Service Fee
 $#300%8960322   VZP M2M 0 3       0.00 N
%$#300%  VZP M2M $0-$34.99 PLUS $50
%$#400%          ----------
%$#400%          SUBTOTAL   24.99
%$#400%          SALES TAX AMOUNT    2.06
%$#400%     Prepaid 911 Service Fee   0.50
%$#400%          ==========
%$#400%          TOTAL   27.55
%$#400%
%$#400%Associate # 136706
%$#400%
%$#500%          CASH   40.00
%$#500%          CHANGE CASH   12.45
%$#500%
%$#500%
%$#520%
%$#520%
%$#520%
%$#520%
%$#520%
%$#600%HARDWARE
%$#600%You purchased the following:
%$#600%VZW SAMSUNG GUSTO 2
 $#600%ESN/MEID:: A00000443903CB
 $#600%
%$#600%SERVICE AND SERVICE
%$#600%OPTIONS
```

2:17cr390-010591

%$#600%VZP M2M $0-$34.99 PLUS $50
%$#600%
%$#600%
 $#600%  15-day return policy on eligible items.
%$#600%
%$#600% Except where prohibited, a valid receipt
%$#600% and ID is required for all returns. ID info
%$#600%  may be stored in a secure, encrypted
%$#600%  database used for tracking returns &
%$#600% exchanges. Best Buy reserves the right to
%$#600%         deny any return.
%$#600%
%$#600% For return policy details and a complete
%$#600%  list of exceptions, ask for a policy
%$#600%      brochure at any cash register
%$#600%      or go to BestBuy.com/Returns
%$#600%
%$#600%   Best Buy is not responsible for any
%$#600%  personal data left on a returned item.
%$#600%
%$#600%  To learn about our privacy practices
%$#600%  please visit www.BestBuy.com/privacy.
%$#600%
%$#600%
%$#600%     YOUR CUSTOMER SERVICE PIN IS:
%$#600%        0235 071 6885 060514
 $#600%
 $#600%
%$#700%-------------------------------------------
%$#700%     BEST BUY VALUES YOUR FEEDBACK!!
%$#700% TAKE OUR SURVEY AND ENTER FOR A CHANCE TO
%$#700%  WIN A $5,000 BEST BUY SHOPPING SPREE!!
%$#700%
%$#700%   Visit http://www.bestbuycares.com
%$#700%   Cuestionario en Espanol tambien
%$#700%
%$#700%     & enter the following codes:
%$#700%
%$#700%        Group A:  293359
%$#700%        Group B:  7418
%$#700%        Group C:  658484
%$#700%
%$#700%   NO PURCHASE NECESSARY. Must be legal
%$#700%resident of 50 US/DC/PR, 18+ (except AL/NE,
%$#700%   19+; or PR, 21+). 4 Drawing Periods:
%$#700%   2/2/14-5/3/14 CT; 5/4/14-8/2/14 CT;
%$#700% 8/3/14-11/1/14 CT; and 11/2/14-2/7/15 CT.
%$#700%   Limit 3 entries per Drawing Period.
%$#700%  For free entry and complete details,
%$#700%  see Official Rules at website or store.
 $#700%        Void where prohibited.
%$#700%-------------------------------------------
%$#700%
%$#700%

2:17cr390-010592

%$#700%
************ END RECEIPT ************
========================================

)ansaction Ending

Transaction Completed Successfully.

2:17cr390-010593

```
*********** START RECEIPT ***********
%$#200%          WELCOME TO BEST BUY #353
 '$#200%           BROWNSVILLE, TX 78520
 J$#200%              (956)546-0755
%$#200%
%$#200%           Keep your receipt!
%$#200%
%$#210%
%$#220%
%$#230%Val #:000133-956392-809938-748806-421596-046
%$#230%
%$#240%0353 064 6226 10/06/13   16:09 01019123
%$#240%
%$#250%
%$#300%5611878   COMPUTING F        0.00
%$#300%  PC WOW
%$#300%6238297   MD760LL/A         1,049.99
%$#300%  MBAIR 13.3/1.3/4/128FLASH-USA
%$#300%   50.00  SALE DISCOUNT
%$#300%  ITEM TAX 86.63
%$#300%5563131   W2071D / A3        89.99
%$#300%  HP W2071D 20-INCH LED BACKLIT
%$#300%   30.00  SALE DISCOUNT
%$#300%  ITEM TAX 7.42
%$#300%6236996   2YR 75-99.9        14.99
%$#300%  2YR ADH 75-99.99 MONITOR GSP
 $#300%  GSP#     5008544084
%$#300%  SKU #     5563131
%$#300%  EXP DATE  10/6/2015
%$#300%  ITEM TAX 1.24
%$#400%           ----------
%$#400%            SUBTOTAL  1,154.97
%$#400%         SALES TAX AMOUNT   95.29
%$#400%            ==========
%$#400%             TOTAL  1,250.26
%$#400%
%$#400%Associate # 1019123
%$#400%
%$#500%xxxxxxxxxxxxx0307 BBY CARD     1,250.26
%$#500%MARIA LOSOYA C
%$#500% APPROVAL 006823
%$#500%18-Month Financing
%$#500%
%$#500%18 Month Financing
%$#500%No interest if paid in full within
%$#500%18 months. If the deferred interest balance
%$#500%is not paid in full by the end of the
%$#500%promotional period, interest will be
%$#500%charged from the purchase date at rates
%$#500%otherwise applicable under your
 $#500%Card Agreement. Min. payments required.
%$#500%See Card Agreement for details.
%$#500%
```

2:17cr390-010594

```
%$#500%OTHER SAVINGS:     80.00
%$#504%TOTAL SAVINGS:     80.00
%$#500%
   $#500%****************************************
%$#500%     Terms & Conditions will be
%$#500%  e-mailed to you and can be found at
%$#500%  www.geeksquad.com/termsconditions
%$#500%****************************************
%$#520%
%$#600%
%$#600%
%$#600% 15-day return policy on eligible items
%$#600%
%$#600% Except where prohibited, a valid receipt
%$#600% and ID is required for all returns. ID info
%$#600%  may be stored in a secure, encrypted
%$#600%  database used for tracking returns &
%$#600% exchanges. Best Buy reserves the right to
%$#600%          deny any return.
%$#600%
%$#600% For return policy details and a complete
%$#600%  list of exceptions, ask for a policy
%$#600%     brochure at any cash register,
%$#600%       go to BestBuy.com, or call
%$#600%    1-888-BESTBUY (1-888-237-8289).
%$#600%
  $#600%     Best Buy is not responsible for any
  $#600%  personal data left on a returned item.
%$#600%
%$#600%   To learn about our privacy practices
%$#600%   please visit www.BestBuy.com/privacy.
%$#600%
%$#600%
%$#600%        YOUR CUSTOMER SERVICE PIN IS:
%$#600%           0353 064 6226 100613
%$#600%
%$#600%
%$#700%-----------------------------------------
%$#700%      BEST BUY VALUES YOUR FEEDBACK!!
%$#700% TAKE OUR SURVEY AND ENTER FOR A CHANCE TO
%$#700%  WIN A $5,000 BEST BUY SHOPPING SPREE!!
%$#700%
%$#700%   Visit http://www.bestbuycares.com
%$#700%   Cuestionario en Espanol tambien
%$#700%
%$#700%    & enter the following codes:
%$#700%
%$#700%       Group A:  385939
%$#700%       Group B:  6348
%$#700%       Group C:  662329
  $#700%
 %$#700% NO  PURCHASE  NECESSARY.  Must be legal
%$#700%   resident of 50 US/DC/PR, 18 or older
%$#700%   (except residents of AL and NE who
```

2:17cr390-010595

```
%$#700%    must be 19 years of age or older).
%$#700%        2 Drawing Periods:
%$#700%    8/4/13 - 11/2/13 & 11/3/13 - 2/1/14.
)$#700%    Limit 3 entries per Drawing Period.
⅛$#700%    For free entry & other details, see
%$#700%    Official Rules at website or store.
%$#700%        Void where prohibited.
%$#700%-----------------------------------------
%$#700%
%$#700%
%$#700%
*********** END RECEIPT ************
===============================
```

Transaction Ending

Transaction Completed Successfully.

# EXHIBIT 131



**SCHLITTERBAHN**
*Beach Resort*
BEACHFRONT HOTEL & INDOOR WATERPARK

Schlitterbahn South ...e Isld
100 Padre Blvd
South Padre Island, TX 78597 US
956-761-1160          Fax:   956-524-8301

| | |
|---|---|
| **Reservation #** | 102648 |
| **Send To** | Friedman, Scott<br>3702 San Jacinto<br>BROWNSVILLE, TX, 78520, US |
| **Phone** | 9565432483 |
| **Guest Name** | Friedman, Scott |

| **Arrival Date** | **Departure Date** |
|---|---|
| 02/08/2014 | 02/09/2014 |

**Room Information**   414  - Deluxe Double Queens

| | |
|---|---|
| **Bill To** | Marina Village<br>501 E. Maxan<br>PORT ISABEL, TX, 78578, US<br>956-943-6800 |

**Folio Number**   59736

| Trans Date<br>Charges | Description | | Voucher | Amount |
|---|---|---|---|---|
| 02/08/2014 | Room Charge | Indoor Stay and Play | spi-414 | 79.00 |
| 02/08/2014 | Hotel Occupancy Tax Local | | spi-414 | 6.32 |
| 02/08/2014 | Hotel Occupancy Tax State | | spi-414 | 4.74 |
| 02/08/2014 | Hotel Occ Beach Nourishment | | spi-414 | .40 |
| 08/2014 | Stay and Play | Stay & Play | - | 110.00 |
| /08/2014 | Sales Tax | | - | 9.08 |
| 02/09/2014 | Long Distance Phone Call | | 462-2846 | .10 |
| 02/09/2014 | Sales Tax | | 462-2846 | .01 |
| **Total Charges** | | | | **209.65** |

**Balance Due**    209.65

GOVERNMENT
EXHIBIT
131
2:17cr390
PENGAD 800-631-6989

have received the goods and / or services in the amount shown hereon. I agree that my liability for this bill is not waived and agree to be held personally liable in the event that the
indicated person, company, or association fails to pay for any part or the full amount of these charges. If a credit card charge, I further agree to perform the obligations set forth in the
cardholder's agreement with the issuer.

**We hope you enjoyed your stay - please come back and see us again!**

# EXHIBIT 132

## Call Detail Records Associated with David Wills

| Phone Number | Service Provider | Subscriber | Beginning Date | Ending Date |
|---|---|---|---|---|
| (361) 205-7674 | AT&T | David Wills | March 8, 2013 | June 5, 2014 |
| (202) 308-1244 | Verizon | David Wills | June 5, 2014 | April 9, 2015 |
| (202) 384-8493 | Verizon | Avatar Avatar | June 5, 2014 | April 8, 2015 |

## Call Detail Records Associated with Maria Losoya

| Phone Number | Service Provider | Subscriber | Beginning Date | Ending Date |
|---|---|---|---|---|
| (956) 543-2483 | Sprint | Maria Losoya | July 11, 2013 | November 7, 2014 |
| (956) 408-9429 | AT&T | Maria Losoya | July 14, 2014 | April 10, 2015 |

GOVERNMENT
EXHIBIT
132
17cr390

# EXHIBIT 133

|   | A | B | C | D | E | F | G |
|---|---|---|---|---|---|---|---|
| 1 | Searched-Value | Device Id | Device Type | MTN Status Code | MTN Effective Date | IMEI | 4G Indicator |
| 2 | 2023848493 | "A00000443903CB" | MEID | A | 6/5/2014 | | N |

GOVERNMENT
EXHIBIT
133
17cr390

# EXHIBIT 134

## RESIDENCES:

| Location | Timeframe |
|---|---|
| 188 King's Court, South Padre Island | March 28, 2012 – February 28, 2013 |
| 210 Oak Bay #402, Rockport | February 26, 2013 – March 1, 2014 |
| 506 Lakewood, Rockport | March 14, 2013 – March 9, 2015 |
| 2207 Cape McCan, Rockport | Purchased on November 17, 2014 |



GOVERNMENT
EXHIBIT
134
17cr390

# EXHIBIT 135

184959
09/17/2015
SCAMP

MOBILE USAGE
(with cell location)



AT&T has queried for records using Central Time Zone. AT&T's records are stored and provided in UTC.

Run Date:        09/17/2015
Run Time:        07:29:27
Voice Usage For: (361)205-7674
Account Number:  991138311

| Item | Conn. Date | Conn. Time (UTC) | Seizure Time | ET | Originating Number | Terminating Number | IMEI | IMSI | CT | Feature | Cell Location |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 8923 | 11/07/13 | 03:21 | 0:14 | 15:46 | 13612057674 | 19565455432 | 0131720080441710 APPLE IPHONE4S | 310410552197581 | MO | [NIOR] | [10995/01662:-77.292366:39.063087:120:90.0, 10995/01661:-77.292366:39.063087::90.0, 10995/01661:-77.292366:39.063087:120:90.0, 10995/01661:-77.292366:39.063087::90.0, 10995/01662:-77.292366:39.063087:120:90.0, 10995/01661:-77.292366:39.063087::90.0, 10995/01661:-77.292366:39.063087:120:90.0, 10995/01661:-77.292366:39.063087::90.0, 10995/01661:-77.292366:39.063087:120:90.0, 10995/01661:-77.292366:39.063087::90.0, 10995/01661:-77.292366:39.063087::90.0, 10995/01662:-77.292366:39.063087:120:90.0, 10995/01661:-77.292366:39.063087::90.0, 10995/01662:-77.292366:39.063087:120:90.0, 10995/01661:-77.292366:39.063087::90.0] |
| 8924 | 11/07/13 | 15:55 | 0:00 | 13:35 | 13612057674 | 12408934454 | | | MT | [NIOP;CMW] | [] |
| 8925 | 11/07/13 | 15:55 | 0:09 | 13:34 | 13612057674 | 12408934454 | 0131720080441710 APPLE IPHONE4S | 310410552197581 | MO | [] | [10994/01084:-77.251175:39.116064::90.0] |
| 8926 | 11/07/13 | 16:14 | 0:13 | 6:17 | 13612057674 | 13019228130 | 0131720080441710 APPLE IPHONE4S | 310410552197581 | MO | [] | [10994/01084:-77.251175:39.116064::90.0] |
| 8927 | 11/07/13 | 16:26 | 0:10 | 3:28 | 13612057674 | 12407317245 | | | MT | [NIOP] | [] |
| 8928 | 11/07/13 | 16:26 | 0:13 | 3:28 | 13612057674 | 12407317245 | 0131720080441710 APPLE IPHONE4S | 310410552197581 | MO | [] | [10994/01084:-77.251175:39.116064::90.0] |
| 8929 | 11/07/13 | 16:30 | 0:14 | 3:48 | 13612057674 | 19565432483 | 0131720080441710 APPLE IPHONE4S | 310410552197581 | MO | [NIOR] | [10994/01084:-77.251175:39.116064::90.0] |
| 8930 | 11/07/13 | 16:34 | 0:01 | 0:00 | 13612057674 | 15612107647 | 0131720080441710 APPLE IPHONE4S | 310410552197581 | MO | [NIOR] | [10994/01084:-77.251175:39.116064::90.0] |
| 8931 | 11/07/13 | 18:11 | 0:05 | 2:41 | 13013666075 | 13612057674 | 0131720080441710 APPLE IPHONE4S | 310410552197581 | MT | [NIOP] | [10994/31239:-77.23495:39.128102:230:90.0] |
| 8932 | 11/07/13 | 18:11 | 0:08 | 2:41 | 13013666075 | 13612057674 | | | MO | [NIOR] | [] |
| 8933 | 11/07/13 | 21:01 | 0:23 | 0:00 | 16053109200 | 13612057674 | 0131720080441710 APPLE IPHONE4S | 310410552197581 | MT | [NIOP] | [10994/31236:-77.23495:39.128102:230:85.0] |

GOVERNMENT EXHIBIT
135
17cr390

---

AT&T Proprietary

LMJ

The information contained here is for use by authorized persons only and is not for general distribution.

# EXHIBIT 138



GOVERNMENT
EXHIBIT
138
17cr390

# EXHIBIT 139

# SECTION 1 BEFORE FILING SUIT ............................................................................. 2

*ALTERNATIVES TO REMOVAL* ....................................................................... 2

*COURT ORDER IN AID OF INVESTIGATION* ............................................. 2

*SAFETY PLANS* ................................................................................................ 3
Violation of Safety Plan ........................................................................................ 4
Parental Child Safety Placement (PCSP) ............................................................. 4
Authorization Agreements ..................................................................................... 5

*FAMILY-BASED SAFETY SERVICES* ............................................................ 6

*COURT ORDER FOR PARTICIPATION IN SERVICES* .............................. 6

*PROTECTIVE ORDERS* .................................................................................... 8
What can be included in a protective order? ......................................................... 8
Who can request a protective order? ..................................................................... 8
Where should a protective order request be filed? ............................................... 9
What must be proven to obtain a protective order? .............................................. 9
Can a protective order be granted in an ex parte proceeding? .............................. 9
How long does a protective order last? ............................................................... 10
How is a protective order enforced? ................................................................... 10

*ORDER FOR THE REMOVAL OF AN ALLEGED PERPETRATOR (AKA "KICK-OUT ORDER")* ..... 11
Can a "Kick-Out Order" be Ex Parte? ................................................................ 11
Temporary "Kick-Out Order" .............................................................................. 11
"Kick-Out Order" Applies to Both Parties .......................................................... 12
Enforcement of a "Kick-out Order" .................................................................... 12
Duration of "Kick-Out Order" ............................................................................ 12

*THE 4ᵀᴴ AMENDMENT & CPS PRACTICE* ................................................. 13

*REMOVAL OF A CHILD* .................................................................................. 13
OPTION #1: Ex Parte Order ***Before*** Removal .......................................... 14
OPTION #2: Emergency Ex Parte Order ***After*** Removal (Exigent Circumstances) ......... 15
OPTION #3: Non-Emergency Removal ............................................................... 17

*TRANSPORTING A CHILD FROM SCHOOL* ............................................. 19

*ENTERING AND REMAINING IN A HOME* ................................................ 21





GOVERNMENT
EXHIBIT
139
PENGAD 800-631-6989

## SECTION 1 BEFORE FILING SUIT

November 2013

## ALTERNATIVES TO REMOVAL

If a child the subject of a CPS investigation can remain safely in his or her own home or stay with a friend or relative temporarily, that is always a better solution than a removal. CPS is charged with making reasonable efforts consistent with child safety, to prevent or eliminate the need for removal[1] and, at the adversary hearing, to show reasonable efforts were made to enable the child to return home. The reasonable efforts requirement is subject to waiver by the court if there is an aggravated circumstances finding. In the absence of a waiver, failure to show that reasonable efforts consistent with the circumstances and the child's safety were made to prevent the removal or return the child to the home may be grounds for challenging a temporary order for removal[2]

Alternatives to removal run the gamut from informal arrangements with the child remaining in the home, to agreements for the child to live temporarily outside the home, and court interventions that impose safety conditions. While child safety and other factors determine the viability of these options, each alternative is a vital tool that can greatly enhance a child's well-being. With a good working knowledge of these alternatives, an attorney can best support CPS' effort to maximize the opportunity for every child to avoid foster care without jeopardizing child safety and comply with the reasonable efforts requirement.

### AUTHORITY
TEXAS FAMILY CODE, CHAPTER 34;
TEXAS FAMILY CODE, TITLE 4: Protective Orders and Family Violence;
TEXAS FAMILY CODE, TITLE 5, Subtitle E, Chapters 261 - 264;
40 TEXAS ADMINISTRATIVE CODE §§700.701 - .706.

## COURT ORDER IN AID OF INVESTIGATION

If a person interferes with an investigation of a family or CPS has reason to anticipate interference during an investigation, the agency can seek a court order to compel cooperation with specific components of the investigation.[3] Court intervention is specifically authorized, upon a showing of good cause, to:
- Gain access to a home, school or any place where a child may be;[4] or
- Obtain a medical, psychological or psychiatric exam (or to obtain the records of such an exam). [5]

---

[1] TEX. FAM. CODE §§262,102 262.107(1)(3); 262.205(b).
[2] *In re Pate*,No. 14-13-00452-CV, 2013 WL 3694383 (Tex. App—Houston [14th Cist.] July 15, 2013 orig. proceeding) (although previous termination of another child is considered an aggravating circumstance, previous temporary removal is not sufficient to waive the requirement to make reasonable effort to enable the child to return home).
[3] CPS HB 2413,.
[4] TEX. FAM. CODE §261.303(b).

2

If a parent refuses to consent to the caseworker's entry into the home or to allow an interview or examination of a child, a Court Order to Aid Investigation is one option to pursue.  Interference with an investigation can result in a criminal penalty.[6]

---

**TIP: *Court Order in Aid of Investigation***

The caseworker's affidavit in support of a request for a Court Order In Aid of Investigation should detail the allegations of abuse or neglect, the evidence found to date, and the specific impediments to accessing the evidence in question. The affidavit must never name the reporter, but should include an indication of whether the reporter is a professional or private individual, the basis of the reporter's allegations, and whether the investigator has confirmed the reporter's identity and obtained any other information from the reporter or others corroborating the allegations. The caseworker's statement should be thorough, objective, and as specific as possible.  If the caseworker has obtained evidence or information that casts serious doubt on the credibility of the report, the caseworker should include this information in the affidavit, with an explanation of why, nonetheless, the caseworker believes there is good cause for issuance of the court order.

---

If there is reason to believe that a parent or other caretaker may remove a child from the state (or another geographic limit imposed by the court) or may secrete a child, the court can render a temporary restraining order if it finds DFPS has probable cause to conduct the investigation and there is reason to believe that the person may remove or secrete the child.[7]


## SAFETY PLANS

A safety plan is a written agreement between CPS and the family which serves as a short term solution to address specific concerns about child safety in a home.  A safety plan is a voluntary agreement and is *not* legally binding.  Consequently, a safety plan is only appropriate for a limited time.[8]

Safety plans commonly include voluntary agreements to:
- Place a child outside the home;
- Suspend or restrict visitation; and/or
- Submit to drug testing.

A safety plan cannot contradict existing court orders, but can require a parent to voluntarily forgo or limit visitation rights for a specified time while the safety of the child is assessed.

---

[5]  See Practice Guide, SECTION 11 TOOLS, Affidavits, Order in Aid of Investigation and for a discussion of the Constitutional issues related to CPS investigations, SECTION 1 BEFORE FILING SUIT, The Fourth Amendment & CPS Practice.
[6]  TEX. FAM. CODE §§ 261.302(f); 261.3032.
[7]  TEX. FAM. CODE §261.306.
[8]  CPS HB2420..

3

> **EXAMPLE:**
> A divorce decree grants a father the right to visitation with his minor daughter.  CPS cannot compel the mother to interfere with those rights (by, for example, only allowing supervised visits), because the mother could be held in contempt for violating the terms of the decree.  However, if an allegation of sexual abuse against the father is pending, a condition of the safety plan could be for the father to agree to forego his rights to unsupervised visits until the investigation is complete.

### Violation of Safety Plan

Although terms of a safety plan are not legally enforceable, failure to comply with a safety plan can be valuable evidence at various stages of a case.  Consider:

- Violation of a safety plan is not a basis for removal, but it may contribute to show an immediate danger to the physical health or safety of a child to support a removal; and
- Failure of a parent to follow a safety plan may be relevant in a termination case.[9]

### Parental Child Safety Placement (PCSP)

A Parental Child Safety Placement is a temporary out-of-home placement made by a parent (or other person a child lives with) with a caregiver who is either related to the child or has a long-standing and significant relationship with the child or family.[10]

DFPS' written evaluation of a potential PCSP caregiver must include:

- A completed criminal background check, as well as an abuse and neglect history, of the proposed caregivers; and
- An assessment of the caregiver's home environment and ability to care for the child.[11]

If DFPS decides placement with a proposed caregiver is not in the child's best interest, both the parent and the proposed caregiver must be notified of the reasons for this decision, but the specifics of any criminal or abuse and neglect history cannot be disclosed without the caregiver's agreement.[12]

A PCSP placement must be supported by a written agreement that specifies:

---

[9] *In re K.C.B.*, 280 S.W.3d 888(Tex. App. —Amarillo 2009, pet.denied) (evidence that parent violated safety plan almost daily construed as endangering conduct); *In the Interest of J.M.*, No. 2-08-259-CV., 2009 WL 112679 (Tex. App.—Fort Worth, Jan. 15, 2009, no pet.)(mem.op)(mother's willful violation of safety plan lead to removal of child and supports finding that termination of parental rights is in the child's best interest);.

[10] TEX. FAM. CODE §264.901 et seq.

[11] TEX. FAM. CODE §264.903.

[12] TEX. FAM. CODE §264.903 (c)

4

- Respective duties of placing person and caregiver, including a plan for medical care and school enrollment;
- Any conditions that apply to visitation with child and frequency of visitation;
- DFPS' duties;
- A termination date;
- Other terms necessary for safety and welfare of the child;
- That signing a PCSP is not an admission of child abuse or neglect and cannot be used as such.[13]

If a PCSP is in effect, DFPS must take specific steps before closing a case depending on whether the child could safely return to the parent (or other person who made the placement).[14] If the child could return safely to the parent or other person, but that person agrees in writing to let the child remain with the PCSP caretaker, DFPS can close the case.

If the child cannot return safely to the parent or other person, DFPS must decide whether the child can remain safely in the caregiver's home or whether DFPS conservatorship is necessary. In most cases if a child will remain in a PCSP following case closure, DFPS must:

- Document its determination that the child can remain safely with the PCSP caregiver without DFPS supervision;
- Obtain written agreement of the parent or other person who made the PCSP if possible;
- Obtain the caregiver's written agreement to continue caring for the child; and
- Develop a written plan for the child's care after the case is closed.

The one exception to this requirement is if a court has denied DFPS' petition to be named conservator of the child.[15]

DFPS retains the same right to remove a child from the person placing a child in a PCSP or from a caregiver as always under CHAPTER 262, TEX. FAM. CODE. If removal becomes necessary, any safe and available caregiver with a PCSP in effect will have priority for placement.[16]

### Authorization Agreements

One available tool a parent can use in conjunction with a Parental Child Safety Placement (PCSP) is an authorization agreement.[17] By signing an authorization agreement a parent can give a relative or other PCSP caretaker with whom a child is placed authority to take action ranging from medical consent, school enrollment, consent for participation in school and sport events, applying for public benefits, and related authority.[18]

For non-CPS cases, an authorization agreement is limited to a grandparent, adult sibling or adult aunt or uncle of the child.[19] However, a parent may enter into an agreement with any person a

---

[13] TEX. FAM. CODE §264.902.
[14] TEX. FAM. CODE §264.904.
[15] TEX. FAM. CODE §264.904(e).
[16] TEX. FAM. CODE §§264.905,.906.
[17] TEX. FAM. CODE §34.0021.
[18] TEX. FAMILY CODE §34.021.
[19] TEX. FAMILY CODE §34.001(1).

child is placed with under a PCSP agreement approved by DFPS. Though there must be an active PCSP placement at the time the agreement is entered into with a person who is not a grandparent, adult sibling, or adult aunt or uncle of the child, the authorization agreement itself may continue after CPS closes its case, and is terminated in the same manner as any other authorization agreement under Chapter 34 of the Family Code.[20]

Note that an authorization agreement does not confer custody of the child, and does not prevent a parent from removing the child from a PCSP caregiver at any time.[21] If a parent removes the child from a PCSP caregiver while CPS still has an open case, CPS staff can take any measures necessary for child safety. However, when a child remains with a PCSP caregiver after CPS closes its case, with or without benefit of an authorization agreement, CPS will have no means to protect the child from a dangerous parent who removes the child from the PCSP caregiver unless CPS receives a new report of suspected abuse or neglect. For this reason, in addition to the statutory provisions that restrict a PCSP placement after the CPS case has closed, CPS has adopted stringent policy criteria for closing a CPS case when a child remains with a PCSP caregiver.[22]

DFPS created the form for authorization agreements as directed by the Legislature, and a copy of this form is available on both the DFPS and TEA public websites, but agency staff are not authorized to give legal advice to families seeking to enter into such an agreement.[23]

## FAMILY-BASED SAFETY SERVICES

Family-Based Safety Services (FBSS) are protective services provided to a family whose children are not in the managing conservatorship of DFPS to prevent the need to remove a child from the home. There are three levels of services —regular, moderate, and intensive— which correspond to the degree of risk to the child.[24] These protective services are often offered in conjunction with a safety plan.

## COURT ORDER FOR PARTICIPATION IN SERVICES

If a family has refused services or is not cooperating with services, or the weight of the court's authority is desired to bolster a family's chance for success, court ordered services can be an effective solution.[25] The court may order a parent to participate in services that DFPS provides or purchases to alleviate the effects of abuse or neglect or to reduce the reasonable likelihood of abuse or neglect in the immediate or foreseeable future. The caseworker must be able to set out the facts that meet this standard.[26] If the court denies a request to order participation, the court

[20] TEX. FAM. CODE §§34.001(2); 34.0021.
[21] TEX. FAM. CODE §34.007(b).
[22] CPS HB 2437.3-2437.32.
[23] DFPS Form 2638 (Intake/Investigation Forms).
[24] 40 TAC §700.702.
[25] TEX. FAM. CODE §264.203.
[26] See Practice Guide, SECTION 11 TOOLS, Affidavits, Order to Participate in Services.

must specify its reasons in writing. A parent's failure to comply with court-ordered services is relevant evidence at trial.[27]

---

[27] *In re A.D.M*, No.2-04-007-CV, 2004 WL 1799983(Tex. App.— Ft. Worth, Aug.12, 2004, no pet.) (mem. op.) (failure to use court-ordered services, attend counseling, complete parenting class, complete drug assessment, or use bus ticket to travel to inpatient drug treatment, all support finding that termination is in best interest of children).

## PROTECTIVE ORDERS

If family violence is an issue in a household, a protective order may be an appropriate method to protect the victim. Family violence includes acts intended to result in physical harm, bodily injury, assault, sexual assault or threats that reasonably cause fear of imminent physical harm, bodily injury, assault, or sexual assault.[28]   A protective order can address many of the most common issues that lead to removal of a child from the home.

### What can be included in a protective order?

If a court finds family violence has occurred and is likely to occur in the future, there are many possible restrictions a court can impose against the perpetrator.[29]  The most common sanctions in a DFPS case would prohibit a person from:

- Committing family violence;
- Threatening or harassing a person;
- Going to or near a person's home, business, school, or child-care facility; or
- Possessing a firearm.[30]

The court can also order a perpetrator to complete a batterer's intervention and prevention program.

### Who can request a protective order?

DFPS, any prosecutor who represents the state in a county where the venue for a protective order is proper, or any adult can file for a protective order on behalf of a child.[31]  The county or district attorney's office serves as the prosecuting attorney for a family violence protective order.[32]  In an effort to improve access to legal help for domestic violence victims, the prosecuting attorney is specifically not prohibited from representing both a party in a protective order application and DFPS in an action involving the same party, unless doing so in an individual case would be prohibited by the Texas Disciplinary Rules of Professional Conduct.[33]  Apart from civil remedies, there may be grounds for a criminal protective order, depending on the circumstances.  Particularly if a person has been a victim of a sexual or trafficking offense, a criminal protective order may afford greater protection in some cases.[34]

---

[28] TEX. FAM. CODE §71.004.;.
[29] TEX. FAM. CODE §85.001(b).
[30] TEX. FAM. CODE §85.022(b).
[31] TEX. FAM. CODE §82.002.  A child may also seek a protective order under §82.002(b)(1), but only in the context of dating violence.
[32] TEX. FAM. CODE §81.007.
[33] TEX. FAM. CODE §81.075, as amended by SB 130 (83rd , Reg. Sess., effective June 14, 2013).
[34] CODE CRIM. PROC. ART 7A.01.

DFPS is authorized to request a protective order, either as an alternative to an order requiring a perpetrator of abuse to leave the home, or in addition to such an order.[35]   DFPS can apply on behalf of a child or can assist a parent or other adult the child lives with in obtaining a protective order.

### Where should a protective order request be filed?

If a SAPCR is pending, an application for protective order can be filed in a court where the suit is pending or in a court where the applicant resides if that is outside the jurisdiction where the case is pending.[36]   If there is no suit pending, the application may be filed in the county where either the applicant or the respondent resides or (as of June 14, 2013), where the family violence is alleged to have occurred.[37]   District courts, courts of domestic relations, statutory county courts, and constitutional county courts all have jurisdiction to issue a protective order.[38]

### What must be proven to obtain a protective order?

The court must find that family violence has occurred and is likely to occur in the future.[39]   For this purpose, a statement made by a child 12 years old or younger describing alleged family violence is admissible in the same manner as a statement regarding alleged abuse under TEX. FAM. CODE §104.006.

> **TIP:**
> Even if a protective order is not granted, a request to the court to make a finding that family violence has occurred may be useful to prompt an abuser to participate in counseling, substance abuse treatment or batterer intervention programs and to create a record regarding this history.

### Can a protective order be granted in an ex parte proceeding?

Yes, if specific standards are met.  An application for ex parte relief:

---

[35] TEX. FAM. CODE §262.1015(a-1).

[36] TEX. FAM. CODE §85.062.

[37] TEX. FAM. CODE §82.003, as amended by S.B. 129, 83rd , Reg. Sess. effective June 14, 2013.

[38] TEX. FAM. CODE §71.002.

[39] TEX. FAM. CODE §85.001(b); *Johnson v. Johnson* No. 13–12–00080–CV ,2012 WL 3525655 (Tex. App—Corpus Christi-Edinburg Aug. 16, 2012, no pet.(mem.op.) (single instance of "short tempered" husband cocking shotgun pointed at wife's head sufficient to show family violence) *Dalbosco v. Seibert,* 2012 WL 1795108 (Tex. App.—Houston [14th Dist.], pet. denied) (mem.op.) (pattern of violent behavior, including yanking, shoving, punching with a full fist, hitting, choking, kicking, biting, hair pulling and threatening is sufficient basis to conclude  future violence is likely to occur.) (*Teel v. Shifflett*, 309 S.W.3d 597 (Tex. App. — Houston [14th Dist.] 2010,(no pet.) (boyfriend's testimony regarding incidents of violence, including police use of taser to subdue girlfriend because she would not give up weapon, supports finding that future violence is likely to occur); *In re Lewis,* N0. 11-04-00075-CV, 2005.WL 1903571 (Tex. App.—Eastland, Aug.11, 2005, no pet.) (mem.op.)(five witnesses to angry telephone calls and testimony regarding threat against reporter of child abuse sufficient to show threat of imminent harm).; *Dominguez v. Hughes*, 225 S.W.3d 272 (Tex. App.—El Paso 2006, no pet.)(six-year-old with dime-sized mark behind his ear as a result of rough play sufficient evidence that family violence had occurred and was likely to occur again even though victim did not complain of any pain or fear, or feel threatened).

- Must contain detailed facts concerning the family violence and be signed under oath by each applicant;[40]
- Must demonstrate a clear and present danger of family violence;[41] and
- Is limited to 20 day or shorter period (subject to a 20 day extension).[42]

A child's statement signed under oath that otherwise meets requirements of Chapter 82 can be used for this purpose.[43]

### How long does a protective order last?

After a hearing on the merits, a judge can issue a protective order for a period not to exceed two years. An order that does not specify the period of the order's effectiveness expires on the second anniversary of the date the order was issued. [44]  A court can only render a protective order for more than two years if the court finds the perpetrator:

- Caused serious bodily injury to the applicant, or a member of the applicant's family or household, or
- Was the subject of two or more prior protective orders rendered for protection of the same person and after a finding that the perpetrator has committed family violence and is likely to reoffend in the future.[45]

### How is a protective order enforced?

The applicant or the applicant's attorney must provide the court clerk with the name and address of each law enforcement agency, child-care facility, and school to which the clerk must mail a copy of the order, along with any other information required under TEXAS GOVERNMENT CODE §411.042(b)(6).[46]  A motion for enforcement may be filed in the county where the order was rendered, in a county where either party resides, or where an alleged violation of the order occurs.[47]

---

*TIP:*
The applicant and the person with whom the child is living should keep a certified copy of the protective order to provide to law enforcement if necessary.

---

[40] TEX. FAM. CODE §82.009.
[41] TEX. FAM. CODE §83.001.
[42] TEX. FAM. CODE §83.002.
[43] TEX. FAM. CODE §82.009(b).
[44] TEX. FAM. CODE §85.025(a).
[45] TEX. FAM. CODE §85.025 (a-1).
[46] TEX. FAM. CODE §85.042(d).
[47] TEX. FAM. CODE §81.010.

## ORDER FOR THE REMOVAL OF AN ALLEGED PERPETRATOR (AKA "KICK-OUT ORDER")

An order for the removal of an alleged perpetrator is a temporary restraining order that requires an alleged perpetrator to leave the home and requires the remaining parent or other person with whom the child will reside to make a reasonable effort to monitor the residence and report any attempt by the alleged perpetrator to return to the home.[48]   The theory is that when possible, fairness dictates that perpetrators, not the victims, be the ones forced to leave the home.  This is often referred to as a "kick-out order."

### Can a "Kick-Out Order" be Ex Parte?

Yes, if DFPS can show that:
- There is an immediate danger to the child's physical health or safety or that the child has been a victim of sexual abuse;
- There is no time, consistent with the physical health or safety of the child, for an adversary hearing;
- The child is not in danger of abuse from a parent or other adult who will remain in home;
- The parent or other adult in the home is likely to make a reasonable effort to monitor and report any attempt by the alleged perpetrator to return to the home; and
- Issuance of the order is in child's best interest.[49]

The order and notice of hearing on the order must be served on the alleged perpetrator, and on the parent or other adult with whom the child will continue to live.[50]  A temporary restraining order issued under this provision expires no later than 14 days after it is rendered, unless the court grants an extension under TEX. FAM. CODE §262.201(a-3).[51]

### Temporary "Kick-Out Order"

A court shall enter a temporary order for the removal of the alleged perpetrator from the home after motion and hearing if the court finds:
- The child would be in danger if the alleged perpetrator remained in the victim's home, or
- That the child has been the victim of sexual abuse and there is a substantial risk that the child will be a victim of sexual abuse in the future if the alleged perpetrator remains in the residence.[52]

---

[48] TEX. FAM. CODE §262.1015(b) and (e).
[49] TEX. FAM. CODE §262.1015(b); See Practice Guide, SECTION 11 TOOLS, Affidavits, Order to Remove Alleged Perpetrator.
[50] TEX. FAM. CODE §262.1015(c).
[51] TEX. FAM. CODE §262.1015(d), as amended by S.B. 1759 ((83rd Reg. Sess., effective Sept. 1, 2013).
[51] CODE CRIM. PROC. ART 7A.01.
[52] TEX. FAM. CODE §262.1015(f):

11

### "Kick-Out Order" Applies to Both Parties

A kick out order must require the parent (or other adult with whom the child will continue to reside in the child's home) to make a reasonable effort to monitor the residence and report to DFPS and law enforcement any attempt by the alleged perpetrator to return to the residence.[53]

### Enforcement of a "Kick-out Order"

Violation of a "kick-out order" by either party may result in criminal charges.  The return of the alleged perpetrator to the home is a Class A misdemeanor, as is the failure of the at home parent or adult to report the return of the alleged perpetrator.[54]   A second violation of such of an order is a third degree felony.[55]

### Duration of "Kick-Out Order"

After a hearing on the matter, a temporary order for removal of the alleged perpetrator continues until superseded by a court with jurisdiction to do so.[56]

---

[53] TEX. FAM. CODE §262.1015(e).
[54] TEX. FAM. CODE §262.1015(g) and (h).
[55] TEX. FAM. CODE §262.1015(h).
[56] TEX. FAM. CODE §262.204(a).

# THE 4TH AMENDMENT & CPS PRACTICE

Many everyday CPS practices implicate the 4th Amendment.  When CPS requests entry into a home as part of an investigation, seeks to transport a child for an interview, to examine a child's injuries or to remove a child from the home, the 4th Amendment applies.  For this reason, the requirements of the 4th Amendment are incorporated into the CPS Handbook, the Basic Skills Development (BSD) course for new staff,  and ongoing trainings for staff.  In addition, CPS has issued policy in response to specific questions.  *See* PSA 14 006 (September 16, 2013).

The 5th Circuit Court of Appeals decision *Gates v. Texas Dep't of Protective & Regulatory Servs.,* 537 F.3d 404 (5th Cir. 2008) remains the primary guidance on the 4th Amendment in the context of child protection in Texas. Attorneys representing DFPS can best understand the implications of the decision, by reading the decision, in part to fully appreciate the factual context the court based this decision on.  Key points in *Gates* that impact CPS practice, discussed in detail below include:

- A removal standard that requires CPS to obtain a court order *prior to removal* in a larger proportion of cases;
- A new standard for assessing when CPS can transport a child for purposes of an interview; and
- A clear standard for when CPS can enter (or remain in) a home during an investigation.

## REMOVAL OF A CHILD

If CPS determines that a child must be removed from his home despite reasonable efforts to prevent or eliminate the need for removal, then there are three options for obtaining an order for removal:

**#1 Ex Parte Order *Before* Removal**
**#2 Emergency Ex Parte Order *After* Removal**
**#3 Non-Emergency Removal**

In the first option, CPS obtains a court order before removal of the child.  In the second option, CPS has determined that the child is in immediate danger (exigent circumstances) and the child must be removed from the home.  A court order is then obtained after the exigent circumstances removal. A comparison of the statutory language and case law interpretation between an ex parte order before removal and an exigent circumstances removal prior to obtaining an ex parte order reveals that the language is markedly similar. In the first instance, CPS must show "immediate danger to the physical health or safety of the child OR that the child has been a victim of neglect or sexual abuse" (among other requirements); and in the second instance, CPS must show that "based on the totality of the circumstances, there is *reasonable cause* to believe that the child is in *imminent danger of physical or sexual abuse if he remains in his home*."

Fourth Amendment case law presumes a preference for the state to obtain advance approval from a neutral magistrate before taking action to "search" or "seize."  To justify taking action without prior court approval, the state must meet a higher evidentiary threshold.  This distinction is implicit in the *Gates* opinion, but the court does not elaborate how these standards compare.  The time frames a court considers under these two options are significantly different.  With a request for a court order *before* removal of a child, the court need only conclude there is not time

13

consistent with health or safety of the child for a full adversary hearing, a hearing generally set at least fourteen days after a removal. In contrast, for a removal of a child without a prior court order, CPS must show there was no time consistent with the child's health or safety to obtain an ex parte order, which could be obtained within hours or one or two days. As detailed below, the lapse of time necessary to obtain a prior court order is a primary factor in the totality of the circumstances analysis for purposes of "exigent circumstances." Without question timing is critical to any assessment of child safety.

### OPTION #1: Ex Parte Order *Before* Removal

In this circumstance the court must find:
- There is immediate danger to the physical health or safety of the child OR that the child has been a victim of neglect or sexual abuse;
- Continuation in the home is contrary to the child's welfare;
- There is not sufficient time consistent with the child's physical health or safety to hold an Adversary Hearing; and
- CPS made reasonable efforts to prevent or eliminate the need for removal.

A few observations about the process to keep in mind:
- **A court order must be written.** If CPS is going to rely on an order for an emergency removal, it must be **written,** and not verbal. A verbal order offers no legal protection if the order's existence or contents are questioned.[57]
- **Hearings conducted during normal business hours.** If there are no exigent circumstances to remove a child at 2 a.m., the family may agree to a parental-child safety placement or to have the alleged perpetrator leave the home. If these options are not feasible, the option is to wait until court opens the following workday to request an order authorizing the removal. However, any increased danger to the child and the extent of the delay required to obtain a court order will impact whether there are exigent circumstances as discussed in more detail below.

---

[57] In some jurisdictions verbal orders are sometimes obtained when there are exigent circumstances. This is not necessary, but sometimes it is the practice and it is not harmful. However, one problem with getting "verbal approval" is the possibility that the judge will not agree that there are exigent circumstances. If this occurs, the attorney should carefully reassess the case, and confer with CPS to ensure every fact that supports the agency's decision is documented. You may also consider conferring with supervisory attorneys either within your own office, the DFPS managing attorney or the General Counsel's office. If it is determined that there is sufficient basis to proceed via exigent circumstances or requesting a court order before removal of the child, then CPS should formally proceed with the appropriate paperwork. A judge may not approve of this course of action, but CPS must act upon the facts as they view them. The judge can then order the child into the managing conservatorship of DFPS or not, depending upon his or her own view of the facts.

14

## OPTION #2: Emergency Ex Parte Order *After* Removal (Exigent Circumstances)

CPS can only remove a child without a prior court order if based on the totality of the circumstances there is a reasonable cause to believe that the child is in imminent danger of physical or sexual abuse.

The *Gates* ruling makes clear that CPS can only do emergency removals without a court order if the danger is truly imminent and only if it is tied to physical or sexual abuse. To believe that a child is in imminent danger, CPS must have reason to believe that life or limb is in jeopardy or that sexual abuse is about to occur.

**NOTE:** For a discussion of neglect, see "The nature of the abuse" below.

The court in the *Gates* case listed several factors that may be considered in deciding whether the child is in imminent danger. These factors must be weighed for *each child i.e.*, it is not enough that there are allegations related to one child in the home. If CPS seeks to remove an additional child or children there must be information to support the other removals, unless there is a court order authorizing removal in advance. The factors considered, and the weight a caseworker gives to them, may vary for each child depending on the circumstances of each child's case. The factors to consider include:

- Before removing a child WITHOUT a court order ask: Is the child in danger of being harmed while you are getting a court order?
- How immediate is the danger to the child?
- What does the severity, duration and frequency of the abuse appear to be?
- How strong is the evidence supporting the allegations of abuse?
- How likely is the parent to flee with the child?
- Is there another way to ensure the safety of the child short of a removal?
- How traumatic will the removal be to the child?

- **Whether there is time to obtain a court order**
  This does not mean that if the courthouse is closed CPS can automatically do an emergency removal without an order, or that if the courthouse is open CPS cannot do an emergency removal without an order. It means that the caseworker (in consultation with the supervisor) must weigh all the facts known when CPS is considering the removal, and determine whether the time it takes to obtain a court order would place the child in imminent danger of physical or sexual abuse? If the answer to the question is yes, then an emergency removal without an order is appropriate. If the answer to the question is no, then an emergency removal without a court order is not appropriate unless other factors and circumstances support it.

  A caseworker should consider how much time would elapse if she waits to obtain an order. For example, in a close case there may be more exigency on a Friday evening (where at least two days will elapse before she can seek an ex parte order) than there would be on a weekday at 3 a.m. (where she can obtain an order in a matter of hours). However, CPS must take the facts as they find them; it is never appropriate to delay action to make the situation seem more exigent.

- **The nature of the abuse (its severity, duration, and frequency)**

15

The key question for this factor is the immediacy of the danger. A neglect case will rarely support an *emergency* removal without a prior court order. On the other hand, neglectful behavior may create imminent danger that would support an emergency removal, *e.g.*, an infant at home alone, a case of medical neglect that has become urgent, or a toddler found wandering in the street. In a physical or sexual abuse case, an emergency removal will be appropriate only where the information that CPS has supports the conclusion that the risk of further abuse is imminent. Information that may tend to support an emergency removal includes evidence of one or more of the following:

- o  the severity of the abuse;
- o  how recently the abuse occurred;
- o  whether the abuse has been committed against another child or multiple children;
- o  whether there is a pattern of abuse or this is an isolated incident; or
- o  whether there is a condition that requires immediate medical attention.

NOTE:

- ➢  Increased severity means increased danger. In the case of a child death caused by abuse, the danger to other children immediately following the abuse is extreme and supports the removal of other children. Similarly, serious physical injuries caused by abuse are more likely to support the removal of other children in the home unless, for example, weeks or months have elapsed prior to the "emergency" removal.

- ➢  Although there should be evidence to support the removal of each child, evidence that the household includes "a person who has abused or neglected *another child* in a manner that caused serious injury or death or sexually abused *another child*" [58] is relevant to both types of ex parte removal when the court is making a determination regarding the immediate or continuing danger to a child's physical health or safety. Similarly, evidence of abuse to multiple children can be used to show a pattern of abuse; the more widespread the abuse seems to be, the more likely it is that all of the children are in danger. In the *Gates* case, although the court found it was a "close call," because there was evidence about possible abuse to five of the thirteen children, corroborated by multiple children, the court approved removal of all of the children.

- ➢  The fact that there is CPS history on the family is not solely enough to constitute an emergency. There must be information that suggests that the child in question is in danger of harm *now*.

- **The strength of the evidence supporting the allegations of abuse**
  The key question for this factor is whether the allegations have been corroborated. In all likelihood, some of the information that the CPS investigator gathers on a report will tend to support the allegations and some will tend to contradict it. As with other work in investigations, the caseworker must weigh the strength of the evidence to determine whether the allegations are reliable. If the allegations in the report are supported by staff's visual observation of the child(ren) and the premises, and/or by interviews with collaterals, including other CPS caseworkers who have relevant information about the

---

[58] TEX. FAM. CODE §§262.102(b); 262.107(b).

family, or other children in the home, this tends to support an emergency removal (assuming there is also imminent danger to the child).  On the other hand, if staff's observations and interviews are not consistent with the allegations in the report then this would weigh against an emergency removal, although a removal without a court order may still be appropriate if the information provided in the interviews is clearly implausible (*e.g.* child received a compound leg fracture after falling off sofa on to a carpeted floor) or if CPS has other pieces of corroborating evidence that support the allegations.

- **The risk that the parent will flee with the child**
  It is not enough to have a suspicion the parent might flee with the child.  There should be some objective indication that the parent may do so, *e.g.*, a threat to that effect, prior CPS history where the parent actually did flee, a parent who is only visiting Texas versus a parent who lives in Texas, etc.

- **The possibility of less extreme solutions to the problem**
  This factor is consistent with longstanding practice which requires CPS to make reasonable efforts to prevent removal. For example, we should consider a parental-child safety placement (formerly known as a voluntary placement) or a safety plan that will enable the child to be safe without being removed by CPS. These efforts must be made and documented in the case narrative.

- **Any harm to the child that might result from the removal**
  This inquiry should be guided by social work best practices.  Some characteristics that make a child vulnerable to abuse (age, inability to verbalize, special needs, etc.) may also make a removal more traumatic. Just because a removal may be traumatic, doesn't mean that you can't remove.  The affidavit should indicate that the caseworker has considered this factor in making the decision to remove.

**OPTION #3: Non-Emergency Removal**

To obtain a non-emergency order before removal of a child, CPS must show:
- It is contrary to the child's welfare to remain in the home;
- Reasonable efforts were made to prevent or eliminate the need for removal;[59]
- Appointment of the parent or parents as temporary managing conservator of the child is not in the best interest of the child because appointment of the parent as conservator would significantly impair the child's physical, health, or emotional development;[60] and
- Placement with a noncustodial parent or another relative is not in the best interest of the child.[61]

---

[59] TEX. FAM. CODE §262.205(b).
[60] TEX. FAM. CODE §153.131, a history of family violence removes the presumption that a parent should be appointed managing conservatory.
[61] TEX. FAM. CODE §262.205(e).

**CASE EXAMPLES**

Note: The following case examples are intended to discuss whether the facts warrant the removal of the child via exigent circumstances (removal without a prior order) or whether a removal with a prior order is necessary. However, both types of removal require a showing that reasonable efforts were made to prevent or eliminate the need for removal of the child. All of these examples presume that reasonable efforts have been made and no other placement option is available.

- CPS receives a report about physical abuse of a child from a neighbor who states he heard screaming coming from the potential victim's house. CPS goes to the home within a few hours of the report, receives consent to interview everyone in the home, and determines there is only one child in the home, who appears to be fairly badly beaten (bruises, swollen eye, a welt on the arm). The father tells you the child tripped on a toy but this seems inconsistent with the extent of the injuries that are visible. Can CPS remove the child without a prior court order?
  - o Yes, exigent circumstances exist. The child is in imminent danger of physical abuse. The report indicates that the abuse is very recent and your observations back this up. There is nothing to indicate that the abusive episode has ended, that it is an isolated instance, or that the child will be safe in the time it would take CPS to file and obtain an emergency ex parte order prior to removing the child. The best way to assure the child's safety in this instance is to remove him and file for a court order following the removal.
- CPS receives an intake about physical abuse to a child in a home with four other children. The parents consent to the interview of all five children. The child who is the subject of the report has visible bruises, which is consistent with the intake. The other four children confirm that their father routinely punishes and beats the child in the report but they state they have not been harmed. Who can CPS remove, if anyone?
  - o Only the child for whom CPS has evidence of abuse and imminent danger of further abuse. For the other four children danger is not immediately at issue, because CPS has time to either seek an ex parte order before removal or non-emergency order prior to removing the other four children.
- A mother for whom there are prior reason to believe (RTB) findings for abuse for failure to protect two of her children who died as a result, is nine months pregnant. Can CPS immediately remove the new baby without a court order?
  - o No. CPS can do a removal, but should get a court order prior to the removal. Assuming mother gives birth in the hospital, there will be time to obtain a court order in all but the most unusual of circumstances. Unusual circumstances may include removing a child on a Friday evening if CPS knows the baby will be released from the hospital over the weekend and the mother is a flight risk or there is other immediate danger to the child (e.g. the other two deaths involved infants, the parent she failed to protect the babies from is still in the home, or the mother is incapacitated from drugs or mental disturbance or mental retardation and is clearly unable to care for the baby, etc.).
- CPS receives a report of sexual abuse (SXAB) of a sixteen-year-old girl. The outcry of abuse in the intake is confirmed by the sixteen-year-old in an interview that takes place in the home. She says that Daddy has been inappropriately touching her for a couple of years and as far as she knows she is the only one he touches. There is also a fifteen-year-

old girl in the home, as well as two younger siblings; all three of whom deny any sexual abuse. Does CPS have enough to remove the other children?

- o   Without additional information indicating that the younger siblings are in imminent danger of sexual abuse, they should not be removed without a prior court order. The fifteen-year-old girl is a MUCH closer call and in this type of case staff should always consult with supervisory staff or the regional attorney. On the facts presented there appears to be no suggestion that the father is perpetrating the abuse against anyone other than the sixteen-year-old. Although it is also true the father is eventually likely to perpetrate the abuse against the fifteen-year-old, especially once the 16 year old is removed, CPS should ordinarily have enough time to seek a court order for removal before she is in imminent danger of such abuse. Of course, if an interview with the fifteen year old or the younger children reveals additional information, this conclusion might be different.

- SWI receives a report of Refusal to Accept Parental Responsibility (RAPR) for a sixteen-year-old male whose parents will not come to pick him up from a private psychiatric hospital. Can CPS pick him up without a court order?
  - o   The best practice would be to obtain a court order prior to the removal, but there may be rare situations that constitute exigent circumstances.

## TRANSPORTING A CHILD FROM SCHOOL

Transporting a child during an investigation should be reserved for the most severe cases. CPS attempts to avoid multiple interviews and avoid trauma to the children by having interviews conducted at a CAC. If a CPS caseworker confers and the supervisor agrees transport is appropriate, the available options are:

- Obtain consent;
- Obtain a court order; or
- Show that CPS has a reasonable belief that the child has been abused and probably will suffer further abuse upon his return home at the end of the school day.

We transport over parental objection only if the *"reasonable belief"* standard below is met or we obtain a court order.

## OPTIONS

1.   **Consent**

Ideally, parental consent is obtained to transport a child to a CAC. In this context, as others, "consent" means an affirmative expression that the parent or other person with legal responsibility over the child agrees that we may transport the child. It is not sufficient merely to follow the procedures outlined for notifying a parent that the child is being transported.[62] The parent must affirmatively express agreement with the decision to transport. By the same token, even if a child is transported pursuant to other authority, *e.g.* reasonable belief as described below, CPS must still notify the parents of the transport so the parents know the child's whereabouts.

---

[62] CPS HB 2260-2261.

2.    **Court Order**

In cases where CPS can show "good cause" to transport but does not have consent of the parent and cannot meet the "reasonable belief" standard defined below, the best option is to request a court order in aid of investigation to transport the child for an interview.

3.    **Reasonable Belief**

The *Gates* court set out a new lower standard than "exigent circumstances" based on the fact that the child was in a public school instead of at home.  The key points for this standard are as follows:

- The child need not be in imminent danger of abuse, but the investigator must have a *reasonable belief that the child has been abused and probably will suffer abuse again soon*, *i.e.*, that evening. However, keep in mind that because this is a lower standard than exigent circumstances, anything that constitutes exigent circumstances is also sufficient to support the transport.

- The allegations in the report must be independently corroborated *before* a child is transported.  A report of abuse in and of itself will rarely be sufficiently reliable to base a decision to transport on, because there may be another explanation for an injury, the report could have been inaccurate, etc. Prior to transport by any DFPS employee, the employee must have either obtained first-hand information or received information that makes it reasonable to believe the child has been abused and probably will be abused again upon his return home.  Examples of corroborating information include:

> CPS must answer "YES" to one of the questions below BEFORE transporting a child from school
>
> 1. **Do you have consent?**
> 2. **Do you have a court order?**
> 3. **Do you have a "reasonable belief" that has been corroborated?**

  - o A preliminary interview of the child's teachers indicates the initial report is accurate;
  - o A preliminary interview of the child's peers indicates the initial report is accurate;
  - o A visual inspection of any injuries that can be seen without removal of the child's clothing and other information indicates that the injuries were received by an alleged perpetrator (see Note below for further discussion);
  - o If necessary, a preliminary interview of the child—*e.g.* if the allegation is physical abuse and the child has bruises, you ask her where the bruises came from *prior to* transport and in doing so rule out an innocent explanation or confirm the initial report of the injury.

NOTE: Any one of these actions, standing alone, may not be sufficient to corroborate the report.  In the *Gates* case, the caseworkers observed one child who had a baggie full of food wrappers pinned to his shirt and two small marks on his hand and face, and a second child who had a bruise on her face, all of which was consistent with the intake.  The court held that this information was still insufficient to transport because there was only information supporting emotional abuse to the first child; there was

nothing to suggest that the child would be physically abused upon his return home; and the caseworkers did not ask the second child where her bruise came from.

- A fear that a child will recant once he goes home, without more, is not enough to meet the requirements of "reasonable belief." However, if the situation warrants it, CPS should seek a court order in aid of investigation to transport and interview the child that day.

## CASE EXAMPLES

- A teacher makes a report that a girl stated, "Daddy touched me in my private parts last night." CPS is dispatched to the school on a P1 and speaks to the teacher who confirms that the child made the statement earlier that morning.
  - o Unless there is additional evidence to the contrary, CPS may transport the child. The outcry was corroborated by the teacher. CPS cannot ascertain more information without conducting a full interview, which would not be appropriate in this instance because it should be conducted at the CAC.
- A school employee makes a report that a girl stated, "Daddy touched me down there." You are dispatched to the school on a P1 and speak to the reporter who confirms that the child made the statement, but she made it last week. CPS asks to speak to the child alone to clarify what "down there" means, and the child states that she did not make such a statement.
  - o Unless CPS obtains additional evidence, they should not transport the child for an interview without parental consent or a court order in aid of investigation because there is no evidence that the child has actually been abused or that she may suffer further abuse later that day.

## ENTERING AND REMAINING IN A HOME

As with removals, in order to gain entry into a home for the purpose of a CPS investigation, CPS must have one of the following: 1) consent, 2) a court order, or 3) exigent circumstances. The *Gates* ruling provides additional explanation concerning exigent circumstances and consent in the context of CPS practices.

## OPTIONS

### 1.    Consent

The *Gates* case serves as an important reminder about the need for consent to enter a home for the purposes of conducting a CPS investigation. Key points are:

- **Consent must be affirmative.** It is not enough that a person does not say no. Consent for CPS to enter a home must be voluntarily given and unequivocal (clear). CPS staff should identify themselves as a CPS investigator and explicitly request and receive permission to enter the home. The best practice is to ensure that the person states that CPS may enter (rather than simply getting a nod or other non-verbal gesture). In any case CPS staff must document the basis for consent in the narrative.

21

- **Consent should be from someone with authority to give it**. A parent has the authority to consent to or deny entry to the home. It is also reasonable to assume that if the parents have left one or more children in the care of an adult caretaker, that caretaker has the authority to consent to allow the caseworker to enter the home and interview the child in private, although a caretaker probably does not have the authority to permit a search of the entire house. If an adult is not home, the caseworker should rely on the consent of a child in the home only if the child appears old enough to effectively give consent. Teenagers will likely be old enough; children 12 or younger probably will not.
- **Consent can be withdrawn at any time**. Anyone with authority to give consent can also withdraw it at any time. The decision of a parent living in the home is paramount to a decision made by someone not living in the home. So, if entry is gained after a housekeeper who does not live in the home gives consent, a parent or other individual living in the home could at any point instruct CPS to leave and CPS would be obligated to do so.
- **Consent must be given to CPS**. CPS routinely conducts joint investigations with law enforcement, but it is important to remember that CPS's activities are separate. If law enforcement gains entry to a home, CPS must still request permission for CPS to enter. Moreover, if law enforcement determines consent is not necessary to their investigation, this determination does not apply to CPS. CPS must independently determine whether there are exigent circumstances or whether there is consent for CPS to enter.

## 2.    Court Order In Aid Of Investigation

If a person interferes with an investigation of a family or is uncooperative during an investigation, CPS can seek a court order to compel cooperation with specific components of the investigation. [63] A court order in aid of investigation will only serve CPS to the extent the language in the court order specifies exactly what CPS is authorized to do. As a result, it is very important to make sure the court order lists whatever is needed for the investigation (e.g. transportation of the child to the CAC, interview of the child, entering the home, viewing the child's bedroom, etc.) or is broad enough to complete the investigation. Court intervention is specifically authorized, upon a showing of good cause, to:

- Gain access to a home, school or any place where a child may be;[64] or
- Obtain a medical, psychological or psychiatric exam (or to obtain the records of such an exam).[65]

If a parent refuses to consent to the caseworker's entry into the home or to allow an interview or examination of a child, and there are not exigent circumstances (described below) the caseworker should discuss whether there is sufficient evidence to support a Court Order to Aid Investigation.

For a complete description of the procedural prerequisites, including the application and a sample affidavit, see Practice Guide, SECTION 1 BEFORE FILING SUIT, Court Order in Aid of Investigation.

---

[63] TEX. FAM. CODE §261.303(b).

[64] TEX. FAM. CODE §261.303(b).
[65] TEX. FAM. CODE §261.303(c).

3.      **Exigent Circumstances**

For purposes of entry into the home, exigent circumstances are present only where CPS has evidence that there is imminent danger to a child or children in the home and the purpose of CPS' entry in the home is to prevent imminent harm.

- Examples of exigent circumstances include: entry into a home to render emergency assistance to an injured child or to protect an child from imminent injury; a child needing emergency medical care; a small child left unattended for an extended time; or any child whose life or limb is in immediate jeopardy and the intrusion is reasonably necessary to alleviate the threat;
- Entering the home solely for the purpose of interviews does not constitute exigent circumstances; and
- "Imminent danger" means there is very little time before the danger is anticipated. If the alleged perpetrator is not home, CPS must have information that the alleged perpetrator will be home soon and is likely to harm the child at that time to justify concluding the child is in imminent danger. If it is unclear when the alleged perpetrator will be returning to the home, you must look to the totality of the circumstances to determine if imminent danger exists.

## CASE EXAMPLES

- CPS is called to a home on a P1 report of physical abuse. CPS arrives at the home and the parents are not home. An adult, who appears to be the housekeeper, answers the door. CPS asks for permission to come in and speak to the children in the home. She says, "sure, come on in." CPS begins interviewing the children who all say they are afraid of their father's discipline methods. At that time the father comes home and tells CPS to get out of his house. Can the caseworker stay?
  - No, because the father revoked the housekeeper's consent and there are no exigent circumstances.

- CPS staff sometimes accompany law enforcement on drug busts where they suspect children are in the home. Is this enough to constitute exigent circumstances?
  - Not without additional information. Law enforcement's suspicion that children are in a home where parents will be arrested, in and of itself, is not sufficient to constitute exigent circumstances, even if law enforcement believes it does. If CPS enters the home and determines that there are children in the home who will have no one to care for them because the parents have been arrested, then in most cases the children can be said to be in "imminent danger" and can be taken into possession, assuming reasonable efforts are made to find an alternative to removal.

23