Case 2:17-cr-00390   Document 846   Filed on 02/10/25 in TXSD   Page 1 of 11

United States District Court
Southern District of Texas
**ENTERED**
February 10, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
|   Plaintiff/Respondent, | § | |
| | § | |
| v. | § | CRIMINAL NO. 2:17-390-1 |
| | § | CIVIL NO. 2:24-112 |
| DAVID KEITH WILLS, | § | |
|   Defendant/Movant. | § | |

## MEMORANDUM OPINION & ORDER

Defendant/Movant David Keith Wills has filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. D.E. 834.[1] Now pending before the Court is the United States of America's (the "Government") motion to dismiss the § 2255 motion as untimely (D.E. 843), to which Movant responded (D.E. 844). For the reasons stated below, the Government's motion to dismiss is **GRANTED**, and Movant's § 2255 motion is **DENIED**.

## I. BACKGROUND

Movant was charged with: (1) one count of conspiracy to commit sex trafficking of a child; (2) seven counts of sex trafficking of a child; (3) nine counts of coercion and enticement of a minor (two of which were "attempted"); and (4) one count of conspiracy to commit obstruction of justice by destroying his computer. Jane Doe, the victim, was ten years old when the abuse began in 2012 and thirteen when it ended in 2015. The indictment also alleged that Jane Doe's mother, Maria Candelaria Losoya, conspired with Movant to

---

1. Docket entry references (D.E.) are to the criminal case.

1

abuse Jane. Codefendant Losoya initially denied the accusation, but she later recanted, pled guilty to sex trafficking Jane, and agreed to cooperate with the prosecution.

A total of 47 witnesses, including Movant, Losoya, and Jane, testified during the 11-day jury trial. Losoya testified that, in exchange for money and gifts from Movant, she would deliver Jane to Movant whenever he requested—sometimes even checking her out of school—so he could rape her. Jane provided similar testimony. The Government also presented documentary evidence that corroborated Jane and Losoya's testimonies.

Relevant to Movant's § 2255 motion, the sexual assault nurse examiner (SANE) who examined Jane testified for the Government that she observed "a well-healed tear noted at 4:00 o'clock on the hymen." 9/24/2019 Trial Tr., D.E. 528 at 146:19-20. The SANE was not able to conclude what caused the injury to Jane's hymen; however, the injury was "consistent with some type of penetration of the hymen" and "consistent with the history that Jane provided." *Id.* at 148:25–149:11.

Movant was convicted on all but one count. He was sentenced to life imprisonment for the sex crimes and five years for conspiracy to obstruct justice, to run concurrently. The Court also imposed an $85,000 fine and ordered Movant to pay Jane $172,000 in restitution. Judgment was entered on September 30, 2020. Movant raised numerous arguments on direct appeal, all of which the Fifth Circuit rejected. *United States v. Wills*, 40 F.4th 330 (5th Cir. 2022). The Supreme Court denied his petition for a writ of certiorari on November 21, 2022. *Wills v. United States*, 143 S. Ct. 464 (2022). Movant filed his current motion under 28 U.S.C. § 2255 on April 30, 2024.

## II. MOVANT'S ALLEGATIONS

Movant alleges that the Government violated *Brady v. Maryland*, 373 U.S. 83 (1963), and his due process rights by knowingly "presenting erroneous clinical conclusions masquerading as forensic evidence." D.E. 834, p. 10. Specifically, he complains that the SANE's testimony regarding a "well-healed tear" to Jane's hymen was "not based upon any reasonable medical theory" and that the Government knowingly presented this false testimony at trial. *Id*. Movant states that he is actually innocent, and without the SANE's "prejudicially staged testimony," Jane's testimony would have been "easily discredited" and he would have been acquitted. *Id.* at 17.

## III. 28 U.S.C. § 2255

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992) (per curiam). In addition, "a collateral challenge may not do service for an appeal." *United States v. Frady*, 456 U.S. 152, 165 (1982).

A motion made under § 2255 is subject to a one-year statute of limitations, which, in most cases, begins to run when the judgment becomes final. 28 U.S.C. § 2255(f).[2] The Fifth Circuit and the Supreme Court have held that a judgment becomes final when the applicable period for seeking review of a final conviction has expired. *Clay v. United States*, 537 U.S. 522, 531–32 (2003); *United States v. Gamble*, 208 F.3d 536, 536–37 (5th Cir. 2000) (per curiam).

## IV. ANALYSIS

### A. 28 U.S.C. § 2255(f)(4) and Newly-Discovered Evidence

Movant's conviction became final when the Supreme Court denied his petition for a writ of certiorari on November 21, 2022. He filed his § 2255 motion on April 30, 2024, and argues that it is timely under 28 U.S.C. § 2255(f)(4), which starts the one-year clock running "on the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." Movant states that his motion is "based upon newly discovered evidence which clearly demonstrates government misconduct regarding its Due Process obligations, as well as ineffective assistance of counsel." D.E. 834, p. 1.

---

2. The statute provides that the limitations period shall run from the latest of:

> (1) the date on which the judgment of conviction becomes final;
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from filing by such governmental action;
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Movant's "newly discovered evidence" is a letter dated August 21, 2023, that he received from his trial counsel. D.E. 844-1. Attached to the letter is an undated Memorandum of Disclosure issued by Bexar County, Texas Criminal District Attorney Joe D. Gonzales ("Memo") that counsel had received "in another case." *Id.* The Memo cited a study published in 2007 by the American Academy of Pediatrics ("2007 Study")[1] that "concluded that torn or injured hymens do not leave scars." D.E. 834, Ex. A. The Memo further disclosed that, before 2013, State of Texas witness Dr. Nancy Kellogg—who did not testify at Movant's trial—had testified in 1997 and 1998 that a scar on a victim's hymen was indicative of abuse; however, "in 2013 Dr. Kellogg told the Bexar County Criminal District Attorney's Office that her initial claims at the trial have now been shown to be outdated and that she would not testify the same way now." *Id.* Counsel's letter informed Movant that "we could possibly do a writ of habeas corpus based on newly discovered evidence; evolving science." D.E. 844-1.

Movant argues that, "as the Study makes clear, injured hymens in adolescent females do not scar, and the Memo evidences the government's notice of this fact." D.E. 834, p. 10. Moreover, "The Memo makes clear that since 2013, not only has the government been in possession of this critical medical data, but they also knew their own expert witness could not and would not testify in any manner contradictory to that critical data." *Id.* at 2. Movant states that he "knew the entire time that the SANE was espousing lies, and made every effort to impeach the phony medical analysis." D.E. 844, p. 2.

---

1. J. McCann, S. Miyamoto, C. Boyle, *et al.*, *Healing of hymenal injuries in prepubertal and adolescent girls: a descriptive study*, PEDIATRICS, 119 (2007), p. e1094-e1106; doi:10.1542/peds.2006-0964.

5

However, "it was not until [he] received the Memo that the government's malfeasance could actually be proved." *Id.* at 3. "Therefore, it is the Memo, not the Study, which starts the § 2255 clock." *Id.* at 2.

### B. The Memo

There is nothing in the record to support Movant's claim that the Memo "represents incontrovertible proof that the government knew or should have known that the SANE testified falsely." *See* D.E. 844, p. 2.[2]

The substance of the Memo itself does not prove the United States—more specifically, the U.S. Attorney's Office for the Southern District of Texas—was aware of the 2007 Study and/or knew that the SANE testified falsely. The Memo merely states that the Bexar County D.A.'s Office—which is located in the Western District of Texas and had no connection to this case—was aware of the 2007 Study and that its own expert witness, Dr. Kellogg, would not testify that a scar on a victim's hymen was indicative of abuse based on the 2007 Study.

Movant appears to argue that the United States should have known the SANE testified falsely because it received either a copy of the Memo or a copy of the notice from Dr. Kellogg regarding her changed testimony. He also appears to lump all state and federal law enforcement agencies and prosecuting attorneys into a single group—"the government"—and imputes on the collective "government" knowledge of all factual and

---

2. While the Court does not reach the merits of Movant's motion, it notes that the SANE did not testify that she observed a "scar" on Jane's hymen. She testified that she observed a "a well-healed tear noted at 4:00 o'clock on the hymen."

legal aspects of his case, claiming that "it is indisputable that in this case the government had possession and access to a virtual treasure trove of data. Inter-agency documents, files, notes, interviews, and much, much, more," given that his "case originated in three state jurisdictions . . . and was passed around the states for many years, ultimately to the U.S. Attorney's office." D.E. 834, pp. 6–7.

Movant is correct that his case originated in three Texas jurisdictions and that the United States had access to his state court files. *See* 9/19/2017 Mot. Hrg. Tr., D.E. 119 at 12:25–13:3 (AUSA explaining that "there were three offices [that] contained discovery on this case. The federal government then adopted the case and we obtained copies from each county to make up our file."). Those jurisdictions were Cameron County, Nueces County, and San Patricio County. Movant has offered no evidence that Bexar County was in any way involved in the investigation or prosecution of his case, that the Bexar County D.A.'s Office provided the United States with a copy of the Memo or Dr. Kellogg's notice, or that the Memo was otherwise publicly disclosed.[3] If the Memo had been in the United States'

---

3. The United States adopted Movant's case in 2017. The Memo could not have been issued before January 1, 2019, when Joe D. Gonzales began serving as Bexar County D.A. The Memo itself states that the information contained therein "shall not be disclosed to any third party except as allowed for under [Tex. Code Crim. Proc.] Article 39.14(e)," which provides:

> (e) Except as provided by Subsection (f), the defendant, the attorney representing the defendant, or an investigator, expert, consulting legal counsel, or other agent of the attorney representing the defendant may not disclose to a third party any documents, evidence, materials, or witness statements received from the state under this article unless:
> (1) a court orders the disclosure upon a showing of good cause after notice and hearing after considering the security and privacy interests of any victim or witness; or
> (2) the documents, evidence, materials, or witness statements have already been publicly disclosed.

TEX. CODE CRIM. PROC. art. 39.14.

possession, defense counsel should have found it in the United States' files before trial. *See United States v. Ramos*, 2009 WL 2485592, *5 (S.D. Tex. Aug. 7, 2009), *aff'd*, 427 F. App'x 368 (5th Cir. 2011) ("[T]he United States Attorney's Office in the Corpus Christi Division has an 'open file policy' that allows defense counsel to look at all the United States' discovery.").

### C. The Study

Movant's focus on the Memo is a red herring. The crux of his motion is that the United States knew or should have known the SANE testified falsely based on the 2007 Study's conclusion that "torn or injured hymens do not leave scars." The issue therefore turns on when the 2007 Study—not the Memo—"could have been discovered through the exercise of due diligence." *See* 28 U.S.C. § 2255(f)(4).

The 2007 Study was published online on April 9, 2007, and was a major factor in the Texas Court of Criminal Appeals' grant of habeas relief in *Ex parte Mayhugh*, 512 S.W.3d 285 (Tex. Crim. App. 2016).[4] Movant argues that "[i]t strains credibility and borders on mythical that the government was ignorant or unaware of the falsity of the 'well-healed tear' described by the SANE at [his] trial. Especially, since these cases involving *Mayhugh* have been well-documented in popular media." D.E. 834, p. 23. Given this reasoning, Dr. Alexandria Doyle—who Movant describes as an "incredibly noted forensic psychologist . . . 'whose expertise is in evaluating claims of sexual assault'" (*id.* at 21)—should have been aware of the 2007 Study when she testified in Movant's defense at trial,

---

4. The *Mayhugh* habeas proceeding followed a child's recantation of her prior testimony. Dr. Kellogg was a key witness for the prosecution at the 1997 trial and later recanted her testimony in the case based on the 2007 Study. The State of Texas agreed to habeas relief.

given that she had been the petitioners' expert witness in *Ex parte Mayhugh* three years earlier. If the Court is to assume the United States could have discovered the 2007 Study before Movant's trial, then so could Movant and his defense team. As Movant is eager to point out, "Of course, what is good for the goose, is good for the gander." D.E. 844, p. 2.

### D. Equitable Tolling

The Court finds that trial counsel's August 21, 2023 letter disclosing the Memo to Movant did not trigger the application of 28 U.S.C. § 2255(f)(4). The statute of limitations therefore began to run when Movant's conviction became final on November 21, 2022. *See* 28 U.S.C. § 2255(f)(1). He did not file his § 2255 motion until April 30, 2024, more than five months after the statute of limitations expired on November 21, 2023.

Equitable tolling may allow for a late-filed motion, but such exceptions to limitations are rare. *Holland v. Florida*, 560 U.S. 631, 649 (2010); *United States v. Riggs*, 314 F.3d 796, 799 (5th Cir. 2002). The party seeking equitable tolling bears the burden of demonstrating that tolling is appropriate. *United States v. Petty*, 530 F.3d 361, 365 (5th Cir. 2008). To satisfy his burden, Movant must show that (1) he has diligently pursued his rights, and (2) some extraordinary circumstance stood in his way. *See Holland*, 560 U.S. 649; *Petty*, 530 F.3d at 365.

Movant received trial counsel's letter notifying him about a potential habeas claim based on "evolving science" three months before the statute of limitations expired; however, he did not file his § 2255 motion until eight months later. His mistaken belief that "the one-year time to file began on August 21, 2023, at the earliest" (D.E. 844, p. 2) does not warrant equitable tolling. *See Felder v. Johnson*, 204 F.3d 168, 172 (5th Cir. 2000)

9

("[M]ere ignorance of the law or lack of knowledge of filing deadlines does not justify equitable tolling or other exceptions to a law's requirements.").

The Court finds that Movant has not shown that he has diligently pursued his rights or that some extraordinary circumstance prevented him from timely filing his § 2255 motion. Accordingly, his motion is barred as untimely, and the Court need not consider the merits of his claims.

## V. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Movant has not yet filed a notice of appeal, the § 2255 Rules instruct this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, § 2255 RULES.

A Certificate of Appealability (COA) "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). To warrant a grant of the certificate as to claims that the district court rejects solely on procedural grounds, the movant must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court concludes that Movant cannot establish at least one of the *Slack* criteria. Specifically, jurists of reasons would not find this Court's procedural rulings debatable. Accordingly, Movant is not entitled to a COA as to his claims.

## VI. CONCLUSION

For the foregoing reasons, the Government's motion to dismiss (D.E. 843) is **GRANTED**, Movant's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (D.E. 834) is **DENIED,** and Movant is **DENIED** a Certificate of Appealability.

So **ORDERED** on February 10, 2025.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE